```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION

 3                 CASE NUMBER 21-23190-CV-MORENO

 4   CARLOS EDUARDO MARRON, JANE DOE,
     C.R., a minor, and S.A., a minor,
 5
                Plaintiffs,                      Courtroom 12-2
 6
        vs.                                      Miami, Florida
 7
     NICOLAS MADURO MOROS, FUERZAS                August 30, 2022
 8   ARMADAS REVOLUCIONARIAS DE COLOMBIA,
     ("FARC"), et al.,
 9
                Defendants.
10   ═══════════════════════════════════════════════════════════

11         PROCEEDINGS ON MOTION FOR DEFAULT JUDGMENT
            BEFORE THE HONORABLE FEDERICO A. MORENO
12             SENIOR UNITED STATES DISTRICT JUDGE
     ═══════════════════════════════════════════════════════════
13
     APPEARANCES:
14
     FOR THE PLAINTIFFS:      JAIME D. GUTTMAN, ESQ.
15                            Scale Law Partners LLC
                              777 Brickell Avenue
16                            Suite 500
                              Miami, Florida 33131
17                                               305-515-0263
18                            ALEX C. LAKATOS, ESQ.
                              JULYANA C. DAWSON, ESQ.
19                            Mayer Brown LLP
                              1999 K Street NW
20                            Washington, DC 20006
                                                 202-263-3000
21                                          Fax: 202-263-5312
22   STENOGRAPHICALLY REPORTED
     BY:                      GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C
23                            Official United States Court Reporter
                              Wilkie D. Ferguson Jr. US Courthouse
24                            400 North Miami Avenue - Suite 12-2
                              Miami, Florida  33128  305.523.5118
25                            gphofficialreporter@gmail.com
```

```
 1                      TABLE OF CONTENTS
 2                                                          Page
 3
 4
     Reporter's Certificate ................................. 19
 5
 6
 7
 8
 9
                              EXHIBITS
10
     Exhibits              Marked for          Received
11                         Identification      in Evidence

12   Description           Page    Line        Page    Line
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1        (The following proceedings were held at 10:40 a.m.:)
 2        THE COURT:  Let's talk about a civil case where people
 3   are suing President Maduro.  I'm sorry you were waiting.
 4        Carlos Eduardo Marrón, Jane Doe, C.R., a minor, S.A., a
 5   minor, plaintiffs versus Nicolas Maduro Moros, Fuerzas Armadas
 6   Revolucionarias de Colombia, the FARC, the Cartel of the Suns,
 7   also known as Cartel De Los Soles, Vladimir Padrino Lopez,
 8   Maikel Jose Moreno Perez, Nestor Luis Reverol Torres, Tarek
 9   William Saab and Tareck El Aissami.
10        On behalf of the plaintiffs, who do we have?
11        MR. GUTTMAN:  Good morning, Your Honor.  Permission to
12   remove my mask?
13        THE COURT:  Sure.  You were here when I gave my --
14        MR. GUTTMAN:  I was not.
15        THE COURT:  -- description of anyone who is vaccinated
16   wishes to remove it, you can do so.
17        MR. GUTTMAN:  I was not.  Thank you, Your Honor.
18        THE COURT:  I don't force people to be vaccinated, but
19   if you are and you wish to do that, yes, sir.
20        MR. GUTTMAN:  Yes, Your Honor.
21        THE COURT:  Okay.  Who have you served?
22        MR. GUTTMAN:  Jaime Guttman on behalf of the plaintiffs
23   and I have together with me my co-counsel.
24        THE COURT:  You look a little older than years ago.
25        MR. GUTTMAN:  Your Honor, people age.
```

1          THE COURT:  The beard.  Do you do that intentionally?
2          MR. GUTTMAN:  After my father passed away a few years
3   ago, it's a Jewish custom.
4          THE COURT:  Oh, okay.  I'm sorry.
5          MR. GUTTMAN:  I have co-counsel, Mr. Alex Lakatos --
6          MR. LAKATOS:  Good morning, Your Honor.
7          MR. GUTTMAN:  -- Ms. Julyana Dawson from Mayer Brown in
8   Washington D.C., and here with us, Your Honor, we have the
9   plaintiffs Maria Alejandra Marrón and Carlos Marrón.  The minors
10  are not in court, Your Honor.
11         THE COURT:  Okay.  Now, who has been served?
12         MR. GUTTMAN:  Your Honor, we served --
13         THE COURT:  Nobody is here for the defense, obviously.
14  I'm not surprised.  So what are we going to do with this case?
15  How are you going to serve?  How are you going to collect?
16         MR. GUTTMAN:  Great questions, Your Honor.  So we
17  served already the Cartel of the Suns and the FARC.
18         THE COURT:  How did you serve them?
19         MR. GUTTMAN:  Through representatives that are
20  currently in custody and that have been recognized as either
21  members or leaders of the respective cartels.  So in the case of
22  the FARC, we served Mr. Pineda who has been served in other
23  similar actions against the FARC, including actions in this
24  court.
25         THE COURT:  And judgments have been entered against

1  them?
2       MR. GUTTMAN:  And judgments have been entered against
3  the FARC.
4       THE COURT:  Who's the president of Colombia now?
5       MR. GUTTMAN:  Mr. Petro who is a --
6       THE COURT:  A former FARC member?
7       MR. GUTTMAN:  Or leftist, correct.
8       THE COURT:  Okay.  So how are you going to collect on
9  them?  The clerk has already entered a default, right?
10      MR. GUTTMAN:  So we have a default, Your Honor, against
11 both the FARC and the Cartel of the Suns.
12      THE COURT:  So what needs to be done?  You want a jury
13 trial for that now?
14      MR. GUTTMAN:  Well, Your Honor, so we believe that
15 we're entitled to a default judgment as to both the Cartel of
16 the Suns as well as the FARC.
17      THE COURT:  And you want $75 million?
18      MR. GUTTMAN:  Your Honor, we set forth the amount of
19 damages in our calculation.  We submitted to the Court a brief
20 recently with a similar case that came out of North Dakota
21 against a Mexican cartel where the Court also recognized that in
22 addition to the per diem, an increase based on inflation is
23 proper in this case.  So we did --
24      THE COURT:  Did that Court do it through an evidentiary
25 hearing, through a jury trial or just by affidavits?

1        MR. GUTTMAN:  No, Your Honor, so in that case in North
2  Dakota, the recent case, they did have a hearing.
3        THE COURT:  People testified?
4        MR. GUTTMAN:  They did have, correct, an evidentiary
5  hearing.
6        THE COURT:  A jury trial is not required?
7        MR. GUTTMAN:  A jury trial is not required on a
8  default, Your Honor.  So it is 100 percent the discretion of the
9  Court and different courts have addressed the issue differently.
10 So, for example, in Caballero there was no trial.  Just one
11 second.
12       THE COURT:  Go ahead.  You've waited long enough, so
13 I'm not rushing you.
14       MR. GUTTMAN:  Thank you, Your Honor.
15       THE COURT:  I'm sorry you had to --
16       MR. GUTTMAN:  No, no, I understand.
17       THE COURT:  We are the only generalist left.
18       MR. GUTTMAN:  Understood.  So, Your Honor, different
19 cases have approached it differently.  Caballero, which is also
20 here in the Southern District of Florida, we don't believe that
21 they had a trial.
22       THE COURT:  Who was the judge there?
23       MR. GUTTMAN:  That's Judge Moore, Your Honor.
24       THE COURT:  Okay.  Were there affidavits?  Is that what
25 they were?

```
 1              MR. GUTTMAN:  I need to double-check that.
 2              THE COURT:  All right.
 3              MR. GUTTMAN:  In the Pineda case, which is pending in
 4   the Middle District of Florida, an evidentiary hearing was
 5   conducted only as to the amount of damages.
 6              THE COURT:  And who testifies as to that?
 7              MR. GUTTMAN:  Your Honor --
 8              THE COURT:  Like in this case, who would testify as to
 9   that, the plaintiffs?
10              MR. GUTTMAN:  Usually it's the plaintiffs and
11   sometimes, depending on what the Court wishes to be presented
12   with, you can have experts that testify as to the types and
13   extent of the damages suffered by the plaintiffs.
14              THE COURT:  All right.
15              MR. GUTTMAN:  But the labor of the Court is simplified
16   by the fact that many other courts have already addressed this
17   very same issue as to the damages and they basically have a
18   formula that goes pretty much per diem for the plaintiffs' days
19   of --
20              THE COURT:  Suffering?
21              MR. GUTTMAN:  Well, the days that he was kidnapped and
22   that he was imprisoned against --
23              THE COURT:  So you get a final judgment against these
24   two entities and then where do you go?
25              MR. GUTTMAN:  So, Your Honor, we respectfully request
```

1  that if the Court is inclined to grant us our Motion for Default
2  Final Judgment, to do so --
3           THE COURT:  What happens with the other defendants?
4  What do I do with Maduro?
5           MR. GUTTMAN:  We're going to try to serve him as well,
6  Your Honor.
7           THE COURT:  How do you serve the president of the
8  Republic of Venezuela?
9           MR. GUTTMAN:  Well, Your Honor, he's not the president
10 and he hasn't been the president already for a couple of years.
11 The United States Government executive branch does not recognize
12 him as a president.
13          THE COURT:  That's a good point.
14          MR. GUTTMAN:  So he's not the president.
15          THE COURT:  But he runs the country.  So how do you do
16 that?
17          MR. GUTTMAN:  So we already tried, Your Honor, in this
18 case through the Hague Convention.  Venezuela refused to accept
19 anything through the central authority.  We believe that we can
20 try alternative methods of service of process.
21          THE COURT:  Like what?
22          MR. GUTTMAN:  Either publication or email service.
23          THE COURT:  You have his email?
24          MR. GUTTMAN:  Your Honor, we have been working
25 diligently to find information.  Nonetheless, Your Honor --

1  THE COURT: And is there a deadline or do we just keep
2  this -- this has been going on for a year.
3  MR. GUTTMAN: Your Honor, well, so one point before we
4  get -- if I may, they're not required parties. They're not
5  necessary parties. The Court is at this point completely able
6  to grant full relief as to the Cartel of the Suns and the FARC.
7  THE COURT: I got it, but I still have an open case. I
8  don't like open cases, and you've come so far. I might as well
9  find out what you're going to do with these other people.
10  MR. GUTTMAN: Your Honor, we filed already a Motion for
11  Alternative Service of Process on a similar case that we have
12  pending before Judge Gayles. We intend to do the same here if
13  the Court will allow us.
14  THE COURT: And that's for Maduro and also El Aissami
15  and all those people?
16  MR. GUTTMAN: That would be for the individual
17  defendants, Your Honor.
18  THE COURT: Because they're all in one form or another
19  in the Government in Venezuela, right, or not?
20  MR. GUTTMAN: I wouldn't use the word "Government," but
21  I would say in power. They are controlling the country, Your
22  Honor, yes, illegitimately.
23  THE COURT: Well, all right. And then if I grant the
24  Motion for Alternative Service, then it would be the same thing.
25  MR. GUTTMAN: So, Your Honor, in the case against -- in

1  other cases, there's been different methods for service that
2  have been allowed by the courts that are consistent with due
3  process.  I mean, this case will not remove them from power,
4  Your Honor, if that's your question.
5           THE COURT:  Oh, I don't get involved in that.
6           MR. GUTTMAN:  Correct.  So what we're seeking, Your
7  Honor, is --
8           THE COURT:  And express no opinion on that, obviously.
9           MR. GUTTMAN:  Correct.  What we're seeking, Your Honor,
10 is redress for the victims.
11          THE COURT:  But wouldn't it be better to do it all at
12 once as opposed to parcel it?  Your colleagues are shaking their
13 heads no.
14          MR. GUTTMAN:  Correct, Your Honor, because it's not
15 necessary.
16          THE COURT:  I know, but wouldn't it be better?
17          MR. GUTTMAN:  No, Your Honor, because there's no double
18 recovery anyway.  So if we end up serving the defendants, the
19 individual defendants under the alternative methods of service
20 of process and the Court ends up entering a judgment, the
21 judgment will not be -- they will be joined and severally liable
22 for the same judgment.  There will not be additional amounts on
23 top of the amounts --
24          THE COURT:  Well, how about if we set a deadline for
25 service on these other individuals because I'd rather do it all

1  together.  I don't like to divide things up.
2         MR. GUTTMAN:  Your Honor, the issue that we have with
3  that is -- and I understand and I appreciate the Court's
4  concern -- A, justice delayed is justice denied.
5         THE COURT:  I know.
6         MR. GUTTMAN:  We are already entitled to a default that
7  has been pending for about a year and the victims deserve that.
8         THE COURT:  Well, that's because I didn't know what you
9  all were going to do with the other defendants.  It's not that I
10 have forgotten.  It didn't fall through the cracks.
11        MR. GUTTMAN:  Understood.
12        THE COURT:  Hardly anything falls -- sometimes, but
13 hardly anything in my chambers falls through the cracks, but the
14 question is, where are we going with this?  So normally I think
15 you have 90 days to serve and then when you have the Hague
16 Convention, you have forever to serve almost and it takes years
17 to do that.  We can't ignore the political consequences when you
18 sue leaders of a country, legitimate, illegitimate, from the
19 left or the right, and I always, being the overly practical guy
20 that I am, say, where are we going with this, though sometimes
21 there are assets to seize?  But you usually need permission from
22 the executive branch.  Sometimes the executive branch changes.
23 State Department changes.  It's very complicated for you, but
24 not for me, and I take no interest in it.  My interest, though,
25 is I have this case.  You're right, it's been sitting for a long

```
 1  time.  How do I make sure it doesn't sit here for a long time?
 2          MR. GUTTMAN:  So, Your Honor, we can perhaps deal with
 3  it in two different way, but just to address your concern about
 4  the State Department's involvement, we are suing them in their
 5  individual capacity.  There's no sovereign situation here, no
 6  sovereign immunity situation, no diplomatic situation, and the
 7  assets would not be -- there are no sovereign assets.  The
 8  assets --
 9          THE COURT:  You just want their individual wealth,
10  wherever it is?
11          MR. GUTTMAN:  Your Honor, the Treasury Department
12  through OFAC has already frozen assets.
13          THE COURT:  So you can't even get them.
14          MR. GUTTMAN:  Well, Your Honor, that's why we're
15  requesting the judgment to be specially compensatory damages
16  under both the Federal ATA and the Florida ATA which would allow
17  us to attempt to collect against those blocked assets.
18          THE COURT:  You're entitled to collect.
19          MR. GUTTMAN:  Under the ATA, correct, Your Honor.
20          THE COURT:  But then we'd better cross every T and dot
21  every I beforehand, right?
22          MR. GUTTMAN:  Your Honor, we believe that we're doing
23  so.  In our papers, we have submitted details to make sure that
24  the Court has full comfort that all of the bases for awarding
25  relief have been covered.  So we believe that we can proceed and
```

1  that the Court will not be erring by entering judgment against
2  the FARC and the Cartel of the Suns.
3         THE COURT:  Since it's a default, no one would appeal
4  anyway.
5         MR. GUTTMAN:  Understood, Your Honor, but there's
6  issues that can come up later in the collection phases.
7         THE COURT:  Of course.
8         MR. GUTTMAN:  And we do not want obviously to have
9  obstacles and we can proceed on parallel tracks, not only on the
10 collection efforts against the FARC and the Cartel of the Suns,
11 but as well as on the alternative service of process.  They have
12 been avoiding it, Your Honor.  We've tried different things
13 already.  Not only did we --
14        THE COURT:  You haven't filed that motion yet, though?
15        MR. GUTTMAN:  No, Your Honor, but I can tell the Court,
16 if I may, the things that we have done already.  So we tried
17 already the Hague, and in addition I tried direct service of
18 process in Venezuela which we did on the Albán case, another
19 case pending before Judge Gayles.
20        THE COURT:  What do you do, you go to their homes?
21        MR. GUTTMAN:  No, Your Honor, so that's a process where
22 you have to use a courier service, IPOSTEL, and you have to use
23 a Venezuelan national ID to do so.  I was born in Venezuela, as
24 the Court knows.  I use my -- our friends in Venezuela used my
25 ID, my cedula de identidad, and my information to do that.

1  After three individual defendants were served on the Albán case,
2  I was apparently blacklisted and IPOSTEL refused to accept any
3  parcels bearing my name or my ID.  We have been remiss to risk
4  anyone in Venezuela to have their own IDs used.  So we are thus
5  only --
6        THE COURT:  So what are you going to do?  See, I'm only
7  asking -- I understand the difficulty of it.  The question is,
8  what do I do?  How long do I wait for service on the other
9  defendants?
10       MR. GUTTMAN:  Your Honor, we believe that we can do the
11 alternative service of process under both the publication as
12 well as the email.
13       THE COURT:  When will you file that motion?  Give
14 yourself a deadline.
15       MR. GUTTMAN:  We can have that motion ready in 30 days,
16 less than 30 days.
17       MR. LAKATOS:  Thirty days.  And we would shoot for
18 sooner.
19       MR. GUTTMAN:  Thirty days.
20       THE COURT:  Thirty days. Okay.  So you'll do that by
21 September 30th.  Fair enough?
22       MR. GUTTMAN:  Yes, Your Honor.
23       THE COURT:  Okay.  Then if I grant that motion, then
24 what are you going to do?  You're going to give alternative
25 service by what date?

```
 1            MR. GUTTMAN:  So, Your Honor, depending on what type of
 2   alternative service the Court grants --
 3            THE COURT:  Well, what kind of alternative service do
 4   you want?
 5            MR. GUTTMAN:  So we've seen --
 6            THE COURT:  It's always better to have more than one,
 7   by the way.
 8            MR. GUTTMAN:  Yes, Your Honor, fully agree.
 9            In a couple of the cases that we have seen against
10   cartels, I believe in the case against the Cartel of the Juarez,
11   the Juarez Cartel that came out, out of North Dakota this year,
12   they used the website for publication as well.
13            THE COURT:  Whose website?  The cartel has a website?
14            MR. GUTTMAN:  No, Your Honor.  It's a website that has
15   been used by different courts to allow service by electronic
16   means and publication.  We can provide more details in our
17   Motion for Alternative Service of Process.
18            THE COURT:  Okay.  Do that and then I'll look at it and
19   make a ruling after you file that.
20            Then the chances are if that's permissible and I grant
21   it, that in all likelihood a default is going to be granted
22   against those individuals served, and then we will be in the
23   same status as these plaintiffs are against the FARC and the
24   others served and the cartel, right?
25            MR. GUTTMAN:  That is correct, Your Honor, unless the
```

1  Court wants to enter the judgment against the FARC and the
2  cartel and we can start proceeding against them.
3         THE COURT:  I hate having final judgments only on
4  certain defendants and not others.
5         MR. GUTTMAN:  Understood.
6         THE COURT:  I kind of like to do it all together one
7  way or another because that way it's clear what it is.  If it's
8  jointly and severally -- you have waited this long.  A month
9  here, a month there isn't going to make any difference in order
10 to collect as long as we give ourselves a deadline, don't you
11 think?
12        MR. GUTTMAN:  Yes, Your Honor.  So if I may ask, if the
13 Court grants, which we hope the Court will do so, our Motion for
14 Alternative Service of Process and we end up with one of these
15 methods in a month or two here before the Court, how would the
16 Court like to proceed going forward once the default is entered
17 against individual defendants?
18        THE COURT:  I don't know yet.  I don't know yet, but
19 obviously the summary proceedings that you are suggesting,
20 seeing whether it's through some testimony or affidavit, the
21 issue is what I think they deserve, and there's not going to be
22 any cross-examination, but we just can't anticipate what I'm
23 going to do.
24        I will tell you we could do this if you wanted to file
25 that motion and serve by electronic means or some other means

1  more quickly, I envision the possibility of entering a final
2  judgment even before September 30th, if I give you an even
3  shorter deadline to file this motion.  So in other words, if you
4  file your Motion for Alternative Service now, you know, right,
5  now at the beginning of September, right before the Labor Day
6  weekend, right, by Friday, you file that --
7          MR. LAKATOS:  Just make it happen, yes, sir.
8          THE COURT:  -- if I grant it, and other courts have
9  done it, obviously, these people are at least avoiding, if not
10 evading service -- I can't say more than that until you file the
11 motion -- and if it's done electronically and you're not going
12 to have someone using someone's ID in Caracas trying to serve
13 this, that's not the way it's going to be done for the security
14 concerns, I understand that, and thus, with that, it could be
15 done quickly and then I can decide whether affidavits are
16 sufficient with the formula that you've described.  I probably
17 don't have to make you or -- your clients obviously live here,
18 right?
19         MR. GUTTMAN:  They do, Your Honor.
20         THE COURT:  Okay.  I assume.  Then we could do that and
21 it could be done before the end of the month.
22         My preference would be to deal with all of them, if
23 they're similarly situated, at the same time jointly and
24 severally, whether it includes Maduro, El Aissami, everyone
25 together.

1         MR. GUTTMAN:  All their friends.
2         THE COURT:  I mean, I don't know.  All I know, sometimes the media is right, sometimes the media is wrong.  So we don't know, but I think it's easier to do it all together.  And I'm willing to be able to do this before the end of the month if you're willing to do it quickly, too.
7         MR. GUTTMAN:  We will work hard.
8         THE COURT:  Okay.  So file it by Friday and I will rule in early September and we'll have this done one way or another, for or against, by the end of September.  How's that?
11        MR. GUTTMAN:  That sounds great, Your Honor.  Thank you so much.
13        THE COURT:  It was probably worth the wait, huh?
14        All right.  Anything else?
15        MR. GUTTMAN:  I appreciate it.  Thank you, Your Honor.
16        THE COURT:  Okay.  I look forward to seeing everything.  If you file the affidavits with all the description and the cases with the formula per day, that would be very helpful.
19        MR. GUTTMAN:  Will do, Your Honor.
20        THE COURT:  Because then it gives me the support.  We don't need -- it seems initially it would be ridiculous to have people -- only if you wanted a jury, which you will have people testify, so that the jurors can have an idea and sometimes things work out.  I mean, I still remember the Brothers to the Rescue case, where I thought it wasn't going to go anywhere and

```
 1  it went because they had assets.  But whether it's collectible
 2  or not, it's not my business, it's yours.
 3            MR. GUTTMAN:  Understood, Your Honor, and that's why we
 4  are going to reassert the request that we be granted
 5  compensatory damages, especially the compensatory damages under
 6  the ATA and the Florida ATA.
 7            THE COURT:  Okay.  All right.  Thank you.
 8            MR. GUTTMAN:  Thank you, Your Honor.
 9            THE COURT:  Sorry you had to wait.  Nice seeing you
10  all.
11            MR. GUTTMAN:  Likewise.
12            MR. LAKATOS:  Thank you, Your Honor.
13            THE COURT:  Have a good day.  Looks like some things
14  become better, some things become worse.  That's our lives.
15            THE COURT SECURITY OFFICER:  All rise.
16            THE COURT:  We are in recess.
17       (The hearing concluded at 11:03 a.m.:)
18                    C E R T I F I C A T E
19       I hereby certify that the foregoing is an accurate
20  transcription of proceedings in the above-entitled matter.
21
22  __09-18-22_____        _____
          DATE               GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C
23                           Official United States Court Reporter
                             Wilkie D. Ferguson Jr. U.S. Courthouse
24                           400 North Miami Avenue, Suite 12-2
                             Miami, Florida  33128   305.523.5118
25                           gphofficialreporter@gmail.com
```