UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 21-23190-CIV-MORENO

CARLOS EDUARDO MARRON, JANE DOE,
C.R., a minor, and S.A., a minor,

        Plaintiffs,

vs.

NICOLAS MADURO MOROS, FUERZAS
ARMADAS REVOLUCIONARIOS DE
COLOMBIA, CARTEL OF THE SUNS,
VLADIMIR PADRINO LOPEZ, MAIKEL
JOSE MORENO PEREZ, NESTOR LUIS
REVEROL TORRES, TAREK WILLIAM
SAAB, and TARECK EL AISSAMI,

        Defendants.
_____/

## DEFAULT FINAL JUDGMENT

THIS CAUSE came before the Court upon Plaintiffs' Motion for Default Final Judgment (**D.E. 41**), filed on **October 18, 2022**.

THE COURT has considered the motion, the affidavits of the parties, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED as set forth in this Order. Defendants have failed to respond to the Complaint and the Plaintiffs' Motion for Final Default Judgment. The time for doing so has passed. The Clerk of Court entered defaults against the Defendants. The Court entered a default judgment against Fuerzas Armadas Revolucionarias de Colombia (FARC) and the Cartel of the Suns. The Court now enters default judgments against the remaining Defendants and awards damages in favor the Plaintiffs.

## I. Background

On September 2, 2021, Plaintiffs filed this complaint asserting claims against Defendants for orchestrating the torture and kidnapping of Carlos Eduardo Marrón. Marrón was kidnapped, tortured, and detained for more than a year. Marrón, his wife, Maria, and their two minor children, C.R. and S.A., filed this case.

Plaintiffs served the complaint in a variety of ways. Plaintiffs served the FARC and the Cartel of the Suns by serving its leaders, Juvenal Ovidio Ricardo Palmera Pineda and Cliver Antonio Alcala Cordones. Both are in prison in the United States. The Clerk entered default as to both cartels as neither responded to the complaint. The Court also granted default judgment against both Defendants but reserved the decision on damages until the Plaintiffs served the remaining Defendants.

The Court granted Plaintiffs' motion for alternative service on Defendants Nicholas Maduro Moros, Vladimir Padrino Lopez, Maikel Jose Moreno Perez, Nestor Luis Reverol Torres, Tarek William Saab, and Tareck El Aissami. Plaintiffs employed Rule 4(f) to serve these individual Defendants by alternative service, and none have responded to the Complaint. On October 18, 2022, the Clerk entered default as to the remaining Defendants. Plaintiffs are now moving for final default judgment against the Defendants.

## II. Legal Standard

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the Clerk of Court is authorized to enter a clerk's default. *See* Fed. R. Civ. P. 55(a). The Clerk has entered defaults as to all the Defendants in this case. Second, after entry of the Clerk's Default, the Court may enter default judgment against the defendants so long as the defendants are not minors or

incompetent. Fed. R. Civ. P. 55(b)(2). By defaulting, a defendant admits the truth of the well-pleaded factual allegations in the Complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).

"While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested by the plaintiff. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). Rule 55 does not require an evidentiary hearing on the appropriate amount of damages, and it is within the Court's discretion to choose whether such a hearing should take place. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Plaintiffs in this case have submitted detailed affidavits on damages and the Court finds an evidentiary hearing is unnecessary to determine damages.

### III. Legal Analysis

A default judgment is proper where the Court has subject matter jurisdiction over the action, personal jurisdiction over the defaulted defendants and where the record establishes the plaintiff's right to relief. *Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc.*, 743 F. App'x 390, 392 (11th Cir. 2018).

3

*A. Jurisdiction*

Both subject matter and personal jurisdiction are established in this case. Plaintiffs have stated a claim under the Anti-Terrorism Act, 18 U.S.C. § 2333. The Court, therefore, has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

The Court also has personal jurisdiction over Defendants. Plaintiffs served the Cartel of the Suns and the FARC by serving their officers, who are incarcerated in the United States. Serving an officer of a foreign criminal association through one of its leaders effectuates valid service on the criminal organization. *See Caballero v. FARC*, No. 1: 18-CV-25337 (S.D. Fla. Mar. 18, 2019) (serving FARC through Juvenal Ovidio Palmera Pineda, an imprisoned FARC leader, and granting default). Plaintiffs also served the individual defendants by alternative means as allowed by the Court pursuant to Federal Rule of Civil Procedure 4(f)(3).

The Court also may exercise personal jurisdiction under Florida's long-arm statute and under principles of due process. Under the Florida long-arm statute, a person or entity is subject to personal jurisdiction in Florida if the defendant or its agent committed tortious acts giving rise to a plaintiff's claims within this state. *See* Fla. Stat. § 48.193(1)(a)(2). It is not necessary for the defendant to be physically present in Florida, so long as the defendant commits an element of the tort in Florida. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Defendants, in this case, were offended by Plaintiff Carlos Marrón's Florida business and they kidnapped and tortured him until it collapsed. They also tortured him until they obtained access to his Miami bank accounts, and stole funds from those accounts. Defendants also contacted Plaintiff Maria Marrón, who was in Miami, Florida, to extort money from her as they threatened to kill her husband. Defendants defamed Marrón in Florida, which also subjects them to personal

jurisdiction here. *See Adam J. Rubinstein, M.D., P.A. v. Ourian*, No. 20-21948-CIV-MORENO, 2020 WL 6591559, at *1 (S.D. Fla. Nov. 10, 2020) (nonresident defendant was subject to personal jurisdiction where he posted defamatory statement online, which was accessed in Florida). Finally, to the extent the Defendants did not each commit the torts described in the complaint, the Defendants acted as co-conspirators. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009) (stating that Florida's long-arm statute "support[s] personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy.").

Having found Florida's long-arm statute satisfied, the Court must next examine whether due process considerations for the exercise of personal jurisdiction are met. The Eleventh Circuit's three-part due process test examines "(1) whether the plaintiff's claims 'arise out of or related to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

The 'arise out of or relate to' standard requires only "an affiliation between the forum and the underlying controversy." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021). That standard is met here where the Defendants actions led to the destruction of Plaintiff Marrón's business, the theft of his money from his Florida bank accounts, the extortion of money from Maria Marrón in Florida, and the defamation of Marrón in Florida.

As to the second prong, the Defendants purposefully availed themselves of the privilege of conducting activities in Florida. They stole money from his Florida bank accounts, and

extorted money from Maria Marrón. Defendants also engage in narcoterrorism in Florida. Finally, the Court finds the third due process element is met as the exercise of personal jurisdiction does not violate notions of due process and substantial justice.

### B. Default Judgment on Liability
#### 1. The Florida and Federal Anti-Terrorism Act

The Florida Anti-Terrorism Act and the Federal Anti-Terrorism Act create private rights of action when individuals are injured by acts of terrorism. *See* § 772.13(1), Fla. Stat.; 18 U.S.C. § 2331. The Florida Anti-Terrorism Act makes actionable "terrorism," which is "intended to (1) [i]ntimidate, injure, or coerce a civil population; (2) [i]nfluence the policy of a government by intimidation or coercion; or (3) [a]ffect the conduct of government through destruction of property, assassination, murder, kidnapping or aircraft piracy." § 775.30(1)(b), Fla. Stat.

Defendants have committed predicate offenses for a Florida Anti-Terrorism Act violation, including narcoterrorism in violation of 21 U.S.C. § 960a. Acts of narcoterrorism are appropriate predicates for a violation of the Florida Anti-Terrorism Act. Narcoterrorism is dangerous to human life in the United States. Defendant Nicolas Maduro was criminally indicted for narcoterrorism and is the leader of Defendant the Cartel of the Suns. *United States v. Maduro Moros*, 11-cr-205 (S.D.N.Y. 2011). Defendants' violations of the Florida Anti-Terrorism Act – using narcotics sales in Florida to fund their acts of terrorism at home – gave rise to Mr. Marrón's injuries. Under the facts of this case, Defendants exchange drugs for hard foreign currency. The hard currency allows the Defendants to stay in power in Venezuela. Defendants leverage that power to kidnap and torture dissidents like Plaintiff. These actions against dissidents like the Plaintiff enhance the Defendants control in Venezuela. By controlling Venezuela, Defendants are able to traffic drugs and shelter the cartels. But for the narcoterrorism fundraising, Defendants would not have been able to fund the kidnapping and torture of Plaintiff. These unrefuted allegations establish a violation of the

Florida Anti-Terrorism Act.

Likewise the Plaintiffs establish a violation of the Federal Anti-Terrorism Act. Plaintiffs Maria Marrón and her minor children are U.S. nationals, who have a right of action under the Act for largely the same reasons as there is a claim under the Florida Act. By engaging in narcoterrorism in Florida, the Defendants engaged in activities that violate state law, are dangerous to human life, are intended to coerce a population, and transcend boundaries. The proceeds of narcoterrorism fund acts of terrorism in Venezuela and the Defendants inflicted injuries on the U.S. population from Venezuela. These actions give rise to the injuries suffered by Maria Marrón and her children.

2. *False Imprisonment*

False imprisonment is the "unlawful restraint of a person against his will." *Escambia Cnty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 672 (Fla. 1st DCA 1996). To succeed, a plaintiff need show only "imprisonment contrary to his will and the unlawfulness of the detention." *Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997) (quoting *Rotte v. City of Jacksonville*, 509 So. 2d 1252 (Fla. 1st DCA 1987)). Plaintiff Marrón was held against his will. His detention was unlawful as he had not committed a crime.

3. *Intentional Infliction of Emotional Distress*

To state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). A defendant satisfies the intent requirement if he knows that the emotional distress is "substantially certain[] to result from his conduct" or if it "acts reckless . . . in deliberate disregard of a high degree of probability that the emotional distress will follow." *E. Airlines, Inc. v. King*, 557 So. 2d 574, 576 (Fla. 1990)

7

(citing § 500, Restatement (Second) of Torts (1965)). The kidnapping and torture of Plaintiff Marrón was deliberate and outrageous. It caused severe emotional and physical distress to his wife and children. This was exacerbated by Defendants extorting money from Maria Marrón with threats of murdering her husband. She has suffered outbreaks of carbuncles, pain in her extremities from Raynaud's Syndrome, post traumatic stress disorder, severe anxiety, and insomnia.

    *4. Defamation Per Se*

Defendants, acting through Nestor Luis Reverol Torres and Tarek William Saab, defamed Plaintiff Carlos Marrón by falsely stating that he was a financial terrorist, money launderer, and worse than a mass murderer. These false statements were published through internationally available media. To state a claim for defamation, the plaintiff must show that "'(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to the plaintiff.'" *Matonis v. Care Holdings Grp., LLC*, 423 F. Supp. 3d 1304, 1315 (S.D. Fla. 2019) (quoting *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015)). A statement is defamatory *per se* if it charges that a person has committed an infamous crime. *See Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (en banc) (per curiam); *Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 5th DCA 2005). Reverol's and Saab's statements meet the definition of defamation *per se* as they were false, made with malice, published, and state that Plaintiff Carlos Marrón committed felonies.

    *5. Civil Conspiracy*

Civil conspiracy requires an agreement between two or more people to participate in an unlawful act, an overt act performed by any party to the agreement in furtherance of the agreement's purpose, and a resulting injury. *See Walters v. Blankenship*, 931 So. 2d 137, 140

(citing § 500, Restatement (Second) of Torts (1965)). The kidnapping and torture of Plaintiff Marrón was deliberate and outrageous. It caused severe emotional and physical distress to his wife and children. This was exacerbated by Defendants extorting money from Maria Marrón with threats of murdering her husband. She has suffered outbreaks of carbuncles, pain in her extremities from Raynaud's Syndrome, post traumatic stress disorder, severe anxiety, and insomnia.

   4. *Defamation Per Se*

Defendants, acting through Nestor Luis Reverol Torres and Tarek William Saab, defamed Plaintiff Carlos Marrón by falsely stating that he was a financial terrorist, money launderer, and worse than a mass murderer. These false statements were published through internationally available media. To state a claim for defamation, the plaintiff must show that "'(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to the plaintiff.'" *Matonis v. Care Holdings Grp., LLC*, 423 F. Supp. 3d 1304, 1315 (S.D. Fla. 2019) (quoting *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015)). A statement is defamatory *per se* if it charges that a person has committed an infamous crime. *See Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (en banc) (per curiam); *Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 5th DCA 2005). Reverol's and Saab's statements meet the definition of defamation *per se* as they were false, made with malice, published, and state that Plaintiff Carlos Marrón committed felonies.

   5. *Civil Conspiracy*

Civil conspiracy requires an agreement between two or more people to participate in an unlawful act, an overt act performed by any party to the agreement in furtherance of the agreement's purpose, and a resulting injury. *See Walters v. Blankenship*, 931 So. 2d 137, 140

(Fla. 5th DCA 2006). The kidnapping, torture, robbery, bank fraud, money laundering, extortion, false imprisonment, and defamation of Carlos Marrón were overt acts in furtherance of that conspiracy by Defendants.

*C. Damages*

After entering default judgment on liability, a court must determine the amount of damages to be awarded.

*1. Damages to Plaintiff Carlos Marrón under the Anti-Terrorism Acts*

Courts considering the Federal Anti-Terrorism Act, on which the Florida Anti-Terrorism Act is modeled, have concluded that the purpose of the statute is best achieved if it is interpreted to subject terrorists to the broadest range of damages. *See Alban v. Maduro,* 21-20706-CIV-Gayles, (S.D. Fla. Sept. 5, 2007); *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 77 (S.D.N.Y. 2006).

For the kidnapping and torture of Plaintiff Carlos Marrón, courts have generally awarded $10,000 per day (before trebling, which is statutorily required). *See Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 51 (D.D.C. 2001) (holding in Foreign Sovereign Immunities Act case that the "formula which has evolved as a standard in hostage cases . . . grants the former hostage roughly $10,000 for each day of his captivity."). Adjusting this formula for inflation, this comes to $18,164 per day in today's dollars. *Miller v. Juarez Cartel,* 20-cv-00132, 2022 WL 2286952, at *35 (D.N.D. June 24, 2022) (adjusting damages for inflation). Plaintiff Marrón was in captivity for 878 days, and therefore, the total due Plaintiff Carlos Marrón is $15,947,992.

In cases where pain and suffering is heightened by torture, courts have added a lump sum. *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 09-cv-2308-T-26MAP,

2010 WL 11507790, at *3 (M.D. Fla. June 14, 2010) (adding $5 million for five years in captivity); *Levin v. Islamic Republic of Iran*, No. 05-2494, 2007 WL 9759002, *16 (D.D.C. 2007), R&R *adopted* 2008 WL 11493474 (adding $15 million lump sum to per diem of 343 days in captivity). In this case, the Court finds a $10 million lump sum is appropriate, which brings the compensation due to Plaintiff Marrón to $25,947,992, which is $77,843,976 after trebling as set forth by the Florida Anti-Terrorism Act. *See* § 772.13(1), Fla. Stat.

*2. Defamation Damages due to Plaintiff Carlos Marrón*

The Defendants defamed Plaintiff Marrón by blaming him for his own kidnapping and torture and claiming he was a financial terrorist. They asserted he engaged in conduct worse than mass murder and called him a coward. In *Alban v. Maduro,* 21-20706-DPG, which involved the same defendants as in this case, the Court awarded $1 million in damages for defamation. Alban was unable to defend his reputation because he was murdered, unlike Plaintiff Marron who escaped captivity, but nevertheless suffered harm to his reputation. The Court finds this award is also appropriate in this case as the statements constitute defamation *per se.*

*3. Damages to Plaintiff Maria Marrón and her minor children*

Maria Marrón and her children suffered hardship and loss of companionship of Plaintiff Carlos Marrón while he was being held captive. Maria Marrón's suffering was compounded because she received routine phone calls demanding money by threatening to torture and kill her husband. She suffered physical ailments as a result of the Defendants' actions.

In *Delloye v. Revolutionary Armed Forces of Colombia (FARC)*, No. 18-cv-1307, 2022 WL 36292, at *4 (M.D. Pa. Jan. 4, 2022), the court awarded $12 million in compensatory damages to the child of a woman kidnapped and held captive by FARC for six years. In *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62, 70 (D.D.C. 1998), the court awarded $10 million to each of the spouses of

10

two men who had been kidnapped for 5 years and 3 years, respectively. *See also Levin v. Islamic Republic of Iran*, No. 0-2494, 2007 WL 9759002, *16 (D.D.C. Dec. 31, 2007), R&R *adopted*, 2008 WL 11493474 (D.D.C. Jan. 14, 2008) (awarding $10 million to spouse whose husband was in captivity for 343 days); *Sutherland*, 151 F. Supp. 2d at 51 (awarding wife whose husband was kidnapped for 6.5 years damages of $10 million).

Under the extraordinary circumstances here, Maria Marrón is entitled to a compensatory-damages award of $15 million, and S.A. and C.R. are awarded compensatory damages in the amount of $5 million each, *i.e.*, $25 million total, which is $75 million after the trebling required under the Anti-Terrorism Act. This chart summarizes the damages award in this case:

| Plaintiff | Injury | Amount (Before Trebling) | Amount (Trebled) |
|---|---|---|---|
| Carlos Marrón | Kidnapping and Torture | $25,947,992 | $77,843,976 |
| Maria de Marrón | Solatium, pain and suffering | $15,000,000 | $45,000,000 |
| C.R. | Solatium, pain and suffering | $5,000,000 | $15,000,000 |
| S.A. | Solatium, pain and suffering | $5,000,000 | $15,000,000 |
| Carlos Marrón | Defamation | $1,000,000 | $1,000,000 (no trebling) |

*4. Punitive Damages*

Plaintiffs request $300 million in punitive damages. In *Alban*, the district court found that the trebling component of the Anti-Terrorism Acts functioned as punitive damages. So to here, the damages under the Anti-Terrorism Acts have been trebled and therefore, a separate punitive damages award is superfluous.

11

5. *Attorney's Fees and Post-Judgment Interest*

The Court reserves jurisdiction to award attorneys' fees pursuant to the Florida and Federal Anti-Terrorism Acts. The Court also reserves jurisdiction to award post-judgment interest under 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

DONE AND ORDERED in Chambers at Miami, Florida, this ___20___ of January 2023.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record