**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:21-cv-23190-FAM**

CARLOS EDUARDO MARRÓN;
MARIA MARRÓN; C.R., a minor;
and S.A., a minor,

      Plaintiffs,

v.

NICOLAS MADURO MOROS; FUERZAS
ARMADAS REVOLUCIONARIAS DE
COLOMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS
SOLES; VLADIMIR PADRINO LOPEZ;
MAIKEL JOSE MORENO PEREZ; NESTOR
LUIS REVEROL TORRES; TAREK
WILLIAM SAAB; and TAREK EL AISSAMI,

      Defendants.

_____/

## PLAINTIFFS' EXPEDITED *EX PARTE* MOTION FOR WRITS OF EXECUTION AND REQUEST FOR RULING BY MARCH 6, 2023

Plaintiffs respectfully move for writs of execution on two properties held by shell companies of Samark Jose López Bello, an agent of Defendants Cartel of the Suns and Tarek El Aissami (and FARC). López Bello provided material support to at least two judgment debtors in this matter, Cartel of the Suns (the "Cartel") and Tarek El Aissami ("El Aissami")—both of which this Court has already found liable for their roles in the kidnapping and torture of Carlos Eduardo Marrón. Where, as here, a person provides material support to a terrorist party, Congress has specified in the Terrorism Risk Insurance Act ("TRIA") that terrorism victims such as Plaintiffs may satisfy their judgment from that person's property blocked by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"). Issuing writs of execution will help to ensure that López Bello cannot take any steps to dispose of the properties before the U.S. Marshal sells the

properties to help satisfy Plaintiffs' outstanding $153,843,976 judgment against Defendants.

Plaintiffs bring this as an expedited motion and respectfully request a ruling by **March 6, 2023**, because the Circuit Court for Miami-Dade County will hear a motion on March 7, 2023 for a default against one of López Bello's shell companies in a foreclosure action involving one of two properties at issue here (a 6,800 square-foot mansion in Pinecrest).[1] If a writ of execution does not issue by that time, the foreclosure action against the López Bello shell company might hamper Plaintiffs' ability to execute on the property to help satisfy Plaintiffs' outstanding judgment.

## RELEVANT PROCEDURAL BACKGROUND

On January 23, 2023, this Court awarded a final default judgment for Plaintiffs and against Defendants (including the Cartel and El Aissami), jointly and severally, in the amount of $153,843,976. *See* Jan. 23, 2023 Order, *final judgment entered at* ECF No. 46 (Final Judgment for Plaintiffs and against Defendants, jointly and severally, in the amount of $153,843,976). As of today, the entire judgment remains unsatisfied. Exhibit D.

## RELEVANT FACTUAL BACKGROUND

## I.   THE CARTEL OF THE SUNS, FARC, AND THE MADURO CRIMINAL ENTERPRISE

Defendant Maduro was elected President of Venezuela on March 5, 2013. *See* ECF No. 41, at 14. In 2018, Venezuela held an election that was neither free nor fair. *Id.* Although Maduro

---

[1]     *FRYD Mortgage, LLC v. 9000 SW 63rd Court, LLC*, 2020-016686-CA-01 (Circuit Court for Miami-Dade). In *FRYD Mortgage*, the plaintiff mortgage company sued one of López Bello's shell companies and López Bello's daughter for allegedly defaulting on a mortgage. Until they defaulted in December 2022, the LLC and López Bello's daughter defended on the basis that they owned the property outright and that a third-party fraudster committed mortgage fraud by taking out a mortgage in their names (and without their authorization)—a scheme for which the U.S. Attorney's Office for the Southern District of Florida successfully prosecuted several mortgage fraudsters. *See Seven Defendants Sentenced in $10 Million Mortgage Fraud and Identity Theft Scheme*, U.S. Dep't. of Justice (Oct. 20, 2021), https://www.justice.gov/usao-sdfl/pr/seven-defendants-sentenced-10-million-mortgage-fraud-and-identity-theft-scheme.

won the election, the United States has refused since 2018 to recognize him as Venezuela's legitimate President.[2] *Id.* Maduro runs Venezuela as a narco-terrorist state and, as this Court previously recognized, controls the Cartel of the Suns, a Venezuelan drug-trafficking cartel run by senior government and military officials in Venezuela. *See* Jan. 23, 2023 Order at 6.

Maduro leads the Cartel of the Suns, which works hand in hand with FARC to traffic the cocaine that funds Maduro's authoritarian grip on Venezuela. *See, e.g.*, *Albán Osio v. Maduro*, 2022 WL 4280499, at *5 (S.D. Fla. Sept. 5, 2022) (noting that the "same group of actors (the Maduro Regime, the Cartel of the Suns, and FARC) . . . raise revenue through drug trafficking abroad and reinforce Maduro's authoritarian control over Venezuela"), *report and recommendation adopted*, 2022 WL 4271920 (S.D. Fla. Sept. 15, 2022). In charging Maduro with a narco-terrorism conspiracy and conspiring to import cocaine into the United States, the U.S. Department of Justice has explained that Maduro, including through his leadership of the Cartel, intended "to 'flood' the United States with cocaine and inflict the drug's harmful and addictive effects on users in this country." Exhibit E, at 2–3 (Superseding Indictment of Nicolas Maduro).

Defendants Nestor Luis Reverol Torres, Tarek El Aissami, and Vladimir Padrino Lopez are senior figures within the Cartel, and Tarek William Saab and Maikel Jose Moreno Perez also support the Cartel's activities. *See* Jan. 23, 2023 Order at 3 (holding that the Defendants, by defaulting, admitted the truth of Plaintiffs' well-pleaded factual allegations); Compl. ¶¶ 29-33. From 2017 to 2018, El Aissami was the *de facto* Vice President of Venezuela, and he currently serves as Maduro's Minister of Industries and National Production and Minister of Petroleum. Compl. ¶ 33.

---

[2]    *See   Department   Press   Briefing   –   January   3,   2023*, https://www.state.gov/briefings/department-press-briefing-january-3-2023/.

Following lengthy investigations, OFAC designated Defendants (and Cartel of the Suns leaders or supporters) Nicolas Maduro Moros, Nestor Luis Reverol Torres, Vladimir Padrino Lopez, Tarek William Saab Halabi, and El Aissami (together, the "Individual Defendants") as "Specially Designated Narcotics Traffickers" (SDNTKs) under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act") and 31 C.F.R. Part 598.[3] This Court may take judicial notice of these OFAC designations, including because an OFAC designation "can be accurately and readily determined from sources [i.e., OFAC] whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2); *accord, e.g.*, *Funnekotter v. Ag. Dev. Bank of Zimbabwe*, 2015 WL 3526661, at *11 (S.D.N.Y. June 3, 2015) ("[T]he court can take judicial notice that ZB Bank and its parent company are Specially Designated Nationals.").

In granting a default judgment against Defendants, this Court recognized that the Individual Defendants, Cartel of the Suns, and FARC[4] committed narcoterrorism "using narcotics sales in

---

[3] *See Venezuela-related Designations and Designation Update; Iran-related Designation Update*, U.S. Dep't of Treasury (Sept. 22, 2020), https://home.treasury.gov/policy-issues/financial-sanctions/recent-actions/20200922 (Exhibit F); *Treasury Targets Venezuelan President Maduro's Inner Circle and Proceeds of Corruption in the United States*, U.S. Dep't of Treasury (Sept. 25, 2018), https://home.treasury.gov/news/press-releases/sm495 (Exhibit G); *Venezuela-related Designations*, U.S. Dep't of Treasury (July 26, 2017), https://home.treasury.gov/policy-issues/financial-sanctions/recent-actions/20170726 (Exhibit H); *Treasury Sanctions Eight Members of Venezuela's Supreme Court of Justice*, U.S. Dep't of Treasury (May 18, 2017), https://home.treasury.gov/news/press-releases/sm0090 (Exhibit I); *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark López Bello*, U.S. Dep't of Treasury (Feb. 13, 2017), https://home.treasury.gov/news/press-releases/as0005 (Exhibit B); *Treasury Sanctions 13 Current and Former Senior Officials of the Government of Venezuela*, U.S. Dep't of Treasury (July 26, 2017), https://home.treasury.gov/news/press-releases/sm0132 (Exhibit J).

[4] FARC is a Columbian terrorist organization that works with the Maduro regime to destabilize peace in Columbia. Maduro and the Individual Defendants harbor FARC terrorists, in exchange for FARC's training of unsanctioned militia groups (the Colectivos or "Collectives"), which operate as the armed-forces unit of the Cartel of the Suns. Compl. ¶¶ 82–93. The Collectives have committed murder, extortion, kidnapping, and drug trafficking to support Cartel of the Suns and the Maduro regime. Compl. ¶¶ 91–93.

Florida to fund their acts of terrorism at home." Jan. 23, 2023 Order, at 6. By maintaining Maduro's unlawful control of Venezuela, the Maduro Criminal Enterprise ensures that it can continue to commit profitable crimes—such as narcotics trafficking and looting the Venezuelan treasury— with impunity and without interference from legitimate law enforcement.  Through acts of terrorism and human rights abuses, the Maduro Criminal Enterprise suppresses opposition to its narcotics trafficking, public corruption, and Maduro's authoritarian control of Venezuela.  *Id.*

The Court also recognized that the Individual Defendants require foreign hard currency to facilitate their acts of terrorism and retain control of Venezuela, and consequently, the Individual Defendants work with FARC and through Cartel of the Suns to distribute "tons of cocaine to enter and devastate American communities."[5]  *Id.*   Indeed, several Individual Defendants and Cartel of the Suns operatives have been indicted recently in federal court for their unlawful trafficking of narcotics or their conspiring to evade U.S. sanctions. For example, and as discussed below in Section III, the United States in 2019 charged El Aissami with conspiring to evade sanctions under the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act") and engaging in transactions prohibited by the Kingpin Act, among other crimes. *United States v. El Aissami*, Case No. 19-cr-144 (S.D.N.Y. Mar. 13, 2020), attached as Exhibit A (Superseding Indictment of Tareck Zaidan El Aissami). (Notably, the exact same indictment also charged López Bello for his role in aiding El Aissami.) Likewise, Defendants Padrino Lopez, Moreno Perez, and Reverol Torres also have been indicted in federal court for similar criminality. *See* Exhibit L (Indictment of Nestor Luis Reverol Torres); Exhibit M (Indictment of Vladimir Padrino Lopez); Exhibit N (Indictment of Maikel Jose Moreno Perez).

---

[5]     *See also* Press Release, Dep't of Justice, https://www.justice.gov/opa/pr/nicol-s-maduro-moros-and-14-current-and-former-venezuelan-officials-charged-narco-terrorism (Mar. 26, 2020) (Exhibit K).

As this Court already recognized, the Maduro Criminal Enterprise raises funds for its terrorism by conducting extensive money laundering activities in Florida. *See* Jan. 23, 2023 Order, at 6. Critically, López Bello helps at least several Defendants (including El Aissami and the Cartel) launder their ill-gotten money. *See infra* Section III.  López Bello's provision of material support to El Aissami and the Cartel makes him an agency or instrumentality of those Defendants. *See infra* Section II. As a result, Florida law and TRIA provide that Plaintiffs may satisfy their judgment from López Bello's blocked property.  *See infra* Section I.

## ARGUMENT

## I.   THE APPLICABLE LAW ENDORSES AN *EX PARTE,* PRE-HEARING WRIT OF EXECUTION.

The governing law allows an *ex parte,* pre-hearing writ of execution on the assets of agencies and instrumentalities of terrorist judgment debtors—and then affords the agencies and instrumentalities with ample notice and a fulsome opportunity to be heard *subsequently*, when the agencies and instrumentalities can no longer abscond with, or dispose of, the assets at issue.

Federal Rule of Civil Procedure 69(a)(1) provides that Florida law governs the procedure on this post-judgment TRIA execution, except to the extent that TRIA applies to supplement or preempt Florida law. *Stansell v. Revolutionary Armed Forces of Colombia (Stansell II)*, 771 F.3d 713, 730 (11th Cir. 2014). In practice, this means that Florida law largely supplies the rules of procedure governing execution, and TRIA largely provides the substantive provisions that allow for executing on assets that OFAC has blocked.

Florida law, in relevant part, permits a judgment creditor to obtain a writ of execution against "each person who is liable on a judgment, an order, or a decree subject to execution under this chapter [56 of the Florida Statutes]." Fla. Stat. § 56.0101(4). Chapter 56, which governs execution in satisfaction of a judgment, establishes a three-step process where, as here, judgment

creditors such as Plaintiffs seek to execute on real property. First, a writ of execution issues. *See,*
*e.g.*, Fla. Stat. §§ 56.031, 56.061. Second, the sheriff or marshal levies on the property (Fla. Stat.
§ 56.061), effectively attaching the property so that the property owner cannot readily transfer or
dispose of it during the ongoing post-judgment proceedings. Third, the sheriff or marshal
advertises a notice of sale for four consecutive weeks before selling the property at a marshal's
sale.   Fla. Stat. § 56.21. In the time between the levy and the marshal's sale, an agency or
instrumentality may appear and challenge their agency/instrumentality status.[6]

In *Stansell II*, the Eleventh Circuit approved *ex parte*, pre-hearing issuance of a writ of
execution on the blocked property of a terrorist party's agency or instrumentality, recognizing that
terrorism victims' interest in "ensuring adequate satisfaction of judgments against terrorist parties"
weighed strongly in favor of issuing an "immediate," pre-hearing writ. 771 F.3d at 729 (citing
*Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 531 (S.D.N.Y. 2010) (recognizing
that Congress's purpose in enacting TRIA § 201 was to "deal comprehensively with the problem
of enforcement of judgments rendered on behalf of victims of terrorism")). The Eleventh Circuit
recognized that "[d]uring the pendency of execution proceedings, a number of events may occur
which make satisfaction using a particular asset impossible," such as the property owner's
"mov[ing] the asset (or proceeds from its sale) outside the reach of the United States." *Id.* Issuing
a pre-hearing writ of execution to attach the blocked property provides a "minimally intrusive

---

[6]     A judgment debtor may obtain a stay by posting a "bond with surety payable to the
judgment creditor in double the amount of the execution or the part of which [execution] a stay is
sought." Fla. Stat. § 56.15; *see also* Fla. Stat. § 56.16 (also requiring the posting of a bond in
"double the value of the" property claimed if someone "other than the judgment debtor claims any
property levied on"); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2013 WL
12203820, at *5 (M.D. Fla. Apr. 19, 2013) (denying property owners' motion to dissolve or stay
writs of execution where "no person or entity has delivered or filed an affidavit with bond and
surety for double the property's value as specifically required by Florida's execution statutes").

manner of reducing these risks," and as a result, an owner of blocked property is "not constitutionally entitled to a hearing before the writ issue[s]." *Id.*

López Bello's status as a fugitive—and the crimes for which he remains under indictment—make an *ex parte* writ especially important here. In March 2019, the United States charged López Bello with evading sanctions under the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act"), 21 U.S.C. § 1901 *et seq.*, and conspiring with El Aissami to evade sanctions under the Kingpin Act. *United States v. Samark Jose López Bello, et al.*, Case No. 1:19-cr-144-AKH, at ECF No. 67 (S.D.N.Y.) (Superseding Indictment of López Bello) (Exhibit A). López Bello's history of evading U.S. sanctions, which culminated in his indictment, underscores the risk that López Bello and his companies might, if they learn in advance of Plaintiffs' efforts, seek to dispose of the subject properties to thwart Plaintiffs' collection efforts.

To be sure, after the levy, Plaintiffs will provide López Bello's companies with notice of the attachment, including through the U.S. Marshal's "secure posting of a notice on the propert[ies]." *Stansell II*, 771 F.3d at 741. López Bello may then elect to appear and attempt to contest his agency/instrumentality status before the marshal's sale, but as the Eleventh Circuit has repeatedly held, López Bello lacks a right to a hearing before the issuance of the writ of execution. *See Stansell v. López Bello* ("*Stansell III*"), 802 F. App'x 445, 448 (11th Cir. 2020) (holding that Claimants "had no entitlement to a hearing prior to attachment or before a writ of execution is issued" and citing *Stansell II*). This Court consequently may enter an *ex parte*, pre-hearing writ of execution for the López Bello properties described below.

## II.   TRIA ALLOWS SATISFYING A JUDGMENT FROM THE ASSETS OF A DEFENDANT'S AGENCY OR INSTRUMENTALITY.

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides the substantive law that governs terrorism victims' efforts to satisfy their judgments from the blocked

assets of Defendants and their agencies or instrumentalities. TRIA permits attaching the blocked property not only of the defendant terrorist/judgment debtor, but also the defendant's agency or instrumentality: "Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (*including the blocked assets of any agency or instrumentality of that terrorist party*) shall be subject to execution or attachment in aid of execution."  28 U.S.C. § 1610 Note (bold added); *Stansell V*, 45 F.4th at 1346 (quoting § 1610).

Applying TRIA, the Eleventh Circuit explained in *Stansell II* that "TRIA execution requires two separate determinations regarding the property being executed: (i) that the asset is blocked, and (ii) that the owner of the asset is an agency or instrumentality of the judgment debtor." 771 F.3d at 726.

*Blocking*. Blocking "can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under TWEA or IEEPA."[7] *Id.*  In other words, OFAC's designation of a person as an agency or instrumentality automatically renders that person's property blocked as a matter of law. *Id.* An agency or instrumentality need not hold the property exclusively in their name or in any particular form: On the contrary, OFAC's designation of a person or entity as an SDN blocks not only property in their name but also any property belonging to entities that the SDN owns (meaning an interest of at least 50 percent).[8] In other

---

[7]    Though *Stansell II* mentioned only TWEA and the IEEPA, Congress amended TRIA in 2018 to also apply to assets blocked pursuant to the Kingpin Act. *See Stansell V*, 45 F.4th at 1347 n.2 ("blocked assets under § 201 of the TRIA include the assets of a terrorist party (and the assets of any agency or instrumentality of that terrorist party) seized or frozen by the United States pursuant to the Kingpin Act.").

[8]    *See* 86 Fed. Reg. 26662 (May 17, 2021), https://www.govinfo.gov/content/pkg/FR-2021-05-17/pdf/2021-10314.pdf ("OFAC is amending the definition of specially designated narcotics trafficker in § 536.312 of the NTSR and § 598.314 of the FNKSR to clarify that these terms *include*

9

words, not only is the SDN's own property blocked, so too is the property of any shell or holding

company in which the SDN owns an interest of 50 percent or more—thereby preventing an SDN

from avoiding the reach of OFAC sanctions through the simple expedient of putting its property

in the name of a shell company in which the SDN retains a material interest.

     ***Agency or instrumentality.*** Though TRIA does not define "agency or instrumentality," the

Eleventh Circuit has endorsed a broad definition: An "agency or instrumentality" includes any

party that provides material support to a terrorist party, whether financial (e.g., money laundering,

as in López Bello's case here), technological, or the provision of goods or services. *See Stansell*

*V*, 45 F.4th at 1350 (quoting *Stansell II*, 771 F.3d at 724 n.6). In *Stansell II*, another case that

involved FARC, the Eleventh Circuit approved the district court's defining an "agency or

instrumentality" as any party that:

> "is or was ever involved" in any aspect of the FARC's trafficking operations or that
> assisted with the FARC's "financial or money laundering network" because it "was
> either (1) materially assisting in, or providing financial or technological support for
> or to, or providing goods or services in support" of, the FARC's international
> narcotics trafficking activities; and/or (2) "owned, controlled, or directed by, or
> acting for or on behalf of" the FARC; and/or (3) "playing a significant role in" the
> FARC's narcotics trafficking.

771 F.3d at 724 n.6. As made clear by the language "or was ever involved," a third party who

provides material support to a terrorist at any point in time constitutes an agency or instrumentality,

even if they purportedly stopped aiding the terrorist. *Id.*; *accord Stansell V*, 45 F.4th at 1350

("[T]he formulation we expressly approved in *Stansell II* encompassed past involvement or

association with a terrorist party."). And even if a person works through an intermediary or third

party to provide material support to a terrorist party, they still constitute an "agency or

---

***entities directly or indirectly owned 50 percent or more by one or more specially designated***
***narcotics traffickers, whether individually or in the aggregate . . .***") (emphasis added).

instrumentality." *Stansell V*, 45 F.4th at 1351 ("[N]othing in § 201(a) of the TRIA suggests that an instrumentality relationship with a terrorist party needs to be direct.").

## III. LÓPEZ BELLO IS AN AGENCY/INSTRUMENTALITY OF AT LEAST SEVERAL DEFENDANTS.

### A. OFAC Already Determined That López Bello Is A "Key Frontman" For Defendant/Judgment Debtor El Aissami.

After a years-long, multi-agency investigation, OFAC designated and blocked El Aissami and his frontman (or "testaferro"), López Bello, on February 13, 2017. *See* Exhibit B. OFAC determined that El Aissami "facilitated shipments of narcotics from Venezuela, to include control over planes that leave from a Venezuelan air base, as well as control of drug routes through the ports in Venezuela." *Id.* at 2. El Aissami also "facilitated, coordinated, and protected other narcotics traffickers operating in Venezuela," including Walid Makled Garcia, one of the most prolific Venezuelan cocaine traffickers.[9] *Id.*

OFAC concluded that López Bello was a "key frontman" and money launderer for El Aissami. *Id.* As El Aissami's frontman, López Bello "is used by El Aissami to purchase certain assets," and López Bello "handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefitting El Aissami."[10] *Id.*

Both López Bello and El Aissami remain designated and blocked by OFAC. *See id.* at 2–3. OFAC also designated thirteen companies owned by López Bello, including several LLCs registered in Florida: 1425 Brickell Ave 63-F LLC; 1425 Brickell Avenue Unit 46B, LLC; 1425 Brickell Avenue 64E, LLC; Agusta Grand I LLC; and 200G PSA Holdings LLC. *Id.*

---

[9]    *See Venezuelan 'drug lord' Walid Makled goes on trial*, BBC (Apr. 10, 2012), https://www.bbc.com/news/world-latin-america-17662020.
[10]    *See* Exhibit B, also available at https://home.treasury.gov/news/press-releases/as0005.

In addition to OFAC's designating López Bello under the Kingpin Act, the United States indicted López Bello—in the *exact same indictment* as Defendant El Aissami—for conspiring with El Aissami to violate and evade the Foreign Narcotics Kingpin Designation Act and the Kingpin Act Regulations, conspiring with El Aissami to defraud the United States, engaging in prohibited transactions in violation of the Kingpin Act and the Kingpin Act Regulations, and evading the Kingpin Act and Kingpin Act Regulations.  Exhibit A.  The United States' indictment of López Bello for conspiring with El Aissami to violate and evade the Kingpin Act (among other crimes) underscores that López Bello provides material support to El Aissami.[11]  López Bello remains a fugitive.[12]

### B.  OFAC's Designation Of López Bello As El Aissami's Frontman Is Entitled To Extraordinary Deference.

Because OFAC's determinations involve "the intersection of national security, foreign policy, and administrative law," the judiciary affords extraordinary deference to OFAC's determinations.  *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007).  As the Eleventh Circuit explained in rejecting a party's challenge to an OFAC designation, the "decision of the OFAC is entitled to great deference, and should be reversed only if arbitrary and capricious."  *De Cuellar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989).  The Fifth Circuit used even stronger terms: An OFAC designation "receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation."  *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999).

---

[11]    *See also infra* Section III(E) (discussing the expert evidence that confirms López Bello is an agent or instrumentality of El Aissami and Cartel of the Suns).

[12]    *See Samark Jose López Bello*, U.S. Dep't of State (Oct. 8, 2020), https://www.state.gov/samark-jose-Lopez-bello/ (Exhibit O).

Consistent with the extraordinary deference afforded to OFAC determinations, courts presiding over terrorism victims' efforts to satisfy their judgments from the blocked property of SDNs afford "great deference" to OFAC's designations. *E.g.*, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2015 WL 13325432 (M.D. Fla. Feb. 17, 2015) (applying *De Cuellar*, 881 F.2d at 1565 and *Paradissiotis*, 171 F.3d at 987). For example, the *Stansell* district court denied a motion to dissolve a writ of garnishment in large part because OFAC's designation of two entities as SDNs deserved "great deference." *See Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2013 WL 12203820, at *4 (M.D. Fla. Apr. 19, 2013). In sum, as Magistrate Judge Torres noted, courts extend "great deference" to OFAC's SDN designations. *Stansell v. Revolutionary Armed Forces of Colombia*, 2019 WL 5291044, at *7 (S.D. Fla. Aug. 21, 2019), *report and recommendation adopted*, 2019 WL 5290922 (S.D. Fla. Sept. 26, 2019).

### C. López Bello Already Litigated And Lost A Challenge To OFAC's Designation.

OFAC's designation of López Bello as an SDNTK based on his role as a frontman for El Aissami (and by extension, the Cartel of the Suns) has not gone unchallenged. In June 2021, López Bello sued OFAC to de-designate him, arguing that no evidence supported OFAC's designation. *Samark Jose López Bello v. Bradley T. Smith in his Official Capacity As Director of the Office of Foreign Assets Control*, Case No. 1:21-cv-1727-RBW (D.D.C. June 29, 2021). In a December 21, 2022 order, the U.S. District Court for the District of Columbia rejected López Bello's arguments, finding sufficient evidentiary support for OFAC's designation of López Bello as the frontman for El Aissami. *López Bello v. Smith*, — F.Supp.3d —, 2022 WL 17830226 (D.D.C. Dec. 21, 2022) (Exhibit C). Though much of the administrative record remains classified and not available to the public or the District Court, the *López Bello* court concluded that even the limited evidence available to it "provides a sufficient basis to understand OFAC's decision." *Id.* at *6. One of the

few non-classified pieces of information available from OFAC's administrative record and the District of Columbia litigation, an article from a Venezuelan investigative-journalism publication, reported as early as 2013 that López Bello worked as the frontman for El Aissami (at that time, the governor of a Venezuelan state). *See* Exhibit P, at 47. In addition to the public reporting, OFAC conducted a "multi-year investigation," *López Bello*, 2022 WL 17830226, at *6, and ultimately concluded that El Aissami facilitated a massive drug-trafficking operation between Venezuela and the United States and that:

- López Bello "is in charge of laundering drug proceeds through [PDVSA] and organizing the air and maritime cocaine routes."

- López Bello "was used by El Aissami to purchase news outlets in Venezuela, which were the most critical of the Chavez regime, with Venezuelan government funds in order to influence public opinion in Venezuela."

- López Bello "handles financial matters for El Aissami" and "manages Venezuelan bonds, as a private party, and conducts unspecific deals which generate significant profits."

- López Bello "is identified as the 'business representative,' 'money manager,' and 'money launderer' for El Aissami."

- López Bello "manages bonds and conducts deals to benefit El Aissami."

- López Bello "has procured vehicles in the U.S. that were transported to Venezuela and ultimately went to El Aissami and other Venezuelan government officials."

Exhibit Q, at 17–18 (alteration in original); *see also López Bello*, 2022 WL 17830226, at *2–3, 7.

### D. Other Courts Have Correctly Determined That López Bello Is An Agency/Instrumentality Of FARC.

In addition to OFAC's determination that López Bello acts as El Aissami's frontman, Judge Scola has already determined in two cases that López Bello is an agency/instrumentality of FARC and has consequently granted writs to attach other blocked properties of López Bello. *See Stansell et al. v. FARC et al.*, Case No. 1:19-cv-20896 (S.D. Fla.), ECF No. 22; *Pescatore v. Pineda*, Case

No. 1:19-cv-20811 (S.D. Fla.), ECF No. 11.  In *Stansell* and *Pescatore*, Judge Scola found that "the OFAC Kingpin Act designated members of the "EL AISSAMI & LÓPEZ BELLO NETWORK" (identified on OFAC Chart, ECF No. 18-1), are each an agency or instrumentality of the FARC[.]"  *Stansell*, Case No. 1:19-cv-20896, ECF No. 22, at 1; *Pescatore*, Case No. 1:19-cv-20811, ECF No. 11, at 1.

Judge Scola's findings provide yet another independent reason to issue writs for the two López Bello properties discussed below in Section IV. To be sure, López Bello has contested his status as an agency/instrumentality of FARC, but here, Plaintiffs obtained judgments against not only FARC but also against El Aissami and the Cartel of the Suns, the latter of which (the Cartel) counts El Aissami as a high-ranking member. Simply put, López Bello's pending challenges to other terrorism victims' efforts to connect López Bello to FARC provide no reason to deny or delay a writ of execution here, where the OFAC determination, the evidence, and applicable law discussed throughout this motion make clear that López Bello is an agency or instrumentality of at least Defendants El Aissami and the Cartel of the Suns.

### E. The Evidence Confirms OFAC's Determination That López Bello Is An Agency/Instrumentality Of El Aissami And The Cartel Of The Suns.

The conduct for which OFAC sanctioned López Bello plainly renders him an agency or instrumentality of both El Aissami and the Cartel of the Suns (that is, someone who provided El Aissami and the Cartel of the Suns with material support).[13] Multiple distinguished experts on Latin America, drug trafficking, or both have opined that López Bello constitutes an agency or instrumentality of both El Aissami and the Cartel of the Suns.

---

[13]     *See supra* Section II (discussing the agency/instrumentality standard).

Colonel Luis Miguel Cote, a former Colonel and Chief of Staff of the Colombian Marine Corps, affirmed that El Aissami is a member of the Cartel, which "is the major facilitator and transporter of FARC cocaine through and from Venezuela." *Stansell v. Revolutionary Armed Forces of Colombia*, Case No. 1:19-cv-20896 (S.D. Fla.), ECF No. 17-1 (Exhibit R), at 10.  Based on his extensive experience investigating drug trafficking in Latin America, Colonel Cote concluded that López Bello—as a frontman and money launderer for El Aissami—is an agency/instrumentality of Cartel of the Suns.  Exhibit R at 10 (noting, for example, that "the Cartel of the Suns continues to thrive today under the leadership of Venezuela's Vice President Tareck El Aissami and his front man Samar López Bello.").  And *a fortiori*, López Bello, by acting as El Aissami's frontman, also acts as an agency or instrumentality of El Aissami.

Similarly, Douglas Farah, an expert who consults for the U.S. Department of Defense on drug trafficking and terrorist organizations in Latin America, affirmed that both El Aissami and López Bello are agencies/instrumentalities of the Cartel of the Suns.  *Stansell*, 1:19-cv-20896, ECF No. 17-2 (Exhibit S), at 28–29.  Just like Colonel Cote, Mr. Farah also concluded that López Bello—as a frontman for El Aissami and facilitator for El Aissami's drug trafficking on behalf of the Cartel of the Suns—is an agency/instrumentality of the Cartel of the Suns.  *Id.* at 26–29.

Even more experts agree that López Bello is an agency/instrumentality of the Cartel of the Suns and El Aissami. For instance, former Drug Enforcement Agency (DEA) Special Agent Paul K. Craine, who worked at the United States Embassy in Mexico and directed narcotics-trafficking investigations involving Colombia, Venezuela, and FARC, declared that many high-ranking Venezuelan officials, including El Aissami, are involved in drug trafficking and corruption and associated with the Cartel of the Suns.  *See Pescatore*, Case No. 1:19-cv-20811, ECF No. 10-3 (Exhibit T), at 1, 10–11.  And Special Agent Craine declared, in turn, that López Bello laundered

El Aissami's drug trafficking profits, which makes López Bello an agency or instrumentality of El Aissami and Cartel of the Suns.  *See id.* at 10

Simply put, a host of experts who have investigated or studied Latin American drug trafficking all reached the same conclusion as OFAC: López Bello, as a frontman for El Aissami, is an agency or instrumentality of Cartel of the Suns and, of course, El Aissami.

## IV.    TWO LÓPEZ BELLO PROPERTIES SHOULD BE ATTACHED IMMEDIATELY.

As noted above, TRIA allows terrorism victim judgment holders to execute on blocked assets of any SDNTK "that is *or was ever* involved" in any aspect of El Aissami's or Cartel of the Suns' narcotics trafficking (i.e., the same drug trafficking that allows the Maduro Criminal Enterprise to reap enormous profits that enable it to kidnap and torture people like Mr. Marrón who speak out against the Maduro Criminal Enterprise's corruption), even if those agencies/instrumentalities are not named defendants.  *See e.g.*, *Stansell II*, 771 F.3d at 725, n.6.

Because the evidence discussed throughout this motion shows that López Bello is an agency/instrumentality of Defendants El Aissami and the Cartel of the Suns (and FARC), writs of execution should issue now for two properties owned and controlled by López Bello through limited liability companies: 9000 SW 63rd Ct, Pinecrest, FL 33156 ("Pinecrest property") and 6301 Collins Avenue Apt. 1008, Miami Beach, FL 33141 ("Miami Beach property").[14] Based on Plaintiffs' current understanding and publicly available dockets,[15] no other terrorism victims have

---

[14]    Plaintiffs continue to investigate the assets of Defendants and their agencies and instrumentalities, and Plaintiffs anticipate moving for additional writs as they uncover additional assets of Defendants and their agencies and instrumentalities.

[15]    At least some filings in the *Caballero*, *Stansell*, and *Pescatore* cases appear to remain under seal, and Plaintiffs consequently have no access to (or knowledge about the contents of) any potential sealed filings in those cases.

obtained writs on these properties, which heightens the risk that López Bello might try to dispose of the properties if writs do not issue now.

### A. Pinecrest Property

The Pinecrest property is owned by 9000 SW 63rd Court LLC. *See* Exhibits U and V. In the *Stansell* case, López Bello hired an accounting expert familiar with OFAC to opine on whether López Bello qualified as an agency or instrumentality of FARC (but the expert did not opine on whether López Bello qualified as an agency or instrumentality of Cartel of the Suns). In connection with the expert's work, López Bello provided a list of entities "owned or controlled" by him, and López Bello specifically disclosed 9000 SW 63rd Court LLC as an entity he "owned or controlled." *See Stansell*, Case No. 1:19-cv-20896, ECF No. 97-1 (Exhibit W), at 24. López Bello's statement of ownership or control was unqualified: He never suggested that he owned anything less than 100% of the LLC, which underscores that the LLC constituted blocked property.[16]

Sworn deposition testimony of López Bello's daughter, who is the LLC's nominal manager, makes clear that the LLC functions as a shell company for López Bello and that López Bello actually owns and controls the Pinecrest property. Maria Fernanda Lopez ("Maria Lopez"), the daughter of López Bello (Exhibit Z, at 17:16–18),[17] testified that she has served as the sole manager of the LLC from its inception in 2016. Exhibit Z at 41:16–42:20. Despite serving as the LLC's sole manager, Maria Lopez could testify to hardly anything about the LLC, which engages

---

[16]     The fact that López Bello's own accounting expert who purported to be familiar with OFAC's regulations (for example, the 50% Rule) also treated the LLC as owned or controlled by López Bello underscores that it is blocked and that its assets consequently also qualify as blocked property under TRIA.

[17]     Transcript designations from Maria Lopez's deposition refer to the page and line number indicated in the original transcript, but for convenience and to avoid the disclosure of potentially confidential information, Plaintiffs attach only the relevant excerpts of Maria Lopez's deposition that this motion cites.

in no business other than holding the Pinecrest property. Exhibit Z, at 36:23–37:4. In fact, the LLC does not even have a bank account. Exhibit Z, at 51:23.

Though the LLC nominally holds the Pinecrest property, Maria Lopez's testimony makes clear that López Bello bought it, owns it, and controls it. In a verified interrogatory response, the LLC affirmed that the Pinecrest property was paid for from "personal savings of the ultimate beneficial owners of 9000 SW 63rd Court LLC," Exhibit Z, at 15—namely, López Bello.

López Bello continued to control the Pinecrest property after he bought it in the LLC's name. For example, López Bello pays for improvements and "took care of" paying property taxes through at least 2019. Exhibit Z, at 66:10–15, 71:19–23. Maria Lopez also confirmed that the Pinecrest property remains "blocked by the OFAC," Exhibit Z, at 75:3–5, 80:2–4—a blocking that results from López Bello's continuing to own and control it (albeit through the shell company).[18]

Given López Bello's admission that he owns or controls the LLC and Maria Lopez's testimony effectively establishing the LLC as a shell company for López Bello, he cannot avoid writs of execution by hiding behind the LLC's ownership of the Pinecrest property, and a writ of execution consequently should issue for the Pinecrest property.

**B.  Miami Beach Property**

The Miami Beach property is owned by 6301 Collins Ave 1008 LLC.  *See* Exhibits X and Y.  Like the 9000 SW 63rd Court LLC, López Bello identified 6301 Collins Ave 1008 LLC in a prior filing as an entity that he "owns or controls."  *See Stansell*, Case No. 1:19-cv-20896, ECF No. 97-1 (Exhibit W), at 24. Again, López Bello's statement of ownership or control was

---

[18]     López Bello is designated as an SDNTK and his property is consequently blocked. *See supra* pp. 3-4; Exhibit B.  In contrast, Maria Lopez is not blocked by OFAC (Exhibit Z, at 15:17-19), which underscores that López Bello actually owns and controls the Pinecrest property.

unqualified: He never suggested that he owned anything less than 100 percent of the LLC. As a result, a writ of execution also should issue for the Miami Beach property.

## **CONCLUSION**

Writs of execution should be issued for 9000 SW 63rd Court, Pinecrest, FL 33156, and 6301 Collins Avenue, Apt. 1008, Miami Beach, FL, and the U.S. Marshal should be directed to: (1) levy on the properties in accord with Chapter 56 of the Florida Statutes, (2) prepare and publish notices of sale for each of the properties, and (3) sell the properties at a marshal's sale unless a further order of this Court orders otherwise. Because of the impending March 7, 2023 hearing in the foreclosure action involving the Pinecrest property, Plaintiffs respectfully request a ruling by **March 6, 2023.**

Proposed writs of execution are attached as Exhibits 1 and 2 to this motion.

Respectfully submitted on February 22, 2023.

/s/ *Jonathan S. Klein*
Jonathan S. Klein (Fla. Bar No. 125254)
*jklein@mayerbrown.com*
Alex C. Lakatos (pro hac vice)
MAYER BROWN LLP
1999 K St. NW
Washington, DC 20009
(202) 263-3327

/s/ *Jaime D. Guttman*
Fla. Bar No. 44076
*jaime@scale.law*
Scale Law Partners, LLC
777 Brickell Avenue, Suite 500
Miami, FL 33131
(786) 273-9033 (Main)

*Counsel for Plaintiffs*

### <u>CERTIFICATE OF SERVICE</u>

I certify that, in accord with the Local Rules of the Southern District of Florida, this *ex parte* motion is exempt from service.

*/s/ Jonathan S. Klein*