# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**KEITH STANSELL, et al.,**

              **Plaintiffs,**

**v.**

**REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC), et al.,**

              **Defendants.**

**Civil Action: 1:19-cv-20896-RNS**

---

## MOTION TO DISSOLVE WRIT OF GARNISHMENT SERVED UPON UBS FINANCIAL SERVICES, INC.

Pursuant to Florida Stat. § 77.07, Samark Jose López Bello ("López"), Yakima Trading Corporation ("Yakima"), EPBC Holdings, Ltd., 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave Unit 46B LLC, 1425 Brickell Ave 64E LLC, and 200G PSA Holdings LLC (collectively referred to herein as the "Moving Parties"), hereby submit their Motion to Dissolve the Writ of Garnishment ("Writ") served upon UBS Financial Services, Inc. ("UBS").

1. On November 12, 2009, Keith Stansell, Marc Gonsalves, Thomas Howes, Judith Janis, Christopher Janis, Greer Janis, Michael Janis, and Jonathan Janis ("Plaintiffs") filed a lawsuit in the Middle District of Florida pursuant to the Anti-Terrorism Act, 18. U.S.C. § 2333 ("ATA"), against the Revolutionary Armed Forces of Colombia ("FARC") and dozens of other individual defendants (collectively referred to as the "FARC Defendants"). The FARC Defendants failed to appear and on June 7, 2010, Plaintiffs filed a motion for default judgment. (Doc. No. 228).

2. On June 15, 2010, the court granted Plaintiffs' motion for default judgment and ordered the FARC Defendants to pay damages in the amount of $301,276,178.28. (Doc. No. 233). On July 28, 2010, Plaintiffs registered their judgment against the FARC Defendants in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1963.

3.      On February 13, 2017, OFAC designated the Moving Parties as SDNTs under the Kingpin Act.  On February 13, 2019, Plaintiffs filed an Expedited Motion for Issuance of Post-Judgment Writs of Garnishment and Execution (hereinafter the "Application") without any notice to Moving Parties pursuant to Florida Stat. § 77.03. (Doc. No. 18).

4.      In October 2018, the definition of "blocked assets" under TRIA was expanded to include assets blocked pursuant to an OFAC designation under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901-08 (Kingpin Act).  See 18 U.S.C. § 2333(e).  The amendment created a new avenue for a federal cause of action for victims of terrorism to use to attach "blocked assets" of persons or entities designated under the SDNTK OFAC program tag.  The attachment, however, may only occur once those persons or entities have been adjudicated to be an "agent or instrumentality" of a terrorist organization.

5.      On February 14, 2019, the District Court set a hearing on Plaintiffs' Application.  On February 15, 2019, without any opportunity for Moving Parties to challenge Plaintiffs' assertions of "agency or instrumentality," the Court granted Plaintiffs' Application.   In the February 15, 2019 Order, filed initially under seal, the Court granted the Application and found that the parties identified by Plaintiffs as "members of the El Aissami[1] and López Bello Network [ ] are each an agent or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA." (Doc. No. 22 at 1).

6.      On February 20, 2019, the Clerk of Courts issued various writs of execution to be served upon certain financial institutions and owners of certain personal and real property.  On February 21, 2019, the U.S. Marshal served the Writ upon garnishee UBS.  On March 1, 2019, UBS filed their answer to Plaintiffs' Writ. (Doc. No. 58).[2]  Moving Parties did not receive notice of any of these proceedings until February 25, 2019.  (Doc. No. 47).  The Moving Parties submit this timely Motion to Dissolve the Writ of Garnishment served upon UBS.

---

[1] Plaintiffs identifies multiple individuals and companies as the so-called the "El Aissami & López Bello Network."   The name is misleading because Terek El Aissami never was an employee, member, shareholder, director, officer or agent of any of the designated Samark Lopez Bello related entities before or after February 13, 2017. See Declaration of William C. Marquardt, Conclusions ¶1, attached hereto as Exhibit "A."  Undersigned counsel represents López Bello and the related companies and does not represent El Aissami.

[2] UBS's answer notes a single account, in the name of Samark Lopez Bello. There is no reference in UBS's answer to either El Aissami or any "El Aissami  Lopez Bello Network."

7.      The Writ issued to UBS should be dissolved because Florida garnishment law, as it is applied to non-parties and non-judgment debtors under the Terrorism Insurance Risk Act (TRIA) is unconstitutional.  The law fails to provide sufficient Constitutional Due Process to the Moving Parties.

8.      The Writ should further be dissolved because the Plaintiffs failed to provide sufficient evidence to demonstrate that the Moving Parties are each, individually, an "agent or instrumentality" of the FARC.

9.      Alternatively, this Court must order a trial to commence on the question of whether the Moving Parties are an "agency or instrumentality" of the FARC pursuant to Florida Stat. § 77.07 because the allegations set forth in the  Plaintiffs' Ex Parte Application for the Issuance of the Writ contains untrue allegations.

10.     The operative date in determining whether each Moving Party had "blocked assets" and is an agent or instrumentality of FARC is "viewed at the time when a proceeding is commenced to attach property in aid of execution on that judgment." Kirschenbaum v. 650 Fifth Ave., 257 F. Supp. 3d 463, 518 n.60 (S.D.N.Y. 2017).

11.     Florida's post-judgment garnishment procedures have been held to be constitutional, as when applied to **original defendants** and **judgment-debtors**.  Regions Bank v. Hyman, 91 F. Supp. 3d 1234, 1243 (M.D. Fla. 2015), *aff'd sub nom.* Regions Bank v. G3 Tampa, LLC, No. 18-11942, 2019 WL 1110727, at *4 (11th Cir. Mar. 11, 2019).

12.     The Moving Parties are neither original defendants nor judgment-debtors. Accordingly, Florida post-judgment procedures, as-applied to garnishments and executions under TRIA, deprive a non-judgment debtor of his Fourteenth Amendment due process rights.

13.     TRIA does not give Plaintiffs any pre-existing property rights.  Property rights are defined by state law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577  (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law…").

14.     TRIA attachments against parties who are not original defendants and not judgment debtors should be performed under the Florida prejudgment statute.  See Florida Stat. § 77.031(2). This statute provides for attachment, notice and protection for the non-judgment debtor in the event of an improper garnishment action.

15. Notice and an opportunity to be heard before any court ordered deprivation takes place is essential to preserving the integrity of the procedural process clause. Doe v. Ejército de Liberación Nacional, 92 F. Supp. 3d 1 (D.P.R. 2015)(Dismissing a Motion for Writ of Attachment in TRIA case because there was no notice to the non-judgment debtor.).

16. The purpose of the notice and hearing provisions in § 77.07 comports with due process requirements, as it protects against unfounded accusations based on hearsay and factually unsupported opinions. Unique Caterers, Inc. v. Rudy's Farm Co., 338 So. 2d 1067, 1071 (Fla. 1976).

17. Under the Florida prejudgment attachment scheme, the defendant, who is already on notice of the suit, is afforded notice and an opportunity to contest the requested attachment. Frasher, 813 So. 2d at 1021 (Defendant is entitled to an immediate hearing at which the plaintiff is required "to prove at least probable cause ... for the attachment."). In contrast, the Florida post-judgment procedural rules provide no such protections because those procedures presume that the judgment-debtor had notice and a full opportunity to present any and all defenses to the Plaintiffs' claims. Stansell, 771 F.3d at 726-27.

18. The Florida post-judgment statute requires the non-judgment debtor to prove a negative, namely, **the allegation in "plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved**." Florida Stat. § 77.07(2). The statute shifts the burden of proof to a party who never had any opportunity to defend itself in the first instance and no opportunity to demonstrate the significant deficiencies in Plaintiffs' Application.

19. Florida's post-judgment statute, as-applied to TRIA non-judgment debtors, fails to afford sufficient notice and an opportunity to contest the attachment that has already taken place, and no available procedure can correct the results. Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86–87 (1988).

20. The allegations set forth in Plaintiffs' Application, which argue that the Moving Parties are agents and/or instrumentalities of the FARC, are untrue. As such, this Court should dissolve the Writ or allow the parties to conduct discovery and set a trial date pursuant to Rule 16 of the Federal Rules of Civil Procedure and Chapter 77 of the Florida Statutes.

21. On February 13, 2017, the Office of Foreign Asset Control ("OFAC") of the United States Department of the Treasury issued a press release which reported that the Moving parties were designated under the Kingpin Act. The press release, however, is devoid of any information

4

that connects the Moving Parties to the FARC.  <u>See also</u> OFAC Charts, attached hereto as Exhibit D.

22.     The independent analysis of OFAC publicly available data by William C. Marquardt concludes that OFAC has not associated the Moving Parties with FARC renders the Plaintiffs' allegations of agency or instrumentality as untrue. <u>See</u> Ex. A ¶¶ 2-3.

23.     The Moving Parties have never been associated with the FARC.  Plaintiffs completely ignore the peace treaty that was reached between Columbia and the FARC, which resulted in the FARC being totally disarmed by September 2017, more than a year before Plaintiffs initiated this action.  <u>See</u> Ernesto Carrasco Ramirez Declaration ¶¶ 24-29, attached hereto as Exhibit B.  The peace treaty, which was initiated by a ceasefire entered in July of 2015, resulted in a two year process by which the FARC was totally disarmed under UN supervision.  <u>See id.</u>  By the time Plaintiffs filed their Application to collect their judgment against the Moving Parties, FARC was no longer a criminal enterprise, but was a political party recognized by the Columbian government and the United Nations.  <u>See id.</u>  ¶¶ 30-31.

24.     There is no connection between López and the related entities owned or controlled by López and the FARC.  First, the OFAC information, which is publicly available and could have been analyzed by Plaintiffs, demonstrates that OFAC has never made a connection between López and the FARC.  <u>See</u> Ex. A ¶¶ 5-6, Opinions ¶¶ 1-3.  Additionally, the suggested connection between El Aissami and the "Cartel of the Suns" does not create any agency or instrumentality relationship between López or his entities and the FARC.  <u>See</u> Declaration of Richard Daniel Gregorie, ¶¶ 3-4, attached hereto as Exhibit "C."

25.     Neither the Columbian government nor the FARC itself ever identified López as a member of the FARC.  Based upon his extensive experience in Columbia and prosecution of the FARC and its members, Ernesto Carrasco Ramírez will testify that López was never identified by either side in the FARC dispute in Columbia. Ex. B ¶¶ 32-34.

26.     Plaintiffs' affiants, Mr. Farrah and Mr. Cote both opine, without any foundation that the Moving Parties are agents or instrumentalities of the FARC.  The opinions of Messrs. Farrah and Cote are untrue.

27.     Messrs. Farrah and Cote affiant's reports were reviewed by Richard Gregorie, former prosecutor for the U.S. Department of Justice.  Mr. Gregorie is well known for his indictments of Panamanian General Manuel Noriega and the Medellin Drug Cartel.  <u>See</u> Ex. C

28.     Mr. Gregorie concluded that there is "no evidence, source, or document which demonstrates that Samark Jose Lopez Bello has ever been involved in any narcotics transaction or has conducted any transaction with a member of the FARC." Mr. Gregorie further concluded that "there is no evidence, source, or document in the Farrah and Cote affidavits which demonstrates that Samark Jose Lopez Bello has conducted any narcotics transaction or has any relationship with any member of the FARC." Ex. C ¶¶1-2.

## CONCLUSION

Based on the reasons set forth herein, and those set forth in the attached memorandum of law, the Moving Parties request this Court to grant the Moving Parties' Motion and enter an order dissolving the Writ of Garnishment. In the alternative, the Court should stay execution proceedings and order a trial pursuant to Rule 16 of the Federal Rules of Civil Procedure and Chapter 77 of the Florida Statutes.

Dated: March 21, 2019

Respectfully submitted,

 /s/ Glen M. Lindsay
Glen M. Lindsay, Esq.
Florida Bar No.: 59200
SAAVEDRA | GOODWIN
312 SE 17th Street
2nd Floor
Fort Lauderdale, FL 33316
Tel.: (954) 767-6333
Fax: (954) 767-8111
Email: glindsay@saavlaw.com
Service Email: eservice@saavlaw.com

and

Jeffery M. Scott, Esq.*
Jeffrey M. Kolansky, Esq.*
ARCHER & GREINER, P.C.
THREE LOGAN SQUARE
1717 ARCH STREET
SUITE 3500
PHILADELPHIA, PA 19103
Tel: 215-279-9693
Email: jscott@archerlaw.com
Email: aborgatti@archerlaw.com
Email: jkolansky@archerlaw.com

6

*Attorneys for Samark Jose Lopez Bello,
Yakima Trading Company, EPBC Holdings,
Ltd., 1425 Brickell Ave 63-F LLC, 1425
Brickell Ave Unit 46B LLC, 1425 Brickell
Ave 64E LLC, and 200G PSA Holdings
LLC.*

*\*Admitted pro hac vice*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues and reports that counsel oppose this motion.

 /s/ *Glen M. Lindsay*
Glen M. Lindsay, Esq.
Florida Bar No.: 59200

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on March 21, 2019, I electronically filed the foregoing Motion with the Clerk of the Court by using the CM/ECF system. I further certify that I served the foregoing document on all counsel of record via CM/ECF as follows:

NEWTON P. PORTER
TONY KORVICK
Attorneys for Intervenor Plaintiffs
PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208
Miami, Florida 33156
Telephone: (305) 373-5040
Fax: (305) 668-9154
tkorvick@porterandkorvick.com
nporter@porterandkorvick.com

 /s/ *Glen M. Lindsay*
Glen M. Lindsay, Esq.
Florida Bar No.: 59200

7

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **KEITH STANSELL, et al.,** | |
| **Plaintiffs,** | |
| | **Civil Action: 1:19-cv-20896-RNS** |
| **v.** | |
| **REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC), et al.,** | |
| **Defendants.** | |

## DECLARATION OF WILLIAM C. MARQUARDT PURSUANT TO 28 U.S.C. § 1746

I, William Charles Marquardt, hereby state that I am competent to make this declaration and state that I am a citizen of the United States of America and I am making this declaration within the State of Florida.

## BACKGROUND

I am a director in Berkeley Research Group, LLC's ("BRG") Global Investigations + Strategic Intelligence practice, which is based in Miami, Florida. I am a Certified Public Accountant ("CPA") and hold several other professional certifications. I have significant experience in the areas of forensic accounting, compliance and risk management consulting, with a concentration on the U.S. Foreign Corrupt Practices Act ("FCPA"), and corporate investigations. I also provide clients pre-and post-acquisition due diligence activities, including post-acquisition integration assistance in the areas of finance and accounting.

During my career, I have held senior-level positions in large multinational corporations in the United States and Latin America. I have served as the CFO of a multinational consulting firm and held management and executive management positions within a multinational manufacturing company, including serving as CEO and CFO of two Andean-region captive finance companies headquartered in Lima, Peru.  My complete and up-to-date curriculum vitae is attached as Appendix 1.

BRG is being compensated for my time based on their standard hourly rates. Neither my compensation for this matter nor my compensation from BRG is in any way contingent or based on the content of my opinion or the outcome of this or any other matter.

## SCOPE OF PROJECT

I have been retained by Archer & Greiner, P.C. ("A&G") to provide consulting and expert services on behalf of their clients Samark Jose Lopez Bello, EPBC Holdings, Ltd., 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave Unit 46B LLC, 1425 Brickell Ave 64E LLC, and 200G PSA Holdings LLC.

A&G has requested BRG to conduct a review to determine if OFAC has ever associated and/or designated Samark Jose Lopez Bello or any individuals, entities or organizations owned or controlled by Samark Jose Lopez Bello with the FARC.

## SUMMARY OF OPINIONS

After conducting our analysis, which is detailed below, we have concluded that none of the companies, directors, officers, shareholders, and managers (if applicable) of entities disclosed as owned or controlled by Samark Jose Lopez Bello are associated with the FARC.  Further,

BRG did not identify any additional OFAC SDN list matches apart from those identified within the February 13, 2017 OFAC designation.

## **FACTS RELEVANT TO THIS PROJECT**

On February 13, 2017, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued the following Press Release:

**WASHINGTON**—Today, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated Venezuelan national Tareck Zaidan El Aissami Maddah (El Aissami) as a Specially Designated Narcotics Trafficker pursuant to the Foreign Narcotics Kingpin Designation Act (Kingpin Act) for playing a significant role in international narcotics trafficking. El Aissami is the Executive Vice President of Venezuela. El Aissami's primary frontman, Venezuelan national Samark Jose Lopez Bello (Lopez Bello), was also designated for providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities of, and acting for or on behalf of, El Aissami. OFAC further designated or identified as blocked property 13 companies owned or controlled by Lopez Bello or other designated parties that comprise an international network spanning the British Virgin Islands, Panama, the United Kingdom, the United States, and Venezuela.

As a result of today's action, U.S. persons are generally prohibited from engaging in transactions or otherwise dealing with these individuals and entities, and any assets the individuals and entities may have under U.S. jurisdiction are frozen.

"OFAC's action today is the culmination of a multi-year investigation under the Kingpin Act to target significant narcotics traffickers in Venezuela and demonstrates that power and influence do not protect those who engage in these illicit activities," said John E. Smith, Acting Director of OFAC. "This case highlights our continued focus on narcotics traffickers and those who help launder their illicit proceeds through the United States. Denying a safe haven for illicit assets in the United States and protecting the U.S. financial system from abuse remain top priorities of the Treasury Department."

El Aissami was appointed Executive Vice President of Venezuela in January 2017. He previously served as Governor of Venezuela's Aragua state from 2012 to 2017, as well as Venezuela's Minister of Interior and Justice starting in 2008. He facilitated shipments of narcotics from Venezuela, to include control over planes that leave from a Venezuelan air base, as well as control of drug routes through the ports in Venezuela. In his previous positions, he oversaw or partially owned narcotics shipments of over 1,000 kilograms from Venezuela on multiple occasions, including those with the final destinations of Mexico and the United States.

He also facilitated, coordinated, and protected other narcotics traffickers operating in Venezuela. Specifically, El Aissami received payment for the facilitation of drug shipments belonging to Venezuelan drug kingpin Walid Makled Garcia. El Aissami also is linked to coordinating drug shipments to Los Zetas, a violent Mexican drug cartel, as well as providing protection to Colombian drug lord Daniel Barrera Barrera and Venezuelan drug trafficker Hermagoras Gonzalez Polanco. Los Zetas, Daniel Barrera Barrera, and Hermagoras Gonzalez Polanco were previously named as Specially Designated Narcotics Traffickers by the President or the Secretary of the Treasury under the Kingpin Act in April 2009, March 2010, and May 2008, respectively.

Lopez Bello is a key frontman for El Aissami and in that capacity launders drug proceeds. Lopez Bello is used by El Aissami to purchase certain assets. He also handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami.

Lopez Bello oversees an international network of petroleum, distribution, engineering, telecommunications, and asset holding companies: Alfa One, C.A. (Venezuela), Grupo Sahect, C.A. (Venezuela), MFAA Holdings Limited (British Virgin Islands), Profit Corporation, C.A. (Venezuela), Servicios Tecnologicios Industriales, C.A. (Venezuela), SMT Tecnologia, C.A. (Venezuela), and Yakima Trading Corporation (Panama). Another entity, Yakima Oil Trading, LLP (United Kingdom), is owned, controlled, or directed by, or acting for or on behalf of, Yakima Trading Corporation (Panama). Profit Corporation, C.A. and SMT Tecnologia, C.A. have Venezuelan government contracts. Between 2009 and 2010, Grupo Sahect C.A. provided storage and transportation services for the Venezuelan government agency Productora y Distribuidora de Alimentos, S.A. (PDVAL).

Five U.S. companies owned or controlled by Lopez Bello and/or MFAA Holdings Limited have also been blocked as part of today's action. These entities are the following limited liability companies registered in Florida: 1425 Brickell Ave 63-F LLC; 1425 Brickell Avenue Unit 46B, LLC; 1425 Brickell Avenue 64E, LLC; Agusta Grand I LLC; and 200G PSA Holdings LLC. Additionally, a U.S.-registered aircraft with the tail number N200VR has been identified as blocked property owned or controlled by 200G PSA Holdings LLC.

As a result of today's action, significant real property and other assets in the Miami, Florida area tied to Lopez Bello have been blocked.

The OFAC Press Release of February 13, 2017 does not identify Samark Jose Lopez Bello or any of his related entities as being associated with the FARC. The OFAC Press Release of February 13, 2017 does not identify Samark Jose Lopez Bello or any of his related entities as being designated as agents or instrumentalities of the FARC.

## **METHODOLOGY**

In order to determine if OFAC has ever associated and/or designated Samark Jose Lopez Bello or any individuals, entities or organizations disclosed as owned or controlled by Samark Jose Lopez Bello with the FARC, BRG did the following:

1. BRG utilized publically available information obtained from the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"). OFAC is a financial intelligence and enforcement agency that administers and enforces economic and trade sanctions in support of U.S. national security and foreign policy objectives. Specifically, BRG obtained the Specially Designated Nationals and Blocked Persons List

("SDN") from OFAC.  The SDN contains individuals, entities, aircraft and organizations

such as terrorists and narcotics traffickers designated under programs that are not

country-specific. The SDN list was downloaded from

https://www.treasury.gov/ofac/downloads/sdall.zip on March 05, 2019.

2.  The SDN list contains program tags that indicate which sanction program or programs

under which a person has been blocked, designated or identified

(https://www.treasury.gov/resource-center/sanctions/SDN-

List/Pages/program_tags.aspx). Open source research identified five program tags within

OFAC's SDN list that are associated with the FARC.  These FARC related SDN program

tags are as follows:

> [SDGT] – Global Terrorism Sanctions Regulations, 31 C.F.R. part 594
>
> [SDNT] – Narcotics Trafficking Sanctions Regulations, 31 C.F.R. part 536
>
> [SDNTK] – Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. part 598
>
> [SDT] – Terrorism Sanctions Regulations, 31 C.F.R. part 595
>
> [FTO] – Foreign Terrorist Organizations Sanctions Regulations

3.  The OFAC SDN list was added in its entirety to an SQL Server database environment,

and using an SQL script, a sub table was created by filtering the SDGT, SDNT, SDNTK,

SDT, and FTO program tags.

4.  Using the March 05, 2019 OFAC listing, BRG compared the information within the

FARC related program tags to the disclosed Lopez Bello companies, directors, officers,

shareholders, and managers (if applicable) using an SQL database. (See Appendix 2 for a

description of an SQL database and the review processes used to compare the Lopez

Bello information to the individuals, entities and organizations identified for each FARC program tag.)

5.  BRG did not identify any additional matches apart from those listed on the February 13, 2017 OFAC designation. The results determined that the entities listed below were designated by OFAC under the SDNTK Program Tag:

    1.   1425 BRICKELL AVE 63-F LLC
    2.   1425 BRICKELL AVENUE 64E LLC
    3.   1425 BRICKELL AVENUE UNIT 46B, LLC
    4.   200G PSA HOLDINGS LLC
    5.   AGUSTA GRAND I LLC
    6.   ALFA ONE, C.A.
    7.   GRUPO SAHECT, C.A.
    8.   MFAA HOLDINGS LIMITED
    9.   PROFIT CORPORATION, C.A.
    10.  SERVICIOS TECNOLOGICOS INDUSTRIALES, C.A.
    11.  SMT TECNOLOGIA, C.A.
    12.  YAKIMA OIL TRADING, LLP
    13.  YAKIMA TRADING CORPORATION

6.  Additionally, BRG reviewed the available information contained within the five FARC program tags to determine if a specific reference to the FARC was provided for a blocked, designated or identified person. We noted only 11 individuals where the SDN list included a specific reference to the FARC, and all of these individuals were contained within the SDNTK program tag.

## CONCLUSIONS AND OPINIONS

Based on my experience and review of materials in this matter, I have reached the following conclusions:

1.  Terek El Aissami was not an employee, member, shareholder, director, officer or agent of the designated Lopez Bello related entities before or after February 13, 2017.

2.      OFAC has not designated Samark Jose Lopez Bello or any of his related entities as a person or entity that was associated with the FARC.

3.      OFAC has not designated Samark Jose Lopez Bello or any of his related entities as an agency or instrumentality of the FARC.

Pursuant to 28 U.S.C. §1746, I affirm under penalty of perjury that the foregoing is true and correct.  Executed on

_____

3/20/19

William Charles Marquardt

**DOCUMENTS AND DATA RELIED UPON IN SUPPORT OF**

1. OFAC's press release of February 13, 2017

2. Lopez Bello entities, attached here to Appendix 3

3. Names of directors, officers, shareholders (owners), and managers (if applicable),

   attached here to Appendix 4.

4. United States Department of Treasury's Office of Foreign Assets Control (OFAC) Data.

**Appendix 1** – William C. Marquardt (CV)



# Curriculum Vitae

**William C. Marquardt**
BERKELEY RESEARCH GROUP, LLC
1111 Brickell Ave, Suite 2050 | Miami, FL 33131

Direct: 305.514.0288
wmarquardt@thinkbrg.com

## SUMMARY

William ("Bill") Marquardt is a director in BRG's Global Investigations + Strategic Intelligence practice and is based in Miami, Florida. He has significant experience in the areas of forensic accounting, compliance and risk management consulting, with a concentration on the US Foreign Corrupt Practices Act (FCPA) and corporate investigations. He has worked with entities and individuals in government investigations involving financial and accounting fraud, insider trading, wire fraud, and other Anti-Money Laundering (AML) issues. He is adept at analyzing and simplifying complex financial, accounting and compliance issues and effectively communicating core issues clearly and concisely.

Mr. Marquardt also provides clients pre- and post-acquisition due diligence activities, including post-acquisition integration assistance in the areas of finance and accounting. He also provides forensic accounting and investigative support for construction projects involving issues such as contractor fraud, contact evaluations, and construction cost reviews.

Mr. Marquardt has held senior-level positions in large multinational corporations in the United States and Latin America. He served as the CFO of a multinational consulting firm and held management and executive management positions within a multinational manufacturing company, including serving as president and CFO of two Andean-region captive finance companies headquartered in Lima, Peru. He also served on the board of directors of its Insurance Company.

Earlier in his career, Mr. Marquardt served as a director in the Northeast Risk Advisory Practice of a Big Four accounting firm, where he advised large publicly held companies with internal audit operations, Sarbanes-Oxley compliance and improvement efforts, financial re-statements, and SEC compliance projects.

Mr. Marquardt began his professional career with one of the largest public accounting firms in the world. He holds a BBA (cum laude) in accounting and real estate from the University of Cincinnati and an MBA with a concentration in international business from the University of Miami. He is a Certified Public Accountant (CPA) and holds several other professional certifications.

## EDUCATION

M.B.A.  International Business, University of Miami
B.B.A.  Accounting & Real Estate, University of Cincinnati

**BRG**
Berkeley Research Group

## PROFESSIONAL CERTIFICATIONS/QUALIFICATIONS

1. Certified Public Accountant (CPA), State of Connecticut
2. Certified in Financial Forensics (CFF)
3. Certified Internal Auditor (CIA)
4. Certification in Risk Management Assurance (CRMA)
5. Certified Fraud Examiner (CFE)
6. Certified Anti-Money Laundering Specialist (CAMS)
7. TRACE Anti-Bribery Specialist Accreditation (TASA)
8. Certified Financial Crimes Specialist (CFCS)
9. Lead Auditor – ISO 37001 Certification

## PRESENT EMPLOYMENT

Berkeley Research Group, LLC, October 2015

## PREVIOUS POSITIONS

- 2013 – 2015: **Managing Director**, FTI Consulting Inc. (Forensic Litigation and Consulting)
  *The Forensic and Litigation Consulting segment of FTI, a global business advisory company, is focused on providing law firms, corporations and government clients with expertise in corporate investigations, litigation and transactional intelligence, the Foreign Corrupt Practices Act (FCPA), and Fraud and Forensic Accounting Services.*
- 2011- 2013: **Chief Financial Officer**, The Highland Consulting Group
  *The Highland Group is a privately held international operational consulting firm specializing in collaborating with senior corporate management to implement strategic operational and financial initiatives.*
- 2007 - 2010: **Director**, FTI Consulting Inc. (Forensic Litigation and Consulting)
- 2005 - 2007: **Director**, KPMG LLP (Risk Advisory Services)
- 2004 - 2005: **Associate**, Resources Global Professionals
- 2003 - 2004: **Chief Financial Officer**, Dantzler Inc.
  *Dantzler Inc. is comprised of six privately held affiliated companies with annual revenues in excess of $100 MUSD engaged in the acquisition and importation of building materials.*
- 1998 - 2003: Various Positions within AB Volvo
  - **President and Chief Financial Officer**, Volvo Finance Peru S.A. and Volvo Service Peru S.A.
    - Chairman of the Board – Volvo Finance & Volvo Service Peru S.A.
    - Board Member – Volvo Commercial Finance LLC, The Americas, Offshore Bermuda Insurance Company
  - **Dealer Funding Manager**, Volvo Commercial Finance LLC, The Americas
  - **Financial Controller**, Volvo Construction Equipment Korea, Ltd.
  - **Manager Financial Analysis – US Transportation**, Volvo Commercial Finance LLC, The Americas
- 1995 - 1997: **Senior Financial Analyst, Senior Internal Auditor**, General Signal Corporation
- 1994 - 1995: **Senior Internal Auditor**, Sequa Corporation
- 1989 - 1994: **Audit Senior**, Arthur Andersen LLP (Co-op Program)

2

**BRG**
Berkeley Research Group

## PROFESSIONAL AFFILIATIONS

- American Institute of Certified Public Accountants (AICPA)
- The Institute of Internal Auditors (IIA)
- Association of Certified Fraud Examiners (ACFE)
- Association of Certified Anti-Money Laundering Specialists (ACAMS)
- Institute of Management Accountants (IMA)
- TRACE – Anti-Bribery Compliance Solutions (TASA)
- Association of Certified Financial Crimes Specialists (ACFCS)
- Association of Insolvency and Restructuring Advisors (AIRA)
- Professional Evaluation and Certification Board (PECB) – ISO 37001

## TEACHING POSITION

Adjunct Lecturer University of Miami – ACC 627 Regulations & Compliance (Masters/MBA Course)

## PUBLICATIONS

(1) Mexico's New National Anti-Corruption System, Bloomberg Law – Securities Regulation & Law Report, February 6, 2017
(2) *The Draft ISO 37001 Anti-Bribery Standard's Promise and Limitations*, The Global Anticorruption Blog, Law, Social Science, and Policy, August 25, 2016
(3) *Extraterritorial Anti-bribery and Anti-corruption Compliance Requirements – A Third Party Perspective*, Pharmaceutical Compliance Monitor, January 2016
(4) *CSR Programs and Charitable Donations: FCPA Compliance Challenges*, Corporate Compliance Insights, December 2015
(5) *THE NEW COSO FRAMEWORK: Why Compliance is Good Business*, FTI Journal, September 2015
(6) *Bitcoin and Other Virtual Currencies: Are They Here To Stay*, Bloomberg Law - Bloomberg Finance L.P., November 6, 2013
(7) *The Evolving Role of the Internal Auditor -- Value Creation and Preservation from an Internal Audit Perspective*, KPMG Whitepaper - Document code: GSC047 - 2007

3

**Appendix 2** – SQL Database Description & Processes

1. An SQL server is a relational database management system developed by Microsoft. The system is a software product with the primary function of storing and retrieving data as requested by other software applications. A local version of the SQL environment (SQL Server developer Edition 2014) was installed on a BRG laptop for purposes of the analysis outlined herein.

2. SQL (Structured Query Language) is a standardized programming language used for managing relational databases and performing various operations on the data contained within the database. SQL can be used to modify database tables and index structures –adding, updating and deleting rows of data; and retrieving subsets of information from within a database for transaction processing and analytic applications.

3. SSMS (SQL Server Management Studio) was also installed on a local drive. SSMS is used for configuring, managing, and administering the components within a Microsoft SQL Server. The tool includes both script editors and graphical tools, which work with objects and features of the server.

4. The applicable company information was inserted into the databases through SSMS, creating separate tables for each type of data: e.g. employees, managers, directors and shareholders; vendors; customers; and bank statements.

    a. Using SQL scripts, columns where added to allow for searchable terms via SQL using the % operator. The % operator function is equivalent to saying 0 or more characters of any value, example: '1%2' would be equivalent to saying starts with 1 ends with 2 (e.g. anything can appear between the two designated numbers or characters).
    b. Using this new SQL formatted column, BRG was able to compare, via a script, information in multiple tables to identify possible matches between the individuals, entities and organizations provided against the SDNT and SDNTK program tag within OFAC's SDN listing.

5. The OFAC listing was downloaded from https://www.treasury.gov/ofac/downloads/sdall.zip on 03/5/2019.

**Appendix 3** – Disclosed Lopez Bello Entities

In addition to the 13 companies designated by OFAC, the Samark Jose Lopez Bello provided a list of 55 entities (68 in total) for review and consideration which existed from 1/1/2013 through 2/28/2017.

**Samark Jose Lopez Bello Entities**
**Disclosed Entities - 1/1/2013 through 2/28/2017**

| | Company Name | OFAC Program Tags | | | | |
|---|---|---|---|---|---|---|
| | | FTO | SDGT | SDT | SDNT | SDNTK |
| 1 | 1000 INVESTMENT GROUP LIMITED | | | | | |
| 2 | 1425 BRICKELL AVENUE 63-F LLC | | | | | x |
| 3 | 1425 BRICKELL AVENUE 64E LLC | | | | | x |
| 4 | 1425 BRICKELL AVENUE UNIT 46B, LLC | | | | | x |
| 5 | 2000 S Investments Group Ltd | | | | | |
| 6 | 200G PSA HOLDINGS LLC | | | | | x |
| 7 | 200G PSA HOLDINGS LTD | | | | | |
| 8 | 6301 COLLINS AVENUE 1008 LLC | | | | | |
| 9 | 9000 SW 63RD COURT LLC | | | | | |
| 10 | AGUSTA GRAND I LLC | | | | | x |
| 11 | ALFA ONE, C.A. | | | | | x |
| 12 | ALLAIRE, S.A. | | | | | |
| 13 | AP JET LEASE LLC | | | | | |
| 14 | AUTOHOLD INVESTMENTS LLC | | | | | |
| 15 | BEACH FOUNDERS HOLDINGS CORP | | | | | |
| 16 | BEACH FOUNDERS PROPERTY CORP | | | | | |
| 17 | CONSORCIO PROFVENCA | | | | | |
| 18 | CROTO PARTNERS INC | | | | | |
| 19 | EPBC HOLDINGS LTD | | | | | |
| 20 | EPBC MANAGEMENT LLC | | | | | |
| 21 | GRUPO SAHECT, C.A. | | | | | x |
| 22 | GV AIRCRAFT LLC | | | | | |
| 23 | HAWK MARINE MANAGEMENT LLC | | | | | |
| 24 | IVYCITY WORLDWIDE LIMITED | | | | | |
| 25 | LEUCADENDRA 325 LLC | | | | | |
| 26 | LLP TRUST | | | | | |
| 27 | MD 900 HELITAXI FINANCE, LLC | | | | | |
| 28 | MFAA ASSETS 2 LIMITED | | | | | |
| 29 | MFAA ASSETS GROUP LIMITED | | | | | |
| 30 | MFAA ASSETS LIMITED | | | | | x |
| 31 | MFAA I TRUST | | | | | |
| 32 | MFAA II TRUST | | | | | |
| 33 | MFAA III TRUST | | | | | |
| 34 | NAUTICAL CORP | | | | | |
| 35 | OCTOBER V HOLDINGS LLC | | | | | |
| 36 | OCTOBER VENTURES LTD | | | | | |
| 37 | OIL REFINERY LLC | | | | | |
| 38 | PINOCHETTO CORP | | | | | |
| 39 | POSTAR INTERTRADE LIMITED | | | | | |
| 40 | PROFIT CA, CORP | | | | | |
| 41 | PROFIT CORPORATION, C.A. | | | | | x |

**Samark Jose Lopez Bello Entities**
**Disclosed Entities - 1/1/2013 through 2/28/2017**

| | Company Name | OFAC Program Tags | | | | |
|---|---|---|---|---|---|---|
| | | FTO | SDGT | SDT | SDNT | SDNTK |
| 42 | PROFIT DEVELOPMENT ILLINOIS LLC | | | | | |
| 43 | PROFIT DEVELOPMENT INVESTMENTS LLC | | | | | |
| 44 | PROFIT INTERNATIONAL GROUP CORP | | | | | |
| 45 | PYP INTERNATIONAL LLC | | | | | |
| 46 | ROUSANT S.A. | | | | | |
| 47 | SAEN 900 GLOBAL INVESTMENTS LLC | | | | | |
| 48 | SEA MFAA CORP | | | | | |
| 49 | SERVICIOS TECNOLOGICOS INDUSTRIALES, C.A. | | | | | x |
| 50 | SL FAMILY OFFICE | | | | | |
| 51 | SLB IP LLC | | | | | |
| 52 | SLB TRUST | | | | | |
| 53 | SMT TECNOLOGIA, C.A. | | | | | x |
| 54 | SN 630 HOLDINGS LLC | | | | | |
| 55 | SOCIEDAD CONTROLANTE INTERNACIONALES S.A. | | | | | |
| 56 | TUCU JET LEASE LLC | | | | | |
| 57 | YAKIMA DEVELOPMENT II LLC | | | | | |
| 58 | YAKIMA DEVELOPMENT LLC | | | | | |
| 59 | YAKIMA HOLDINGS US LIMITED | | | | | |
| 60 | YAKIMA OIL TRADING LLC | | | | | |
| 61 | YAKIMA OIL TRADING LLP | | | | | x |
| 62 | YAKIMA TRADING CORP | | | | | x |
| 63 | YAKIMA TRADING LLC | | | | | |
| 64 | YPP LATAM HOLDINGS CORP | | | | | |
| 65 | YPP OFFSHORE HOLDINGS CORP | | | | | |
| 66 | YPP US HOLDINGS CORP | | | | | |
| 67 | YPP US HOLDINGS VENEZUELA I S.C.A. | | | | | |
| 68 | YPP US HOLDINGS VENEZUELA II S.C.A. | | | | | |
| | **Count of Matches** | **0** | **0** | **0** | **0** | **13** |

**Appendix 4** – Lopez Bello Directors, Officers, Shareholders (owners), and Managers (if applicable)

**Samark Jose Lopez Bello Entities**
**Directors, Officers, Shareholders & Managers (if applicable)**

| | Names | FTO | SDGT | SDT | SDNT | SDNTK |
|---|---|---|---|---|---|---|
| | | | OFAC Program Tags | | | |
| 1 | 2000 S INVESTMENTS GROUP, LTD | | | | | |
| 2 | 200G PSA HOLDINGS LTD | | | | | x |
| 3 | ALIDA VIVES | | | | | |
| 4 | ALLAIRE, S.A. | | | | | |
| 5 | ALUN DAVIES | | | | | |
| 6 | AMAURY JOSE SALAZAR GIBORY | | | | | |
| 7 | ANGEL SANTOS RODRIGUEZ | | | | | |
| 8 | ARMANDO JOSE SALAZAR GIBORY | | | | | |
| 9 | BEACH FOUNDERS HOLDINGS CORP | | | | | |
| 10 | CARMEN RODRIGUEZ | | | | | |
| 11 | CIPRIANO DEL VALLE MAGALLANES GONZALEZ | | | | | |
| 12 | DAVID ALBERTO MAGALLANES DIAZ | | | | | |
| 13 | DIOGENES MORAN | | | | | |
| 14 | DIRECTOR SERVICES (B.V.I) LIMITED | | | | | |
| 15 | ENRIQUE CHACIN | | | | | |
| 16 | ERIC CASTILLO | | | | | |
| 17 | FLAGHSHIP OFFSHORE LTD | | | | | |
| 18 | FRANCISCO PEREZ | | | | | |
| 19 | HECTOR ADOLFO DELADO LEON | | | | | |
| 20 | HECTOR ADOLFO DELGADO LEON | | | | | |
| 21 | ILMA BELUCHE | | | | | |
| 22 | JORGE RAFAEL SALCEDO HERNANDEZ | | | | | |
| 23 | JOSE CELESTINO CHACIN | | | | | |
| 24 | JOSE ESTEBAN CHACIN BELLO | | | | | |
| 25 | JOSE LUIS QUEIJEIRO | | | | | |
| 26 | JOSEPH CHARLES WILLIAMS III | | | | | |
| 27 | LLP TRUST | | | | | |
| 28 | LOISINETTE CAROLINA LEIVA PINTO | | | | | |
| 29 | MARCO SAAVEDRA | | | | | |
| 30 | MARCOS RAFAEL CABELLO BELLO | | | | | |
| 31 | MARIA EUGENIA RODRIGUEZ | | | | | |
| 32 | MARIA FERNANDA LOPEZ | | | | | |
| 33 | MARINE DOCUMENTATION INC | | | | | |
| 34 | MARTHA SALAZAR | | | | | |
| 35 | MFAA ASSETS 2 LIMITED | | | | | |
| 36 | MFAA ASSETS GROUP LIMITED | | | | | |
| 37 | MFAA ASSETS LIMITED | | | | | |
| 38 | MFAA HOLDINGS LIMITED | | | | | x |
| 39 | MFAA TRUST II | | | | | |
| 40 | MFAA TRUST III | | | | | |
| 41 | OCTOBER V HOLDINGS LLC | | | | | |

**Samark Jose Lopez Bello Entities**
**Directors, Officers, Shareholders & Managers (if applicable)**

| | Names | FTO | SDGT | SDT | SDNT | SDNTK |
|---|---|---|---|---|---|---|
| | | | OFAC Program Tags | | | |
| 42 | OCTOBER VENTURES LTD | | | | | |
| 43 | PINOCHETTO CORP | | | | | |
| 44 | PROFIT DEVELOPMENT INVESTMENTS LLC | | | | | |
| 45 | RODRIGO VIVES | | | | | |
| 46 | ROUSANT S.A. | | | | | |
| 47 | SAEN 900 GLOBAL INVESTMENTS LLC | | | | | |
| 48 | SAMANTHA FEDERICO | | | | | |
| 49 | SAMARK JOSE LOPEZ BELLO | | | | | x |
| 50 | SANDRA DIXON | | | | | |
| 51 | SEA MFAA CORP | | | | | |
| 52 | SLB TRUST | | | | | |
| 53 | SOCIEDAD CONTROLANTE INTERNACIONALES S.A. | | | | | |
| 54 | TRIDENT CORPORATE SERVICES (BARBADOS) | | | | | |
| 55 | TRIDENT CORPORATE SERVICES PANAMA | | | | | |
| 56 | TYALA S.A. | | | | | |
| 57 | YAKIMA HOLDINGS US LTD | | | | | |
| 58 | YAKIMA OIL TRADING LLP | | | | | x |
| 59 | YAKIMA TRADING CORP | | | | | x |
| 60 | YPP OFFSHORE HOLDINGS CORP | | | | | |
| 61 | YPP US HOLDINGS CORP | | | | | |
| 62 | YPP US HOLDINGS VENEZUELA I, S.C.A | | | | | |
| 63 | YPP US HOLDINGS VENEZUELA II, S.C.A | | | | | |
| | **Count of Matches** | 0 | 0 | 0 | 0 | 5 |

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**KEITH STANSELL, et al.,**

                               **Plaintiffs,**

                                                              **Civil Action: 1:19-cv-20896-RNS**

**v.**

**REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.,**

                               **Defendants.**

## DECLARATION OF ERNESTO CARRASCO RAMÍREZ

I, Ernesto Carrasco Ramírez, hereby state that I am competent to make this declaration and I am making this Declaration within Mexico City, Mexico.

## SCOPE OF PROJECT

I have been retained by Archer & Greiner, P.C. ("A&G") through my employer, Berkeley Research Group, to provide consulting and expert services on behalf of A&G's clients, Samark Jose López Bello, EPBC Holdings, Ltd., 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave Unit 46B LLC, 1425 Brickell Ave 64E LLC, and 200G PSA Holdings LLC (referred to collectively herein as "López Bello").

Archer & Greiner has requested that I render an opinion, based upon my education, experience, and knowledge of the FARC, as to whether López Bello or any individuals, entities or organizations owned or controlled by López Bello are associated with, or are members, agents and/or instrumentalities of the FARC.

## **BACKGROUND**

1.       My name is Ernesto Carrasco Ramírez. I was born on November 1, 1961, in the city of Palmira, Colombia. I am a Colombian lawyer, with a specialization in criminal law and criminology from the Universidad Externado de Colombia in 1985 and 1989, respectively. My complete and up-to-date curriculum vitae is attached as Appendix 1.

2.       In February of 1991, I started working as a Grade 19 Advisor in the Special Investigations Office of the Procuraduría General de la República (PGN). The PGN is the Colombian governmental entity charged with investigating public officials. In this position, I investigated high profile cases involving the alleged illicit enrichment of public officials and human rights cases involving public servants – mainly members of the Colombian security forces and State intelligence agencies, like the Departamento Administrativo de Seguridad (DAS).

3.       In the cases involving allegations of human rights violations, I was often tasked to investigate insurgent groups like the FARC, ELN and EPL, among others. I approached these investigations and the related violence from the perspective of an investigator in a control body, which allowed me to form an independent opinion of the Colombian armed conflict and to understand the depth and breadth of the criminal organizations, such as the FARC, operating in Colombia.  I also developed a first-hand understanding of the role these groups played in the cultivation, protection and trafficking of illicit drugs in both a national and international context.

4.       In the second half of 1992, I was appointed as the Head of the PGN Office, a position I held for more than 2 years. In addition to being responsible for all investigations undertaken by the PGN, I was responsible for representing the PGN in multiple international organizations, such as The Inter-American Commission on Human Rights (the IACHR) and the Inter-American Court of Human Rights. Specifically, I was responsible for defending the interests of the Colombian State against claims of other parties who wanted to involve public servants in violent acts perpetrated by subversive groups like the FARC.

5.       In the fall of 1994, I was appointed as the Director of International Affairs for the Fiscalía General de la Nación (FGN), Colombia's Attorney General's Office. At the FGN I was

responsible for facilitating judicial cooperation with other countries and interacting with different representatives from multiple international intelligence agencies, and supporting the Attorney General (Fiscal General) in procedures requesting the formal detention of individuals for extradition purposes. While exercising my duties as the Director, I had personal knowledge of multiple cases in which FARC members were investigated for drug trafficking and related offenses.

6.      During my tenure at FGN, I was also invited to participate in senior management and risk management committees managed by the Attorney General, during which the most sensitive and high impact cases were discussed.  The majority of these cases related to organized crime and involved violent actors like the FARC.

7.      At the beginning of 1997, I was appointed as the Regional Director of the Prosecutor's Offices in Bogotá, an office responsible for investigating crimes relating to terrorism, kidnapping, drug trafficking, and any other manifestations of organized crime. Three months into this role, I was appointed as the National Director of Prosecutor's Offices (Director Nacional de Fiscalías), a position that, at the time, managed all of the directors in the different prosecutors' offices for all of Colombia's 32 Departments, as well as all the "faceless" prosecutors. Because of these roles, I had direct knowledge of the most important cases handled by the FGN. At the time, Colombia was going through an institutional crisis caused by a combination of the activities of the drug cartels and guerrilla groups like FARC, and both public and private corruption. Many aspects of the FARC's criminal activities were personally known to me while I occupied this role until my voluntary retirement at the end of 1997.

8.      In addition to the knowledge that I obtained during my time as a public official, I continued to work, in private practice (from 2003 to date), as an independent consultant and expert in areas of global corporate intelligence and investigations.  On multiple occasions, I have had the opportunity to manage matters involving drug trafficking organizations and guerrilla groups. Specifically, between 2006 and 2010, while being the Managing Director and Office Head of the US investigations firm Kroll in Colombia, I actively participated in multiple cases involving the FARC, primarily representing the interests of national and transnational companies operating in conflict areas that were under investigation for allegedly financing the FARC,

through extortion rackets, led by the commanders of the FARC's different "fronts" (fighter contingents).

9.      In some of these cases, I had direct access, as an interviewer and investigator, to demobilized FARC fighters and to highly confidential information explaining the specific criminal actions perpetrated by the FARC.  These matters mainly involved the FARC's financing sources, which were derived from drug trafficking, extortion, and kidnapping activities.

10.     I have also maintained close contact with multiple well-informed human sources within different Colombian investigation agencies such as active and retired FGN officials; active and retired officers of the Security Forces (National Police and Armed Forces); and active and retired members of national and international intelligence agencies. All of these individuals have dedicated a significant portion of their careers to understanding the FARC's operations. Further, these individuals have and continue to participate in military, intelligence and investigative operations involving drug trafficking. These sources have been responsible for identifying and targeting several notorious FARC leaders like Raúl Reyes (March 2008), Jorge Briceño (September 2010), and they were also involved in the military operation which resulted in the death of Alfonso Cano (November 2011).

11.     Some of these sources have participated in diverse intelligence actions, which established concrete links between the FARC and other international terrorist organizations, arms traffickers, drug trafficking groups, money launderers as well as identifying other multijurisdictional criminal activities.

12.     These active and former agents have intimate knowledge of the relations between the FARC and the government of Hugo Chavez and Nicolás Maduro in Venezuela, and have provided information which has been presented as evidence in criminal proceedings in both Colombia and the United States, many of which involve FARC members who have been sentenced for money laundering and drug trafficking activities.  Additionally, some of these sources had an active role in Colombia's Peace Process with the FARC as members of the Colombian government's negotiating team.

## THE FARC

13.     The Fuerzas Armadas Revolucionarias de Colombia (FARC) was a Colombian leftist guerrilla organization founded in 1964[1] and active until August of 2017, when it surrendered all of its weapons and became a political organization named Fuerza Alternativa Revolucionaria del Común (FARC).  The first members of FARC were armed communists and liberals who survived a government bombing in the Municipality of Marquetalia, in the Colombian Department of Tolima, where they had settled to create an independent republic.  In its early years FARC was a rural armed organization fighting for the redistribution of land with the support of the Colombian Communist Party.  Their members were inspired by the victory of the Cuban revolution. Historians calculate their early numbers in around 900 combatants at the end of the 1970's.

14.     FARC's exponential growth came about in the 1980's when the organization decided to use proceeds from drug trafficking to modernize their armaments and increase their membership – member groups are referred to as "fronts" (guerrilla brigades). In 1975 FARC had five "fronts," by 1982 it had 24.[2] By the time FARC signed the final Peace Agreement with the Colombian government, they had approximately 68 fronts.  At first the FARC would charge the drug cartels a fee based on the weight of the cannabis or coca leaf produced in areas under their control. Later they evolved into a drug trafficking organization.

15.     During the government of President Belisario Betancur (August 7, 1982 – August 7, 1986), the first peace negotiations took place with the FARC.  These negotiations were known as the La Uribe Accords ("Acuerdos de la Uribe"). On March 28, 1984 a cease fire was agreed. The FARC and other groups created the political party, Unión Patriotica (UP), as a coalition of leftist parties.[3]  During this time, the FARC was actively recruiting new members, intensifying both their terrorist bombings and kidnapping activities and, as a result, the peace talks failed. According to a report by the Center for Historic Memory (Centro de Memoria Histórica) the guerrillas believed "Colombia was at the brink of a revolutionary state." Due to the increased

---

[1] https://web.archive.org/web/20061004081710/http://www.anncol.org/es/site/doc.php?id=1663
[2] https://www.semana.com/educacion/articulo/la-historia-de-las-farc/467972
[3] http://www.bbc.co.uk/spanish/specials/1441_farc/page4.shtml

level of violence, approximately 2,500 members of the UP were murdered by Colombian paramilitaries.

16.     In the 1990's the situation did not change significantly. President Andrés Pastrana (August 7, 1998 – August 7, 2002) attempted another peace negotiation that failed. Paramilitary organizations thrived in the country terrorizing and intimidating rural towns for their alleged support of the FARC.

17.     Andrés Pastrana signed the "Plan Colombia", an operative and financial initiative from Washington DC to modernize Colombia's armed forces. From that point forward, especially during the president of Alvaro Uribe (August 7, 2002 – August 7, 2010), Colombia's army dealt massive blows to the FARC infrastructure which affected their ability to raise funds.

18.     President Juan Manuel Santos' government (August 7, 2010 – August 7, 2018) initiated the Habana Peace Accords which led to the FARC's disarmament and demobilization as a guerrilla group and their eventual transition into a political party.

## THE PEACE TREATY PROCESS

### Development of The Farc List(s) and Purposes

19.     As part of the Peace Accords between the government of Colombia and the FARC, both sides focused on how to reintegrate members of the FARC into civil society. Ultimately, the FARC agreed to present a list of its members, who would be considered as "parties to the peace process", and who could take advantage of the legal benefits included in the peace agreement.  In July of 2017, the Office for the High Commissioner for Peace (Oficina del Alto Comisionado para la Paz, OACP) created, the Inter-institutional Technical Committee for the Verification of Lists, through the law 1174 of 2016 to avoid the inclusion of unauthorized parties in the peace process. The members of this committee included officials from:

- The OACP
- The Colombian Agency for Reintegration (Agencia Colombiana para la Reintegración)
- Minister of Defense
- Armed Forces
- National Police

- National Intelligence Directorship (Dirección Nacional de Inteligencia)
- FGN
- The National Registration Office (Registraduría Nacional).

20.     The Inter-institutional Technical Committee was made up of representatives from the aforementioned agencies and institutions, which together collected, analyzed and processed information that would eventually allow the OACP to evaluate and verify the member list provided by the FARC.

21.     The Office for the High Commissioner for Peace indicated, in a September 25, 2017 press release,[4] that the process of receiving and verifying the lists from the FARC had ended on August 25, 2017. In total, the FARC submitted 14,178 names including fighters, militia and incarcerated individuals.  The OACP (on September 25, 2017) recognized 11,345 individuals as members of FARC (80% of the original list), of which 8,322 were fighters and militia who were concentrated in specially designated areas, 52 foreigners, and 2,971 imprisoned criminals.  According to a July 12, 2018 press release from the OACP,[5] approximately 13,000 individuals from the original FARC list, were verified as being real members of the organization. These lists are confidential and are kept under the custody of the OACP and the Executive Secretariat of the Especial Jurisdiction for Peace (JEP).

22.     In parallel, the FARC handed over a list of its assets and properties, which is kept by the Colombian Central Bank[6].

23.     In March of 2017, FARC members began the process of signing the so called "commitment acts" (actas de compromiso) by which the verified members expressed their desire to the Executive Secretariat of the Especial Jurisdiction for Peace (JEP) to obtain a conditional freedom. As of December 31, 2017, a total of 3,585 acts were signed.[7]



---

[4] http://www.altocomisionadoparalapaz.gov.co/Prensa/Paginas/2017/Septiembre/comunicado-sobre-los-listados-de-nombres-entregados-por-Farc.aspx
[5] http://www.altocomisionadoparalapaz.gov.co/Prensa/Paginas/2018/En-tiempo-record-fueron-acreditados-mas-de-13-mil-excombatientes-de-FARC.aspx
[6] https://noticias.canalrcn.com/nacional-dialogos-paz/peticion-del-gobierno-listado-bienes-las-farc-sera-depositado-custodia-del
[7] https://www.jep.gov.co/SiteAssets/Paginas/Transparencia/Informe-de-gestion/informe%20de%20gestion%202017.pdf

## **Disarmament of FARC with U.N. Oversight and Reporting**

24.     In July of 2015, the Colombian Government and the FARC requested UN support to verify the bilateral ceasefire.[8] As a result, on March 9, 2016, the Security Council unanimously adopted resolution 2261, which established a political mission, made up of unarmed international observers, to monitor and verify the abandonment of weapons, that had to be completed 90-150 days after signing of the Peace Agreement, and form part of the tripartite mechanism that will supervise the definitive bilateral ceasefire and the cessation of hostilities after the signing.[9]

25.     In 2015, the Colombian government and the FARC requested support from the UN, to monitor and verify a ceasefire, which formally started on August 29, 2016.[10] As of September 26, 2016, the UN Political Mission in Colombia began a 12-month process of collecting weapons used by the FARC. The process was also verified by 280 observers from 15 countries: Argentina, Bolivia, Chile, Paraguay, Uruguay, Mexico, the Dominican Republic, Costa Rica, El Salvador, Honduras, Guatemala, Spain, Portugal, Sweden and Norway. As of June 27, 2017, the UN Mission indicated that all the weapons were deposited in UN containers.

26.     On September 27, 2016, the Security Council adopted resolution 2307 regarding the size, operation and mandate of the 12-month mission whereby 100% of the armament of the FARC should be in the hands of the United Nations for its later destruction.

27.     On May 29, 2017, the Government and the FARC, in the context of the Peace Process, agreed to a Road Map for the total disarmament of the organization. The instrument, named "Agreement for the Ceasefire, end of Hostilities and Disarmament" (Acuerdo de Cese del Fuego y de Hostilidades y de Dejación de Armas) dictated that a United Nations Mission would receive 30% of all arms starting June 7, and an additional 30% beginning on June 14. The remaining weapons began being surrendered on June 21, 2017.

---

[8] https://news.un.org/es/focus/colombia
[9] https://news.un.org/es/focus/colombia
[10] https://news.un.org/es/focus/colombia

28.     On June 27, 2017, the Government held a symbolic event to mark the end of the process in the city of Mesetas in the Department of Meta. Later, on September 22, 2017, the UN announced the formal conclusion of the process and reported that a total of 8.994 weapons were handed in by the FARC; including 1,817 pistols, 170 revolvers, 6,177 assault rifles, 28 precision rifles, six shotguns, 13 submachine guns and 274 machine guns, along with ammunition and other weapons such as rocket launchers and mortars.[11]  Additionally, the FARC submitted information on the location of 1,027 hideouts where weapons were stored, 750 of which were found and neutralized by the government.

29.     On September 26, 2017, the UN Mission in Colombia successfully completed its mandate to remove weapons from the conflict and to ensure the peaceful reintegration of FARC members into civil life, as approved by the Security Council. The United Nations continues to support the compliance with the Peace Agreement in Colombia through the UN Verification Mission, approved by the Security Council through resolution 2377 of 2017.[12]

**Farc Becomes Political Party In Colombia**

30.     After the signing of the peace agreement, in November 2016, the FARC demobilized to participate in the democratic life of the country.[13] In 2017, Colombia's former FARC rebel group re-launched itself as a political party: The People's Alternative Revolutionary Force (FARC).[14] The party was formally approved on October 31, 2018, to defend left-wing ideals. Rodrigo Londoño, former FARC leader, was elected president of the political party.[15] He was also a candidate for the presidential elections of 2018, but left the presidential race due to health reasons.[16]

---

[11] http://www.altocomisionadoparalapaz.gov.co/Prensa/Paginas/2017/Septiembre/onu-finaliza-dejacion-armas-entrega-cifras-consolidadas-armamento-recibido-inhabilitado.aspx
[12] https://unmc.unmissions.org/
[13] Ríos, Jernónimo (2017). El Acuerdo de paz entre el Gobierno colombiano y las FARC: o cuando una paz imperfecta es mejor que una guerra perfecta. *Araucaria. Revista Iberoamericana de Filosofía, Política y Humanidades*, 19. Consulted on March 20, 2019.
[14] https://www.nytimes.com/es/2018/03/21/opinion-villamizar-colombia-farc-elecciones-2018/
[15] https://www.dw.com/es/timochenko-es-elegido-presidente-del-partido-pol%C3%ADtico-de-las-farc/a-40361540
[16] https://www.elespectador.com/elecciones-2018/noticias/politica/la-farc-pide-los-colombianos-salir-votar-masivamente-el-proximo-27-de-mayo-articulo-748432

31.     In the most recent elections, held on March 2018, the FARC party did not receive enough votes to secure any seats in the Colombian Congress. They even stopped campaigning due to public demonstrations against them.[17] Nonetheless, as guaranteed in the Peace Agreement, the political party has five seats in the Senate and five in the House of Representatives.[18] Eight of those positions were occupied by former FARC members. These individuals can comment on bills discussed in congress but cannot vote on them.[19]

## CONCLUSION AND OPINIONS

32.     Based on my professional experience as both a public official and of global investigation consulting companies, and my extensive network of confidential, reputable and trustworthy sources, which I have maintained during all these years, I can categorically state that I have no first-hand knowledge, nor have I ever heard from any public official or agent, any information that directly or indirectly links Samark López Bello to the FARC.

33.     I have also not heard of any references to him as member, agent or instrumentality of the FARC.

34.     Additionally, all of my sources with direct knowledge of the Peace Process negotiations indicate that Samark López Bello's name never came up in any discussion, list, or investigation led by the Colombian authorities.

35.     All of my opinions are expressed to a reasonable degree of certainty.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on  March 21, 2019

_____
ERNESTO CARRASCO RAMÍREZ

---

[17] https://www.bbc.com/mundo/noticias-america-latina-43008248
[18] https://colombia2020.elespectador.com/politica/asi-llegaran-las-farc-al-congreso
[19] https://cnnespanol.cnn.com/2018/07/19/farc-congreso-posesion-curules-nombres-colombia-integrantes/

**Appendix 1** – Ernesto Carrasco Ramírez (CV)



### *Ernesto Carrasco*
### *Managing Director*
### *BRG Mexico*



Ernesto Carrasco Ramírez is the Managing Director of Berkeley Research Group's office in Mexico City. He is a Colombian lawyer from the Universidad Externado de Colombia, specialized in criminal law and criminology, with more than 25 years of professional experience in law enforcement, as well as in global investigation firms in Colombia and Mexico. He has led high level investigations and cross border disputes in several countries, and has managed large strategic intelligence projects and risk analysis studies for public and private entities. He is an expert in litigation consulting, crisis management, evidence collection and due diligence.

Carrasco held various government positions in Colombia in the 1990s and early 2000s.

In the *Procuraduría General de la República* (Colombia's national Office of the Inspector General) he led the Special Investigations Unit, an office in charge of investigating the most sensitive cases of human rights violations committed by state agents, with the involvement of guerrilla groups, paramilitaries and other criminal organizations.

In the *Fiscalía General de la Nación* (Attorney General Office of Colombia ) Carrasco was in charge of both the *Dirección Nacional de Fiscalías* (the National Directorate of Prosecutors' Offices) and the International Affairs Unit. During that period, the National Human Rights and International Humanitarian Law Units were created to handle the most significant cases related to the country's armed conflict. In his tenure Carrasco represented the Colombian State on several occasions before the Inter-American Commission on Human Rights (IACHR) and the Inter-American Court of Human Rights.

He also worked closely with the Mayor of Bogotá leading the *Veeduría Distrital,* a municipal supervisory body in charge of supervising and preserving the institutional integrity of the City.

For 8 years Ernesto Carrasco worked as Office Head and Managing Director in Colombia and Mexico for the US investigations firm Kroll Inc. In Kroll Colombia he had the opportunity to lead investigations on the alleged financing of the FARC guerrillas by private companies, both local and foreign, either representing the interests of the companies or counseling the victims for claims made in US courts.

Carrasco was also a partner in ON Partners, a consulting firm that advised the Mexican government and private sector clients on security, integrity, and compliance issues. This firm was led by Oscar Naranjo Trujillo, former vice-president of Colombia and former Colombian National Police general.

**Education**

CEPAL
Diploma in Public Management, 1998

Universidad Externado de Colombia, 1989
Specialization in Criminal Law and Criminology

Universidad Externado de Colombia
Law Degree, 1985

**Professional History**

Berkeley Research Group.
Managing Director and Mexico Office Head
2016 – To date

Independent Consultant
2014 – 2015

ON Partners
Head of Consulting Services
2013 – 2014

Kroll Inc.
Managing Director and Office Head in Mexico
2011 – 2013
Managing Director and Office Head in Colombia
2006 – 2011

Independent consultant and lawyer in criminal matters 2002 - 2006

President of Empresa Territorial para la Salud - ETESA
2001 – 2002

President and Liquidator of the Colombian Health Company ECOSALUD
2000 – 2001

Bogota Mayor's Office
General Director for the *Veeduría Distrital*
1998 – 2000

Attorney General's Office of Colombia
Head of the National Directorate of Prosecutors' Offices
1997 – 1998
Director, International Affairs
1994 – 1997

Office of the Inspector General



Special Investigations Director
1991 – 1994

## Selected Publications
Comparative Study of Maturity Levels in Cybersecurity Report
September 7, 2016

## Seminars & Speaking Engagements
Cybersecurity and your organization's plan: understand human factors
July 12, 2017

Mexico-USA: New Era in Bilateralism
May 24, 2017

Cybersecurity - XII Credit Unions Convention
November 10, 2017

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

KEITH STANSELL, et al.,

                **Plaintiffs,**

     **v.**

**REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.,**
              **Defendants.**

Civil Action: 1:19-cv-20896-RNS

## DECLARATION OF RICHARD DANIEL GREGORIE
## PURSUANT TO 28 U.S.C. § 1746

I, Richard Daniel Gregorie, hereby state that I am competent to make this declaration and state that I am a citizen of the United States of America and I am making this declaration within the State of Florida.

## BACKGROUND

I am a managing director in Berkeley Research Group, LLC's ("BRG") Global Investigations + Strategic Intelligence practice, which is based in Miami, Florida. During my 42-year career with the U.S. Department of Justice, I have handled numerous complex prosecutions, including those of heads of foreign governments and high-profile international drug traffickers including the leadership of the Medellin drug cartel and Cali drug cartel. I have been the Chief of Narcotics Prosecutions, Chief of the Criminal Division, Chief Assistant United States Attorney and Senior Litigation Counsel in the Southern District of Florida.

I received an unprecedented three Attorney General's Distinguished Service Awards as well as the National Association of Former U.S. Attorneys award as the outstanding Assistant U.S. Attorney in the country.

As Senior Litigation counsel and as a teacher at the Department of Justice's National Advocacy Center, I trained and mentored young prosecutors. I have also taught as an adjunct professor at Shepard Broad Law School at Nova Southeastern University and have lectured at law schools and universities throughout the country.

My complete and up-to-date curriculum vitae is attached as Appendix 1.

BRG is being compensated for my time based on their standard hourly rates. Neither my compensation for this matter nor my compensation from BRG is in any way contingent or based on the content of my opinion or the outcome of this or any other matter.

## SCOPE OF PROJECT

I have been retained by Archer & Greiner, P.C. ("A&G") to provide consulting and expert services on behalf of their clients Samark Jose Lopez Bello, Alfa One, C.A.; Grupo Sachet, C.A.; MFAA Holdings Ltd.; Profit Corporation, C.A., Servicios Tecnologicos Industrales, C.A., SMT Tecnologia, C.A., Yakima Trading Co., and Yakima Oil Trading LLP (referred to collectively herein as the "Lopez Bello").

A&G has requested BRG to review the plaintiff's affidavits in the above captured matter and provide our professional observations.

## DOCUMENTS REVIEWED

1. OFAC's press release of February 13, 2017

2. Affidavit of Douglas C. Farrah

3. Affidavit of Luis Miguel Gomez

**OPINIONS**

After conducting my analysis and reviewing the affidavits of the plaintiff's experts I have reached the following conclusions:

To the best of my knowledge and belief, outside of the unsupported allegations in the OFAC designation:

1. There is no evidence, source, or document which demonstrates that Samark Jose Lopez Bello has ever been involved in any narcotics transaction or has conducted any transaction with a member of the FARC.

2. There is no evidence, source, or document in the plaintiff's affidavits which demonstrates that Samark Jose Lopez Bello has conducted any narcotics transaction or has any relationship with any member of the FARC.

3. The Cartel of the Suns (Cartel de los Soles) is a Venezuelan organization allegedly headed by high-ranking members of the Armed Forces of Venezuela.

4. The Cartel of the Suns (Cartel de los Soles) is not the FARC.

Pursuant to 28 U.S.C. §1746, I affirm under penalty of perjury that the foregoing is true and correct. Executed on March 21, 2019.

Richard Daniel Gregorie

**Appendix 1** – Richard Gregorie (CV)



# Curriculum Vitae

**Richard Gregorie**
BERKELEY RESEARCH GROUP, LLC
1111 Brickell Ave, Suite 2050 | Miami, FL 33131

Direct: 305.548.8550
rgregorie@thinkbrg.com

### SUMMARY

Richard ("Dick") Gregorie is a Managing Director in BRG's Global Investigations + Strategic Intelligence practice and is based in Miami, Florida.

During his 42-year career with the U.S. Department of Justice, Mr. Gregorie handled some of the most complex prosecutions in the country, including those of heads of foreign governments and high profile international drug traffickers.  He is best known for his indictments of Panamanian General Manuel Noriega and the Medellin Drug Cartel.

Mr. Gregorie received an unprecedented three Attorney General's Distinguished Service Awards as well as the National Association of Former U.S. Attorneys award as the outstanding Assistant U.S. Attorney in the country.  He has appeared in documentaries and on national television shows, including Frontline, McNeil Lehrer, Nightline, 60 Minutes, and the Today Show.

As Senior Litigation counsel and as a teacher at the Department of Justice's National Advocacy Center, Mr. Gregorie trained and mentored young prosecutors.  He has also taught as an adjunct professor at Shepard Broad Law School at Nova Southeastern University and has lectured at law schools and universities throughout the country.  Mr. Gregorie has made dozens of presentations to associations, businesses, and community groups regarding money laundering and international public corruption.

### EMPLOYMENT HISTORY

U.S. Dept. of Justice, U.S. Attorney's Office, So. District of Florida, Senior Litigation Counsel & Asst. U.S. Attorney, 1994-2018

Office of State Attorney, Miami, FL, 1991-1994
- cross designated as a Special Assistant U.S. Attorney, 1993-1994
- Assistant State Attorney, 1991-1994

Wicker Smith O'Hara McCoy & Ford P.A., Miami, FL, Partner, 1989-1991

U.S. Dept. of Justice, U.S. Attorney's Office, Southern District of Florida, Miami, FL, 1982-1989
- Chief Assistant U.S. Attorney, 1987-1989



- Chief of Criminal Division, 1986-1987
- Chief of Major Narcotics, 1982-1986

U.S. Dept. of Justice, Organized Crime and Racketeering Section, Special Attorney, 1972-1982
- Connecticut Field Office, Chief, 1979-1982
- Boston Strike Force, Trial Attorney, 1976-1979
- Newark Strike Force, Trial Attorney, 1972-1976

U.S. Dept. of Justice, Office of Enforcement Operations, Washington, D.C., Trial Attorney, 1972

Honorable Peter W. Princi, U.S. Magistrate, Boston, MA, Law Clerk, 1971-1972

## EDUCATION

Georgetown University Law Center, Juris Doctorate, 1971

Georgetown University College, B.A., History, 1968

## PUBLICATIONS

Charging Decisions, 2016 & 2011 editions of U.S. Dept. of Justice Federal Narcotics Prosecution Manual

Extraterritorial Jurisdiction:  Its Use, Its Roots and Its Viability, Nova Law Review, Volume 15, Spring 1991, Number 2

## HONORS

National Association of Former U.S. Attorneys, J. Michael Bradford Memorial Award, 2007

Director (of the Executive Office of the U.S. Attorney)'s Award for Superior Performance
- by a Litigation Team, 2007
- by an Assistant U.S. Attorney, 1998

(U.S.) Attorney General's Distinguished Service Award, 2004, 2000, & 1986

National Cargo Security Counsel's Government Leadership Award, 1997

Assistant U.S. Attorney's Association for the Southern District of Florida, Vince Antle Award, 1997

U.S. Department of Justice
- Special Achievement Award, 1985
- Special Commendation Award, 1983

## PROFESSIONAL AFFILIATIONS

Florida Bar, Member
Massachusetts Board of Bar Overseers, Member
D.C. Bar, Member

# EXHIBIT D

**Foreign Narcotics Kingpin Designation Act - Tier II**

**Revolutionary Armed Forces of Colombia (FARC)**

**(19 Individuals)**

**Department of the Treasury**
**Office of Foreign Assets Control**

**February 2004**

**FARC-EP**

**FARC Designated by the President as a**
**Significant Foreign Narcotics Trafficker on May 29, 2003**



Pedro Antonio Marin
"Manuel Marulanda"
"Tirofijo"
FARC Supreme Leader


Indicted in Colombia

**FARC SECRETARIAT**


Juvenal Ovidio Ricardo Palmera Pineda
"Simon Trinidad"
FARC Commander
Captured in Ecuador - January 2004
In Colombian Custody

Indicted in Colombia


Milton de Jesus Toncel Redondo
"Joaquin Gomez"
Secretariat Member
FARC Commander


Indicted in Colombia


Rodrigo Londono Echeverry
"Timoleon Jimenez"
Secretariat Member
FARC Commander

Indicted in Colombia


Noel Mata Mata
"Efrain Guzman"
Secretariat Member
FARC Commander

Indicted in Colombia


Luciano Marin Arango
"Ivan Marquez"
Secretariat Member
FARC Commander

Indicted in Colombia


Guillermo Leon Saenz Vargas
"Alfonso Cano"
Secretariat Member
FARC Commander

Indicted in Colombia


Luis Edgar Devia Silva
"Raul Reyes"
Secretariat Member

Indicted in Colombia

Jorge Briceno Suarez
"Mono Jojoy"
Secretariat Member
Senior FARC Military Commander

U.S. Indictment (Narcotics & Kidnapping)
Indicted in Colombia

Brothers

German Briceno Suarez
"Granobles"
FARC Commander

U.S. Indictment (Murder)
Indicted in Colombia


Luis Alberto Alban Burbano
FARC International Representative

Indicted in Colombia

Henry Castellanos Garzon
"Romaña"
FARC Front Commander

U.S. Indictment (Kidnapping)
Indicted in Colombia

Jose Benito Cabrera Cuevas
"Fabian Ramirez"
FARC Commander

Indicted in Colombia


Tomas Molina Caracas
"Negro Acacio"
16th Front Commander

U.S. Indictment (Narcotics & Kidnapping)
Indicted in Colombia

Jorge Torres Victoria
"Pablo Catatumbo"
FARC Central General Staff member
FARC Commander

Indicted in Colombia


Nelson Vargas Rueda
FARC member
Captured in Colombia
In U.S. Custody

U.S. Indictment (Murder)


Gustavo Bocota Aguablanca
FARC Member

U.S. Indictment (Murder)


Eugenio Vargas Perdomo
"Carlos Bolas"
FARC Member
Captured in Suriname - June 2002
In U.S. Custody

U.S. Indictment (Narcotics)

Ties to Brazilian narcotics traffickers
Luis Fernando Da Costa and Leonardo
Dias Mendonca, previously designated
by the President as Tier I Kingpins

Oscar Caracas Viveros
FARC Member

U.S. Indictment (Narcotics)

1

# Revolutionary Armed Forces
# of Colombia (FARC)

## September 2006

U.S. Department of the Treasury
Office of Foreign Assets Control

Foreign Narcotics Kingpin
Designation Act



FARC-EP

### FARC Designated by the President as a
### Significant Foreign Narcotics Trafficker on May 29, 2003

**FARC Secretariat or Central High Command**



Jesus Emilio CARVAJALINO
"Andres Paris"
DOB 15 Mar 1955
CC 3228737 (Colombia)
U.S. Indictment
March 2006

Jose JUVENAL VELANDIA
a.k.a. Manuel Jesus MUÑOZ ORTIZ
"Ivan Rios"
DOB 19 Dec 1961
CC 71613902 (Colombia)
U.S. Indictment
March 2006

Jose LISANDRO LASCARRO
"Pastor Alape"
DOB 4 Jun 1959
CC 71180715 (Colombia)
U.S. Indictment
March 2006

Alvaro Alfonso SERPA DIAZ
"Felipe Rincon"
DOB 9 Oct 1956
CC 6877656 (Colombia)
U.S. Indictment
March 2006

**FARC Commanders**



Gener GARCIA MOLINA
"John 40"
43rd Front Commander
DOB 23 Aug 1963
CC 17353242 (Colombia)
U.S. Indictment
March 2006

Gerardo Antonio AGUILAR RAMIREZ
"Cesar"
1st Front Commander
DOB 20 Sep 1962
CC 16148998 (Colombia)
U.S. Indictment
March 2006

**FARC International Representative**



Rodrigo GRANDA ESCOBAR
DOB 8 Apr 1949
CC 19104578 (Colombia)
CC 171493523-4 (Ecuador)
Electoral Registry No. 22942118 (Venezuela)
In Colombian
Custody

**Key FARC Members**



Ferney TOVAR PARRA
"Percho"
DOB 17 Nov 1966
CC 17640605 (Colombia)
U.S. Indictment
2005; 2006
In Colombian
Custody

Gentil ALVIS PATIÑO
"Chiguiro"
DOB 4 Jun 1961
CC 17669391 (Colombia)
U.S. Indictment
March 2006
In Colombian
Custody

2

# Revolutionary Armed Forces of Colombia (FARC)

**November 2007**

**FARC Designated by the President as a
Significant Foreign Narcotics Kingpin in 2003**

**U.S. Department of the Treasury
Office of Foreign Assets Control**

**Foreign Narcotics Kingpin
Designation Act**




**Sixto Antonio
CABANA GUILLEN
DOB 15 Jun 1955
C.C. 19500634**


**Hermilo
CABRERA DIAZ
DOB 25 Nov 1941
C.C. 9680080**


**Abelardo
CAICEDO COLORADO
DOB 3 Mar 1960**


**Norbei
CAMARGO
DOB 5 Aug 1965
C.C. 17702895**


**Erminso
CUEVAS CABRERA
DOB 16 Sep 1960
C.C. 96328518**


**Ignacio
LEAL GARCIA
C.C. 96186610**


**Luis Eduardo
LOPEZ MENDEZ
C.C. 96329889**


**Jose Epinemio
MOLINA GONZALEZ
DOB 18 Nov 1957
T.I. 57111-01681**


**Alonso
OLARTE LOMBANA
DOB 7 Nov 1960
C.C. 18260876**


**Miguel Angel
PASCUAS SANTOS
DOB 28 Apr 1952
C.C. 12160124**


**Jorge Enrique
RODRIGUEZ MENDIETA
DOB 15 Jan 1963
C.C. 91223461**


**Emiro del Carmen
ROPERO SUAREZ
DOB 2 Sep 1962
C.C. 13461523**


**Miguel
SANTANILLA BOTACHE
DOB 10 Dec 1963
C.C. 93123586**


**Guillermo Enrique
TORRES CUETER
DOB 17 Aug 1954
C.C. 9281858**


**Erasmo
TRASLAVINA BENAVIDES
DOB 19 Jun 1958
C.C. 13642033**

3

**Department of the Treasury**
**Office of Foreign Assets Control**

# FARC 27th FRONT FINANCIAL FLOW
## JANUARY 2008

Victor Julio SUAREZ ROJAS
alias "Mono Jojoy"
FARC Secretariat Member
Previously designated on February 18, 2004

① DRUGS

INTERNATIONAL DESTINATIONS

Luis Eduardo LOPEZ MENDEZ
alias "Efren Arboleda"
27th FRONT COMMANDER
Previously designated on November 1, 2007

Norberto Antonio AGUDELO VELASQUEZ
alias "Amado"
Drug Trafficker

② DRUG PROCEEDS IN
FOREIGN CURRENCY

③ DRUG PROCEEDS IN FOREIGN CURRENCY

④ COLOMBIAN PESOS

**COMERCIALIZADORA COLOMBIAN MONEY EXCHANGE LTDA**
**Bogota and Villavicencio, Colombia**

Jorge Eliecer VARGAS ARIAS
Owner

Sandra Milena VARGAS SOLER
Owner

Jorge Leandro VARGAS ALBA
Contact

Dora Lilia PAVA GIRALDO
General Manager

Cesar Augusto VARGAS ALBA
Owner

4

**FARC 27th FRONT FINANCIAL FLOW APRIL 2008**

*Department of the Treasury*
*Office of Foreign Assets Control*



Victor Julio SUAREZ ROJAS
alias "Mono Jojoy"
FARC Secretariat Member
Previously designated on February 18, 2004

① DRUGS

INTERNATIONAL DESTINATIONS

Luis Eduardo LOPEZ MENDEZ
alias "Efren Arboleda"
27th FRONT COMMANDER
Previously designated on November 1, 2007

② DRUG PROCEEDS IN FOREIGN CURRENCY

Carlos Olimpo DIAZ HERRERA
CC #11250581
DOB 7 Feb 1954
**Drug Trafficker**

Nilson CALDERON VELANDIA
CC #91348897
DOB 18 Jul 1974
alias "Villa"
**Drug Trafficker**

③ DRUG PROCEEDS IN FOREIGN CURRENCY

④ COLOMBIAN PESOS

**CONTACT**

Jose Ediberto CAMACHO BERNAL
CC #11374416
DOB 28 Feb 1954

**MONEY EXCHANGE PROFESSIONALS**
**Bogota, Colombia**

CAMBIOS NASDAQ LTDA
NIT #8301284123
Bogota, Colombia

CAMBIOS EL TREBOL
Matricula Mercantil #1404087
Bogota, Colombia

←OWNER—

Myriam RINCON MOLINA
CC #20622294
DOB 29 Jan 1959

5



**FARC 1st FRONT MATERIAL SUPPORT NETWORK JULY 2008**

*Department of the Treasury Office of Foreign Assets Control*

Gerardo Antonio Aguilar Ramirez
alias "Cesar"
**FARC First Front Commander**
Previously designated on September 28, 2006
**In Colombian Custody**

DRUGS

Alexander Farfan Suarez
alias "Enrique Gafas"
7th Ranking Member
Responsible for holding U.S. Hostages
CC #86007030
In Colombian Custody

**CALL CENTERS USED BY THE FARC**

Ana Isabel Pena Arevalo
alias "Dona Chava"
CC #20794356

Luz Mery Gutierrez Vergara
CC #4042724

Operator

COMUNICACIONES UNIDAS DE COLOMBIA LTDA
Villavicencio, Colombia
NIT #830073142-1

Nancy Conde Rubio
alias "Doris Adriana"
4th Ranking Member &
Logistics Coordinator

WEAPONS

**WEAPONS FOR DRUGS**

Jose Maria Corredor Ibague
alias "El Boyaco"
CC #4241983
In Colombian Custody

Bladimir Culma Sunz
CC #86068233

Edilma Morales Loaiza
CC #40356505

Josue Cuesta Leon
alias "El Viejo"
CC #97610086

**LOGISTICS AND FINANCIAL**

Ana Leonor Torres
alias "Juliana"
CC #21243624

Camilo Rueda Gil
alias "El Primo"
CC #79499884

Maribel Gallego Rubio
alias "Maritza"
CC #30946062

**MONEY EXCHANGE PROFESSIONALS**

CAMBIOS EURO LTDA.
Bogota, Colombia
NIT #830102482-6

LA MONEDITA DE ORO LTDA.
Bogota, Colombia
NIT #800149502-9

Owner

Owner

DIZRIVER Y CIA S. EN C.
Bogota, Colombia
NIT #900013642-1

Miguel Angel Diaz Orjuela
CC #17412428

Launders Money for
Josue Cuesta Leon

**FRONT COMPANY**

Carlos Pompeyo Cuesta Leon
CC #80375525

Owner

COLCHONES SUNMOONS LTDA
Bogota, Colombia
NIT #830073142-1

6

**Revolutionary Armed Forces
of Colombia (FARC)**

**U.S. Department of the Treasury
Office of Foreign Assets Control**

**September 2008**



**FARC Designated by the President as a
Significant Foreign Narcotics Trafficker on May 29, 2003**



Rodrigo Granda Escobar
FARC International Representative
Designated by OFAC on September 28, 2006



Luciano Marin Arango
(a.k.a. Ivan Marquez)
Secretariat Member
FARC Commander
Designated by OFAC in February 2004



Rodrigo Londono Echeverry
(a.k.a. Timochenko)
Secretariat Member
FARC Commander
Designated by OFAC in February 2004



Noe Suarez Rojas
(a.k.a. Grannobles)
Secretariat Member
FARC Commander
Designated by OFAC in February 2004



**Hugo Armando CARVAJAL BARRIOS
DOB 01 Apr 1960
Director
Venezuelan Military
Intelligence Directorate (DGIM)**



**Henry de Jesus RANGEL SILVA
CC 5764952
Director
Venezuelan Directorate of
Intelligence and Prevention Services (DISIP)**



**Ramon Emilio RODRIGUEZ CHACIN
CC 3169119 (Venezuela)
Former Venezuelan Minister of
Interior and Justice**

7

# Revolutionary Armed Forces of Colombia (FARC)

## September 2008



**U.S. Department of the Treasury
Office of Foreign Assets Control**

**Foreign Narcotics Kingpin Designation Act**

FARC Designated by the President as a
Significant Foreign Narcotics Trafficker on May 29, 2003

# FARC
## INTERNATIONAL COMMISSION MEMBERS



**Nubia CALDERON DE TRUJILLO**
"Esperanza"
DOB 25 Mar 1956
CC 36159126 (Colombia)

FARC Representative for Ecuador



**Francisco Antonio CADENA COLLAZOS**
"El Cura Camilo"
DOB 1 Jan 1947
CC 4904771 (Colombia)

FARC Representative for Brazil



**Jairo Alfonso LESMES BULLA**
"Javier Calderon"
DOB 25 Mar 1947
CC 17164408 (Colombia)

FARC Representative for
Argentina, Chile, Uruguay, Paraguay

Arrested
in Colombia
Aug 2008



**Ovidio SALINAS PEREZ**
"Juan Antonio Rojas"
DOB 3 Jul 1945
CC 17125959 (Colombia)

FARC Representative for Panama



**Efrain Pablo TREJO FREIRE**
"Pablo Trejos Freyre"
DOB 07 Jun 1951
CC 13004986 (Colombia)

FARC Representative for Peru



**Jorge DAVALOS TORRES**
DOB 14 Dec 1972
CC 94377215 (Colombia)

FARC Representative for Canada



**Orlay JURADO PALOMINO**
"Commander Hermes"
DOB 9 Feb 1950
CC 7245990 (Colombia)

FARC Representative for Venezuela

INTERPOL
Arrest Warrants



**Liliana LOPEZ PALACIOS**
"Olga Lucia Marin"
DOB 21 Sep 1961
CC 51708175 (Colombia)

FARC Representative for Mexico

8

# Revolutionary Armed Forces of Colombia (FARC)

## January 2009



**FARC Designated by the President as a Significant Foreign Narcotics Trafficker on May 29, 2003**

**U.S. Department of the Treasury Office of Foreign Assets Control**

**Foreign Narcotics Kingpin Designation Act**

# FARC
## INTERNATIONAL COMMISSION MEMBERS

**DESIGNATED SEPTEMBER 30, 2008**

**DESIGNATED JANUARY 14, 2009**



Nubia CALDERON DE TRUJILLO "Esperanza"
FARC Rep. for Ecuador

Francisco Antonio CADENA COLLAZOS "El Cura Camilo"
FARC Rep. for Brazil

Jairo Alfonso LESMES BULLA "Javier Calderon"
FARC Rep. for Argentina, Chile, Uruguay, Paraguay

Ovidio SALINAS PEREZ "Juan Antonio Rojas"
FARC Rep. for Panama

INTERPOL Arrest Warrants

Arrested in Colombia Aug 2008

Efrain Pablo Trejo Freire "Pablo Trejos Freyre"
FARC Rep. for Peru

Orlay JURADO PALOMINO "Commander Hermes"
FARC Rep. for Venezuela

Liliana LOPEZ PALACIOS "Olga Lucia Marin"
FARC Rep. for Mexico

Jorge DAVALOS TORRES
FARC Rep. for Canada



Maria Remedios GARCIA ALBERT "Soraya" "Irene"
DOB 17 Feb 1951
DNI # 00263695-T (Spain)
FARC Representative for Spain

Vlaudin RODRIGO VEGA "Carlos Vlaudin"
DOB 03 Mar 1960
Passport # J1722726 (Chile)
FARC Representative for Australia

Arrested in Spain Jul 2008

Omar Arturo ZABALA PADILLA
"Omar Enrique Zabala Padilla" "Lucas Gualdron"
DOB 11 Jul 1969
CC 91267294 (Colombia)
FARC Representative for France, Italy, and Switzerland

9



**INTERNATIONAL FARC NETWORK**
**AUGUST 2009**

**Department of the Treasury**
**Office of Foreign Assets Control**

### FARC

Victor Julio SUAREZ ROJAS
alias "Mono Jojoy"
FARC Secretariat Member
Previously designated on February 18, 2004

Luis Eduardo LOPEZ MENDEZ
alias "Efren Arboleda"
27th FRONT COMMANDER
Previously designated on November 1, 2007

Jose Cayetano MELO PERILLA
DOB 7 Nov 1957
CC No. 5882964 (Colombia)
Residencia 00355064200100028 (Costa Rica)

**OWNER**

**FINANCIAL FRONTS**

PARQUEADERO DE LA 25-13
Matricula Mercantil No. 1362098
Bogota, Colombia

CARILLANCA COLOMBIA Y CIA S EN CS
NIT No. 800241061-5
Bogota, Colombia

CARILLANCA C.A.
NBC No. 80081030
Nueva Esparta, Venezuela

CARILLANCA S.A.
Registro Tributario No. CJ3101104500
San Jose, Costa Rica

10



# COLOMBIAN MONEY LAUNDERING NETWORKS
## May 2010

**Department of the Treasury**
Office of Foreign Assets Control

**Foreign Narcotics Kingpin**
**Designation Act ("Kingpin Act")**



Red text indicates previously-identified Kingpin Act designees

**Foreign Narcotics Kingpin Designation Act June 2010**



**U.S. Department of the Treasury Office of Foreign Assets Control**



## FARC 48th Front

Killed in a Colombian Military Operation January 2010

Former Commander of 48th Front
Gentil GOMEZ MARIN
"Edgar Tovar"
a.k.a. Angel Gabriel LOSADA GARCIA

Finance & Logistics Chief for FARC's 48th Front
Olidem Romel SOLARTE CERON
DOB 05 Feb 1971
CC 18153797 (Colombia)

Illegal Arms

Drug Distribution

**Ostaiza Drug Trafficking Organization Based in Ecuador**

Jefferson OSTAIZA AMAY
a.k.a. "El Cachi"
Head of Ostaiza Drug Trafficking Organization
DOB 16 Nov 1973
CC 1712394947001 (Ecuador)

Weapons Supplier
Gilma MONTENEGRO VALLEJOS
a.k.a. "Norma"
DOB 17 Jul 1968
POB Bogota, Colombia

Edison Ariolfo OSTAIZA AMAY
Drug Trafficker
DOB 19 Jul 1975
CC 1713602009 (Ecuador)

General Manager
85% Shareholder

Deputy Manager

Miguel OSTAIZA AMAY
Drug Trafficker
DOB 12 Aug 1976
CC 1713513834 (Ecuador)

Arrested in March 2009

Arrested in Ecuador on
Drug Trafficking Charges
September 2008

Multinacional Integral Productiva Jooamy Ema
Quito, Ecuador
RUC # 1792068347001

Arrested in Ecuador on
Drug Trafficking Charges
September 2008

12

# Venezuelan Officials
# Acting on Behalf of the FARC

**Foreign Narcotics Kingpin Designation Act**
**September 2011**



Department of the Treasury
Office of Foreign Assets Control

### FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA (a.k.a. FARC)

Named by the President
as a Significant Foreign Narcotics
Trafficker on May 29, 2003









| | | | |
|---|---|---|---|
| **Amilcar Jesus**<br>**FIGUEROA SALAZAR**<br>(a.k.a. "Tino")<br>DOB: 10 July 1954<br>Cedula No.: 3946770 (Venezuela)<br>Passport: 31-2006 (Venezuela) | **Cliver Antonio**<br>**ALCALA CORDONES**<br>DOB: 21 Nov 1961<br>Cedula No. 6097211 (Venezuela) | **Freddy Alirio**<br>**BERNAL ROSALES**<br>DOB: 16 June 1962<br>Passport: B0500324 (Venezuela)<br>Cedula No: 5665018 (Venezuela) | **Ramon Isidro**<br>**MADRIZ MORENO**<br>(a.k.a. "Amin")<br>DOB: 4 April 1957<br>Cedula No.: 6435192 (Venezuela) |
| **Alternate President of the Latin American Parliament** | **Major General, Fourth Armored Division Venezuelan Army** | **Congressman United Socialist Party of Venezuela** | **Officer Venezuelan Intelligence Service SEBIN** |

13

**August 2015**

**U.S. Department of the Treasury**
**Office of Foreign Assets Control**





**Foreign Narcotics Kingpin**
**Designation Act**



↓

Identified by the President as a
Significant Foreign Narcotics Trafficker
on May 29, 2003

**Omar Arturo ZABALA PADILLA**
**"Lucas GUALDRON"**
**DOB: 11 Jul 1969**
**Cedula No. 91267294 (Colombia)**

→ FARC International Commission Member
Representative for France, Italy, and Switzerland
Designated by OFAC on January 14, 2009

---

## Narcotics Traffickers and Money Launderers for the Revolutionary Armed Forces of Colombia (FARC)



**Ivan GONZALEZ ZAMORANO**
**DOB 19 Jul 1983**
**POB Cali, Colombia**
**Cedula No. 14621505 (Colombia)**



**Jose Vicente PEÑA PACHECO**
**DOB 19 Jul 1968**
**POB Necocli, Antioquia, Colombia**
**Cedula No. 8188270 (Colombia)**
**Cedula No. 84497137 (Venezuela)**



**Adolfo FONNEGRA ESPEJO**
**DOB 13 Feb 1962**
**POB Bogota, Colombia**
**Cedula No. 19462357 (Colombia)**



**Cristian David GONZALEZ MEJIA**
**DOB 01 Aug 1987**
**POB Bogota, Colombia**
**Cedula No. 1126098461 (Colombia)**

---

### FARC Front Company in Switzerland



**COLOMBIANO LATIN SHOP GMBH**
**Dienerstrasse 72, Zurich 8004, Switzerland**
**Commercial Registry Number CH-020.4.053.829-6**
**Company Number CHE-336.114.192**

### FONNEGRA ESPEJO Controlled Company



**ADOLFO FONNEGRA ESPEJO TRADING & INVESTMENT**
**Badenerstrasse 791, Zurich 8048, Switzerland**
**Commercial Registry Number CH-020.1.066.499-9**
**Company Number CHE-427.006.032**

14

## EL AISSAMI & LOPEZ BELLO Network
## February 2017

**U.S. Department of the Treasury**
**Office of Foreign Assets Control**

**Foreign Narcotics Kingpin**
**Designation Act**



**Tareck Zaidan EL AISSAMI MADDAH**
a.k.a. Tarek EL AISSAMI
DOB 12 Nov 1974
POB El Vigia, Merida, Venezuela
Citizen Venezuela
Identification Number 12.354.211 (Venezuela)



Frontman

**Samark Jose LOPEZ BELLO**
a.k.a. Samark LOPEZ DELGADO
DOB 27 Jul 1974
POB Venezuela
Citizen Venezuela
Identification Number 11.208.888 (Venezuela)

---

**Designated foreign entities linked to LOPEZ BELLO**



**YAKIMA TRADING CORPORATION**
Panama
RUC # 3196611412868

Owned or controlled by



**YAKIMA OIL TRADING, LLP**
London, United Kingdom
Commercial Registry Number OC390985



**PROFIT CORPORATION, C.A.**
Caracas, Venezuela
RIF # J-00317392-4



**GRUPO SAHECT, C.A.**
Caracas, Venezuela
RIF # J-29620174-9



**SMT TECNOLOGIA, C.A.**
Caracas, Venezuela
RIF # J-40068226-6



**MFAA HOLDINGS LIMITED**
Tortola, British Virgin Islands
Company Number 1793372



**SERVICIOS TECNOLOGICOS INDUSTRIALES, C.A.**
Puerto Ordaz, Venezuela
RIF # J-31103570-2



**ALFA ONE, C.A.**
Puerto Ordaz, Venezuela
RIF # J-31482089-3

---

**Blocked U.S. entities linked to LOPEZ BELLO**



**AGUSTA GRAND I LLC**
Miami, FL
Tax ID No. 36-4802365



**1425 BRICKELL AVE 63-F LLC**
Miami, FL
Tax ID No. 71-1053365



**1425 BRICKELL AVENUE 64E LLC**
Miami, FL
Tax ID No. 90-1019707

**Blocked aircraft**





**1425 BRICKELL AVENUE UNIT 46B, LLC**
Miami, FL
Tax ID No. 90-0865341



**200G PSA HOLDINGS LLC**
Miami, FL
Tax ID No. 80-0890696

Owned or controlled by



**N200VR**
Registered in Miami, FL
Gulfstream 200
Manufacturer's Serial Number 133

15

**Foreign Narcotics Kingpin Designation Act**
**October 2018**

**U.S. Department of the Treasury**
**Office of Foreign Assets Control**



## Pedro Luis Zuleta Noscue
## a.k.a. "El Invalido"



| Acting for or on behalf of |

| *FARC* |

| Acting for or on behalf of |

| *La Oficina de Envigado* |

DOB 22 Sep 1964
POB Corinto, Cauca, Colombia
Cedula No. 18110470 (Colombia)

Zuleta Noscue Criminal Associates



**Alonso Zuleta Noscue**
**a.k.a. "Alfonso"**
DOB 15 Nov 1967
POB Corinto, Cauca, Colombia
Cedula No. 76235533 (Colombia)



**Jose Efer Higuita Peralta**
DOB 14 May 1959
POB Corinto, Cauca, Colombia
Cedula No. 6460433 (Colombia)



**Jose Oscar Zuleta Trochez**
DOB 31 Aug 1976
POB Corinto, Cauca, Colombia
Cedula No. 10633018 (Colombia)



**Jonathan Alvarez Escobar**
**a.k.a. "Primo"**
DOB 10 Sep 1986
POB Tulua, Valle, Colombia
Cedula No. 1017136706 (Colombia)

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **KEITH STANSELL, et al.,** | |
| **Plaintiffs,** | **Civil Action: 1:19-cv-20896-RNS** |
| **v.** | |
| **REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC), et al.,** | |
| **Defendants.** | |

### MEMORANDUM OF LAW IN SUPPORT OF SAMARK JOSE LÓPEZ BELLO, YAKIMA TRADING CORPORATION, EPBC HOLDINGS, LTD., 1425 BRICKELL AVE 63-F LLC, 1425 BRICKELL AVE UNIT 46B LLC, 1425 BRICKELL AVE 64E LLC, AND 200G PSA HOLDINGS LLC'S MOTION TO DISSOLVE WRIT OF GARNISHMENT SERVED UPON UBS FINANCIAL SERVICES, INC.

Glen M. Lindsay, Esq.
Florida Bar No.: 59200
SAAVEDRA | GOODWIN
312 SE 17th Street
2nd Floor
Fort Lauderdale, FL 33316
Tel.: (954) 767-6333
Fax: (954) 767-8111
Email: glindsay@saavlaw.com

*Attorneys for Samark Jose Lopez Bello,  Yakima Trading Corporation, EPBC Holdings, Ltd., 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave Unit 46B LLC, 1425 Brickell Ave 64E LLC, and 200G PSA Holdings LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I.    INTRODUCTION ................................................................................................... 1

II.   PROCEDURAL HISTORY .................................................................................... 1

III.  ARGUMENT .......................................................................................................... 2

      A.    The Terrorism Risk Insurance Act of 2002 ("TRIA"). ............................ 2

      B.    The Writ Should Be Dissolved Because Florida Post-Judgment
            Garnishment Laws, When Applied To TRIA, Do Not Provide Adequate
            Constitutional Due Process. ..................................................................... 4

            1.    Florida's Prejudgment Attachment Statute Must Apply Because
                  the Post Judgment Statute Does Not Provide Adequate Due
                  Process. ......................................................................................... 7

            2.    Application of The Florida Post-Judgment Procedures Alone
                  Deprived The Moving Parties Of Their Due Process Rights. .......... 9

      C.    The Writ of Garnishment Should Be Dissolved Because The Allegations
            Set Forth In The Ex Parte Application Are Untrue. .................................. 11

            1.    Plaintiffs Must Prove the Moving Parties Are Each, Individually,
                  Agents or Instrumentalities of the FARC. ..................................... 11

            2.    There is No Credible Evidence That the Moving Parties Were
                  Agents or Instrumentalities of the FARC. ..................................... 13

            3.    The Moving Parties Will Present Proof That They Are Not Agents
                  or Instrumentalities of the FARC. ................................................. 15

IV.   CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Armstrong v. Manzo,
  380 U.S., 85 S. Ct. ........................................................................................................10

Ayotte v. Planned Parenthood of N. New England,
  546 U.S. 320 (2006) ........................................................................................................4

Board of Regents of State Colleges v. Roth,
  408 U.S. 564 (1972) ........................................................................................................6

Branch Banking & Trust Co. v. Carrerou,
  730 F. App'x 869 (11th Cir. 2018) ................................................................................4

Brockett v. Spokane Arcades, Inc.,
  472 U.S. 491 (1985) ........................................................................................................4

Brown v. Liberty Loan Corp. of Duval,
  539 F.2d 1355 (5th Cir. 1976) ........................................................................................8

Coe v. Armour Fertilizer Works,
  237 U.S. 413 (1915) ......................................................................................................10

Connecticut v. Doehr,
  501 U.S. 1 (1991) .........................................................................................................5, 6

Dahnke–Walker Milling Co. v. Bondurant,
  257 U.S. 282 (1921) ........................................................................................................4

Doe v. Ejército de Liberación Nacional,
  92 F. Supp. 3d 1 (D.P.R. 2015) ................................................................................7, 14

Kirschenbaum v. 650 Fifth Ave.,
  257 F. Supp. 3d 463, 518 ........................................................................................3, 4, 11

Kirschenbaum v. 650 Fifth Avenue and Related Properties,
  830 F.3d 107 (2d Cir. 2016) ..........................................................................................11

Mathews v. Eldridge,
  424 U.S. 319 (1976) ........................................................................................................5

Merritt v. Dillard Paper Co.,
  120 F.3d 1181 (11th Cir. 1997) .....................................................................................11

Peralta v. Heights Medical Center, Inc.,
    485 U.S. 80 (1988)................................................................................................5, 11

Regions Bank v. Hyman,
    91 F. Supp. 3d 1234, 1243 (M.D. Fla. 2015), *aff'd sub nom.* Regions Bank v.
    G3 Tampa, LLC, No. 18-11942, 2019 WL 1110727 (11th Cir. Mar. 11, 2019).........4, 5, 9, 12

Shaumyan v. O'Neill,
    987 F.2d 122 (2d Cir. 1993)....................................................................................5

Spielman–Fond, Inc. v. Hanson's, Inc.,
    379 F. Supp. 997 (D. Ariz. 1973) ..........................................................................5

Stansell v. Revolutionary Armed Forces of Colombia (FARC),
    149 F. Supp. 3d 1337, 1340 (M.D. Fla. 2015)........................................................4

Stansell v. Revolutionary Armed Forces of Colombia (FARC),
    711 F.3d 713 (11th Cir. 2014) ........................................................................ *passim*

Stansell v. Revolutionary Armed Forces of Colombia (FARC),
    No. 8:09-cv-2308, 2013 WL 12133661 (M.D. Fla. May 2, 2013) ...........................2

Tennessee v. Garner,
    471 U.S. 1 (1985)...................................................................................................4

United States v. Grace,
    461 U.S. 171 (1983)...............................................................................................4

**State Cases**

Burdine's, Inc. v. Drennon,
    97 So. 2d 259 (Fla. 1957)......................................................................................3

Burshan v. National Union Fire Ins. Co. of Pittsburgh, PA,
    805 So. 2d 835 (Fla. Dist. Ct. App. 2001) ............................................................4

Frasher v. Fox Distrib. of S.W. Fla., Inc.,
    813 So. 2d 1017 (Fla. Dist. Ct. App. 2002) .....................................................8, 10

Unique Caterers, Inc. v. Rudy's Farm Co.,
    338 So. 2d 1067 (Fla. 1976)...................................................................................8

Williams v. Espirito Santo Bank of Florida,
    656 So. 2d 212 (Fla. Dist. Ct. App. 1995) ............................................................4

**Federal Statutes**

18 U.S.C. § 2333(e) ......................................................................................................3

28 U.S.C. § 1963 ..............................................................................................................2

21 U.S.C. §§ 1901-08 ......................................................................................................3

28 U.S.C. §§ 1330 ..........................................................................................................11

**State Statutes**

Florida Stat. § 77.03 ........................................................................................................2

Florida Stat. § 77.07 ..................................................................................................1, 7, 8

Florida Stat. § 77.07(2) .............................................................................................9, 10

Florida Stat. § 77.031(2) .............................................................................................6, 8

**Rules**

Federal Rule of Civil Procedure 69(a)(1) .......................................................................3

Fla. R. Civ. P. 1.050 .......................................................................................................3

Fla. R. Civ. P. 1.570(a) ..................................................................................................4

Pursuant to Florida Stat. § 77.07, Samark Jose López Bello ("López"), Yakima Trading
Corporation ("Yakima"), EPBC Holdings, Ltd., 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave
Unit 46B LLC, 1425 Brickell Ave 64E LLC, and 200G PSA Holdings LLC (collectively referred
to herein as the "Moving Parties"), hereby submit their Motion to Dissolve the Writ of Garnishment
("Writ") served upon UBS Financial Services, Inc. ("UBS").

## I. INTRODUCTION

The Writ issued to UBS should be dissolved because Florida garnishment law, as it is applied
to non-parties and non-judgment debtors under the Terrorism Insurance Risk Act (TRIA) is
unconstitutional.[1] The law fails to provide sufficient due process to the Moving Parties who to date
have had no opportunity to challenge any proceedings related to the issuance of the Writ.

The Writ should further be dissolved because Plaintiffs failed to provide sufficient evidence
to prove that the Moving Parties are each, individually, an agent or instrumentality of the FARC.
Plaintiffs rely most strongly upon the fact that on February 13, 2017, the Office of Foreign Asset
Control ("OFAC") of the United States Department of the Treasury labeled López and thirteen (13)
related entities as Specially Designated Narcotics Traffickers ("SDNTs").  Plaintiffs' reliance on
the designation is misplaced as OFAC has never associated López or his thirteen (13) related entities
with the FARC.

The Writ should be dissolved because the February 15, 2019 Order which granted Plaintiffs'
Ex Parte Application for Writs of Garnishment (Doc. No. 18) was in violation of the Moving Parties'
procedural due process rights.  Furthermore, the Moving Parties are not, and never have been, agents
or instrumentalities of the FARC.  For these reasons, and those that follow, the Writ should be
dissolved.

## II. PROCEDURAL HISTORY

On November 12, 2009, Keith Stansell, Marc Gonsalves, Thomas Howes, Judith Janis,
Christopher Janis, Greer Janis, Michael Janis, and Jonathan Janis ("Plaintiffs") filed a lawsuit in the
Middle District of Florida pursuant to the Anti-Terrorism Act, 18. U.S.C. § 2333 ("ATA"), against
the Revolutionary Armed Forces of Colombia ("FARC") and dozens of other individual defendants

---

[1] Concurrent with the filing of this Memorandum, undersigned counsel is notifying the Florida
Attorney General of the Moving Parties' constitutional challenge as required by Fla. R. Civ. P. 1.071
and Fed. R. Civ. P. 5.1.

1

(collectively referred to as the "FARC Defendants").  The FARC Defendants failed to appear and on June 7, 2010, Plaintiffs filed a motion for default judgment. (Doc. No. 228).  On June 15, 2010, the court granted Plaintiffs' motion for default judgment and ordered the FARC Defendants to pay damages in the amount of $301,276,178.28. (Doc. No. 233)  On July 28, 2010, Plaintiffs registered their judgment against the FARC Defendants in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1963.

On February 13, 2017, OFAC designated the Moving Parties as SDNTs under the Kingpin Act.  On February 13, 2019, Plaintiffs filed an Expedited Motion for Issuance of Post-Judgment Writs of Garnishment and Execution (hereinafter the "Application") without any notice to Moving Parties pursuant to Florida Stat. § 77.03. (Doc. No. 18).  On February 14, 2019, the District Court set a hearing on Plaintiffs' Application. On February 15, 2019, without any opportunity for Moving Parties to challenge Plaintiffs' assertions of "agency or instrumentality," the Court granted Plaintiffs' Application.  In the February 15, 2019 Order, filed initially under seal, the Court granted the Application and found that the parties identified by Plaintiffs as "members of the El Aissami[2] and López Bello Network [ ] are each an agent or instrumentality of the FARC, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA." (Doc. No. 22 at 1).

On February 20, 2019, the Clerk of Courts issued various writs of execution to be served upon certain financial institutions and owners of certain personal and real property.  On February 21, 2019, the U.S. Marshal served the Writ upon garnishee UBS.  Moving Parties did not receive notice of any of these proceedings until February 25, 2019 (when the filings were unsealed).  (Doc. No. 47).  On March 1, 2019, UBS filed their answer to Plaintiffs' Writ. (Doc. No. 58).  The Moving Parties submit this timely Motion to Dissolve the Writ of Garnishment served upon UBS.

## III.   ARGUMENT

### A.   <u>The Terrorism Risk Insurance Act of 2002 ("TRIA").</u>

TRIA provides federal jurisdiction for recovery actions in aid of judgments obtained "against a terrorist party on a claim based upon an act of terrorism."  Pub. L. No. 107-297, § 201(a), 116 Stat.

---

[2] Plaintiffs identifies multiple individuals and companies as the so-called the "El Aissami & López Bello Network."   The name is misleading because Terek El Aissami never was an employee, member, shareholder, director, officer or agent of any of the designated Samark Lopez Bello related entities before or after February 13, 2017. <u>See</u> Declaration of William C. Marquardt, Conclusions ¶1, attached hereto as Exhibit "A."   Undersigned counsel represents López and the related companies and does not represent El Aissami.

2

2322, 2337. A TRIA execution claim requires a court to make two separate determinations regarding property sought to be attached by a TRIA judgment creditor: (1) "that the asset is blocked," and (2) "that the owner of the asset is an agent of instrumentality of the judgment debtor." Stansell v. Revolutionary Armed Forces of Colombia (FARC), 711 F.3d 713, 726 (11th Cir. 2014).

In October 2018, the definition of "blocked assets" under TRIA was expanded to include assets blocked pursuant to an OFAC designation under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901-08 (Kingpin Act). See 18 U.S.C. § 2333(e). The amendment created a new avenue for a federal cause of action for victims of terrorism to use to attach "blocked assets" of persons or entities designated under the SDNTK OFAC program tag. The attachment, however, may only occur once those persons or entities have been adjudicated to be an "agent or instrumentality" of a terrorist organization. Plaintiffs have seized upon this October 2018 amendment and allege that the Moving Parties are agents or instrumentalities of the FARC despite the lack of objective evidence to support this conclusion. Plaintiffs' Application should fail because not one of the Moving Parties has ever been associated with the FARC and there is no evidence that they are agents or instrumentalities of the FARC. See Declaration of William C. Marquardt, attached hereto as Exhibit A; Declaration of Ernesto Carrasco Ramírez, attached hereto as Ex. B; and Declaration of Richard Gregorie, attached hereto as Ex. C.

This matter has been proceeding under Federal Rule of Civil Procedure 69(a)(1) which commands that state civil procedure governs execution proceedings. Accordingly, Florida law has been applied to these proceedings. The operative date in determining whether each Moving Party had "blocked assets" and is an agent or instrumentality of FARC is "viewed at the time when a proceeding is commenced to attach property in aid of execution on that judgment," not at the time when the underlying injury that formed the basis of default judgment took place. Kirschenbaum v. 650 Fifth Ave., 257 F. Supp. 3d 463, 518 n.60 (S.D.N.Y. 2017) (rejecting defendants' argument that instrumentality status should be determined as of the date the wrongful death or personal injury).

In Florida, garnishment proceedings are ancillary proceedings. See Stansell, 771 F.3d at 733 (citing Burdine's, Inc. v. Drennon, 97 So. 2d 259, 260 (Fla. 1957)). As such, an execution or garnishment proceeding "commence[s] when the writ is issued or the pleading setting forth the claim of the party initiating the action is filed." Fla. R. Civ. P. 1.050. Thus, this Court is required to determine whether each Moving Party had "blocked assets" of the FARC and whether each Moving

3

Party was "agent or instrumentality" of the FARC as of February 13, 2019, the date that the execution proceedings were commenced. <u>Kirschenbaum</u>, 257 F. Supp. 3d at 518.

**B.      The Writ Should Be Dissolved Because Florida Post-Judgment Garnishment Laws, When Applied To TRIA, Do Not Provide Adequate Constitutional Due Process.**

Application of Florida's truncated garnishment proceedings to Plaintiffs' attempts to collect against the Moving Parties' blocked assets renders TRIA unconstitutional.  Our Courts have held that Florida law applies to service of process, execution, and garnishment proceedings in post-judgment TRIA actions.  <u>Branch Banking & Trust Co. v. Carrerou</u>, 730 F. App'x 869, 870 (11th Cir. 2018) (applying Florida garnishment law pursuant to Fed. R. Civ. P. 69); <u>Stansell</u>, 771 F.3d at 725 (same); <u>Burshan v. National Union Fire Ins. Co. of Pittsburgh, PA</u>, 805 So. 2d 835, 840 (Fla. Dist. Ct. App. 2001) ("Garnishment and executions in a Florida federal court are thus subject to the practices and procedures of chapters 56 and 77.").  "Florida law requires garnishment statutes to be strictly construed." <u>Stansell v. Revolutionary Armed Forces of Colombia (FARC)</u>, 149 F. Supp. 3d 1337, 1340 (M.D. Fla. 2015); <u>Williams v. Espirito Santo Bank of Florida</u>, 656 So. 2d 212, 213 (Fla. Dist. Ct. App. 1995).

Florida provides for two processes to enforce a judgment solely for the payment of money: execution and writ of garnishment.  <u>See</u> Fla. R. Civ. P. 1.570(a).  Florida's post-judgment garnishment procedures have been held to be constitutional, as when applied to **original defendants** and **judgment-debtors**. <u>Regions Bank v. Hyman</u>, 91 F. Supp. 3d 1234, 1243 (M.D. Fla. 2015), *aff'd sub nom.* <u>Regions Bank v. G3 Tampa, LLC</u>, No. 18-11942, 2019 WL 1110727, at *4 (11th Cir. Mar. 11, 2019).

However, the Moving Parties are neither original defendants nor judgment-debtors. Accordingly, Florida post-judgment procedures, as-applied to garnishments and executions under TRIA, deprive a non-judgment debtor of his Fourteenth Amendment due process rights.  "It is axiomatic that a 'statute may be invalid as applied to one state of facts and yet valid as applied to another.'" <u>Ayotte v. Planned Parenthood of N. New England</u>, 546 U.S. 320, 329, (2006) (citing <u>Dahnke–Walker Milling Co. v. Bondurant</u>, 257 U.S. 282, 289 (1921)).  Accordingly, the "normal rule" is that "partial, rather than facial, invalidation is the required course," such that a "statute may ... be declared invalid to the extent that it reaches too far, but otherwise left intact." <u>Brockett v. Spokane Arcades, Inc.</u>, 472 U.S. 491, 504 (1985); <u>see</u> <u>also</u> <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985); <u>United States v. Grace</u>, 461 U.S. 171, 180–183 (1983).

4

The Moving Parties' interest in their money and financial accounts is a protected property interest. Hyman, 91 F. Supp. 3d at 1243. Accordingly, the Moving Parties are entitled to due process protections in these proceedings because they involve the deprivation of the Moving Parties' property rights. See Peralta v. Heights Medical Center, Inc., 485 U.S. 80, 85 (1988) ("Even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.").

In Connecticut v. Doehr, 501 U.S. 1 (1991), the Supreme Court invalidated a Connecticut statute providing for prejudgment attachment. The Doehr Court reiterated that even temporary or partial impairments to property rights, which flow from attachments, liens, and similar encumbrances, such as those that arise from prejudgment attachments can be sufficient to merit due process protection. Id. at 12. As such, only in limited circumstances may a party obtain a prejudgment attachment of property belonging to a defendant without notice. Id. at 16.

In that regard, Chief Justice Rehnquist's concurrence emphasized that Doehr did not disturb well-settled law allowing for prejudgment remedies where a party had a pre-existing interest in the property, such as a mechanic's lien or a lis pendens. Id. at 27–29 (citing Spielman–Fond, Inc. v. Hanson's, Inc., 379 F. Supp. 997, 999 (D. Ariz. 1973)). The due process holding under Doehr is based on the application of the Connecticut statute at issue to an intentional tortfeasor, as opposed to a creditor with an existing interest in the attached property. See Shaumyan v. O'Neill, 987 F.2d 122, 126–27 (2d Cir. 1993) (upholding the same Connecticut statute as applied to contractor's claim for payment of "an outstanding sum certain.").

In reviewing the constitutionality of the prejudgment attachment under TRIA, the Stansell Court conducted an analysis under Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976), the same analysis employed by the Supreme Court in Doehr. See Stansell, 771 F.3d at 728. Thus, the Eleventh Circuit has analyzed the TRIA writ of garnishment as a prejudgment attachment. Under that analysis, the Eleventh Circuit concluded as to those respondents that the factors weighed in favor of attachment. Id. at 728 n.10. The Stansell court, however, was never asked and never addressed the question presented herein: whether Florida garnishment law is sufficient to satisfy the requirements of due process as it applies to the Moving Parties. Given the Eldridge analysis conducted by the Stansell court, TRIA attachments against parties who are not original defendants and not judgment debtors should be performed under the Florida prejudgment statute. See Florida

Stat. § 77.031(2).  This statute provides for attachment, notice and protection for the non-judgment debtor in the event of an improper garnishment action.

The protections provided by the Florida prejudgment statute are critical to satisfying due process because TRIA does not give Plaintiffs any pre-existing property rights.  Property rights are defined by state law.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577  (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law…").  TRIA provides a federal venue and avenue for Plaintiffs to attempt to execute on blocked assets.  Doing so requires two separate determinations regarding the property being executed: (i) that the asset is blocked, and (ii) that the owner of the asset is an agency or instrumentality of the judgment debtor. TRIA § 201(a).  Stansell, 771 F.3d at 726.[3]

Plaintiffs do not even attempt to argue that they had some pre-existing interest in the Moving Parties' property that would have entitled them to attach the bank account(s) without notice and a hearing.[4]  As such, TRIA should be treated no differently than any other remedial statute that gives rise to federal jurisdiction.  Plaintiffs must prove that the Moving Parties are each, individually, agents or instrumentalities of the FARC before any execution proceedings may take place.  Thus, any attachment of the Moving Parties' bank account(s) required a pre-deprivation notice and hearing under Doehr.  As the Stansell Court noted, "[w]here the owner of the asset being garnished is the judgment debtor, 'notice upon commencement of a suit is adequate to give a judgment debtor advance warning of later proceedings undertaken to satisfy a judgment.'"  Id. at 726-27 (quoting Brown v. Liberty Loan Corp. of Duval, 539 F.2d 1355, 1357 (5th Cir. 1976)).  That same type of notice is not sufficient where the claimant is a third party who cannot be expected to be on notice of the judgment.  Id.

---

[3] TRIA requires a determination that a party both have assets that have been blocked by OFAC and be an "agency or instrumentality," but the former is not dispositive of the latter.  The Eleventh Circuit has held that, while the "blocked asset" analysis can be "definitively established" by identifying whether OFAC has taken action against a party, the "agency of instrumentality" finding "is a separate determination … not dispositvely decided by OFAC designation." Stansell, 771 F.3d at 726 n.13 ("[I]t is not proper for the district court to rely solely on OFAC designation as creating an irrebuttable presumption of agency or instrumentality status.").

[4] Indeed, before the October 2018 amendment to TRIA, Plaintiffs had no interest in the Moving Parties' assets.

Notice and an opportunity to be heard before any court ordered deprivation takes place is essential to preserving the integrity of the procedural process clause. This rationale was followed in Doe v. Ejército de Liberación Nacional, 92 F. Supp. 3d 1 (D.P.R. 2015). In Doe, TRIA plaintiffs/judgment creditors received a default judgment against the FARC in the United States District Court for the Southern District of Florida. Id. at 1. The Doe plaintiffs registered their judgment in the District of Puerto Rico, and moved for a writ of garnishment against a third-party financial institution. Id.

The Doe plaintiffs argued, as Plaintiffs here argue, that the third-party financial institution possessed assets of agencies or instrumentalities of the FARC. Id. In support of their request for writs of garnishment, the TRIA plaintiffs submitted an affidavit of a former DEA agent. Id. at 2. The District Court denied the Doe plaintiffs' request because "[n]othing in Plaintiff's Application suggests that [the purported agencies or instrumentalities] have been notified of these proceedings." Id. The Court rejected the ex parte proceedings because Puerto Rico law prohibits attachment without "notice upon the adverse party and a hearing." P.R. Laws Ann. tit. 32, app. III, R. 56.2. The Doe court noted that "the Eleventh Circuit has persuasively rejected the notion that TRIA preempts state-law notice requirements regarding garnishment. Id.; see also Stansell, 771 F.3d at 729–30 ("Nothing about the language or purpose of TRIA § 201 indicates that it conflicts with Florida's requirements that owners of property being garnished or executed against are entitled to notice....").

### 1. Florida's Prejudgment Attachment Statute Must Apply Because the Post Judgment Statute Does Not Provide Adequate Due Process.

Under Florida law, in order to obtain a prejudgment writ of garnishment, a plaintiff must file a motion or affidavit that alleges "with specific facts":

> the nature of the cause of action; the amount of the debt and that the debt for which the plaintiff sues is just, due, and unpaid; that the garnishment is not sued out to injure either the defendant or the garnishee; and that the plaintiff believes that the defendant will not have in his or her own possession, after execution is issued, tangible or intangible property in this state and in the country in which the action is pending on which a levy can be made sufficient to satisfy the plaintiff's claim. The writ of garnishment shall set forth a notice to the defendant of the right to an immediate hearing for dissolution of such writ pursuant to s. 77.07. **Upon issuance of the writ of garnishment, the clerk of the court shall provide by mail a copy of the writ to the defendant.**

Florida Stat. § 77.031(2) (emphasis added).  In addition to the filing of the motion or affidavit, the plaintiff must "give a bond with surety to be approved by the clerk payable to the defendant in at least double the amount of the debt demanded, conditioned to pay all costs, damages, and attorney's fees that the defendant sustains in consequence of the plaintiff improperly suing out of the writ of garnishment." Id. § 77.031(3).

Once the clerk provides notice, "the defendant, by motion, may obtain the dissolution of a writ of garnishment, unless the petitioner proves the grounds upon which the writ was issued and unless, in the case of a prejudgment writ, there is a reasonable probability that the final judgment in the underlying action will be rendered in his or her favor.  The court shall set down such motion for an immediate hearing.  If the writ is dissolved, the action then shall proceed as if no writ had been issued." Florida Stat. § 77.07.

The purpose of the notice and hearing provisions in § 77.07 comports with due process requirements, as it protects against unfounded accusations based on hearsay and factually unsupported opinions.  As the Florida Supreme Court noted, "[t]he due process clause of the United States Constitution forbids the issuance of a prejudgment writ based on the plaintiff's conclusory allegations that he or she believes one of the statutory grounds exists." Unique Caterers, Inc. v. Rudy's Farm Co., 338 So. 2d 1067, 1071 (Fla. 1976).  Notably, "[a]n affidavit supporting the issuance of a prejudgment writ of attachment must not be based on hearsay or the plaintiff's subjective beliefs, but rather must be based on the plaintiff's personal knowledge of the defendant's actions." Frasher v. Fox Distrib. of S.W. Fla., Inc., 813 So. 2d 1017, 1020 (Fla. Dist. Ct. App. 2002) (noting that an affidavit that relies on either hearsay or the plaintiff's conclusory allegations as to the defendant's actions or intentions is insufficient as a matter of law to support a writ).  Under the Florida prejudgment attachment scheme, the defendant, who is already on notice of the suit, is afforded notice and an opportunity to contest the requested attachment.  Frasher, 813 So. 2d at 1021 (Defendant is entitled to an immediate hearing at which the plaintiff is required "to prove at least probable cause ... for the attachment.").

In contrast, the Florida post-judgment procedural rules provide no such protections because those procedures presume that the judgment-debtor had notice and a full opportunity to present any and all defenses to the Plaintiffs' claims.  Stansell, 771 F.3d at 726-27.  Florida law does not provide a non-judgment debtor any opportunity to contest Plaintiffs' ex parte Application for the issuance of a writ, which requests that the Court make factual findings of agency or instrumentality without

8

any opportunity to rebut those claims. Those findings provided the TRIA Plaintiffs in this case with affirmative relief for preserving property for <u>future</u> execution in the event of a successful outcome without providing the protections to the Moving Parties that are afforded to litigants under prejudgment procedures. Florida law, as applied to TRIA, permits the Court to issue unchallenged findings of "agency and instrumentality" based on hearsay and self-serving affidavits. (Doc. Nos. 18 & 22). As a result, newly named parties, such as the Moving Parties, are not afforded any protections against impermissible writs issued based upon untested hearsay or conjecture.

### 2. Application of The Florida Post-Judgment Procedures Alone Deprived The Moving Parties Of Their Due Process Rights.

The Moving Parties were deprived of their Due Process rights on February 15, 2019 when Plaintiffs obtained the Writ. In this case, the Moving Parties did not get notice of the TRIA execution proceedings until February 25, 2019. (Doc. No. 47). The only alleged process available to the Moving Parties under TRIA, after an uncontested finding of "agency and instrumentality" and attachment, is set forth in Florida Stat. § 77.07(2), which reads:

> (2) The defendant and any other person having an ownership interest in the property, as disclosed by the garnishee's answer, shall file and serve a motion to dissolve the garnishment within 20 days after the date indicated in the certificate of service on the defendant and such other person of the plaintiff's notice required by s. 77.055, stating that any allegation in plaintiff's motion for writ is untrue. **On such motion this issue shall be tried, and if the allegation in plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved**. Failure of the defendant or other interested person to timely file and serve the motion to dissolve within such time limitation shall result in the striking of the motion as an unauthorized nullity by the court, and the proceedings shall be in a default posture as to the party involved.

Florida Stat. § 77.07(2). This statute gives the non-judgment debtor just 20 days to rebut the attachment application and the Court's adjudicated findings of "agency and instrumentality." Proper notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford an opportunity … to present their objections." <u>Hyman</u>, 91 F. Supp. 3d at 1243.

The Florida post-judgment statute requires the non-judgment debtor to prove a negative, namely, **the allegation in "plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved**." Florida Stat. § 77.07(2). The statute shifts the burden of proof to a party who never had any opportunity to defend itself in the first instance and no opportunity to demonstrate the significant deficiencies in Plaintiffs' Application. Even the Eleventh Circuit's

ultimate conclusion fails to provide any guidance as to whether Florida law requires mere denials or requires the Moving Parties to prove that the allegations contained in Plaintiffs' ex parte application are untrue.  The Eleventh Circuit stated:

> In the proceedings below, it seems no party was free of fault. Plaintiffs should have provided formal notice of the garnishment and execution proceedings to the owners of the property, as Florida law provides. Initially, the district court incorrectly concluded that no process was due to the owners of property here, none of whom could be deemed to be on notice of the underlying proceedings against FARC. Ultimately, though, Claimants bear their share of the blame for either sitting on their rights to challenge the allegations against them or simply failing to rebut the charges. Therefore, with the exception of the turnover judgment against Brunello's account, we affirm the district court.

Stansell, 771 F.3d at 748.[5]  The Florida procedure does not provide for a constitutionally adequate trial.  It also seems to prohibit the Moving Parties from seeking preclusion of hearsay evidence, and it provides no opportunity to cross examine lay and/or expert witnesses who supported Plaintiffs' Application. Stansell, 771 F.3d at 741-42 ("The Partnerships followed this procedure, and the district court, after due consideration of their argument, concluded that the agency or instrumentality allegation was 'proved to be true.'").  Such a procedure cannot provide adequate due process when Florida dictates that an affidavit which relies on either hearsay or the plaintiff's conclusory allegations as to the defendant's actions or intentions is insufficient as a matter of law to support issuance of a writ in the first instance.  Frasher, 813 So. 2d 1017, 1020 (Fla. Dist. Ct. App. 2002).[6] Florida's post-judgment statute, as-applied to TRIA non-judgment debtors, fails to afford sufficient notice and an opportunity to contest the attachment that has already taken place, and no available procedure can correct the result.

> Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, "it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." Coe v. Armour Fertilizer Works, 237 U.S. 413, 424 ,35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915). As we observed in Armstrong v. Manzo, 380 U.S., at 552, 85 S. Ct., at 1191, only "wip[ing] the slate clean ... would have restored the petitioner

---

[5]  The claimants in Stansell sat on their rights. The Eleventh Circuit's obvious frustration with the lack of timely action by those parties cannot dictate the result on the Moving Parties' constitutional challenge because the Moving Parties have taken prompt action after being informed of this matter on February 25, 2019. (Doc. No. 47.)

[6] It is unclear if the Moving Parties are entitled to general and specific denials under normal federal notice pleading rules.  Or, are the Moving Parties required to rebut each and every sentence contained Plaintiffs' Application and Exhibits, or risk losing the opportunity for a trial that is required under § 77.07(2).

to the position he would have occupied had due process of law been accorded to him in the first place." The Due Process Clause demands no less in this case.

Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86–87 (1988).

Application of Florida post-judgment garnishment law to TRIA in these circumstances is unconstitutional. Persons who are not original defendants and are then treated as judgment debtors under TRIA based upon a perfunctory showing of hearsay affidavits are afforded no due process protections. This result stands in stark contrast to the significant protections that Florida law applies to prejudgment writs, which merely preserve property in the event a plaintiff can ultimately prevail. This is an absurd result that counsels heavily in favor of dissolution of the Writ. Merritt v. Dillard Paper Co., 120 F.3d 1181, 1188 (11th Cir. 1997) ("statutory language should not be applied literally if doing so would produce an absurd result."). For these reasons, the only proper remedy is the dissolution of the Writ and all other Writs of Garnishment and Execution that were authorized by the February 15, 2019 Order.

## C. The Writ of Garnishment Should Be Dissolved Because The Allegations Set Forth In The Ex Parte Application Are Untrue.

### 1. Plaintiffs Must Prove the Moving Parties Are Each, Individually, Agents or Instrumentalities of the FARC.

The issue of whether each Movant had "blocked assets" of FARC is "viewed at the time when a proceeding is commenced to attach property in aid of execution on that judgment," not at the time when the underlying injury that formed the basis of default judgment took place. Kirschenbaum, 257 F. Supp. 3d at 518 n.60.

A TRIA execution claim thus requires a court to make two separate determinations regarding property sought to be attached by a TRIA judgment creditor: (1) "that the asset is blocked," and (2) "that the owner of the asset is an agent of instrumentality of the judgment debtor." Stansell v. Revolutionary Armed Forces of Colombia (FARC), 711 F.3d 713, 726 (11th Cir. 2014). The term "agency or instrumentality" is not defined by TRIA. While that term is codified in the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-11 (FSIA), to which TRIA is attached as a note, the Eleventh Circuit has held that FSIA's definition of "agency or instrumentality" cannot be used under TRIA. See Stansell, 771 F.3d at 730-32 (holding that FSIA definition of "agency of instrumentality" cannot apply to TRIA); see also Kirschenbaum v. 650 Fifth Avenue and Related Properties, 830 F.3d 107, 131 (2d Cir. 2016) (holding similarly that "FSIA's definition of ['agency

of instrumentality'] does not apply to the TRIA."). The Eleventh Circuit in <u>Stansell</u> adopted the definition used by the district court and defined the term as:

> Any SDNT …, including all its individual members, divisions, and networks, that is or was ever involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network, … because it was either:
>
> (1) materially assisting in, or providing financial assistance or technological support to, or providing goods or services in support of, the international narcotics trafficking activities of … [FARC]; and/or
>
> (2) owned, controlled, or directed by, or acting on behalf of, … [FARC]; and/or
>
> (3) playing a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC].

<u>Id.</u> at 724 n.6 (quoting <u>Stansell v. Revolutionary Armed Forces of Colombia (FARC)</u>, No. 8:09-cv-2308, 2013 WL 12133661, at *2 (M.D. Fla. May 2, 2013)).

Plaintiffs argue that because FARC engaged in international drug trafficking, and Columbia is adjacent to Venezuela, López (a citizen of Venezuela) must have materially assisted the FARC in providing financial assistance and technological support. <u>See</u> Affidavit of Douglas C. Farah ("Farah") in Support of Plaintiffs' Application (Doc. No. 17-2, 18) (relying upon Maps of Columbia, Latin America, Africa and Middle East to form his opinions). These allegations are unfounded and based on pure speculation.

The allegations set forth in Plaintiffs' Application are untrue. OFAC has never associated the Moving Parties with the FARC. Before OFAC blocked the Moving Parties' assets, FARC had entered into a peace treaty, disbanded and disarmed, all under the supervision of the United Nations in 2016. <u>See</u> Ex. B ¶¶ 19-29. The Columbian and the United States Governments have never identified the Moving Parties as past or current members of the FARC. At no time has the Columbian Government targeted for prosecution the Moving Parties for their alleged roles in activity associated with the FARC. <u>Id.</u> ¶¶ 32-34. Because the "blocked assets" are the property[7] of

---

[7] Moving Parties' Motion will only address the second prong as the Moving Parties have an obvious ownership interest in their bank accounts. <u>See Hyman</u>, 91 F. Supp. 3d at 1243.

the Moving Parties and the allegations that the Moving Parties are agents or instrumentalities of the FARC are untrue, the Court must dissolve the Writs and order a trial under Florida Stat. § 77.07(2).

**2. There is No Credible Evidence That the Moving Parties Were Agents or Instrumentalities of the FARC.**

On February 13, 2017, OFAC issued a press release which reported that the Moving Parties were designated under the Kingpin Act.[8] The press release is devoid of any information that connects the Moving Parties to the FARC. OFAC, however, does not hesitate to report any conclusion when it finds individuals who are associated with, and acting on behalf of, the FARC. For example, in September 2011, OFAC designated four (4) Venezuelan officials as acting on behalf of FARC. See Ex. D at 13. In October 2018, OFAC specially identified Pedro Luis Zuelta Noscue and his associates as acting on behalf of the FARC. Id. at 16.[9] Logic dictates that if OFAC had any information that the Moving Parties were associated with and acting on behalf of the FARC, it would have issued a press release and created a chart showing the connection between the Moving Parties and the FARC. If OFAC has never associated the Moving Parties with FARC, then it is a *fortiori* that they could not have been deemed agents or instrumentalities of the FARC. Thus, Plaintiffs' reliance on the Moving Parties' OFAC designation offers no support either factually or legally that they are agents or instrumentalities of the FARC.

Independent review of the available OFAC data further debunks Plaintiffs' theory. The Declaration of William C. Marquardt analyzed the OFAC designation data and his expert conclusions support that the Moving Parties were never associated with or were agents or instrumentalities of the FARC. See Ex. A Opinions ¶¶ 1-3. Marquardt reviewed all of the known persons and entities whose assets were blocked under Sanction Programs that were associated with the FARC, as of March 5, 2019.[10] Id. ¶¶ 4-5. Marquardt then compared those findings directly

---

[8] Plaintiffs argue that the OFAC designation of February 13, 2017 should be "afforded extreme deference under federal law" and provides support for a finding of agency and/or instrumentality. Application at 6-13; 16-17. This argument must be rejected because the agency and/or instrumentality determination is separate from the determination that an asset is blocked. The OFAC designation is an administrative decision made before the Moving Parties had any opportunity to challenge the designation.

[9] Plaintiffs themselves note that OFAC has previously designated individuals as SDNTs pursuant to the Kingpin Act based upon their connection to the FARC. Application at 6.

[10] [SDGT], Global Terrorism Sanctions Regulations, 31 C.F.R. part 594; [SDNT] Narcotics Trafficking Sanctions Regulations, 31 C.F.R. part 536; [SDNTK] Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. part 598; [SDT] Terrorism Sanctions Regulations, 31 C.F.R. part 595; and [FTO] – Foreign Terrorist Organizations.

against the Moving Parties, and Moving Parties' companies, directors, officers, shareholders, and managers. Id. ¶¶ 5-6. The analysis, which resulted in no FARC matches, permitted Marquardt to conclude to a reasonable degree of certainty that none of the Moving Parties were associated with the FARC and further that they were not agents or instrumentalities of the FARC. Id. ¶¶ 6-7. Plaintiffs presented no objective data in the Application to rebut the Moving Parties arguments that the United States Government has never found that the Moving Parties are an agent or instrumentality of the FARC. Thus, assertions that the Moving Parties are "agents or instrumentalities" of the FARC are untrue and require a trial pursuant to Florida law.

Plaintiffs rely upon two affiants, Douglas C. Farah and Luis Miguel Cote Gomez, in support of their arguments that the Moving Parties are agents or instrumentalities of the FARC. The opinions of these two affiants are disputed as the facts they rely upon are untrue and their conclusions unsupported.

Farah states that López and each of his thirteen related companies are agencies or instrumentalities of the FARC. Farah Aff. ¶ 52. This statement is untrue. Farah relied on OFAC's designations, charts and press releases, which never associated the Moving Parties with the FARC. Indeed, the Moving Parties have already demonstrated that OFAC never associated the Moving Parties with the FARC. See Ex. A ¶¶ 5-6, Opinions ¶¶ 1-3.

Farah relies upon criminal proceedings commenced against individuals associated with FARC by the United States Government. Farah Aff. ¶ 21. This information disproves Plaintiffs' claims because none of these prosecutions involve the Moving Parties or El Aissami. Farah then attempts to link López to the FARC because some other person(s) from Venezuela may have been associated with the FARC's international drug trafficking. Farah Aff. ¶¶ 50-52. This opinion is not factually based and Farah fails to point to any information that López provided technical or financial support to the FARC. Farah Aff. ¶¶ 45-51. This Court should disregard Farah's untested and unsupported conclusions that the Moving Parties are agents and/or instrumentalities of the FARC. See Doe, 92 F. Supp. 3d at 2 n.2 ("I note that the connection between FARC … and [the alleged agency or instrumentality] appears quite tenuous … at the very least more proof—or better argumentation—will be necessary to prevail in any future garnishment proceedings.").

Plaintiffs' second affiant, Cote explicitly states that López is not only an active member of the "Cartel of the Suns," but serves in its "leadership" alongside former vice-president Tareck El Aissami. Cote Aff. ¶ 44. This statement is untrue. There is no evidence offered by Cote, Farah or

any of the exhibits included in Plaintiff's Appendix that ties López to the Cartel of the Suns.  As explained by Richard Gregorie in his attached Declaration, the FARC and the "Cartel of the Suns" are not the same.  See Ex. C at 3.  The "Cartel of the Suns" is a Venezuelan military organization made up primarily of generals and other military leaders in Venezuela.  Id.  They are not the FARC. See id.  Plaintiffs cannot prove the purported connection between López and the FARC through the "Cartel of the Suns."

Cote claims to have reviewed buried records, cash, FARC captured computers, FARC documents, and FARC radio communications, among other things directly linked to the FARC. Cote Aff. ¶ 16.  Cote states that the information he reviewed "specifie[d] who provide[d] illegal support to or is otherwise associated with FARC and its narcotics trafficking and terrorist activities." Id.  Tellingly, Cote never states that any of the FARC materials that he reviewed named or even mentioned López or any of his related entities.  Neither Farah's nor Cote's opinions provide proof that López supported the FARC financially, logistically or otherwise.

3.    **The Moving Parties Will Present Proof That They Are Not Agents or Instrumentalities of the FARC.**

Contrary to the Plaintiffs untrue allegations, the Moving Parties have never been associated with the FARC.  Plaintiffs completely ignore the peace treaty that was reached between Columbia and the FARC, which resulted in the FARC being totally disarmed by September 2017, **more than a year before Plaintiffs initiated this action**.  See Ex. B ¶¶ 24-29.  The peace treaty, which was initiated by a ceasefire entered in July of 2015, resulted in a two year process by which the FARC was totally disarmed under UN supervision.  See id.  By the time Plaintiffs filed their Application to collect their judgment against the Moving Parties, FARC was disbanded and was recognized as a political party by the Columbian government and the United Nations.  See id. ¶¶ 30-31.

At trial, the Moving Parties will present evidence that there is no connection between López and the related entities owned or controlled by López and the FARC.  First, the OFAC information, which is publicly available and could have been analyzed by Plaintiffs, demonstrates that OFAC has never made a connection between López and the FARC.  See Ex. A Decl. ¶¶ 5-6, Opinions ¶¶ 1-3.  Messrs. Farrah and Cote Affidavits were reviewed by Richard Gregorie, former prosecutor for the U.S. Department of Justice, who is well known for his indictments of Panamanian General Manuel Noriega and the Medellin Drug cartel.  See Ex. C.  Mr. Gregorie concluded that there is "no evidence, source, or document which demonstrates that López has ever been involved in any narcotics transaction or has conducted any transaction with a member of the FARC."  Mr. Gregorie

15

further concluded "there is no evidence, source, or document in the plaintiff's affidavits which demonstrates that Samark Jose Lopez Bello has conducted any narcotics transaction or has any relationship with any member of the FARC." Id. ¶¶1-2.

The Moving Parties will also present compelling evidence that neither the Columbian government nor the FARC itself ever identified López as a member of the FARC. Based upon his extensive experience in Columbia and prosecution of the FARC and its members, Ernesto Carrasco Ramírez will testify that López was never identified in the FARC dispute in Columbia. See Ex. B ¶¶ 32-34.

In light of the recognized, legitimate political party status of the FARC as of 2017, it is impossible for López or his entities to have been agents or instrumentalities of a criminal narco-trafficking organization at the time Plaintiffs filed this Application to unlawfully seize the assets of Mr. López or any entity owned or controlled by him.

## IV.    CONCLUSION

For the above-outlined reasons the Court should GRANT Moving Parties' Motion and enter an order dissolving the Writ of Garnishment as to UBS Financial Services, Inc. In the alternative, the Court should stay execution proceedings and order a trial on the issue of "agency or instrumentality" pursuant to Florida law.

Dated: March 21, 2019                          Respectfully submitted,

                                                 /s/ Glen M. Lindsay
                                               Glen M. Lindsay, Esq.
                                               Florida Bar No.: 59200
                                               SAAVEDRA | GOODWIN
                                               312 SE 17th Street
                                               2nd Floor
                                               Fort Lauderdale, FL 33316
                                               Tel.: (954) 767-6333
                                               Fax: (954) 767-8111
                                               Email: glindsay@saavlaw.com
                                               Service Email: eservice@saavlaw.com

                                               and

                                               Jeffery M. Scott, Esq.*
                                               Jeffrey M. Kolansky, Esq.*
                                               ARCHER & GREINER, P.C.
                                               THREE LOGAN SQUARE
                                               1717 ARCH STREET

SUITE 3500
PHILADELPHIA, PA 19103
Tel: 215-279-9693
Email: jscott@archerlaw.com
Email: aborgatti@archerlaw.com
Email: jkolansky@archerlaw.com

***Attorneys for Samark Jose Lopez Bello, Yakima Trading Company, EPBC Holdings, Ltd., 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave Unit 46B LLC, 1425 Brickell Ave 64E LLC, and 200G PSA Holdings LLC.***

*Admitted pro hac vice*

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on March 21, 2019, I electronically filed the foregoing Motion

with the Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing

document on all counsel of record via CM/ECF as follows:

NEWTON P. PORTER
TONY KORVICK
Attorneys for Intervenor Plaintiffs
PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208
Miami, Florida 33156
Telephone: (305) 373-5040
Fax: (305) 668-9154
tkorvick@porterandkorvick.com
nporter@porterandkorvick.com


       */s/ Glen M. Lindsay*
Glen M. Lindsay, Esq.
Florida Bar No.: 59200

## **REQUEST FOR HEARING**

Pursuant to Rule 7.1(b)(2) of the Local Rules for the United States District Court of the Southern District of Florida, Moving Parties hereby request a hearing in the above-captioned matter as a hearing will best allow Moving Parties to fully present their case before the Court.

216147722v1

19

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

KEITH STANSELL, et al.,

                            **Plaintiffs,**

v.

**REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.,**

                            **Defendants.**

**Civil Action: 1:19-cv-20896-RNS**

## ORDER

      Upon consideration of Samark Jose López Bello, 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave Unit 46B LLC, 1425 Brickell Ave 64E LLC, 200G PSA Holdings LLC, Yakima Trading Corporation and EPBC Holdings, Ltd.'s Expedited Motion to Dissolve Writ of Garnishment Served Upon UBS Financial Services, Inc., and for good cause shown, it is hereby **ORDERED** that said Motion is **GRANTED**. The Writ of Garnishment served upon UBS Financial Services, Inc. is hereby **Dissolved.**

      **DONE AND ORDERED** in chambers, _____, Florida, on this _____ day of _____, 2019

                                        _____
                                        UNITED STATES DISTRICT JUDGE

Copies to all Parties of Record