UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-23190-CIV-MORENO**

CARLOS EDUARDO MARRON, JANE DOE,
C.R., a minor, and S.A., a minor,

       Plaintiffs,

vs.

NICOLAS MADURO MOROS, FUERZAS
ARMADAS REVOLUCIONARIOS DE
COLOMBIA, CARTEL OF THE SUNS,
VLADIMIR PADRINO LOPEZ, MAIKEL
JOSE MORENO PEREZ, NESTOR LUIS
REVEROL TORRES, TAREK WILLIAM
SAAB, and TARECK EL AISSAMI,

       Defendants.
_____/

## ORDER DENYING WITHOUT PREJUDICE MOTION FOR WRIT OF EXECUTION AS TO THE MIAMI BEACH PROPERTY

Plaintiffs seek to execute on a default judgment under § 201 of the Terrorism Risk Insurance Act (TRIA), which allows victims of terrorism to recover against the assets of agents and instrumentalities of terrorists and terrorist organizations. The motion seeks a writ of execution as to a Miami Beach condominium owned by a limited liability company, funded by Samark Lopez Bello, an associate of Defendant Tarek El Aissami. The LLC owner of the condominium, however, defaulted on its association dues and the La Gorce Palace Condominium Association obtained a specific license from the United States Department of Treasury Office of Foreign Assets Control (OFAC) to collect those dues. The Association also obtained a summary judgment of foreclosure order in state court and a judicial sale of the property is set for May 30, 2023. Before reaching the merits of whether Plaintiffs meet TRIA's requirements, there is a

threshold issue as to whether the OFAC license granted to the La Gorce Palace Condominium Association removes the Miami Beach condominium as a "blocked asset" under TRIA and renders it beyond the reach of Plaintiffs' rights of execution at this juncture. The Court finds that it does and denies the motion as to the Miami Beach Condominium without prejudice to refile after the conclusion of the judicial sale and after the excess funds from the sale are placed in a blocked bank account.

THIS CAUSE came before the Court upon Plaintiffs' Motion for Writs of Execution (**D.E. 47**), filed on February 22, 2023.

THE COURT has considered the motion, the responses, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED to the extent the Plaintiffs are seeking a writ of execution as to the property located at 6301 Collins Avenue, Apartment 1008, Miami Beach, Florida 33141. Plaintiffs may refile the appropriate motion after the sale proceeds are deposited into a blocked bank account.

## I.     Background

On January 23, 2023, the Court awarded Plaintiffs a final default judgment against the Defendants, jointly and severally, in the amount of $153,843,976. The judgment remains unsatisfied. In granting default judgment, this Court recognized that the individual defendants, the Cartel of the Suns, and the Fuerzas Armadas Revolucionarias de Colombia (FARC), committed narcoterrorism "using narcotics sales in Florida to fund their acts of terrorism at home." *Order Granting Motion for Default Judgment*, D.E. 44 at 6 (S.D. Fla. Jan. 23, 2023). As to the individual defendant Tarek El Aissami, the United States has charged him with conspiring to evade sanctions under the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act").

*United States v. El Aissami*, No. 19-cr-144 (S.D.N.Y. Mar. 8, 2019) (Superseding Indictment). The same exact indictment charged Samark Jose Lopez Bello as an associate of El Aissami, who worked with him and others to violate and evade sanctions imposed by OFAC. *Id.* Lopez Bello is *not* a defendant in this civil case.

The Kingpin Act and its corresponding regulations block all property and interests within the United States owned by foreign persons designated by OFAC as "Specially Designated Narcotics Traffickers." 21 U.S.C. § 1904(b); 31 C.F.R. §§ 598.202, 598.301. On February 13, 2017, OFAC designated Tarek El Aissami and Samark Lopez Bello as Specially Designated Narcotics Traffickers pursuant to the Kingpin Act. Lopez Bello's designation was published in the Federal Register on February 17, 2017, which is the operative date after which his property became OFAC-blocked.

After obtaining default, Plaintiffs, Carlos Eduardo Marron, his wife Maria Marron, and their children, filed an expedited *Ex Parte* Motion for Writs of Execution as to two properties, owned by limited liability companies, which Plaintiffs contend are shell companies owned and operated by Samark Jose Lopez Bello. One property is a home located at 9000 S.W. 63rd Court, Miami, Florida and the other is a condominium located at 6301 Collins Avenue, Apt. 1008, Miami Beach, Florida (the "Miami Beach condominium").

Under the Terrorism Risk Insurance Act (TRIA), terrorism victims such as the Plaintiffs may satisfy their judgment from property blocked by OFAC. *See* § 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337.[1] TRIA provides a right of action to recover against blocked property owned by an agent or instrumentality of a terrorist or terrorist organization.[2] Plaintiffs are invoking this statutory right in their motion

---

[1] This provision is codified as a note to 28 U.S.C. § 1610.
[2] § 201 of TRIA reads as follows:

3

requesting writs of execution as to the two properties based on Lopez Bello's role as an agent or instrumentality of two Defendants in this case, the Cartel of the Suns and Tarek El Aissami.

This order addresses the Plaintiffs' claim as to the Miami Beach condominium. The Miami Beach condominium is the subject of foreclosure proceedings in state court. Prior to the Plaintiffs filing this motion, the La Gorce Palace Condominium Association received a licensed authorization from OFAC to foreclose on the Miami Beach condominium, initiate its judicial sale, and receive payment from that sale to satisfy outstanding obligations owed to it by the LLC owner of the Miami Beach condominium. The state court set a May 30, 2023 date for the judicial sale of the Miami Beach condominium.

## II. Legal Standard

Federal Rule of Civil Procedure 69(a)(1) provides that Florida law governs the procedure on this post-judgment execution action, except to the extent that the Terrorism Risk Insurance Act (TRIA) supplements or preempts Florida law. *Stansell v. Revolutionary Armed Forces of Colombia (Stansell II)*, 771 F.3d 713, 730 (11th Cir. 2014). This means that Florida law provides the rules of procedure governing execution, and TRIA provides the substantive provisions that allow for executing on assets that OFAC has blocked.

Under Florida law, a judgment creditor may request that the Clerk of Court issue a writ of execution to satisfy a judgment. § 56.021, Fla. Stat. The judgment creditor may obtain a writ of execution against "each person who is liable on a judgment, an order, or a decree subject to execution under this chapter [56 of the Florida Statutes]." § 56.0101(4), Fla. Stat. Chapter 56,

---

Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

which governs execution in satisfaction of a judgment, establishes a three-step process where judgment creditors such as the Plaintiffs seek to execute on real property. First, a writ of execution issues. §§ 56.031, 56.061, Fla. Stat. Second, the sheriff or U.S. Marshal levies on the property, effectively attaching the property so that the property owner cannot readily transfer or dispose of it during the on-going post-judgment proceedings. § 56.061, Fla. Stat. Third, the sheriff or U.S. Marshal advertises a notice of sale for four consecutive weeks before selling the property at a sale. § 56.21, Fla. Stat. Because Plaintiffs seek a federal writ of execution, 28 U.S.C. § 566 provides that the United States Marshals Service would be charged with executing the writ and not the local sheriff. *Branch Banking & Trust Co. v. Ramsey*, 559 F. App'x 919, 923 (11th Cir. 2014).

### III. Legal Analysis

#### A. *Plaintiffs' Theory of Recovery*

Plaintiffs' Motion for Writs of Execution lays claim to non-defendant Lopez Bello's real property in South Florida. Given Lopez Bello's assistance to El Aissami and the Cartel of the Suns, Plaintiffs argue that they may satisfy their judgment from Lopez Bello's properties under § 201(a) of Terrorism Risk Insurance Act of 2002. TRIA permits attaching the blocked property not only of the defendant terrorist/judgment debtor, but also the defendant's agency or instrumentality: "Notwithstanding any other provision of law . . . the blocked assets of [a] terrorist party [against which a judgment is obtained] (*including the blocked assets of any agency or instrumentality of that terrorist party*) shall be subject to execution or attachment." *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1346 (11th Cir. 2022) (*Stansell V*) (emphasis added) (quoting § 201(a) of TRIA, codified as a note to 28 U.S.C. § 1610).

In *Stansell II*, the Eleventh Circuit set out the elements required under § 201(a) of TRIA to execute or attach assets of a third party who is alleged to be an agency or instrumentality of

5

that terrorist party. The movant must prove that (1) he obtained a judgment against a terrorist party for a claim based on an act of terrorism, (2) the amount sought to be executed or attached does not exceed the compensatory damages awarded to the movant, (3) the assets of the third party are blocked (as defined under TRIA), and (4) the owner of the asset is an agency or instrumentality of the judgment debtor/terrorist. *Stansell V*, 45 F.4th at 1347 (citing *Stansell II*, 771 F.3d at 723). The La Gorce Condominium Association asserts Plaintiffs cannot establish the Miami Beach condominium is blocked as defined by TRIA.

Blocking "can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under [the Trading with the Enemy Act or the International Emergency Economic Act]." *Stansell II*, 771 F.3d at 723. Congress amended TRIA to allow execution by victims on assets blocked pursuant to the Kingpin Act. *See Stansell V*, 45 F.4th at 1347 n.2. In this case, OFAC's designation in February 2017 of Lopez Bello as a Specially Designated Narcotics Trafficker establishes the blocking of his assets within the United States.

An agency or instrumentality need not hold the property exclusively in their name or in any particular form: on the contrary, OFAC's designation of a person or entity as a Specially Designated Narcotics Trafficker blocks not only property in their name but also any property belonging to entities that he owns. Any property owned by a corporate entity in which the agent owns at least 50% is subject to blocking. *See* 86 Fed. Reg. 26661-01, 2021 WL 1946627 (May 17, 2021) ("OFAC is amending the definition of specially designated narcotics trafficker . . . to clarify that these terms include entities directly or indirectly owned 50 percent or more by one or more specially designated narcotics traffickers, whether individually or in the aggregate."). Therefore, that the Miami Beach condominium is owned by an LLC does not in and of itself render it beyond the reach of these execution proceedings.

On February 13, 2017, OFAC designated El Aissami and Lopez Bello as Specially Designated Narcotics Traffickers under the Kingpin Act for playing a significant role in international narcotics trafficking. *See Pl. Mot. for Writ of Execution*, D.E. 47-6. The agency concluded that Lopez Bello "is a key frontman for El Aissami" and "handles business arrangements and financial matters for El Aissami generating significant profits as a result of illegal activity benefiting El Aissami." *Id.* OFAC also designated thirteen companies owned or controlled by Lopez Bello, including some registered in Florida. The agency stated: "[a]s a result of today's action, significant real property and other assets in the Miami, Florida area tied to Lopez Bello have been blocked." *Id.*

A threshold issue is whether the OFAC license granted to the La Gorce Palace Condominium Association removes the Miami Beach condominium as a "blocked asset" under TRIA and renders it beyond the reach of Plaintiffs' rights of execution at this juncture.

B. *The Miami Beach Condominium*

Whether the Miami Beach Condominium remains OFAC-blocked and subject to a TRIA claim is a legal issue. For a creditor other than a victim of terrorism, federal law requires a creditor to obtain an OFAC license to take any action that touches on a Kingpin designee's blocked property. *See* 31 C.F.R. § 598.202 (providing that "[a]ll property and interests in property that are in the United States. . . of a specially designated narcotics trafficker are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."); 31 C.F.R. § 598.301 (providing with respect to blocked property that "payments, transfers, exportations, withdrawals or other dealings may not be made or effected except pursuant to a license or other authorization from OFAC expressly authorizing such action."). The La Gorce Palace Condominium Association obtained a specific OFAC license in June 2021 to collect against the property.

The OFAC License states as follows:

Section 1 – Authorization:

(a) Subject to the conditions and limitations stated herein, La Gorce Palace Condominium Association, Inc. (the "Licensee") is hereby authorized to engage in *all transactions* necessary and incident in furtherance of its pursuit of its contractual and legal rights as it relates to the property located at 6301 Collins Avenue, Apt. 1008, Miami Beach, Florida 33141 (the "Property"), blocked pursuant to the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. Part 598, including the initiation of a judicial sale of the Property, and payment from the proceeds of such sale of all outstanding obligations, as described in the Application, and

(b) Deposit all proceeds remaining from the sale of the Property into a blocked, interest bearing account located in the United States.

OFAC License no. FNK-20180358178-1 (June 21, 2021) (D.E. 55, Exh. A).

After obtaining the license in June 2021, the La Gorce Palace Condominium Association continued to litigate its foreclosure case, which it had initiated three years earlier on July 17, 2018. The La Gorce Condominium Association obtained a summary judgment of foreclosure on March 5, 2023, issued by the Miami-Dade Circuit Court, and the judicial sale is scheduled for May 30, 2023. *See Order Granting Plaintiff's Amended Motion for Summary Judgment* (Mar. 5, 2023) (D.E. 55 at Exh. B).

"By its terms, TRIA allows victims of terror to execute only on *blocked* assets." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015). TRIA is clear that the term "blocked asset" "does not include property that is subject to a license issued by the United States Government[.]" 116 Stat. 2322, 2339-40; *Stansell v. Revolutionary Armed Forces of Colombia (Stansell I)*, 704 F.3d 910, 916 (11th Cir. 2013) ("According to [TRIA], 'blocked assets' do 'not include property that is subject to a license issued by the United States Government for final payment, transfer, or disposition. . . in connection with a transaction

8

for which the issuance of such license has been specifically required by statute.'"). TRIA is clear that only blocked assets are subject to execution and assets that are subject to a United States license do not qualify as blocked assets. *R.J. O'Brien*, 783 F.3d at 622.

In this case, OFAC granted the La Gorce Condominium Association such a license, which easily falls into TRIA's statutory definition. The scope of the license authorizes "the initiation of a judicial sale" set for May 30, 2023 and "payment from the proceeds of such sale of all outstanding obligations, as described in the Application." Because the Association followed the statutory requirements to obtain a license, TRIA operates to exclude the property from its definition of "blocked assets," therefore preventing Plaintiffs from obtaining a writ of execution against the property at this juncture.

Rather than give the license its plain meaning, Plaintiffs argue the scope of the license is limited such that the state court ordered judicial sale is improper and this Court should halt it. They argue that Section II of the License, titled "Warnings" prohibits the transfer of any blocked property. Section II, however, is very clear that transfer is not authorized "except as authorized in Section I," which contemplates a judicial sale, payment from the proceeds of the sale for the outstanding balance delineated in the license application, and the deposit of excess funds from the sale into a blocked bank account. That is exactly what the La Gorce Condominium Association requested, and the state court approved.

Plaintiffs also rely on *Stansell v. Revolutionary Armed Forces of Colombia*, No. 19-20896-CIV, 2019 WL 5296755 (S.D. Fla. Aug. 28, 2019), *R&R adopted*, 2019 WL 5290906 (S.D. Fla. Aug. 30, 2019) to argue that the proceeds from the judicial sale should not be used to satisfy the Association's lien, but rather that the license merely authorizes all sale proceeds to be put into an account. In *Stansell* (19-20896), the district court found that the OFAC license only

allowed the licensees to "recover reasonable expenses related to the sale of vessels, but required all remaining proceeds to be deposited into blocked accounts held in Lopez Bello's name." *Id.* at \*2. A reading of the license in *Stansell* (19-20896) establishes that it differs from the Association's license here. The *Stansell* license specifically states that the licensees are authorized to engage in all transactions necessary to "pay expenses, including past due amounts, ordinarily incident to the maintenance and limited operation of six vessels. . . sell and engage in all transactions to the sale of four vessels. . , recover for themselves from the proceeds of the sale(s) any reasonable expenses related to the sale(s) . . . and deposit all proceeds remaining from the sale(s) in a blocked account[.]" *OFAC License No. FNK-20170-340944-2* (Aug. 1, 2019); *Stansell*, No. 19-21986 (D.E. 239-2) (Aug. 1, 2019). The license granted to the La Gorce Palace Condominium Association, however, reads very differently than the OFAC license related to the vessels in *Stansell*. The Association's license contemplates that after the initiation of the judicial sale of the Property, there would be "payment *from* the proceeds of such sale of all outstanding obligations, as described in the application." Therefore, the Court disagrees with Plaintiffs and finds the language of the license supports the Association's position that under TRIA the condominium is an unblocked asset as it is subject to a license issued by the United States Government for final payment, transfer, or disposition. *See Stansell I*, 704 F.3d at 916 ("According to [TRIA], 'blocked assets' do 'not include property that is subject to a license issued by the United States Government for final payment, transfer, or disposition[.]"). This license allows for final payment, transfer, or disposition such that it renders the property unblocked under TRIA.

     Plaintiffs also make a temporal argument that the license is ineffective because it post-dated the Association's filing of a lien on the property and the filing of the lawsuit. Plaintiffs

request this Court find the state court foreclosure proceeding null and void because the Association obtained the license three years after it recorded the lien on the property for unpaid Association fees. To support its position, Plaintiffs cite to Federal Regulations relating to the Kingpin Act, which state that "[a]ny transfer after the effective date that is in violation of any provision of this part. . . and that involves any property . . . of a specially designated narcotics trafficker is null and void." 31 C.F.R. § 598.205(a). Plaintiffs' position is that the definition of "transfer" includes the filing of the lien and the foreclosure suit like what the Association did here. Because the lien and the filing of the lawsuit predated the issuance of the license, Plaintiffs argue that both actions, the lien and the suit, are null and void.

Plaintiffs essentially request this Court find that the Association's failure to obtain the license prior to filing suit renders the OFAC license and the subsequent state court Order Granting Summary Judgment null and void. *See* 31 C.F.R. § 598.205(a). A full reading of the regulation is instructive. The regulation adds that "an appropriate license or other authorization issued by or pursuant to the direction of authorization of the Director of the Office of the Foreign Assets Control *before, during, or after a transfer* shall validate such transfer or make it enforceable to the same extent that it would be valid or enforceable but for the provisions of the Foreign Narcotics Kingpin Designation Act, this part, and any regulation, order, directive ruling, instruction, or license issued pursuant to this part." 31 C.F.R. § 598.205(d). The granting of the license to the La Gorce Condominium Association *during* the *transfer* (i.e. during the course of the foreclosure proceedings) validates the transfer under subsection (d). Accordingly, the Court finds the failure of the La Gorce Condominium Association to obtain the license before filing its

11

lien and filing the foreclosure suit does not render the proceeding null and void. Rather, the Association validated the actions by obtaining the license during the proceeding.[3]

At oral argument, the parties confirmed that the value of the Miami Beach Condominium far exceeds the value of the Association's lien. Counsel for the Association confirmed that as the license contemplates, excess funds from the judicial sale would be placed in an interest bearing blocked account. Once the La Gorce Condominium Association satisfies its "contractual and legal rights," the excess proceeds will be deposited into a blocked account. Those funds would be subject to a renewed TRIA claim by the Plaintiffs.

Accordingly, the Court denies the Plaintiff's motion for writ of execution as to the Miami Beach Condominium because the Association already possesses a license with respect to that property. After the conclusion of the judicial sale on May 30, 2023, Plaintiffs may file a motion for a writ of garnishment as to the remaining funds.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th of May 2023.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

[3] Plaintiffs point to the language in the license that states that the "[t]his license does not authorize any *transactions* that occurred prior to the date of its issuance." It relies on this language to argue that the license issued during the foreclosure proceeding does not validate the Association's lien or foreclosure suit. This provision, however, uses the term transactions, not transfer. 31 C.F.R. § 598.205(a) defines transfer to include the "creation of any lien; the issuance, docketing, filing, or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order." Transfer is defined as "any actual or purported act or transaction." *Id.* Plaintiffs argue the lawsuit and the lien constitute a transfer, and do not argue they fall into the category of transactions, which is the narrower statutory term. Because the regulation does not expressly define transaction, the Court gives it an ordinary and plain meaning: an instance of buying or selling something; a business deal. Oxford Language Dictionary. Having found that the lawsuit and lien are not transactions, the Court finds inconsequential the language of the license stating past transactions are unauthorized.