UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 21-23190-CIV-MORENO

CARLOS EDUARDO MARRON, MARIA
MARRON, C.R., a minor, and S.A., a minor,

       Plaintiffs,

vs.

NICOLAS MADURO MOROS, FUERZAS
ARMADAS REVOLUCIONARIOS DE
COLOMBIA, CARTEL OF THE SUNS,
VLADIMIR PADRINO LOPEZ, MAIKEL
JOSE MORENO PEREZ, NESTOR LUIS
REVEROL TORRES, TAREK WILLIAM
SAAB, and TARECK EL AISSAMI,

       Defendants.

_____/

### ORDER GRANTING MOTION FOR WRIT OF EXECUTION AS TO THE PINECREST PROPERTY AND DEFERRING RULING ON THE PINECREST LLC AND FRYD MORTGAGE LLC'S LEGAL AND FACTUAL CHALLENGES

Plaintiffs, Carlos Marron and his family, filed a Motion for Writ of Execution under the

Terrorism Risk Insurance Act ("TRIA") as to two properties owned by Limited Liability

Companies operated by Samark Lopez Bello, who is alleged to be an agent of Defendants Tarek

El Aissami and the Cartel of the Suns. *See* § 201(a) of the Terrorism Risk Insurance Act of 2002,

Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337.[1] One property is a home in Pinecrest,

Florida and the other is a Miami Beach condominium. The Court already denied the motion as to

the Miami Beach condominium because the state court had ordered a judicial sale of the property

to remedy the condominium association's lien. Once the lien was paid, the remaining funds from

---

[1] This provision is codified as a note to 28 U.S.C. § 1610.

that sale were deposited into a blocked interest bearing account at First Horizon Bank. Plaintiffs filed a motion for writ of garnishment as to those proceeds, and the Clerk of Court issued the writ of garnishment. The Court deferred ruling on the motion for writ of execution as to the Pinecrest Home and allowed the parties to file supplemental briefing.

Plaintiffs' supplemental brief requests the Court employ the procedure used in *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 729 (11th Cir. 2014) (*Stansell II*), and *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 562 F. Supp. 3d 867 (C.D. Ca. 2021). In those cases, the federal district courts issued *ex parte* writs of execution after determining the plaintiffs made a *prima facie* showing of the elements of a TRIA action and allowed the alleged agencies or instrumentalities an opportunity to later refute the issuance of the writs prior to levy. The Eleventh Circuit upheld this procedure in *Stansell II* stating that "[d]uring the pendency of execution proceedings, a number of events may occur which make satisfaction using a particular asset impossible. Other judgment creditors may seek to execute against the asset." *Stansell II*, 771 F.3d at 729 ("Because the [*Mathews v. Eldridge*] factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing before the writ issued."). Relying on this admonition, the Plaintiffs urge this Court to issue the writ of execution to secure the priority of their claim as to the Pinecrest home.

In this case, however, the Court did not issue the writs *ex parte*, as originally requested by the Plaintiffs, but rather, the Court required the Plaintiffs to provide notice to the interested parties consistent with *Stansell II*'s instruction that "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." *Id.* (quoting *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). The Court heard oral argument, and allowed briefing. In their supplemental brief, Plaintiffs request the Court evaluate their *prima facie* case to determine

2

whether to issue a writ of execution, and Plaintiffs agreed to refrain from levying the writ pending resolution of the remaining legal challenges, and to allow the interested parties an opportunity to rebut Plaintiffs' *prima facie* showing.

Following the Plaintiffs' statement agreeing to refrain from levying the writ of execution, the Court issued an order to show cause to request the interested parties respond as to why the *Stansell II* and *Caballero* procedure was improper. The LLC owner of the Pinecrest home argues the procedure is improper because the default judgment in this case does not establish that the Defendants engaged in terrorism under the federal Anti-Terrorism Act, and therefore, Plaintiffs fail to state a claim under TRIA. Specifically, it argues the default judgment finds the Defendants engaged in narcoterrorism, which is not an act of terrorism. The mortgage company on the Pinecrest home, FRYD Mortgage, also opposed the procedure arguing that the properties in *Stansell II* and in *Caballero* were owned outright by the claimants, and the property here is owned by the daughter of Samark Lopez Bello and has a mortgage. For these reasons, the interested parties request the Court not issue the writ of execution despite the Plaintiffs' agreement to refrain from levying the writ. This Court will now examine threshold legal issues raised by the interested parties and then, make a determination as to whether the Plaintiffs establish a *prima facie* case under TRIA.

As set forth in this Order, the Court finds it has subject matter jurisdiction and the factors weigh against absention. The Court also finds Plaintiffs have proferred sufficient evidence to issue the writ of execution pending resolution of the remaining issues. *See Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1350 (*Stansell V*)(11th Cir. 2022) ("A third party's assets must be blocked under the TRIA when the motion for writ . . . is filed, and when the writ is issued. But that does not mean that agency/instrumentality status must be

determined as of that point in time."); *See also Stansell v. Lopez Bello (Stansell III)*, 802 F.

App'x 445, 449 (11th Cir. 2020) (finding Samark Lopez Bello was not denied due process where

district court issued writs and later gave him an opportunity to contest the findings).[2]

THIS CAUSE came before the Court upon Plaintiffs' Supplemental Brief **(D.E. 78)** and

the Plaintiffs' Motion for Writ of Execution **(D.E. 47)**.

THE COURT has considered the motion, the response, oral argument, the pertinent

portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the Motion for Writ of Execution is GRANTED and the Court directs

the Clerk of Court to issue a writ of execution in the form attached to the Plaintiffs' motion (D.E.

47-1) as to the Pinecrest home located at 9000 S.W. 63rd Court, Miami, Florida. The Court

reserves jurisdiction based on the Plaintiffs' agreement to refrain from levying the writ pending

resolution of the remaining legal and factual challenges. Therefore it is

ADJUDGED that any interested party may file a Motion to Quash the Writ of Execution

by no later than **October 19, 2023**. It is also

ADJUDGED that the Pinecrest LLC and the Miami Beach LLC shall give notice by no

later than **October 19, 2023**, to the Attorney General of the State of Florida of their pending

motion to find the state fugitive disentitlement act unconstitutional. Following notice to the

Attorney General of the State of Florida, the LLCs shall file a notice indicating their compliance

with this ruling. The Court will allow the Attorney General of Florida to file a response to the

motion.

---

[2] At this time, the remaining issues, include but are not limited to, the constitutionality of Florida's fugitive disentitlement statute, the validity of FRYD Mortgage's lien, a final determination as to whether the Pinecrest home is OFAC-blocked, a determination as to Samark Lopez Bello's status as an agent and instrumentality of Tarek El Aissami and the Cartel of the Suns, and a determination that El Aissami and the Cartel of the Suns are terrorists under TRIA. The Court also reserves ruling on whether a jury trial on the factual issues is necessary. *See Stansell V*, 45 F.4th at 1356 ("The question for us, then, is whether the evidence presented created issues of material fact as to Mr. Lopez's agency or instrumentality status. If so, a jury trial was required.") (citing § 77.08, Fla. Stat., which provides a right to jury trial in garnishment proceedings).

## I.      Background

On January 23, 2023, the Court awarded Plaintiffs a final default judgment against the

Defendants, jointly and severally, in the amount of $153,843,976. The judgment remains

unsatisfied. In granting default judgment, this Court recognized that Defendants kidnapped

Plaintiff Carlos Marron and detained him in Venezuela for a year, and the Defendants extorted

money from his wife, Plaintiff Maria Marron. The default judgment also found that the

Defendants, including Tarek El Aissami and the Cartel of the Suns, committed narcoterrorism

"using narcotics sales in Florida to fund their acts of terrorism at home." *Order Granting Motion*

*for Default Judgment*, ECF 44 at 6 (S.D. Fla. Jan. 23, 2023). As to the individual defendant

Tarek El Aissami, the United States charged him with conspiring to evade sanctions under the

Foreign Narcotics Kingpin Designation (the "Kingpin Act"). *United States v. El Aissami*, No. 19-

cr-144 (S.D.N.Y. Mar. 8, 2019) (Superseding Indictment). The same exact indictment charged

Samark Jose Lopez Bello for his role in aiding El Aissami. *Id.* Lopez Bello is *not* a defendant in

this civil case.

The Kingpin Act and its corresponding regulations block all property and interests within

the United States owned by foreign persons designated by the United States Department of

Treasury Office of Foreign Asset Control (OFAC) as "Specially Designated Narcotics

Traffickers." 21 U.S.C. § 1904(b); 31 C.F.R. §§ 598.202, 598.301. On February 13, 2017, OFAC

designated Tarek El Aissami and Samark Lopez Bello as Specially Designated Narcotics

Traffickers pursuant to the Kingpin Act. Lopez Bello's designation was published in the Federal

Register on February 17, 2017, which is the operative date after which his property became

OFAC-blocked.

After obtaining default, Plaintiffs, Carlos Eduardo Marron, his wife Maria Marron, and

their children, filed an expedited *Ex Parte* Motion for Writs of Execution as to two properties, owned by Limited Liability Companies, which Plaintiffs contend are shell companies owned and operated by Samark Jose Lopez Bello. One property is a home located at 9000 S.W. 63rd Court, Miami, Florida (the "Pinecrest home") and the other is a condominium located at 6301 Collins Avenue, Apt. 1008, Miami Beach, Florida (the "Miami Beach condominium").

Under TRIA, terrorism victims such as the Plaintiffs may satisfy their judgment from property blocked by OFAC. TRIA provides a right of action to recover against blocked property owned by an agent or instrumentality of a terrorist or terrorist organization.[3] Plaintiffs are invoking this statutory right in their motion requesting writs of execution as to the two properties based on Lopez Bello's role as an agent or instrumentality of two Defendants in this case, the Cartel of the Suns and Tarek El Aissami.

There are interested parties with claims on the properties. In the Motion for Writs of Execution, Plaintiffs advise the Court that the Pinecrest home is the subject of an ongoing state court foreclosure proceeding. *See Fryd Mortgage, LLC v. 9000 S.W. 63rd Court, LLC, & Maria Lopez*, No. 2020-016686-CA-01 (11th Jud. Cir. Ct.).[4] The Court required the Plaintiffs to provide notice of their Motion for Writs of Execution to interested parties and set the matter for hearing on March 2, 2023. The Court allowed interested parties to file responses to the Plaintiffs' motion. Fryd Mortgage, LLC, 6301 Collins Avenue 1008 LLC ("Miami Beach LLC"), 9000 S.W. 63rd Court LLC ("Pinecrest LLC"), and the La Gorce Palace Condominium Association

---

[3] § 201 of TRIA reads as follows:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

[4] The state court case is set for trial in March 2024.

filed responses opposing the Plaintiffs' request for writs of execution.

On May 24, 2023, the Court denied the motion for writ of execution as to the Miami Beach Condominium and allowed a judicial sale to take place. The condominium association had obtained an OFAC license to recover against the property. The proceeds from the sale of the condominium paid the association, and the remaining proceeds were deposited into an OFAC-blocked interest bearing account at First Horizon Bank. Plaintiffs moved for a writ of garnishment as to the account, and the Clerk of Court issued the writ of garnishment. The Miami Beach LLC moved to quash the writ of garnishment. That motion remains pending.

The Court must now decide whether Plaintiffs make a prima facie showing under TRIA to obtain a writ of execution as to the Pinecrest home. There are a few threshold issues presented in the briefs, which the Court must decide before evaluating the Plaintiffs' *prima facie* showing under TRIA.

## II.     Legal Standard

Federal Rule of Civil Procedure 69(a)(1) provides that Florida law governs the procedure on this post-judgment execution action, except to the extent that TRIA supplements or preempts Florida law. *Stansell II*, 771 F.3d at 730. This means that Florida law provides the rules of procedure governing execution, and TRIA provides the substantive provisions that allow for executing on assets that OFAC has blocked.

Under Florida law, a judgment creditor may request that the Clerk of Court issue a writ of execution to satisfy a judgment. § 56.021, Fla. Stat. The judgment creditor may obtain a writ of execution against "each person who is liable on a judgment, an order, or a decree subject to execution under this chapter [56 of the Florida Statutes]." § 56.0101(4), Fla. Stat. Chapter 56, which governs execution in satisfaction of a judgment, establishes a three-step process where a

judgment creditor seeks to execute on real property. First, a writ of execution issues. §§ 56.031,
56.061, Fla. Stat. Second, the sheriff or U.S. Marshal levies on the property, effectively attaching
the property so that the property owner cannot readily transfer or dispose of it during the on-
going post-judgment proceedings. § 56.061, Fla. Stat. Third, the sheriff or U.S. Marshal
advertises a notice of sale for four consecutive weeks before selling the property at a sale. §
56.21, Fla. Stat. Because Plaintiffs seek a federal writ of execution, 28 U.S.C. § 566 provides
that the United States Marshals Service would be charged with executing the writ and not the
local sheriff. *Branch Banking & Trust Co. v. Ramsey*, 559 F. App'x 919, 923 (11th Cir. 2014).

Although the procedure for a writ of execution is automatic under Florida law, this case is
not one where the Court issued a writ of execution simply because there is a judgment. The
considerations are different where, as here, Plaintiffs seek to recover against real property owned
by an agent of the Defendants, who presumably was not on notice as to the judgment. Florida
law has specific requirements for notice and an opportunity to be heard. § 56.21, Fla. Stat.
("When levying upon real property, notice of such levy and execution sale and affidavit . . . shall
be made to the property owner of record in the same manner as notice is made to any judgment
debtor[.]"); § 56.16, Fla. Stat. (outlining procedure for third-party claimants to halt an execution
sale); § 77.07(2), Fla. Stat. (permitting "any other person having an ownership interest in
[garnished] property" to move to dissolve the writ with a motion); *Stansell II*, 771 F.3d at 725.

The Eleventh Circuit held unequivocally that "parties whose assets are under threat of
execution pursuant to TRIA § 201 are entitled to notice and an opportunity to be heard in order
to rebut the allegations and preserve their possessory interest in blocked assets." *Stansell II*, 771
F.3d at 726 (citing *Dusenbery*, 534 U.S. at 167). It added that "[w]ithout notice and a fair hearing
where both sides are permitted to present evidence, the third party never has an opportunity to

dispute its classification as an agency or instrumentality." *Id.* at 727. "Due process contemplates offering a party an opportunity to rebut charges leveled against it, not allowing that party's opponent to present evidence supporting that charge." *Id.*

## II.    Legal Analysis

The interested parties raise a myriad of issues, which this Court will examine to determine whether to issue a writ of execution as to the Pinecrest home. Before addressing whether Plaintiffs make a sufficient *prima facie* showing under TRIA, the Court must decide the following threshold matters. First, the Court will examine whether there is a private right of action under TRIA to execute on a property that is blocked by the Kingpin Act. Second, the Court will examine whether the Pinecrest LLC can collaterally attack the default judgment, and whether the Court lacked subject matter to enter the default judgment because Tarek El Aissami is immune from suit. The Court will then evaluate whether it should abstain from this case given the pending state court foreclosure action. Finally, the Court will examine whether Plaintiffs make a *prima facie* showing under TRIA.

### A.  *Kingpin Act Blocked Property*

Originally, TRIA provided a right of action as to blocked assets seized or frozen under the Trading with the Enemy Act or the International Emergency Economic Powers Act. Congress, however, amended the laws in 2018 to allow for a right of action against assets seized under the Kingpin Act. The Pinecrest LLC, however, argues that Congress did not amend TRIA's definition of blocked assets, but rather, Congress amended the federal Anti-Terrorism Act. The Anti-Terrorism Act states: "[f]or purposes of section 201 of [TRIA] (28 U.S.C. § 1610 note), in any action in which a *national of the United States* has obtained a judgment against a terrorist party pursuant to this section, the term 'blocked asset' shall include any asset of that

terrorist party (including blocked assets of any agency or instrumentality of that party) seized or frozen . . . under the Foreign Narcotics Kingpin Designation Act." 18 U.S.C. § 2333(e) (emphasis added). The Pinecrest LLC argues that the change to the law clarifies that only United States nationals with judgments against a terrorist party under the federal Anti-Terrorism Act may recover against Kingpin Act-blocked assets belonging to terrorist parties or their agents and instrumentalities. This is because only "nationals of the United States injured in his or her person, property, or business by reason of an act of international terrorism" have standing to sue under the federal Anti-Terrorism Act. 18 U.S.C. § 2333(a). Plaintiff Carlos Marron is not a U.S. National, but his wife and children are. Maria Marron, and her children S.A. and C.R. have obtained a default judgment for $75 million dollars, which far exceeds the value of the Pinecrest home.

A careful reading of the statute fails to support the Pinecrest LLC's position. In this case, three U.S. Nationals have obtained a judgment. The statute allows recovery against a Kingpin Act-blocked asset "in any *action* in which a national of the United States has obtained a judgment." The Eleventh Circuit has stated that "an action means 'a lawsuit'" and has rejected the argument that action means claims. An action "refers to the whole case." *Vachon v. Travelers Home & Marine Ins. Co.*, 20 F.4th 1343, 1349 (11th Cir. 2021) (concurrence by Pryor, C.J. and Lagoa, J.). Regardless of the Pinecrest LLC's more limited reading of the statute, in this case, there are unequivocally three U.S. nationals with a valid judgment.

*B. Subject Matter Jurisdiction based on Foreign Official Immunity*

To the extent that the Pinecrest LLC argues that the federal Anti-Terrorism Act judgment was erroneously entered in favor of Mrs. Marron and her children, that argument is an improper

collateral attack on this Court's default judgment.[5] In TRIA execution disputes, courts have

followed black-letter law and recognized that alleged agencies or instrumentalities lack standing

to raise defenses that the named defendants could have raised for themselves. *See Caballero*, 562

F. Supp. 3d at 880 (C.D. Cal. 2021) (holding that agency or instrumentality "lacks standing to

object to personal jurisdiction on behalf of the named defendants in the [Anti-Terrorism Act]

action.") (citing *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general

rule allow litigants to assert only their own legal rights and interests, and not the legal rights and

interests of third parties.")). In *Weininger v. Castro*, the court concluded that under the

circumstances "the policies and principles underlying res judicata doctrine would make it

manifestly inequitable for this Court to reopen the judgments so as to permit a challenge to the

underlying adjudication" at the request of a garnishee and an amicus curiae. 462 F. Supp. 2d 457

(S.D.N.Y. 2006)

The Pinecrest LLC relies on *Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir.

2014), which states that a "default judgment rendered in excess of a court's jurisdiction is void."

A "defendant that has never appeared is always free. . .to assert a jurisdictional attack later, in the

court where enforcement of the default judgment is sought, and to have its jurisdictional

objections considered *de novo*." *Id.* Here, it is not the defendant, but rather an agent of the

defendant, that is seeking to challenge this Court's jurisdiction in the first place by arguing that

the Court exceeded the bounds of its jurisdiction because Tarek El Aissami enjoys immunity

from suit under the Foreign Sovereign Immunities Act and the federal Anti-Terrorism Act. 28

U.S.C. § 1330; 18 U.S.C. § 2337.[6]

---

[5] The argument is that the default judgment was erroneously entered because Tarek El Aissami is immune from suit, and therefore, the Court lacked subject matter jurisdiction to enter a judgment against him.

[6] The Pinecrest LLC also relies on *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 580-84 (5th Cir. 2006) to state that the garnishees were allowed to raise the issue of the Congo's sovereign immunity on appeal.

Even if the Court were to follow *Jerez*, as opposed to *Caballero*, and allow the Pinecrest LLC to collaterally attack the default judgment, the Court does not find that El Aissami is immune under the Foreign Sovereign Immunities Act or the federal Anti-Terrorism Act. The Foreign Sovereign Immunities Act does not apply to individuals. *See Samantur v. Yousuf*, 560 U.S. 305 (2010) (stating that the common law, rather than the Foreign Sovereign Immunities Act, governs the immunity of foreign officers). *Samantur* reiterates the common law's two-step process to determine if an individual is immune. The first step is that the "diplomatic representative of the sovereign could request a 'suggestion of immunity' from the State Department." *Id.* at 311 (citing *Ex Parte Peru*, 318 U.S. 578, 581 (1943)). Here, Venezuela has not requested immunity for El Aissami. *See Broidy Capital Mgm't LLC v. Muzin*, 12 F.4th 789, 800 (D.C. Cir. 2021) (denying immunity and stating that foreign state's silence weighs against immunity). The second step requires the foreign official to establish three criteria. "First, whether the actor is a public minister, official, or agent of the foreign state. Second, whether the acts were performed in her official capacity. And third, whether exercising jurisdiction would serve to enforce a rule of law against the foreign state." *Lewis v. Mutond*, 918 F.3d 142, 146 (D.C. Cir. 2019) (citing Restatement [2d of Foreign Relations] § 66). The analysis of this second step is akin to that which the Court must use to determine immunity under the federal Anti-Terrorism Act.

In addition to arguing that the Foreign Sovereign Immunities Act shields El Aissami from suit, the Pinecrest LLC also argues the federal Anti-Terrorism Act provides immunity, which stripped this Court of jurisdiction. The federal Anti-Terrorism Act states that a plaintiff cannot sue a foreign state, agency of a foreign state, or officer or employee of a foreign state working in

---

In *FG Hemisphere*, however, the Congo itself was a party on appeal. And the opinion refers to the garnishees and the Congo as raising the sovereign immunity issue. That case is different than the situation present here where the Defendants have not entered an appearance at all.

his official capacity or under color of law. 18 U.S.C. § 2337. The Pinecrest LLC contends that El
Aissami is entitled to immunity because he is sued based on his official conduct while serving as
Vice President of Venezuela. Thus, both the second step of the common law immunity doctrine
and the federal Anti-Terrorism Act require this Court to determine whether, in fact, El Aissami
was a public official performing an act in his official capacity. The complaint, in this case,
alleges that a day before Plaintiff Marron's arrest, El Aissami announced the arrest of 86 people
as part of Operation Paper Hands in April 2018, and that many of those people were affiliated
with the Plaintiff.

 The parties dispute whether El Aissami was indeed working in his official capacity as
Vice President when he made the announcement, such that sovereign immunity would apply. In
this context, it is relevant that the United States "ceased to recognize the government of Nicolas
Maduro in August 2017," and courts are "bound to accept the President's statement that the 2015
National Assembly, not the Maduro government, is the legitimate political authority in
Venezuela." *PDVSA U.S. Litig. Trust v. Lukoil Pan Americas LLC*, 65 F.4th 556, 563 (11th Cir.
2023). Because the United States did not recognize the Maduro regime at the time of the
Plaintiff's kidnapping and at the time El Aissami announced the arrest of 86 people, El Aissami
is not a public minister, official, or agent of a foreign state working in his official capacity.
Therefore, El Aissami is not entitled to immunity from suit under the Foreign Sovereign
Immunities Act or the Anti-Terrorism Act. *Knox v. Palestine Liberation Organization*, 306 F.
Supp. 2d 424, 439-448 (S.D.N.Y. 2004) (finding no immunity where the United States did not
recognize the Palestinian government).

 In a final attempt on the immunity point, the Pinecrest LLC argues that because the
United States did not recognize the government of Juan Guaido until January 23, 2019, after

Plaintiff Marron's kidnapping, that El Aissami is entitled to immunity. While it is true that the

United States did not recognize the Guaido government until January 23, 2019, it had stopped

recognizing the Maduro regime (and El Aissami) as a legitimate government in April 2017.

During the interim period, the United States recognized the 2015 National Assembly. Therefore,

this argument also fails to establish El Aissami's immunity. To rule otherwise would be

tantamount to providing "an incongruous act of 'judicial recognition' of a government not

recognized by the United States." *Id.*, 306 F. Supp. 2d at 448.

### B. Abstention Doctrine

Federal courts enjoy a "virtually unflagging obligation . . . to exercise the jurisdiction

given them." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir.

2004) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818

(1976)). Abstention is an "extraordinary and narrow exception to the duty of a District Court to

adjudicate a controversy properly before it." *Colo. River*, 424 U.S. at 813. In the Eleventh

Circuit, courts are guided by six factors in assessing whether to abstain: "1) whether one of the

courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the

potential for piecemeal litigation; (4) the order in which the fora obtained jurisdiction; (5)

whether state or federal law will be applied; and (6) the adequacy of the state court to protect the

parties' rights." *Ambrosia Coal*, 368 F.3d at 1331 (citing *Am. Bankers Ins. Co. of Fla. v. First

State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990)).

The Pinecrest LLC argues that by moving to intervene in the foreclosure action relating

to the Pinecrest home, the Plaintiffs have submitted themselves to the state court's jurisdiction.

The state court, however, denied that motion to intervene on August 18, 2023. Although the

Plaintiffs are not parties to the state court proceedings, the Court nevertheless weighs the abstention factors.

The parties dispute how the Court should weigh the factors. Although the state court has not issued a default or a summary judgment order in the foreclosure proceeding, the Pinecrest home is within the jurisdiction of the state court action. The parties agree on the second factor that the federal forum is convenient and therefore, weighs against abstention. As to the third factor, the Court is concerned about piecemeal litigation because the validity of FRYD Mortgage's lien is at issue in both cases. Piecemeal litigation occurs when different courts adjudicate an identical issue, duplicating judicial effort, and possibly leading to conflicting results. Therefore, the piecemeal litigation factor favors abstention. The timing of the cases also affects whether the Court should abstain, but it "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983). While the state court action started before this action, this Court already entered judgment in this case. Therefore, the Court cannot find that simply by having been filed first, the state court action should take precedence. This factor also cuts against abstention. The fifth factor is whether the Court would have to apply state or federal law. In this case, this factor weighs against abstention because although the Court must apply Florida's execution procedures, the Court must ultimately decide the merits under the substantive federal law of TRIA. The final factor, whether the state court can adequately protect the parties' rights, favors the federal forum as the Plaintiffs' motion to intervene was denied by the state court. Moreover, the state court lacks jurisdiction to grant the relief the Plaintiffs seek under TRIA to execute on this Court's default judgment. On balance, the Court finds the factors do not favor abstention.

### C. *Plaintiffs' Prima Facie Case*

Plaintiffs' Motion for Writ of Execution lays claim to non-defendant Pinecrest LLC's home in South Florida. Plaintiffs provide evidentiary support that the Pinecrest LLC is operated by Samark Lopez Bello. Given Lopez Bello's assistance to El Aissami and the Cartel of the Suns, Plaintiffs argue that they may satisfy their judgment from Lopez Bello's properties under § 201(a) of TRIA, which provides the substantive law that governs terrorism victims' efforts to satisfy judgments from the blocked properties of Defendants and their agencies and instrumentalities. It permits attaching the blocked property not only of the defendant terrorist/judgment debtor, but also the defendant's agency or instrumentality: "Notwithstanding any other provision of law . . . the blocked assets of [a] terrorist party [against which a judgment is obtained] (*including the blocked assets of any agency or instrumentality of that terrorist party*) shall be subject to execution or attachment." *Stansell V*, 45 F.4th at 1346 (emphasis added) (quoting § 201(a) of TRIA, codified as a note to 28 U.S.C. § 1610).

The Eleventh Circuit set out the elements required under § 201(a) of TRIA to execute or attach assets of a third party who is alleged to be an agency or instrumentality of that terrorist party. "The movant must prove that (1) he obtained a judgment against a terrorist party for a claim based on an act of terrorism, (2) that the amount sought to be executed or attached does not exceed the compensatory damages awarded to the movant, (3) that the assets of the third party are blocked (as that term is defined under TRIA), and (4) that the third party is an agency or instrumentality of the terrorist party." *Stansell V*, 45 F.4th at 1347 (citing *Stansell II*, 771 F.3d at 723). For purposes of this motion, the Court must determine if Plaintiffs make a *prima facie* showing to establish those elements, sufficient to issue the writ. Prong two is not in dispute as the value of the default judgment exceeds the value of the Pinecrest home.

The interested party, the Pinecrest LLC, argues Plaintiffs' *prima facie* showing fails to

show that Plaintiffs obtained a judgment against a terrorist party for a claim based on an act of terrorism. It also argues that Plaintiffs fail to make a *prima facie* showing that Lopez Bello is an agent or instrumentality of El Aissami and/or the Cartel of the Suns. FRYD Mortgage argues that a writ of execution should not issue on a property where there is a mortgage and it is unclear who owns the property.

### 1. Prong 1: Does the default judgment sufficiently establish that it was based on an act of terrorism under TRIA?

To reiterate, Plaintiffs must show that they obtained a judgment against a terrorist party for a claim *based* on an act of terrorism. The parties dispute whether the default judgment is based on an act of terrorism. The applicable definition of act of terrorism is set forth in § 102 of TRIA and the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(3)(B)(iii).  *See* Pub. L. No. 107-297, § 201(d), TRIA. An "act of terrorism" under the Immigration and Nationality Act, includes any kidnapping to "compel a third person . . . to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained." *See* 8 U.S.C. § 1182(a)(3)(B)(iii)(II). The kidnapping of Marron and the acts of extortion against his wife are acts of terrorism under this definition. The Pinecrest LLC argues that they are not acts of terrorism because the Immigration and Nationality Act's definition requires the seizure be done to "compel a third person" to act. The LLC takes the position that seizure and detention to compel that same individual to act does not qualify. That might be true, but in this case, the act of kidnapping Carlos Marron was used to extort his wife, who obtained a judgment under the federal Anti-Terrorism Act. The seizure was used to "compel a third person" to act as stated in the Immigration and Nationality Act.

Moreover, an act of terrorism, also includes conspiracy to engage in kidnapping. *See* 8 U.S.C. § 1182(a)(3)(B)(iii)(VI) ("A threat, attempt, or conspiracy to do any of the foregoing.").

The Complaint alleges that members of the Maduro criminal enterprise, which includes El Aissami and the Cartel of the Suns, conspired and agreed to commit acts of terrorism designed to intimidate the Venezuelan civilian population, including kidnapping, torture, and arbitrary detention, disappearances, and murder. The Complaint also alleges that El Aissami announced that 86 individuals (some with connections to Plaintiff) would be arrested for disseminating false information. It adds that the "operation was centered on Carlos Eduardo Marron, owner of the website Dolar Pro." *Complaint*, ECF 1 at ¶ 152.

To rebut this argument that the conspiracy is sufficient to find an act of terrorism, the Pinecrest LLC argues that this federal Anti-Terrorism Act default judgment was not based on a conspiracy to kidnap and therefore, cannot be the basis of a claim under TRIA. The Immigration and Nationality Act also defines "act of terrorism" to include the use of chemical weapons for the commission of a terrorist activity. 8 U.S.C. § 1182(a)(3)(B)(iii)(VI). The Plaintiffs' theory in this case, which is embodied in the default judgment, is that El Aissami, the FARC, and the Cartel of the Suns financially supported the Maduro regime with narcotrafficking proceeds, which enabled Marron's kidnapping. The United States government has labeled narcotrafficking as narcoterrorism.[7] And there is no question that the federal Anti-Terrorism Act default judgment was based on narcoterrorism, which is an act that is harmful to human life. *See also* Pub. L. 107-297, § 102, TRIA. Accordingly, the Court finds the Plaintiffs sufficiently meet their burden to show the judgment is based on an act of terrorism.

Moreover, TRIA does not require courts to re-examine the merits of the claim, but merely states that Plaintiffs must show they obtained a judgment against a terrorist party *based* on an act

---

[7] *See Order Granting Motion for Default Judgment*, ECF 44 at 6 ("Defendants also engage in narcoterrorism in Florida."); *Complaint*, ECF 1 at ¶ 77 (quoting U.S. Attorney Geoffrey S. Berman) ("As alleged, Maduro and the other defendants expressly intended to flood the United States with cocaine in order to undermine the health and wellbeing of our nation. Maduro very deliberately deployed cocaine as a weapon.").

of terrorism. *Stansell V*, 45 F.4th at 1347 (citing *Stansell II*, 771 F.3d at 723). Plaintiffs have sufficiently made a *prima facie* showing that they obtained a judgment against El Aissami and the Cartel of the Suns *based* on an act of terrorism.

Next, the Pinecrest LLC contests whether Plaintiffs meet the other statutory requirements to obtain a writ of execution as to the Pinecrest home, which includes whether Tarek El Aissami is a terrorist and whether the Cartel of the Suns is a terrorist organization, and whether Samark Lopez Bello is their agent and instrumentality.

### 2. *Prong 1: Are El Aissami and the Cartel of the Suns terrorists?*

The next issue is whether Plaintiffs can establish that Tarek El Aissami and the Cartel of the Sun are "terrorist parties." 18 U.S.C. § 2333(e) only allows collection of blocked assets from agencies or instrumentalities of "terrorist parties" (or the terrorist parties themselves). TRIA defines "terrorist party" as either a "terrorist, a terrorist organization (as defined in. . . 8 U.S.C. § 1182(a)(3)(B)(vi)); or a foreign state designated as a state sponsor of terrorism[.]" Pub. L. 107-297; 116 Stat. 2322, § 201(d)(4), TRIA.

TRIA does not define the term "terrorist" and as such, the Court must give the term its plain meaning. Black's Law Dictionary defines terrorist as one who "uses violence such as bombing, shooting, or kidnapping in an attempt to intimidate . . . especially as a means of achieving a political end." (11th ed. 2019). This is exactly the type of act described in the Court's default judgment.

More specifically, the Court's default judgment found the Defendants, including El Aissami, orchestrated the kidnapping and torture of Carlos Marron to punish him and deter others from speaking out against the Maduro regime and to extort money from his wife and family. The United States indicted El Aissami for conspiracy to evade sanctions imposed by the United States. Moreover, OFAC designated El Aissami as a Specially Designated Narcotics

Trafficker pursuant to the Kingpin Act for playing a significant role in international narcotics trafficking. The OFAC designation is entitled to deference. *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 8:09-2308-T-26MAP, 2013 WL 12203820, *4 (M.D. Fla. April 19, 2013) (*Stansell VI*) (citing *De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989) ("The decision of OFAC is entitled to great deference, and should be reversed only if arbitrary and capricious.")).

Making a temporal argument, the Pinecrest LLC asserts that Tarek El Aissami is not a *terrorist* under TRIA because there are no allegations that he engaged in any terrorist activity *as of the dates* of the default judgment and Plaintiffs' first attempt to execute under TRIA. The Eleventh Circuit expressly rejected this reading of TRIA. *Stansell V*, 45 F.4th at 1350. There, Lopez Bello raised the exact same argument that the word "shall" indicates present tense. But "contrary to the assertion of the Lopez appellants, the word 'shall' does not necessarily connote the present tense. . . Second, in a statute like § 201(a) of the TRIA, the word 'shall' is used in its usual 'mandatory' legal sense." *Id.* at 1351. *Stansell V* thus precludes the Pinecrest LLC's argument that the word "shall" requires Plaintiffs to make allegations that El Aissami engaged in terrorist activity as of the date of the default judgment and as of the date Plaintiffs filed their motion for writ of execution under TRIA. *Id.* at 1350 ("We conclude, based on *Stansell II*, that the magistrate judge and the district court correctly rejected the contention that a third party must be an agency or instrumentality of a terrorist party at the time that execution or attachment is sought under the TRIA.").

Having found that Plaintiffs make a *prima facie* showing that El Aissami satisfies the definition of terrorist, the Court need not examine whether the Cartel of the Suns also meets the

definition of a terrorist organization. The Court reserves ruling on the Cartel's status as a terrorist organization should that finding ultimately be a necessary one.

### 3. Prong 3: Is the Pinecrest Home OFAC-blocked?

Blocking "can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under [the Trading with the Enemy Act or the International Emergency Economic Powers Act]." *Stansell II*, 771 F.3d at 726. Congress amended the TRIA to allow execution by victims on assets blocked pursuant to the Kingpin Act. *See Stansell V*, 45 F.4th at 1347 n.2. In this case, OFAC's February 2017 designation of Lopez Bello as a Specially Designated Narcotics Trafficker establishes the blocking of his assets within the United States. The issue here is whether the Pinecrest home owned by an LLC is blocked.

An agency or instrumentality need not hold the property exclusively in its name or in any particular form: on the contrary, OFAC's designation of persons or entities as a Specially Designated Narcotics Traffickers blocks not only property in their name but also any property belonging to entities that they own. Any property owned by a corporate entity in which the agent owns at least 50% is subject to blocking. *See* 86 Fed. Reg. 26661-01, 2021 WL 1946627 (May 17, 2021) ("OFAC is amending the definition of specially designated narcotics trafficker . . . to clarify that these terms include entities directly or indirectly owned 50 percent or more by one or more specially designated narcotics traffickers, whether individually or in the aggregate."). Therefore, that the Pinecrest home is owned by an LLC does not, in and of itself, render it beyond the reach of these execution proceedings.

On February 13, 2017, OFAC designated El Aissami and Lopez Bello as Specially Designated Narcotics Traffickers under the Kingpin Act for playing a significant role in international narcotics trafficking. *See Pl. Mot. for Writ of Execution*, D.E. 47-6 (archived content from the U.S. Department of Treasury). The agency concluded that Lopez Bello is a "key

frontman" for El Aissami and "handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami." *Id.* OFAC also designated various companies owned or controlled by Lopez Bello, including some registered in Florida. The agency stated: "[a]s a result of today's action, significant real property and other assets in the Miami, Florida area tied to Lopez Bello have been blocked." *Id.*

The question is whether the Pinecrest home owned by the Pinecrest LLC is subject to the OFAC-block. Fryd Mortgage and the Pinecrest LLC argue it is not blocked because the Pinecrest LLC is not on the OFAC list and the property was gifted to Maria Lopez, Lopez Bello's daughter in 2016.

<em>a. The Pinecrest Home</em>

The determination of whether the Pinecrest home is subject to the OFAC-block is a factual one. The relevant inquiry under the Kingpin Act is whether Lopez Bello owned or controlled the property. The mortgagor on the Pinecrest home and the plaintiff in the state court foreclosure action, FRYD Mortgage, argues that the Pinecrest property is not subject to the block because the property does not appear on the OFAC list and Lopez Bello gifted it to his daughter Maria Lopez. Plaintiffs provide evidentiary support to refute FRYD's claim that the property is unblocked.

First, Plaintiffs cite to a statement by Lopez Bello stating that he "owned and controlled" 100% of the Pinecrest LLC. *Decl. of William C. Marquardt*, ECF 47-27 at Exh. W at 24. That Exhibit is the Declaration of William C. Marquardt, Lopez Bello's forensic accountant, where he attaches a list of Lopez Bello's disclosed entities, which includes the Pinecrest LLC.

Next, Plaintiffs provide an affidavit filed in state court by the Pinecrest LLC's counsel affirming that the "purchase of the [Pinecrest] property was funded by Samark Lopez Bello" and that since Lopez Bello's OFAC designation, "the [Pinecrest] property has been included in all of

the blocked property reports filed with OFAC." *Affidavit of Jorge Salcedo*, ECF 62-2  at Exh. B at 9, ¶ 7.

Third, Plaintiffs support their position that the property is blocked by providing a verified interrogatory response from the Pinecrest LLC, which states the property is blocked and the Village of Pinecrest provides basic landscaping pursuant to an OFAC license. *Depo. of Maria Lopez*, ECF 47-30 at Exh. Z at 17. That the Village of Pinecrest has the license is evidence that the property is blocked because OFAC would not issue a license for an unblocked property. *Pls. Reply to FRYD Mortgage Resp.*, ECF 62-2 (explaining that an OFAC license is an authorization to engage in a transaction with respect to blocked property that would otherwise be prohibited).

Finally, Plaintiffs point to the deposition testimony of Maria Lopez indicating that the house was blocked by OFAC. *Depo. of Maria Lopez*, ECF 47-30. FRYD relies on a portion of her deposition where Ms. Lopez states that the Pinecrest home was a gift from her father. He allowed her to live there rent free while she attended college. Plaintiffs argue this testimony is insufficient to show that she has control of the property, such that the Kingpin Act does not apply. There was never a transfer of the Pinecrest home from Lopez Bello to his daughter, which would have required compliance with § 689.01, Fla. Stat. (specifying how to legally transfer real property in Florida).

FRYD Mortgage attempts to discredit this evidence by arguing that by serving as the manager of the Pinecrest LLC Maria Lopez had control. Generally, a manager of an LLC is a person who, under the operating agreement of a manager-managed limited liability company, is responsible for performing management functions. *See generally*, §§ 605.0407(3), 605.04073(2), Fla. Stat. Even though she was listed as the Pinecrest LLC manager, Maria Lopez testified that she did not file taxes, and did not know who filed taxes on behalf of the corporation. *Depo. of*

*Maria Lopez*, ECF 47-30 at Exh. Z at 10. She also did not know if the Pinecrest LLC had a bank account. *Id.* She said that her father paid for work to the house and for the real estate taxes. *Id.* at 11-12. Finally, Ms. Lopez testified that because the property was OFAC-blocked, she had not monitored the property since 2017. *Id.* at 13. Her testimony belies any contention that she controlled the Pinecrest LLC and the home.

Finally, FRYD argues that the Pinecrest LLC is not listed as a blocked entity on OFAC's list as owned by Lopez Bello. Under OFAC's 50% Rule, once OFAC designates a person (here, Lopez Bello), all property of that person and all property of an entity in which the Specially Designated Narcotics Trafficker owns or controls at least a 50% interest automatically becomes blocked under the Kingpin Act regulations. *See* 31 C.F.R. § 598.314(c) ("The term specially designated narcotics trafficker means . . . entities owned in the aggregate, directly or indirectly, 50 percent or more by one or more specially designated narcotics traffickers."). This common-sense rule prevents a blocked person from avoiding the reach of OFAC sanctions through the simple act of putting the property in the name of an LLC, in which the specially designated narcotics trafficker owns a material interest. Thus, the fact that the Pinecrest home is titled in Pinecrest LLC's name is insufficient to allow this Court to find the home is unblocked. Even though the Pinecrest LLC's name is not listed on the blocked list, the creditor, FRYD Mortgage here, has "constructive notice" as of the date of the OFAC designation. *See Versilia Supply Serv. SRL v. M/Y WAKU*, 371 F. Supp. 3d 1143, 1147 (S.D. Fla. 2019) ("The Kingpin Act and Regulations preclude 'transfers' after 'the date on which actual or constructive notice of [that] designation is received.").

Perhaps, the most telling evidence that the Pinecrest home is indeed blocked by OFAC is the Pinecrest LLC's response to the Plaintiff's motion. In that response, the Pinecrest LLC

concedes the property is blocked by OFAC under the Kingpin Act.

Given this evidence, the Court finds that Plaintiff has made a *prima facie* showing to meet prong 3 of TRIA that the Pinecrest home is blocked. Because the Court is allowing the interested parties an opportunity to present evidence to rebut the Plaintiffs' *prima facie* showing, the Court reserves ruling on the validity of FRYD Mortgage's claim to the property. The Court, however, will note that the evidence that the property is blocked is strong, and FRYD lacked an OFAC license, which FRYD would have needed to issue the mortgage and to file the foreclosure action. *See* 31 C.F.R. § 598.301 (the federal regulation implementing the Kingpin Act provides that "payments, transfers, exportations, withdrawals or other dealings [with respect to blocked property] may not be made or effected except pursuant to a license or other authorization from OFAC expressly authorizing such action."); *Stansell v. Revolutionary Armed Forces of Colombia*, No. 09-2308-T-36AAS, 2019 WL 2537791, at *4 (M.D. Fla. June 20, 2019) (explaining that a non-TRIA creditor without an OFAC license cannot execute on blocked property). Moreover, the Court is concerned that FRYD Mortgage lacks a lawful claim to the property because the mortgage is fraudulent. This mortgage was one procured by the criminal defendants in *U.S. v. Castaneda*, No. 20-CR-20155, ECF 154, 155 (S.D. Fla. Aug. 11, 2021), where the criminal defendant who obtained the mortgage had no legal right to encumber the Pinecrest home. *See Branch Banking & Tr. Co. of Va. V. M/Y BEOWULF*, BNo. 11-80692-CIV, 2012 WL 464002, at *5 (S.D. Fla. Feb. 13, 2012) (explaining that a mortgagor must have legal title to the property at the time of the mortgage execution to pass a valid security interest on to the mortgagee). In this case, the criminal defendant Katherine Hansen Mendoza admitted to impersonating Maria Lopez to fraudulently obtain a mortgage from FRYD Mortgage on the Pinecrest home. The district court accepted Hansen Mendoza's guilty plea.

25

For these reasons, the Court finds that the presence of a mortgage on this property is insufficient to rebut the Plaintiffs' *prima facie* showing under TRIA that Samark Lopez Bello owned the Pinecrest home.[8]

### 4.  Prong 4: Is Lopez Bello an agent or instrumentality under TRIA?

*Stansell II* approved an analysis to determine if someone is an agent or instrumentality of a terrorist. The Eleventh Circuit has clarified the meaning of an agency or instrumentality, stating that the definition includes any party that provides material support to a terrorist party, whether financial, technological, or the provision of goods and services. *See Stansell V*, 45 F.4th at 1357 (quoting *Stansell II*, 771 F.3d at 724, n. 6). A third party who provides material support to a terrorist *at any point* in time constitutes an agency or instrumentality, even if they purportedly stopped aiding the terrorist. *Id.* at 1350.

The Eleventh Circuit endorsed a broad definition of agency, which includes any party that provides material support to a terrorist party, whether financial (e.g. money laundering), technological, or the provision of goods or services. *See id.* (quoting *Stansell II*, 771 F.3d at 724 n.6). In *Stansell V*, the Eleventh Circuit clarified that "instrumentality" applies even more broadly than "agency" and covers any person who provides means to accomplish an end, even if that person was "unaware of the terrorist party or parties involved." *Id.* at 1354. It stated that even "unwitting cogs in a criminal scheme constitute instrumentalities." *Id.* at 1354.

The Pinecrest LLC argues that "[t]here is no allegation that Mr. Lopez Bello knew about, much less participated in any way, in the conduct alleged by Mr. Marron, Mrs. Marron, or their children." The legal standard for agency and instrumentality does not require direct participation

---

[8] The Court also notes that there is a question, even if FRYD Mortgage could show a valid claim, whether it would have priority over a TRIA Plaintiff. *See Stansell VI*, 2013 WL 12203820, at *5 ("The orders issuing writs and, in some cases, the service or levy date of the writs govern the order of priority among terrorism victim judgment holders. No other parties, claimants, property owners, or 'innocent' beneficiaries have rights greater than the terrorism victim judgment holders and these right are not considered in the TRIA statutory scheme.").

in the acts delineated in Plaintiffs' complaint. An indirect relationship is sufficient to establish status as an agent or instrumentality. *Stansell v. Revolutionary Armed Forces of Colombia*, Misc. Action No. 10-471-(TJK), 2019 WL 4040680, at *5 (D.D.C. Aug. 26, 2019).

In this case, OFAC has determined that Lopez Bello is a frontman for El Aissami. He aided El Aissami by laundering money. Lopez Bello attempted unsuccessfully to challenge his OFAC designation as a Specially Designated Narcotics Trafficker. The District of Columbia district court rejected Lopez Bello's arguments, finding sufficient evidentiary support for OFAC's designation of Lopez Bello as the frontman for El Aissami. *Lopez Bello v. Smith*, 21-cv-1727-RBW, 2022 WL 17830226 (D.D.C. Dec. 21, 2022). The district court in *Lopez Bello* concluded that OFAC conducted a multi-year investigation and ultimately concluded that El Aissami conducted a massive drug trafficking operation between Venezuela and the United States. Lopez Bello was "in charge of laundering drug proceeds . . .and organizing the air and maritime cocaine routes[.]" *Id.* at *7.

In a separate case, Judge Scola held that Lopez Bello was an agent or instrumentality of FARC. *Stansell v. FARC*, No. 19-cv-20896, ECF 22 (S.D. Fla. Feb. 15, 2019). Judge Scola issued the writs of execution based on the evidentiary support provided by the plaintiffs. The Eleventh Circuit affirmed Judge Scola's ruling finding that it provided adequate due process because Lopez Bello could contest the agency and instrumentality finding after the writs of execution issued. *Stansell III*, 802 F. App'x at 449.

Although Plaintiffs rely on the OFAC designation and case law to argue that res judicata bars relitigation of Lopez Bello's role as an agent or instrumentality, the Court must adhere to the Eleventh Circuit's guidance that due process allows Lopez Bello, a non-party to this case, notice and an opportunity to present evidence that he is not an agent or instrumentality of Tarek

El Aissami. The OFAC designation, in and of itself, is insufficient to trigger res judicata as that case was not in the context present here. And *Stansell III* merely found he was an agent and instrumentality of FARC, not El Aissami or the Cartel of the Suns as Plaintiffs contend in this case.

The Pinecrest LLC also argues that the Supreme Court's potential narrowing or overturning of *Chevron* forecloses this Court from affording appropriate deference to OFAC's factual determination that Lopez Bello serves as a "key frontman" for El Aissami. *Chevron* deference, however, applies to an agency's construction of a statute it administers, and not the agency's factual findings. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984); *accord, e.g., Arevalo v. U.S. Atty.Gen.*, 872 F.3d 1184, 1187-88 (11th Cir. 2017) (explaining that *Chevron* provides a framework for judicial review "when a court reviews an agency's construction of the statute which it administers.").[9] Accordingly, the Court finds that the potential narrowing of *Chevron* would not necessarily translate into a lack of deference for an OFAC decision as to Lopez Bello's status as a frontman for El Aissami.

In the context of this *prima facie* showing, the Court will give deference to OFAC's agency and instrumentality designation. Based on *Stansell III*, the Court has authority to issue the writ of execution as to the Pinecrest home and allow Lopez Bello to contest the agency or instrumentality designation before the sale of the property.

### D. Should the Court issue a writ of attachment instead of a writ of execution?

The parties dispute whether the Plaintiffs improperly seek a writ of execution, and whether the proper vehicle is a writ of attachment. A "writ of attachment 'serves as a lien upon property, which may be the subject of execution upon a later-obtained judgment.'" *VMI Entm't,*

---

[9] In the upcoming term, the Supreme Court will consider whether to narrow or overturn *Chevron* in *Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (2023) (granting *certiorari* in part on the *Chevron* issue).

*LLC v. Westwood Plaza, LLC*, No. 1D13-5111, 152 So. 3d 617, 618 (Fla. 1st DCA 2014)

(quoting *Cerna v. Swiss Bank Corp.*, 503 So. 2d 1297, 1298 (Fla. 3d DCA 1987)). Because there

is already a default judgment in this case, the Court finds issuance of a writ of execution

appropriate, with the caveat that per the Plaintiffs' representation, they shall not levy the writ

until after a final adjudication of the merits.

       Therefore, the Court has jurisdiction over the matter and finds Plaintiffs have met their

burden to establish a *prima facie* under TRIA entitling them to relief. The Court reserves

jurisdiction to further analyze the legal and factual challenges should the Pinecrest LLC or

FRYD Mortgage move to quash the writ of execution.

       DONE AND ORDERED in Chambers at Miami, Florida, this ___29th___ of September

2023.

                                   FEDERICO A. MORENO
                                   UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record