IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21-cv-23190-FAM

CARLOS EDUARDO MARRÓN;
MARIA MARRÓN; C.R., a minor;
and S.A., a minor,

    Plaintiffs,

v.

NICOLAS MADURO MOROS; FUERZAS
ARMADAS REVOLUCIONARIAS DE
COLOMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS
SOLES; VLADIMIR PADRINO LÓPEZ;
MAIKEL JOSE MORENO PEREZ; NESTOR
LUIS REVEROL TORRES; TAREK
WILLIAM SAAB; and TAREK EL AISSAMI,

    Defendants.
_____/

**JUDGMENT CREDITORS' REPLY IN SUPPORT OF FINAL MOTION FOR
TURNOVER JUDGMENT AS TO BLOCKED LÓPEZ BELLO FUNDS [DE 302]**

**INTRODUCTION**

Loisinette Leiva's ("Leiva") Opposition to Judgment Creditors' Motion for Final Turnover Judgment As To Blocked López Bello Assets (the "Opposition") should be denied because it merely recycles arguments that this Court has already rejected and that lack merit in any event.

**ARGUMENT**

## I. THIS COURT HAS ALREADY REJECTED LEIVA'S ARGUMENTS

Leiva's Opposition raises arguments that this Court has held she abandoned, and accordingly, her Opposition should be denied.

*First*, on September 6, 2024, Leiva moved to dissolve Judgment Creditors' writ on the same grounds that she raises here. ECF No. 225 (Motion for Dissolution of Writ of Garnishment). Specifically, her instant Opposition and her earlier-filed Motion for Dissolution both argue that (1) this Court lacks jurisdiction because the funds at issue are supposedly located in New York, *compare* ECF No. 225, at 3-5, *with* ECF No. 306, at 8-9; (2) the funds at issue are supposedly owned by Leiva and not López Bello and therefore supposedly are not blocked and subject to TRIA, *compare* ECF No. 225, at 5-6, *with* ECF No. 306, at 5-8; and (3) Judgment Creditors supposedly failed to comply with Florida garnishment law, *compare* ECF No. 225, at 6-7, *with* ECF No. 306, at 10-12.

*Second*, on September 18, 2024, this Court denied Leiva's Motion for Dissolution, holding that Leiva had abandoned her arguments. *See* ECF No. 247 (Transcript of Proceedings), at 17:18-20 ("I'm going to deny the Motion to Quash . . . the writ of garnishment as being abandoned, as not being present here in court. That takes care of that.").

*Third*, in Leiva's Opposition, she argues for the first time that she "had no intention to abandon her motion for dissolution." ECF No. 306, at 12-13. Specifically, Leiva argues that her counsel failed to appear in Court because her counsel misunderstood the Court's order. *Id.* ("Only after reading the transcript of the hearing did Leiva's counsel realize that the Court wished to hear all pending motions."). On this basis, Leiva argues that she should be relieved of the Court's order holding that she abandoned her Motion for Dissolution of the Judgment Creditors' Writ of Garnishment. In other words, although Leiva does not cite Fed. R. Civ. P. 60, she seeks relief under Rule 60(b)(1), which allows relief from a court order based upon "mistake, inadvertence, surprise, or excusable neglect." *Abimbola v. Broward Cnty.*, 266 F. App'x 908, 910 (11th Cir.

1

2008) ("When a party alleges that it misunderstood a district court order . . . that motion is properly treated under Rule 60(b)(1) as alleging 'mistake.'").

To prevail on such a motion, "the party seeking relief under Rule 60(b)(1) must provide a justification so compelling that the district court ha[s] to vacate the challenged order." *Bouazizi v. Hillsborough Cnty. Civ. Serv. Bd.*, 844 F. App'x 135, 140 (11th Cir. 2021). "To do so, the defaulting party must establish that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed [for its default]," here, a failure to appear in Court. *Chanel, Inc. v. HandbagStore*, No. 20-CV-62121, 2021 WL 3060329, at *3 (S.D. Fla. June 30, 2021), *report and recommendation adopted*, 2021 WL 3053396 (S.D. Fla. July 20, 2021).

Leiva fails to establish any of the necessary elements for a Rule 60(b)(1) motion. First, as shown below, she lacks any meritorious defenses. Second, she does not argue prejudice to Judgment Creditors and therefore fails to establish this element. Third, Leiva's argument that her counsel failed to understand this Court's order that "Counsel shall be prepared to address **all pending matters** that this Court has not referred to a Magistrate" (ECF No. 228 (emphasis added)) is not a *good* reason why her counsel failed to appear. *See Bouazizi*, 844 F. App'x at 140 (failure to follow court orders are legal errors, not eligible for relief under Rule 60).

Moreover, Leiva's request for relief from this Court's order that she abandoned her Motion for Dissolution should be denied as untimely. Leiva's counsel says she learned of her error back when she read the transcript of the hearing she failed to attend. ECF No. 306, at 12. That transcript was available on the docket as of September 26, 2024. ECF No. 247. But Leiva did nothing to remedy her error until she filed her March 2025 Opposition. That is too late. *See S.E.C. v. Simmons*, 241 F. App'x 660, 664 (11th Cir. 2007) (affirming denial of Rule 60(b) motion where defendant "inexplicably waited over four months to file [it]" and distinguishing case in which defaulting parties "filed a motion to set aside the default within twelve days of learning of the default").

In sum, Leiva is not entitled to relief from this Court's order that she has abandoned the arguments she now asserts to challenge turnover, and she may not re-argue points she has abandoned and waived.

2

## II. IN ANY EVENT, LEIVA'S ARGUMENTS LACK MERIT

### a. The Funds at Issue Belong to López Bello.

#### i. The Funds Belong to López Bello in Their Entirety

López Bello—like many money launderers—hid some of his money with his wife, Leiva. Specifically, and among other things, in December 2015, Leiva opened an account (the "Miami Account" or the "Brickell Account") at the Miami branch of Safra National Bank of New York ("Bank Safra" or "Safra"), located at 1221 Brickell Ave., No. 5, Miami, FL 33121. In so doing, Leiva freely admitted that the account would be funded with "Assets owned by Samark López." ECF No. 191, at 4. The image of her so doing is shown below.

```
Financial Information:
Annual Salary / Income / Revenue ($)   $250,000
Source of Wealth:  ☐ Private Business  ☑ Salary  ☐ Sale of Business  ☐ Sale of Major Assets / Real Estate
☐ Inheritance - specify:                    ☐ Investment - specify:
☑ Other - specify: From Husband: Samark Lopez
Net Worth ($) $500MM
Composition of Client Net Worth:  ☑ Personal Property  ☐ Precious Metals  ☑ Real Estate  ☑ Securities
☑ Other - specify: Assets owned by Samark Lopez
Purpose of Opening Account in SNB:  ☑ Investments  ☐ Loans  ☐ Operations of Business  ☑ Personal Expenses  ☑ Saving / CD
Monthly Expected Activity (Provide expected activity for each month)
```

ECF 191-3, at 11.

Leiva's argument that the disputed assets are not her husband's assets because they were a "gift" from her husband to her, severing her husband's interest, fails as a matter of fact and law. As a factual matter, she expressly states—as shown above—that "her" assets are "***owned*** by Samark López," ***not*** that the assets were a "gift" to her. To establish a gift, Leiva must establish "[1] donative intent, [2] delivery of possession and [3] surrender of dominion and control." *Reiner v. Reiner*, 400 So. 2d 1292, 1293 (Fla. Dist. Ct. App. 1981).

Leiva fails to establish the first element, donative intent. None of the documents Leiva cites make reference to a gift, and the document cited above says the opposite—that the assets are "owned" by López Bello. Leiva submits no evidence (let alone a declaration from herself or her husband) that López Bello intended to gift her the funds in her account.

Leiva also fails to establish the third element, surrender of dominion and control. She offers no evidence that López Bello surrendered dominion and control of the funds to Leiva's exclusive discretion. Indeed, once again, the evidence she cites shows the opposite: that López Bello wanted to retain an interest in the funds and was not surrendering dominion and control over them. He advised Safra that he wanted Leiva to be "more ***involved*** in the investments" of the money he had

3

earned, *not* that he wanted her to take over investment strategy or exclusively control the funds. And it was López Bello, not Leiva, who instructed Safra to make a proposal on how the money would be managed:

> **Please describe the details of the visit** (e.g. client location, topics discussed, expected relationship, etc.)
>
> Loisinette and her husband Samark Lopez visited our offices in Brickell and met with Marilyn Bustillo. Loisinette requested a copy of her statement and a new VISA and ATM card. Her husband mentioned he would transfer some assets to her in the near future from his account in Bank J. Safra Sarasin in Switzerland. He wants her to get more involved in the investments and asked us to send her an investment proposal i/a/o $300K which are currently sitting in the DDA account.

ECF No. 232-4.

As such, Leiva does not carry her burden to establish that López Bello gifted her these funds. *See Bernal v. All Am. Inv. Realty, Inc.*, No. 05-60956-CIV, 2009 WL 586010, at *5 (S.D. Fla. Mar. 6, 2009) (holding that judgment debtor "had the burden of proving by a preponderance of the evidence that all or part of the money contained in the account ending in 1499 was not subject to garnishment because it did not belong to him"); *Beal Bank, SSB v. Almand and Associates*, 780 So.2d 45, 61 (Fla. 2001) (noting that debtor has burden of proof).

### ii. In the Alternative, López Bello Has a Marital Interest in the Funds

As a legal matter, putting the funds in an account in Leiva's name does not sever López Bello's marital interest in the assets. *See Grieco v. Grieco*, 917 So. 2d 1052, 1054 (Fla. 2d DCA 2006) ("Although the Wife's name was on the account, title, alone, does not determine whether the funds are marital assets.").[1] "Where an asset is acquired during the marriage, as was the case here with the money in her account, section 61.075(8), Florida Statutes, states that it is presumed to be a marital asset." *McHugh v. McHugh*, 397 So. 3d 1179, 1181 (Fla. Dist. Ct. App. 2024). Leiva fails to overcome this presumption. Leiva does not contest that her husband made his fortune by laundering the narcotics proceeds of the despicable thugs who kidnapped and tortured Mr. Marrón, nor that López Bello's cash funded the Miami Account that Leiva nominally held. She cannot avoid the turnover of those funds by claiming that López Bello's marital interest was extinguished, devoid of any evidence to show that was the case. Leiva's and López Bello's joint conduct—*e.g.*, opening a bank account together, having the husband transfer money into it, getting the wife "more involved" in the couple's investments, having the husband instruct the bank on making proposals for investment—is the poster child for couples handling their marital assets

---

[1] For the same reason, the fact that Safra views its debt as being to its accountholder, Leiva, does not address who owns the assets in the account.

4

together.

### b. The Funds Are Subject to Turnover under TRIA.

Leiva is wrong that the funds at issue are not blocked. As shown above, the funds belong to López Bello, and Leiva does not dispute that López Bello's assets are blocked. Leiva makes two arguments to the contrary, neither of which has merit.

***First***, Leiva misunderstands the law when she argues that the funds at issue are not blocked because Safra is not currently treating those funds as blocked. ECF No. 306, at 7 (citing ECF No. 204 at ¶ 2, DE 225-1) (arguing that "the bank unblocked Leiva's assets in 2017"). A **bank** does not determine whether assets are blocked; OFAC ***regulations*** do. *See, e.g.*, Dep't of Treasury, Enforcement Release, *OFAC Settles with Emigrant Bank for $31,867.90 Related to Apparent Violations of the Iranian Transactions and Sanctions Regulations* (Sept. 21, 2023) (imposing penalty on bank for engaging in transactions involving blocked assets).

As a matter of law, assets belonging to López Bello are blocked. ECF No. 253, at 8; 31 C.F.R. § 501.801 (blocked assets may be unblocked only pursuant to a general or specific OFAC license). Safra's treatment of the assets cannot alter that fact. *Id.* What is more, Safra itself does not take the position that López Bello has no interest in the assets. ECF No. 204, at 3 n.1 ("Garnishee [Safra] understands that Plaintiffs have taken the position that the funds relating to the Loisinette Leiva Account are assets either belonging to López Bello or assets in which López Bello would have a marital interest…. Garnishee takes no position on this matter.") Nor does Safra dispute that, if López Bello has an interest in the funds, the assets are blocked as a matter of law.[2]

### c. The Court Has Jurisdiction over the Funds.

#### i. Cashier's Check Payable to Leiva

Leiva's argument that this Court lacks *in rem* jurisdiction to order turnover is wrong because there exists a cashier's check payable to Leiva that is either already in Florida or that can be brought to Florida. Leiva states the funds at issue "are akin to . . . certificates of deposit or other tangible instruments in that they can only be obtained via a check . . . ." ECF No. 306, at 9. Here, all evidence indicates that the check (*i.e.*, the item that Leiva characterizes as the "tangible instrument") is currently in Florida, because, according to the account records before the Court,

---

[2] Safra explains that it determined that it could issue a check to Leiva based on informal email communications with OFAC. ECF No. 204, at ¶ 2. As this Court has recognized, absent a OFAC license, property is not unblocked for purposes of TRIA. *See* ECF No. 76, at 8-9. No such license exists here.

that is the mailing address for materials sent to Leiva. ECF 232-3, at 2. Leiva offers no evidence that the check that Bank Safra issued to her is located anywhere other than at her Florida mailing address; she does not even assert that the check is elsewhere. As to a *res* (here, a check) in Florida, the Court indisputably has *in rem* jurisdiction.

In the event that the check is not in Florida, this Court may order Leiva to bring the check into this jurisdiction so that the Court may exercise *in rem* jurisdiction over it. To begin, Leiva does not contest personal jurisdiction over her. Nor could she, because she purposely availed herself of the privilege of conducting business in Florida with respect to the Miami account, having opened the account here in Florida, from a residence in Florida, and thereafter conducting all of her dealings over a several-year period with Bank Safra in Florida. ECF Nos. 232-3 to 232-6.

This Court, having personal jurisdiction over Leiva, may direct her to repatriate the check to Florida (if it is not here already). In *General Electric Capital Corp. v. Advance Petroleum, Inc.*, 660 So. 2d 1139, 1142 (Fla. 3d DCA 1995) ("*GECC*"), the court explained that "[i]t has long been established in this and other jurisdictions that a court which has obtained *in personam* jurisdiction over a defendant may order that defendant to act on property that is outside of the court's jurisdiction, provided that the court does not directly affect the title to the property while it remains in the foreign jurisdiction." The *GECC* decision traced this rule back to two Supreme Court decisions: (1) *Fall v. Easton*, 215 U.S. 1, 8 (1909), which held that "[a] court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person," and (2) *French v. Hay*, 89 U.S. 250, 252-253 (1874), which held that a court sitting in equity has *in personam* jurisdiction over the defendant has the "power to require the defendant to do or to refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of such territory." 660 So. 2d at 1143. Accordingly, *GECC* held that "the trial court in the instant case has the power to require [General Electric, a lien debtor] to locate and return the subject aircraft to Dade County, so as to proceed with the court's order of foreclosure." 660 So.2d at 1143; *Schanck v. Gayhart*, 245 So. 3d 970, 974 (Fla. Dist. Ct. App. 2018) (holding that the trial "court had jurisdiction to either order Appellant to return or reissue the certificates" that were located outside of Florida); *Ciungu v. Bulea*, 162 So. 3d 290, 294-95 (Fla. Dist. Ct. App. 2015) (probate court had "authority to direct [appellant] to effect distribution of the Romanian property, even though the property lay outside the court's geographic jurisdiction").

6

The Florida Supreme Court reaffirmed this position in *Shim v. Buechel*, 339 So. 3d 315, 317-18 (Fla. 2022), emphasizing that a court's personal jurisdiction affords the court the power to require a judgment debtor to take action on property outside of Florida. The Court further explained that "[a] defendant's obedience is compelled by proceedings in the nature of contempt, attachment, or sequestration. Such penalties are imposed against the defendant—not the property—and serve to hold the defendant accountable and prevent the defendant from relocating assets to avoid execution of a judgment." *Id.* at 318. Accordingly, *Shim* held that the trial court was authorized to "compel [Shim] to act on his foreign assets." *Id.* Specifically, the Florida Supreme Court endorsed requiring Shim to deliver to creditors a negotiable instrument drawn on a Korean bank and held in Shim's safe in Korea. Thus (assuming *arguendo* that the check payable to Leiva that is not already in Miami), this Court can and should direct Leiva to cause the check to be brought to Florida and deposited into the Court's registry.

In sum, Leiva deliberately availed herself of the privilege of opening a Florida account, and she used that account to hold the ill-gotten gains of López Bello, an OFAC designated money launderer serving the Cartel of the Suns. Requiring Leiva to facilitate proceedings in Florida is not only permissible, it is just.

### ii. Funds in Bank Safra's General Ledger

This Court also has *in rem* jurisdiction over the underlying funds. As Safra explains, the funds at issue "were transferred to Garnishee's general ledger account at Garnishee's New York branch." ECF No. 225-1, at ¶ 4. Contrary to Leiva's argument, that action by Safra does not divest this Court of jurisdiction. Under Florida law, deposits that banks owe to depositors are intangible assets. Fla. Sta. § 717.101(18) ("intangible assets include . . . [m]oneys, checks, virtual currency, drafts, deposits, interest, dividends, and income"). As such, intangible bank deposits may be deemed to be situated wherever the bank has a branch. *See Stansell v. FARC*, No. 19-20896-CIV, 2019 WL 5290922, at *1 (S.D. Fla. Sept. 26, 2019). The alternative, that each branch is deemed a separate entity for purposes of garnishment such that garnishment can only proceed in one particular branch where the assets are deemed to be located, is known as the "separate entity rule."

As this Court has explained, "[t]he Separate Entity Rule, a somewhat dated and seldom-cited legal doctrine, holds that each branch of a bank is a separate legal entity in the context of a garnishment action, and is in no way connected with accounts maintained by depositors at other branches, or at the home office . . . . Florida has never adopted the Separate Entity Rule." *Tribie v.*

*United Dev. Grp. Intern. LLC*, 2008 WL 5120769, at *3 (S.D. Fla. Dec. 2, 2008) (Moreno, J.) (internal citation omitted); *see also Acme Contracting, Ltd. v. Toltest, Inc.*, No. 07-10950, 2008 WL 4534175, at *6-7 (E.D. Mich. Oct. 3, 2008) (separate entity rule is "entirely obsolete in today's world of highly sophisticated and centralized banking operations").

Following this precedent, Judge Scola held that a Florida court has jurisdiction over a garnishment action seeking assets held by a bank with a Florida branch, regardless of where the account at issue is supposedly located: "Lopez Bello contends that the Court lacks subject matter jurisdiction over the financial accounts because the bank accounts are not located in Florida. Regardless of the accounts' locations, this Court has subject matter jurisdiction." *Stansell*, 2019 WL 5290922, at *1 (citing *Tribie*).

Similarly, in *Regions Equip. Fin. Corp. v. Blue Tee Corp.*, 313 F.R.D. 568, 571 (E.D. Mo. 2016), the court observed that funds in a bank account were "fungible" and "intangible" and further observed that "Missouri state courts take an expansive view of where intangible assets are located and held that funds held in a bank account are 'electronically available' everywhere the bank has a branch" and therefore "'present' in at the bank's branch in Missouri and subject to attachment within the state." *Id.* at 570 (citing precedent for the view that the separate entity rule is "obsolete" and "do[es] not square with the facts here, where Bank of America was able to seamlessly freeze defendant's intangible assets everywhere immediately after it was served with the writ at its Missouri branch"); *Marisco, Ltd. v. Am.Samoa Gov't*, 889 F. Supp. 2d 1244, 1250 (D. Haw. 2012) (predicting the Hawai'i Supreme Court would reject the separate entity rule "as being 'a somewhat dated and seldom-cited legal doctrine'" and holding that plaintiff could garnish funds supposedly held in American Samoa by serving bank's branch in Hawaii).

Leiva's argument that the foregoing line of cases is apposite because, as she says, she can no longer access the funds in Florida, misunderstands the cases. Those cases hold that a debt the bank owes an accountholder—*i.e.*, a fungible, intangible asset—is electronically ***available*** throughout the bank and thus is present wherever the ***bank*** has a branch. Indeed, that is precisely how Safra treated the funds at issue here: it had no obstacle accessing the funds in New York although they originated with an account opened at a Florida branch, and it had no trouble "seamlessly freez[ing] [those] intangible assets everywhere." 313 F.R.D. at 570. Leiva's ability to withdraw the assets is not necessary to establish the situs of the bank's debt to her as being in

8

Florida; rather, a depositor's ability to withdraw assets in Florida merely provides one clear illustration of the point that the funds are available wherever the bank has a branch.

Leiva's view, that "Leiva's funds are not available for withdrawal in either Florida or New York," ECF No. 306 at 9, and therefore cannot be subject to garnishment in either location, stands the law on its head, concluding that an intangible asset has no situs anywhere. Leiva cites no case that has adopted that view, which would render garnishment of intangible assets impossible.

### d. Judgment Creditors Complied with Florida Garnishment Law.

Leiva's arguments that Judgment Creditors failed to comply with Florida law are without merit. To begin, she is wrong in her assertion that Judgment Creditors failed to serve her within the time prescribed by Fla. Stat. § 77.055. Leiva is mistaken that Judgment Creditors' service of notice pursuant § 77.055 was due on June 8, 2024. ECF No. 306, at 11. In fact, the time period for service of the § 77.055 notice did not expire until June 10, 2024, and Leiva was served within that period. At the outset, Safra's answer to the writ of garnishment was served on June 3, 2024. *See* ECF No. 204, at 4 (certificate of service). Under Section 77.055, "[w]ithin 5 days after service of the garnishee's answer on the plaintiff or after the time period for the garnishee's answer has expired, the plaintiff shall serve, by mail, the following documents: a copy of the garnishee's answer, and a notice advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice if any allegation in the plaintiff's motion for writ of garnishment is untrue." In counting time under Florida law, "begin counting on the next day" (here, June 4), then "count every day" (here, June 4 plus five days is Sunday, June 9) in which "the period continues to run until the end of the next day that is not a Saturday, Sunday" (here, Monday, June 10). Fla. R. Gen. prac. Jud. Admin. 2.514 ("computing and extending time"). Thus, Leiva undercounts by two days. The record reflects that service was timely completed by Monday, June 10. *See* ECF No. 232-1 (service materials for Leiva).

Leiva also makes two other cursory arguments. One, she argues that "the documents the Plaintiffs allege they served on Leiva [DE 232 at 4, DE 232-1] do not concern Leiva, the Writ, or the Answer." ECF No. 306, at 11. To begin, she has waived this argument by failing to cite authority or develop it. *See Zeflon LLC v. World Reach Health, LLC*, No. 22-CV-23662, 2023 WL 3171996, at *1 (S.D. Fla. Jan. 23, 2023) (claim is abandoned when proponent "either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and

9

authority"); *MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1346 (S.D. Fla. 2021) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). Moreover, the contents of the service package comport with, and supply the documents described in, § 77.055. Therefore, Leiva's suggestion that something more was required is wrong as a matter of law. Two, Leiva argues that the writ must be dissolved because "[n]o dismissal or a motion for final judgment as to the Writ were filed within six months of May 10, 2024–by November 10, 2024." Once again, this argument is waived because it remains undeveloped. *Curtis v. Saul*, 2020 WL 1271061, *3 (M.D. Fla. Mar. 17, 2020) ("As an initial matter, the Plaintiff's argument—which consists of three sentences—is perfunctory, lacking in any meaningful analysis, and therefore waived."). And, once again, it is wrong as a matter of fact and law. Plaintiffs moved the court for a final judgment on the writ on June 14, 2024, well within the statutory period on which Leiva relies. *See* ECF No. 208, at 4 ("Plaintiffs respectfully request an order . . . directing Safra National Bank to turn over to Plaintiffs the funds nominally held by . . . Loisinette Carolina Leiva Pinto, but actually owned by Samark López Bello.").

## CONCLUSION

For all of the foregoing reasons, Leiva's Opposition should be denied, and the Court should grant Judgment Creditors' motion.

Respectfully submitted on April 2, 2025.

*/s/ Jaime D. Guttman*
Jaime D. Guttman (Fla. Bar No. 44076)
*jaime@scale.law*
Scale Law Partners, LLC
777 Brickell Avenue, Suite 500
Miami, FL 33131
(786) 273-9033 (Main)

*/s/ Alex C. Lakatos*
Alex C. Lakatos (*pro hac vice*)
*alakatos@mayerbrown.com*
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000 (Main)

*Counsel for Plaintiffs / Judgment Creditors*

10

## CERTIFICATE OF SERVICE

I certify that (1) I filed this document on April 2, 2025 through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared as well as garnishee Safra National Bank, which has also entered its appearance; (2) I have served Samark López Bello and Loisinette Carolina Leiva Pinto in accordance with this Court's order. *See* ECF No. 205 (noting that Plaintiffs may serve López Bello "by mailing to the addresses provided by Mr. Fels and Mr. Jacobs, and by emailing to López Bello's personal email address").

*/s/ Jaime D. Guttman*