UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 21-23190-CIV-MORENO

CARLOS EDUARDO MARRON, MARIA
MARRON, C.R., a minor, and S.A., a minor,

        Plaintiffs,

vs.

NICOLAS MADURO MOROS, FUERZAS
ARMADAS REVOLUCIONARIOS DE
COLOMBIA, CARTEL OF THE SUNS,
VLADIMIR PADRINO LOPEZ, MAIKEL
JOSE MORENO PEREZ, NESTOR LUIS
REVEROL TORRES, TAREK WILLIAM
SAAB, and TARECK EL AISSAMI,

        Defendants.

_____/

## ORDER GRANTING MOTIONS TO DISSOLVE WRITS OF GARNISHMENT, DENYING AS MOOT MOTIONS TO QUASH SUBPOENAS AND GRANTING PLAINTIFF'S MOTION TO AMEND

Plaintiffs filed motions for writs of garnishment and execution for the financial assets of Raul Gorrin Belisario and Gustavo Adolfo Perdomo Rosales, whom Plaintiffs claim are agents and instrumentalities of the Defendants, Nicolas Maduro Moros, Tareck El Aissami, and the Cartel of the Suns, judgment debtors in this case. Under the Terrorism Risk Insurance Act, Plaintiffs can recover against assets of an agent and instrumentality of a defendant where the assets are blocked by the United States Office of Foreign Asset Control (OFAC). OFAC blocked Gorrin and Perdomo's assets in the United States, but it also issued a license to D.E. Wilson, Jr. of the law firm Lankford & Reed, PLLC, to manage and control the real property that is the subject of the writs of execution. Property subject to an OFAC license, such as is the case here, is

not recoverable under TRIA and for this reason, the Court dissolves the writs of execution issued by the Clerk of Court. At oral argument, Mr. Wilson's counsel advised that he sold two properties, one on Collins Avenue and another in Fisher Island, Florida, and he stated Mr. Wilson, the licensee, intends to deposit the proceeds from those sales into a blocked bank account once he pays the fees and costs associated with the sales. Per the license "any taxes, costs, or legal, administrative or other fees that are necessary and incident to the sale of any of the properties" are to be paid by Mr. Wilson as the licensee, who shall then "place the remainder in a blocked account." OFAC License (ECF 425-1). Plaintiffs may renew their motion as to those funds once Mr. Wilson deposits those monies into a blocked account subject to a TRIA recovery. Mr. Wilson shall promptly advise Plaintiffs upon depositing the funds into a blocked account.

Aside from the writs of execution that are directed at real property subject to the OFAC license, the Clerk of Court also issued a writ of garnishment as to Perdomo's funds in a Seacoast Bank Account. Consistent with this Court's prior orders in this case, the Court also grants the motion to dissolve this writ of garnishment because there has not been a determination (*prima facie* or otherwise) by this Court that Perdomo is an agent or instrumentality of Maduro, El Aissami, or the Cartel of the Suns. Plaintiffs may file a renewed motion as to those funds, including briefing on whether the Court may issue the writ based on a *prima facie* showing of Perdomo's role as an agent or instrumentality. Perdomo may then respond to the motion and include briefing on whether a prima facie showing is sufficient for issuance of the writ. The parties shall also file a proposed schedule for adjudication of the matter. Accordingly, it is

ADJUDGED that the motions to dissolve the writs (ECF 347, 348, 453) are GRANTED as set forth in this Order. The writs of garnishment and execution (ECF 323-328; 336-337) are dissolved in accordance with this Order. It is also

ADJUDGED that the motions to quash the subpoena (ECF 398, 399) are DENIED as moot, with leave to renew if appropriate. It is also

ADJUDGED that Plaintiff's motion to amend motions for writs of garnishment (ECF 412) is GRANTED to allow correction of citations.

## I.   Background

Plaintiffs filed this case against the Defendants, including Nicolas Maduro, Tareck El Aissami and the Cartel of the Suns, alleging violations of the Federal Anti-Terrorism Act, 18 U.S.C. § 2333; the Florida Anti-Terrorism Act, Fla. Stat. § 772.13, Federal Civil RICO, 18 U.S.C. § 1964(c), Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962(d), and several state-law claims based on the Defendants' orchestrating the kidnapping, torture, and defamation of Plaintiff Carlos Marron, the extortion of Plaintiff Maria Marron, and the infliction of emotional distress on all Plaintiffs. On February 14, 2023, this Court awarded Plaintiffs a final judgment in the amount of $153,843,976.

After obtaining the judgment, Plaintiffs commenced collection proceedings under the Terrorism Risk Insurance Act (TRIA). *See* § 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat. 2337, 2339.[1] Under TRIA, terrorism victims such as the Plaintiffs may satisfy their judgment from property blocked by United States Department of Treasury Office of Foreign Asset Control (OFAC). TRIA provides a right of action to recover against blocked property owned by an agent or instrumentality of a terrorist or terrorist

---

[1] This provision is codified as a note to 28 U.S.C. § 1610 titled "Treatment of Terrorist Assets."

organization.[2]  This Court previously allowed Plaintiffs, who are judgment creditors at this

juncture of the case, to recover against assets of Samark Lopez Bello, whose Florida assets were

blocked by the Office of Foreign Asset Control. At summary judgment, the Court found that

Lopez Bello is an agent or instrumentality of one of the Defendants in this case, Tareck El-

Aissami.

Plaintiffs are now seeking to recover against two other individuals and their related

entities. The individuals are Raul Gorrin Belisario and Gustavo Adolfo Perdomo Rosales, whom

Plaintiffs claim are agents and instrumentalities of the Defendants Nicolas Maduro Moros,

Tareck El Aissami, and the Cartel of the Suns.  To that end, Plaintiffs filed a motion for writ of

garnishment as to funds of Raul Gorrin Belisario deposited in the Court registry (ECF 318)[3] and

a motion for writ of execution as to Gorrin's real property (ECF 322).[4] The Garnishees are D.E.

Wilson, Jr. Esq. and the firm Lankford & Reed PLLC. Plaintiffs also filed a motion for writ of

execution for real property and motion for writ of garnishment for the financial assets of Gustavo

Adolfo Perdomo Rosales. (ECF 334). The garnishee is Seacoast Bank.[5] The Clerk issued the

writs automatically without a prior Order of this Court. Eight writs are currently at issue. (ECF

323-328; 336-337). Raul Gorrin Belisario, Gustavo Perdomo de Rosales, and their related

---

[2] § 201 of TRIA reads as follows:
> Notwithstanding any other provision of law, and except as provided in subsection (b), in every
> case in which a person has obtained a judgment against a terrorist party on a claim based upon an
> act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28,
> United States Code, the blocked assets of that terrorist party (including the bloced assets of any
> agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid
> of execution in order to satisfy such judgment to the extent of any compensatory damages for
> which such terrorist party has been adjudged liable.

[3] The Clerk issued the writ of garnishment (ECF 319), which was directed at the Court Registry.  The Clerk of Court
later vacated this writ (ECF 333) as inappropriately granted.

[4] The Clerk issued writs of execution as to Gorrin's Real Properties: 4100 Salzedo Street, Unit 913, Coral Gables,
FL (estimated value $688,700), 4100 Salzedo Street, Unit 813, Coral Gables, FL (estimated value $646,700), 4100
Salzedo Street, Unit 807, Coral Gables, FL (estimated value $611,500), 4100 Salzedo Street, Unit 608, Coral
Gables, FL (estimated value $560,200), 4100 Salzedo Street, Unit 1010, Coral Gables, FL (estimated value
$674,800), 144 Isla Dorada Blvd., Coral Gables, FL (estimated value $8,099,500). See ECF 323-328.

[5] The Clerk issued a writ of garnishment as to Perdomo's funds in a Seacoast Bank account. (ECF 336).  The Clerk
issued a writ of execution as to the real property at 4100 Salzedo Street #804, Coral Gables, FL 33146 being held by
Magus Holding, LLC (estimated value $670,100) (ECF 337).

entities[6] filed an Omnibus Motion to Dissolve, Vacate, and Quash Writs of Garnishment and Writs of Execution. The Garnishee of the Gorrin writs is D.E. Wilson, Jr. of the law firm Lankford & Reed, also moved for dissolution of the writs addressed to him.

### A. Background on Gorrin & Perdomo

The relationship of Gorrin and Perdomo to the Defendants is relevant to the determination of whether they are indeed agents and instrumentalities of the Maduro, El Aissami, and the Cartel of the Suns – that is a determination the Court will make later in this proceeding. The Court, nevertheless, examines Plaintiffs' allegations of agency and instrumentality. OFAC designated Gorrin under the Venezuela sanctions program because he played a central role in Venezuelan regime-sponsored currency control schemes. Plaintiffs allege that through the currency control scam, Gorrin supported the Cartel of the Sun's money laundering of proceeds from narcotrafficking, provided loot for the Maduro regime to maintain its authoritarian grip on Venezuela and continue criminal activity with impunity, and personally enriched Defendants Maduro, Moreno Perez, and Tareck El Aissami. *See* Decl. of Douglas Farah (Expert on Maduro Regime) (ECF 318-1 at 8).

OFAC also designated Perdomo for his role in Venezuelan money laundering activity. Plaintiffs assert this activity provided support to Maduro, the Cartel of the Suns, and the Individual Defendants in this case. Plaintiffs' expert, Douglas Farah, states that Perdomo laundered money from cocaine sales for the Cartel of the Suns, provided loot to the Maduro regime to maintain its authority and continue its criminal activity, and personally enriched Defendants Maduro, Moreno Perez, and Tareck El Aissami. *See* Decl. of Douglas Farah (Expert on Maduro Regime) (ECF 334-1 at 8).

---

[6] The related entities are: RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III, Corp., Magus Holding LLC, Magus Holding II Corp., and RIM Group Investments I Corp.

Both Gorrin and Perdomo own properties in Florida, which are subject of the writs of execution. In addition, an entity affiliated with Perdomo, Magus Holding II Corp., has an account at Seacoast Bank with $3,179,625.03. (ECF 448).

### B.  Background on D.E. Wilson

The Gorrin and Perdomo properties in the United States are currently managed by D.E. Wilson, Jr. of the law firm Lankford & Reed PLLC pursuant to OFAC Special License No. Venezuela-EO13850-2019-359725-10. (ECF 425-1). The OFAC license permits D.E. Wilson to engage in "all activities ordinarily incident and necessary to continue to manage and maintain all of the blocked properties and chattels. . . owned by Raul Belisario Gorrin and Gustavo Perdomo, persons whose property and interests in property are blocked pursuant to Executive Order 13850[.]"

The licensee D.E. Wilson, Jr. is a graduate of Georgetown Law in 1976. Mr. Wilson served at the U.S. Treasury Department as Acting General Counsel, Deputy General Counsel and Principal Deputy Assistant Secretary for Management.  He also served as Acting Director of OFAC.  He was responsible for the OFAC portfolio while serving as Associate Counsel to the President in 1981-1983.  He also served as General Counsel, Office of the President.  He is currently in private practice at Lankford and Reed, PLLC in Virginia. Decl. of D.E. Wilson (ECF 347-3).

In his declaration, D.E. Wilson states that starting in May 2020, OFAC issued ten consecutive specific licenses extending to March 15, 2027. The licenses are directed to Wilson's attention as the attorney who applied for them.  The License includes all property of Gorrin and Perdomo within the United States or owned or possessed by U.S. persons.  He states that "[p]ursuant to the license, I have the authority to engage in all activities ordinarily incident and

necessary to continue to manage and maintain all of the licensed properties and chattels (such as vessels, vehicles, and aircraft)." *Id.* He is also licensed to represent the properties in litigation as addressed in Executive Order 13850. Under the license, he has the "authority to sell, transfer, deal with, or otherwise encumber the licensed property and am actively involved in marketing and sales activities." *Id.* He says that he plans to sell the Florida real estate at issue in the writs. The real estate has been accruing tax liabilities and condominiums and homeowner's association fees. The successful sale of the real estate will stop the adverse impact on the other owners of the condominium associations and will preserve the value of the OFAC-licensed realty for OFAC's foreign policy purposes. *Id.*

Mr. Wilson states that he was in the process of using proceeds from the sale of certain OFAC-licensed real estate (i.e. a Fisher Island property and a Collins Avenue property) to pay outstanding expenses, costs, legal, administrative and other fees that were incident to the sale before placing the remainder in a blocked account consistent with the license. *Id.* The purpose of a specific license is to put the assets in good order to maximize OFAC's economic leverage with designated non-US persons and entities under the International Emergency Economic Powers Act. Depositing assets, income, and sales proceeds into bank accounts controlled by the licensee as agent for OFAC is a common feature in specific licenses. OFAC issues specific or general licenses when it determines that there is a course of action regarding controlled property that is in the national interest. *Id.*

## II.    Legal Analysis

The motions to dissolve and quash the writs of execution and the writ of garnishment present several reasons to support the position that the Court should dissolve and quash the writs. The first issue is a threshold one as to whether the Clerk of Court properly issued the writs

without a Court order adjudicating that Gorrin and Perdomo are indeed agents and instrumentalities of Maduro, El-Aissami and Cartel of the Suns. Next, Wilson, Gorrin, and Perdomo assert that because the writs of execution target real property subject to an OFAC license, there can be no recovery under TRIA. The movants also cite to *Caballero v. FARC Caballero v. Fuerzas Armadas Revolucionarios de Colombia*, 18-25337-CIV-Moore, 2023 WL 5437222 (S.D. Fla. Aug. 21, 2023) to support dissolution of the writs because there, the district court found that Gorrin and Perdomo and their related entities were not agents and instrumentalities of the Fuerzas Armadas Revolucionarias de Colombia. Mr. Wilson adds that sovereign immunity bars a recovery under TRIA and that Plaintiffs, themselves, must obtain a license to recover under TRIA. Finally, Mr. Wilson raises personal jurisdiction as yet another reason the Court should vacate the writs.

### A.   The Clerk of Court's Issuance of the Writs

In ordinary garnishment proceedings, the Clerk of Court may automatically issue writs of garnishment without notice to the defendant because the defendant has already been served and final judgment has been entered. The validity of the underlying claim is already established in court. *United Presidential Life Ins. Co. v. King*, 361 So. 2d 710, 713 (Fla. 1978).

This proceeding is not a typical garnishment. Here, Plaintiffs seek to recover against third-party agents and instrumentalities as allowed by TRIA. In *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 726(11th Cir. 2021) (*Stansell II*), the Eleventh Circuit held that "parties whose assets are under threat of execution pursuant to TRIA § 201 are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." *Stansell II* adds that "due process entitled claimants to actual notice of the postjudgment proceedings against them." It stated that "[w]here the owner of the asset being garnished is the judgment debtor, 'notice upon commencement of a suit is

8

adequate to give the judgment debtor advance warning of later proceedings undertaken to satisfy the judgment.' That same type of notice is not sufficient where the claimant is a third party, who cannot be expected to be on notice of the judgment." *Id.* at 726 (quoting *Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1357 (5th Cir. 1976)). The Eleventh Circuit states unequivocally that "[b]efore a writ of garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the property owner is a [Specially Designated Narcotics Trafficker] . . . and is an agency or instrumentality of the judgment debtor terrorist party." *Id.* at 729.[7]

This Court previously adhered to *Stansell*'s due process requirement in this case to require notice as to Samark Lopez Bello and an opportunity to be heard. The same holds true now with Gorrin and Perdomo. The Court therefore dissolves the writs pending a determination through the adversary process that Gorrin and Perdomo and their related entities are agents and instrumentalities of Maduro, El Aissami, or the Cartel of the Suns. The Clerk's issuance of the writs without a prior determination of agency or instrumentality was improper.

### B.  Effect of OFAC License on the Gorrin and Perdomo Assets

"By its terms, TRIA allows victims of terror to execute only on *blocked* assets." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015). TRIA states unequivocally that only blocked assets are subject to execution. *R.J. O'Brien*, 783 F.3d at 622. TRIA narrowly defines the "blocked assets" against which judgment holders can execute as "any assets seized or frozen by the United States under section 5(b) of the Trading with the Enemy Act. . . or under sections 202 and 203 of the International Emergency Economic Powers Act[.]" TRIA § 201(d)(2). In this case, the President invoked the International

---

[7] Florida garnishment law also provides "certain protections to third parties claiming an interest in property subject to garnishment or execution. Such law is effective in proceedings in federal court[.]" *Stansell II*, 771 F.3d at 725.

9

Emergency Economic Powers Act § 203 in his Executive Order 13850, which resulted in the freezing of the Gorrin and Perdomo assets.

D.E. Wilson and the Gorrin/Perdomo parties assert that Mr. Wilson's license "unblocks" the properties, and renders them not subject to attachment under TRIA. Put another way, the properties are not seized or frozen by virtue of the license. In *R.J. O'Brien*, the Seventh Circuit found the existence of the license precluded a finding that the property was "blocked" because OFAC issued a license to the Department of Justice, which is within the jurisdiction of the United States, to effect forfeiture, which is "at bottom, a license for final transfer or disposition." TRIA § 201(d)(2).[8] So too here, OFAC issued a license to D.E. Wilson, who is within the jurisdiction of the United States, to manage the properties and effect disposition of the properties as he deems appropriate. Mr. Wilson's license specifically states that the licensee may "in the ordinary course of business decide to sell the properties" and "engage in transactions ordinarily incident and necessary to sell the properties." (ECF 425-1). This license grants Mr. Wilson broad discretion to manage the properties, which confirms that the properties are not frozen or seized within TRIA's scope. The terms of this license, like the one in *R.J. O'Brien*, require this Court to find that the properties are not "seized or frozen," and therefore, not subject to execution under TRIA. In so holding, the Court notes that although the writs issued as to D.E. Wilson (as licensee) is only as to Gorrin properties, Mr. Wilson indicates in his declaration that he also has a license as to the Perdomo real property, which is confirmed by the terms of the license itself.

---

[8] TRIA defines blocked assets as:
    (A) Any asset seized or frozen by the United States under section 5(b) of the Trading with the Enemy Act. . . or under sections 202 and 203 of the International Emergency Economic Powers Act. . . and
    (B) *does not include property that –*
        (i)    is subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by statute other than the International Economic Powers Act ... or the United Nations Participation Act of 1945.
Pub.L. No. 107-297, § 201(d)(2), 116 Stat. 2322, 2339-40.

Earlier in this case, this Court analyzed whether the La Gorce Palace Condominium Association's license removed Samark Lopez Bello's condominium from TRIA's definition of blocked assets. The Court found that it did but then allowed Plaintiffs to renew their TRIA claim once the condominium association sold the condominium, took the amount it was owed, and placed the remaining proceeds in a blocked bank account. Despite the Court's prior holding, Plaintiffs now argue that since any net proceeds from a sale of the Gorrin and Perdomo properties would ultimately be placed in a blocked account, the properties remain blocked despite the license. The license says the opposite, and authorizes the licensee to sell the properties, use the proceeds to pay taxes, costs and fees, and only then deposit any remainder into a blocked account. Until the remainder is deposited, the proceeds are not "frozen or seized" within TRIA's meaning and Plaintiffs cannot recover against them now.

Plaintiffs argue that unlike the license issued to the LaGorce Palace condominium, which was broad and authorized a sale, Mr. Wilson's license as to the Gorrin and Perdomo properties is limited to management and maintenance of the properties. A reading of the license belies this conclusion. The license reads: "Should the Licensee not receive payment from the residents of the Properties, or in the ordinary course of business decide to sell the Properties, the Licensee may engage in transactions ordinarily incident and necessary to sell the Properties[.]" (ECF 425-1). Plaintiffs' position is at odds with the license itself.

Plaintiffs also argue that despite the scope of Mr. Wilson's license, the Gorrin and Perdomo assets remain blocked because TRIA § 201(d)(2)(B) creates an exemption for licenses issued under the International Emergency Economic Powers Act. Put differently, Plaintiffs' position is that licenses issued under the IEEPA do not have the effect of unblocking the assets as would a license issued under the Kingpin Act. Plaintiff is correct that Mr. Wilson's license

was expressly issued under the International Emergency Economic Powers Act. This is a distinction that does not make a difference. Courts have routinely found that assets blocked pursuant to an Executive Order, but also subject to an OFAC licensing scheme, were not blocked, and therefore not subject to attachment under TRIA. *U.S. v. Holy Land Foundation for Relief & Dev.*, 722 F.3d 677, 687 (5th Cir. 2013); *Estate of Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, n. 6 (D.D.C. 2011) ("[T]ransactions . . . undertaken under an OFAC licensing scheme, . . . are unblocked and not subject to attachment."); *Bank of N.Y. v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007) (holding that "assets blocked pursuant to Executive Order. . . and its accompanying regulations, . . . that are also subject to license . . ., are not blocked assets under the TRIA."). Put succinctly, TRIA does not reach funds that a licensee "has been given authorization to control though another means." *Holy Land*, 722 F.3d at 685.

Finally, Plaintiffs assert that the writs are valid as to Fisher Island and Collins Avenue properties that Mr. Wilson already sold, which resulted in receipt of $7,529,072.09 and an additional $4,201,543.87. Plaintiffs assert that since those properties are sold, the proceeds are blocked and no longer subject to the license. Pursuant to the OFAC license, Mr. Wilson is authorized to use those proceeds to pay outstanding "legal, administrative, or other fees that [we]re necessary and incident to the sale" before placing the "remainder" in a "blocked account." At oral argument, Mr. Wilson's counsel stated that he has not yet paid all the necessary fees. Like the La Gorce Palace Condominium Association, Mr. Wilson should be permitted to complete his obligations under the license. Once fees and expenses are paid and the remainder of the sale proceeds are placed into a blocked account, Plaintiffs may renew their TRIA claim and move for a writ of garnishment as to the remaining funds. This is consistent with the Court's

prior ruling regarding the Miami Beach apartment. *Marron v. Maduro Moros*, No. 21-23190-CIV, 2023 WL 3619308, *6-7 (S.D. Fla. May 24, 2023).[9]

### A. The effect of the Caballero Case on the Agency/Instrumentality Designation

Under TRIA, an agency or instrumentality is any Specially Designated Narcotics Trafficker that is or was ever involved in a terrorist organizations' narcotics trafficking operations or that assisted the organization's financial or money laundering network because it "'was either: (1) materially assisting in, or providing financial or technological support for or to,' or 'providing goods or services in support of,' the [organizations'] international narcotics trafficking activities and/or (2) 'owned, controlled, or directed by, or acting for or on behalf of' the [organization], and/or (3) 'playing a significant role in the [organization's] narcotics trafficking.'" *Stansell v. Revolutionary Armed Forces of Colombia, (Stansell V)*, 45 F.4th 1340, 1357 (2022) (citing *Stansell II*, 771 F.3d at 724 n. 6, 732).

The parties dispute whether Plaintiffs can establish that Gorrin and Perdomo, and their related entities are agencies and instrumentalities of Nicolas Maduro Moros, the Cartel of the Suns, and Tareck El Aissami in light of *Caballero v. Fuerzas Armadas Revolucionarios de Colombia*, 18-25337-CIV-Moore, 2023 WL 5437222, *9, 11-12 (S.D. Fla. Aug. 21, 2023) (finding plaintiff failed to establish that Gorrin, Perdomo and their related entities are agents or instrumentalities of the Fuerzas Armadas Revolucionarios de Colombia (FARC)). In *Caballero*, the district court examined the various schemes that Gorrin and Perdomo were involved in and

---

[9]Gorrin and Perdomo here contend that under *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1137 (11th Cir. 2013), Plaintiffs would need to file a separate declaratory action or commence proceedings supplementary to obtain a judgment that they are agents and instrumentalities of Maduro, El Aissami, and the Cartel of the Suns. This Court does not agree a separate case is warranted. *Jackson-Platts* is not a case where the plaintiffs sought recovery under TRIA and the Eleventh Circuit's guidance in *Stansell* indicates that due process requires notice and opportunity to be heard.

determined on a motion for summary judgment that the plaintiffs could not establish that Gorrin and Perdomo (and their related entities) are agents and instrumentalities of the FARC.

*Caballero's* limited holding is that the record evidence did not establish Gorrin and Perdomo as agents and instrumentalities of the FARC.  Although the FARC is also a Defendant here, *Caballero*'s holding does not preclude this Court from finding that Gorrin and Perdomo are agents and instrumentalities of the other Defendants in this case, such as Maduro, El Aissami, and the Cartel of the Suns. *Caballero* merely establishes that the plaintiffs in that case failed to connect the dots between Gorrin and Perdomo's actions and their alleged material support of the FARC's terrorist activities.  *Caballero*, 2023 WL 5437222, at *5 ("Under the Eleventh Circuit example, it is as if the FARC hires (A) Maduro, who uses (B) Celia Flores to carry out some operation, who uses (C) Los Chamos for help in the alleged operation, who (D) receive money from Gorrin for an unstated reason, and the money somehow, based solely on speculation, makes its way up to the FARC and materially benefits them. If the Eleventh Circuit had intended such a broad interpretation of the [agency/instrumentality] relationship, it well could have provided a broader example.").

The parties also dispute whether the Plaintiffs' reliance on the expert testimony of Douglas Farah is sufficient to establish Gorrin and Perdomo's agency and instrumentality status. Gorrin and Perdomo urge the Court to conduct a *Daubert* hearing as to the admissibility of Farah's testimony. The Court will revisit the issue once this matter is ready to proceed to an adversary proceeding.

### B. *Whether the writs are null and void under the Venezuela Sanctions Regulations.*

Gorrin/Perdomo and Mr. Wilson argue that allowing Plaintiffs to garnish and execute against their blocked assets violates the Venezuela Sanctions Regulations, 31 C.F.R. Part 591, implementing International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1702 *et*

*seq.*, and Executive Order 13850. In their view, the regulations render null and void any "lien, execution, garnishment" or other "judicial process" placed upon OFAC-blocked property absent an OFAC license. Put another way, they argue Plaintiffs themselves must obtain a license to recover under TRIA. This Court previously recognized, however, that "[f]or a creditor *other than a victim of terrorism*, federal law requires a creditor to obtain an OFAC license to take any action that touches on a Kingpin designee's blocked property." (ECF 76 at 7). Other courts have likewise rejected the position that plaintiffs/judgment creditors must secure an OFAC license or otherwise get permission from the U.S. Government before they can garnish or execute on OFAC-blocked assets to satisfy a TRIA judgment. *See Alban Osio v. Maduro Moros*, No. 21-20706-CIV-GAYLES, (Report and Recommendation) (S.D. Fla. July 17, 2024) (ECF 121 at 5); *Stansell v. FARC*, No. 19-20896-CIV-SCOLA, 2019 WL 10378257, at *2 (S.D. Fla. Aug. 26, 2019) ("There is also no requirement that Plaintiffs obtain an OFAC license before seeking attachment and execution on Movants' blocked assets. . . TRIA judgment holders are exempt from OFAC's licensure requirements when attaching and executing on blocked assets of a terrorist party's agent or instrumentality."); *Stansell v. FARC*, No. 09-CV-2308-T-36AAS, 2019 WL 2537791, at *5 (M.D. Fla. June 20, 2019)("Plaintiffs and the United States argue that Plaintiffs do not need an OFAC license for execution of Kingpin Act blocked assets under the TRIA on these specific facts. The Court agrees."). Accordingly, the Court finds that Plaintiffs failure to obtain an OFAC license does not affect the issuance of the writs.

C. *Whether the writs violate sovereign immunity*

Mr. Wilson argues that because his license is issued by OFAC, it is subject to sovereign immunity. To support this position, he cites to *Greenbaum v. Iran*, 67 F.4th 428, 431 (D.C. Cir. 2023), which finds writs of garnishment seeking discovery from the U.S. Attorney as garnishee

violate sovereign immunity. Here, Wilson argues as a licensee, he is an agent of OFAC and therefore, protected by sovereign immunity. For this reason, he also moves to quash the subpoena against him seeking his financial records as to the Gorrin and Perdomo assets. As the Court finds that the Clerk of Court improperly issued the writs and that writs of execution are also invalid because the property is unblocked by virtue of Mr. Wilson's license, the Court need not decide the issue of sovereign immunity. The Court, however, denies the motion to quash the subpoena as moot, but will allow Mr. Wilson to raise the issue again should Plaintiffs reissue the subpoena.

### D. *Personal Jurisdiction*

D.E. Wilson argues that Plaintiffs fail to establish personal jurisdiction over him as the licensee of the property. Having found the writs should be quashed and dissolved, the Court will address Mr. Wilson's personal jurisdiction argument once this matter is ready to proceed.

DONE AND ORDERED in Chambers at Miami, Florida, this _19th_ of February 2026.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

16