**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA MIAMI
DIVISION
CASE NO. 1:21-cv-23190-MORENO/TORRES**

CARLOS EDUARDO MARRÓN, *et al.*,

        *Plaintiffs*,

v.

NICOLAS MADURO MOROS, *et al.*,

        *Defendants*.

**MOTION BY NON-PARTY FOGADE TO
<u>DISSOLVE WRITS OF GARNISHMENT AND DISMISS ACTION WITH PREJUDICE</u>**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ............................................................................................................................... 3

    I.   Plaintiffs Failed to Establish *In Rem* Jurisdiction Over the Assets ................................ 3

    II.    Plaintiffs Failed to Establish Personal Jurisdiction Over the Garnishee ..................... 5

    III.   Plaintiffs Failed to Initiate a Separate Action and Establish Jurisdiction ................... 6

        A.     Plaintiffs Failed to Initiate a New Civil Action .......................................................... 6

        B.     Plaintiffs Failed to Establish Subject-Matter Jurisdiction Under the FSIA ........... 7

        C.     Plaintiffs Failed to Establish Personal Jurisdiction Over FOGADE ..................... 9

    IV.    Plaintiffs Did Not Satisfy FSIA's Strict Service Requirements ................................ 10

    V.     TRIA Does Not Apply to FOGADE ....................................................................... 12

        A.     FOGADE is Not an "Agency or Instrumentality" of Defendants ........................ 12

        B.     Plaintiffs Failed to Show the Blocked Assets Are Assets "Of" Defendants ......... 16

CONCLUSION ........................................................................................................................... 17

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) ...................................................................................................... 7

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
No. 05-cv-80183, 2006 WL 1523234 (S.D. Fla. Apr. 24, 2006) ............................... 15

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017) ........................................................................................ 8, 9, 16

*Brooks v. Miller*,
158 F.3d 1230 (11th Cir. 1998) ................................................................................. 14

*Buis v. Universal Prop. & Cas. Ins. Co.*,
394 So. 3d 738 (Fla. 2d DCA 2024) ............................................................................ 5

*Butler v. Sukhoi Co.*,
579 F.3d 1307 (11th Cir. 2009) ................................................................................... 7

*Caballero v. FARC*,
No. 4:21-cv-00140, 2023 WL 125240 (S.D. Tex. Jan. 6, 2023) ............................... 11

*Casa Express Corp. v. Bolivarian Republic of Venez.*,
158 F.4th 1176 (11th Cir. 2025) .............................................................................. 6, 7

*Chirag v. MT Marida Marguerite Schiffahrts*,
604 F. App'x 16 (2d Cir. 2015) ................................................................................. 13

*Codeventures, LLC v. Vital Motion Inc.*,
No. 20-cv-21574, 2021 WL 3742059 (S.D. Fla. Aug. 23, 2021) ............................ 4, 5

*Ctr. Cap. Corp. v. Gulfstream Crane, LLC*,
No. 09-61021-CIV, 2009 WL 4909430 (S.D. Fla. Nov. 25, 2009) ............................. 4

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ................................................................................... 9

*Does v. Taliban*,
101 F.4th 1 (D.C. Cir. 2024) ....................................................................................... 8

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ..................................................................................................... 8

*Forster v. Nations Funding Source*,
648 F. App'x 850 (11th Cir. 2016) .............................................................................. 6

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006) ........................................................................................ 7

*Gonzalez v. State of Fla. Dep't of Mgmt. Servs.*,
124 F. Supp. 3d 1317 (S.D. Fla. 2015) ..................................................................... 14

*Hausler v. JP Morgan Chase Bank, N.A.*,
770 F.3d 207 (2d Cir. 2014) ...................................................................................... 16

*Havlish v. Taliban*,
152 F.4th 339 (2d Cir. 2025) ....................................................................................... 8

*Jackson-Platts v. Gen. Elec. Cap. Corp.*,
727 F.3d 1127 (11th Cir. 2013) ............................................................................. 6, 10

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ................................................................................................... 11

*Kirschenbaum v. Assa Corp.*,
   934 F.3d 191 (2d Cir. 2019)..................................................................................... 16

*Linstol USA, LLC v. Midway Advanced Prods., LLC,*
   No. 2:18-cv-669-FTM-38NPM, 2020 WL 224527 (M.D. Fla. Jan. 15, 2020).......................... 6

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) .................................................................................................. 13

*LS Energia Inc. v. Corporacion Electrica Nacional S.A.*,
   No. 21-cv-21642, 2023 WL 122196 (S.D. Fla. Jan. 6, 2023)..................................... 10

*Mamani v. Berzain*, No.,
   07-cv-22459, 2018 WL 1010582 (S.D. Fla. Feb. 22, 2018) ....................................... 14

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013)....................................................................................... 14

*McMahon v. Presidential Airways, Inc.*,
   No. 05-cv-1002, 2009 WL 10705562 (M.D. Fla. Nov. 5, 2009) ................................ 15

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ................................................................................................... 11

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009)................................................................................ 7, 10

*Packman1, Inc. v. Seasons Best Produce*, *Corp.*,
   No. 18-cv-816, 2022 WL 738556 (M.D. Fla. Feb. 16, 2022)....................................... 6

*Peacock v. Thomas*,
   516 U.S. 349 (1996) .................................................................................................. 6, 7

*Poulin v. Bush*,
   650 F. Supp. 3d 1280 (M.D. Fla. 2023)...................................................................... 14

*Power Rental Op Co. v. V.I. Water & Power Auth.*,
   No. 3:20-cv-1015, 2021 WL 9881137 (M.D. Fla. July 6, 2021) ................................. 5

*Prepared Food Photos, Inc. v. Agewellsolutions, LLC.*
   6:23-cv-453, 2025 WL 1906706 (M.D. Fla. July 10, 2025)......................................... 6

*Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*,
   353 F.3d 916 (11th Cir. 2003).................................................................................... 11

*Republic of Sudan v. Harrison*,
   587 U.S. 1 (2019) ......................................................................................... 10, 11, 12

*Rosen v. Serv. Corp. Int'l*,
   No. 11-cv-62547, 2012 WL 370298 (S.D. Fla. Feb. 3, 2012) ............................ 14, 15

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*,
   23 F.4th 1036 (D.C. Cir. 2022) ................................................................................. 10

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ..................................................................................................... 8

*Singh v. Caribbean Airlines Ltd.*,
   798 F.3d 1355 (11th Cir. 2015).................................................................................. 7, 8

*Snow v. DirecTV, Inc.*,
   450 F.3d 1314 (11th Cir. 2006).............................................................................. 12, 13

*Stansell v. FARC*,
   45 F.4th 1340 (11th Cir. 2022)................................................................................ 15, 16

*Stansell v. FARC*,
   771 F.3d 713 (11th Cir. 2014)............................................................................ 12, 13, 15

iv

*Stansell v. FARC*
    19-cv-20896, 2025 WL 1755900 (S.D. Fla. June 25, 2025) ......................................................... 5
*Stansell v. FARC,*
    149 F. Supp. 3d 1337 (M.D. Fla. 2015) ........................................................................... 4, 5
*Twitter, Inc. v. Taamneh,*
    598 U.S. 471 (2023) ....................................................................................................... 14
*United States v. Rider,*
    No. 20-cr-232, 2023 WL 2072088 (E.D. Tex. Feb. 17, 2023) ............................................ 15
*United States v. Wallace,*
    32 F.3d 921 (5th Cir. 1994) ............................................................................................. 15
*Verlinden B.V. v. Cent. Bank of Nigeria,*
    461 US 480 (1983) .......................................................................................................... 16
*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
    486 U.S. 694 (1988) ....................................................................................................... 10
*Walden v. Fiore,*
    571 U.S. 277 (2014) ....................................................................................................... 11
*Water Splash, Inc. v. Menon,*
    581 U.S. 271 (2017) ....................................................................................................... 10

**Constitutional Provisions**

U.S. Const. art. IV, § 1 .................................................................................................................. 5
U.S. Const. art. VI, cl. 2 ................................................................................................................ 5

**Statutes**

28 U.S.C. § 517 ....................................................................................................................... 9, 16
28 U.S.C. § 1330 ............................................................................................................................ 9
28 U.S.C. § 1330(a) ................................................................................................................... 1, 2
28 U.S.C. § 1441(d) ................................................................................................................... 1, 2
28 U.S.C. § 1602 ........................................................................................................................ 1, 2
28 U.S.C. § 1603 ........................................................................................................................ 1, 2
28 U.S.C. § 1603(b)(2) .................................................................................................................. 7
28 U.S.C. § 1604 .................................................................................................................... 1, 2, 8
28 U.S.C. § 1605 .................................................................................................................... 1, 2, 8
28 U.S.C. § 1606 .................................................................................................................... 1, 2, 8
28 U.S.C. § 1607 .................................................................................................................... 1, 2, 8
28 U.S.C. § 1608 .................................................................................................................. 1, 2, 12
28 U.S.C. § 1608(a) ............................................................................................................. 9, 10, 11
28 U.S.C. § 1608(a)(1) ................................................................................................................. 10
28 U.S.C. § 1608(a)(3) ................................................................................................................. 11
28 U.S.C. § 1609 ........................................................................................................................ 1, 2
28 U.S.C. § 1610 ........................................................................................................................ 1, 2
28 U.S.C. § 1611 ............................................................................................................................ 1
Fla. Stat. § 77.055 ......................................................................................................................... 3
Fla. Stat. § 772.13(6)(a)(3) ........................................................................................................... 4

## Rules

Fed. R. Civ. P. 12(h)(3) ................................................................................................. 1
Fed. R. Civ. P. 54(b) ..................................................................................................... 1
Fed. R. Civ. P. 60(b)(4) ................................................................................................ 1
Fed. R. Civ. P. 69 ............................................................................................... 5, 11, 12
Fed. R. Civ. P. 69(a)(1) ................................................................................................. 1

Fed. R. Evid. 801 ......................................................................................................... 14
Fed. R. Evid. 802 ......................................................................................................... 14

## Regulations

6 C.F.R. § 5.45 ............................................................................................................ 15
32 C.F.R. § 97.7 .......................................................................................................... 15
32 C.F.R. § 97.9 .......................................................................................................... 15

Pursuant to Rules 12(b)(1), (2), (4)–(7), 12(h)(3), 54(b), 60(b)(4), and 69(a)(1) of the Federal Rules of Civil Procedure, Non-Party Respondent Fondo de la Protección Social de los Depósitos Bancarios ("FOGADE")—a "foreign state" immune from the jurisdiction of courts in the United States under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330(a), 1441(d), 1602–1611—moves to (1) dissolve the writs issued in this proceeding on alleged property of FOGADE held by Garnishees Dinosaur Group Holdings, LLC; Dinosaur Merchant Bank Ltd. ("DMBL"); and Dinosaur Financial Group, LLC (the "Dinosaur Entities") (ECF 375, 376, 377, hereinafter, the "Writs"); (2) vacate any orders issued on the Writs; and (3) dismiss this action as it relates to alleged property of FOGADE with prejudice. FOGADE expressly reserves, and does not waive, all of its rights, privileges, immunities, and defenses, including, but not limited to, lack of subject-matter and personal jurisdiction and ineffective service of process.

## **INTRODUCTION**

The Court should dissolve Plaintiffs' Writs for any one of five (5) independent reasons:

(1)     The Court lacks *in rem* jurisdiction over the assets that are the subject of the Writs and the Writs are void *ab initio* because they purport to garnish assets located in Spain and Italy. *See* ECF 459-3.

(2)     The Writs are void *ab initio* because Plaintiffs failed to establish personal jurisdiction over garnishee Dinosaur Merchant Bank Ltd. ("DMBL"), a U.K. financial institution.

(3)     Plaintiffs hold a default judgment against Defendants, not against FOGADE. In order to execute against FOGADE's assets as though it were liable for that judgment, U.S. Supreme Court and Eleventh Circuit precedent require Plaintiffs to bring a new action against FOGADE and establish the Court's subject-matter and personal jurisdiction. Plaintiffs failed to do so. Moreover, because FOGADE is a foreign state entitled to presumptive immunity under the FSIA, 28 U.S.C. §§ 1604, 1609, 1611, Plaintiffs were also required, but failed, to establish this Court's subject-matter jurisdiction under the FSIA before attempting to hold FOGADE liable for the underlying judgment. The United States has agreed with this position in numerous statements of interest filed in similar proceedings.

1

(4)     Plaintiffs failed to serve FOGADE in compliance with the FSIA's strict service provisions at 28 U.S.C. § 1608, which apply with full force in Terrorism Risk Insurance Act ("TRIA") proceedings such as the instant case. The United States has stated that it also agrees with this position.

(5)     In the alternative, if TRIA applied and it were a jurisdictional statute (it is not), Plaintiffs have not established that FOGADE is an "agency or instrumentality" of Defendants, as required under TRIA. The Court would further lack subject-matter jurisdiction because Plaintiffs have failed to establish that the assets at issue are "assets of" Defendants, as required under TRIA.

Finally, many of the legal issues central to this motion to dissolve are currently on appeal in *Osio v. Petroleos de Venezuela, S.A. (PDVSA)*, No. 25-12365 (11th Cir. Jul. 10, 2025), and so, at a minimum, this Court should hold any further decision in abeyance until the *Osio* appeal is decided.

## BACKGROUND

FOGADE is Venezuela's state-run bank deposit insurance institution, and a part of the Ministry of Finance. *See* Decree with Rank, Value and Force of Law on Banking Sector Institutions, Official Gazette No. 6,154 (Nov. 19, 2014), reprinted in Official Gazette No. 40,557 (Dec. 8, 2014) (Venez.) at ECF 486-1. As such, FOGADE is a "foreign state" entitled to presumptive foreign sovereign immunity under the FSIA, 28 U.S.C. §§ 1330(a), 1441(d), 1602–1611. Indeed, Plaintiffs concede that FOGADE is "part of the government of Venezuela." *See* ECF 355; ECF 459 at 9.

In this action, FOGADE's goal is the same as that of the United States government: to "preserve [blocked assets] for the people of Venezuela." Press Release, U.S. Dep't of the Treasury, Treasury Sanctions Venezuela's State-Owned Oil Company, Petroleos de Venezuela, S.A. (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594 (internal quotation marks and citation omitted). Plaintiffs, however, are pursuing these blocked assets for a different purpose: to satisfy a default judgment against Nicolás Maduro and other defendants under the Anti-Terrorism Act in early 2023. *See* ECF 46.

2

Two years later, Plaintiffs moved for writs of garnishment under TRIA against nonparty FOGADE's alleged assets held by garnishee the Dinosaur Entities. *See* ECF 355. The Court granted the motion without making an express determination that FOGADE is an "agency or instrumentality" of any Defendant, given that neither FOGADE nor the garnishees were served with the motion. *See* ECF 374. On September 9, 2025, the Clerk issued the Writs to Dinosaur Group Holdings, LLC (ECF 375); DMBL (ECF 376); and Dinosaur Financial Group, LLC (ECF 377). Plaintiffs purported to serve garnishee DMBL by mail sent to an address in London, England. *See* ECF 441. On December 10, 2025, the Clerk entered defaults against the Dinosaur Entities. *See* ECF 442.

On February 13, 2026, Plaintiffs filed Plaintiffs' Motion for Final Default and TRIA Turnover Judgment. *See* ECF 459. On March 20, 2026, FOGADE filed its Response in Opposition to Plaintiffs' Motion for Final Default and TRIA Turnover Judgment, ECF 486,[1] and Plaintiffs filed their Reply on April 7, 2026. ECF 509.[2] On April 7, 2026, Plaintiffs filed a purported "Certificate of Service Pursuant to Fla. Stat. § 77.055 (ECF 375, 376, 377)." This Motion to Dissolve follows.

**ARGUMENT**

**I.      Plaintiffs Failed to Establish *In Rem* Jurisdiction Over the Assets**

This Court lacks in rem jurisdiction over the alleged FOGADE assets that Plaintiffs seek to obtain, because the assets are located outside the United States. The only assets that Plaintiffs seek from the Dinosaur Entities are held by DMBL, "a U.K. financial institution," in blocked accounts

---

[1] The issues raised by FOGADE in its Response in Opposition at ECF 486 apply equally in support of this Motion to Dissolve, and so are preserved herein by reference in support of the instant motion.

[2] Plaintiffs argue in their Reply that, under prior counsel, FOGADE lacked standing to protect its assets. In the extensive litigation involving assets of Venezuelan-owned entities in multiple District Courts around the country, no Court has held that entities owned in whole or in part by Venezuela lack standing to protect their assets. Moreover, undersigned counsel are authorized to represent FOGADE under the government of U.S. recognized President Delcy Rodriguez. On March 11, 2026, the United States filed a Statement of Interest in the Southern District of New York confirming that the United States officially recognizes the government of Delcy Rodriguez as the sole head of state of Venezuela. ECF No. 479-1.

3

located in Spain and Italy. *See* Turnover Mot. Ex. 3; Notice of Settlement ¶¶ 1–3. Florida courts are clear that writs may not issue upon accounts held outside the forum. *See Stansell v. FARC,* 149 F. Supp. 3d 1337, 1341–42 (M.D. Fla. 2015). Because the Court lacked *in rem* jurisdiction, the writs are void and should be dissolved. *See, e.g., Codeventures, LLC v. Vital Motion Inc.*, No. 20-cv-21574, 2021 WL 3742059, at *4 (S.D. Fla. Aug. 23, 2021) (Moreno, J.) (granting motion to dissolve writ because accounts were located outside forum (collecting cases)).

The Dinosaur Entities' purported settlement with plaintiffs did not operate as a waiver of *in rem* jurisdiction. "*[I]n rem* jurisdiction is a very special type of necessary judicial subject matter jurisdiction" under Florida law—one that cannot be waived. *Stansell*, 149 F. Supp. 3d at 1339–40; *see also Ctr. Cap. Corp. v. Gulfstream Crane, LLC*, No. 09-61021-CIV, 2009 WL 4909430, at *7 (S.D. Fla. Nov. 25, 2009) (internal quotation marks and citations omitted) (holding that "a party cannot waive *in rem* jurisdiction under Florida law, and a court proceeding pursuant to *in rem* jurisdiction must actually possess *in rem* jurisdiction over the property that is the subject of the matter."). Moreover, in the Settlement Agreement, DMBL specifically does not waive any defenses. *See* ECF 474 at ¶ 1.

Nor can Plaintiffs rely upon the amended section 772.13(6)(a), Florida Statutes, for *in rem* jurisdiction. The amended statute applies to "postjudgment execution proceedings against *any agency or instrumentality of the terrorist party* not named in the judgment," so it cannot be applied until there has been a proper "agency or instrumentality" determination as to FOGADE. Fla. Stat. § 772.13(6)(a) (emphasis added); *see* Order, *Stansell v. FARC*, No. 19-cv-20896 (S.D. Fla. July 30, 2025) (Torres, J.), ECF 890 (declining to apply § 772.13(6)(a) in similar action where Petrocedeño, S.A. challenged the Court's "agency or instrumentality" determination). Moreover, the amended statute only applies when writs are "served upon any person or entity over whom the court has personal jurisdiction." Fla. Stat. § 772.13(6)(a)(3). As discussed below, the Court did not have personal jurisdiction over the Dinosaur Entities when the Writs were served, so the amended Florida statute cannot be invoked.

Applying the amended Florida statute, moreover, would raise serious constitutional concerns meriting the Court's application of the constitutional avoidance doctrine. For example, it

4

would raise the question of whether the statute's alleged retroactive application "impairs a vested right, creates a new obligation, or imposes a new penalty" in violation of the Florida Constitution. *See Buis v. Universal Prop. & Cas. Ins. Co.*, 394 So. 3d 738, 740 (Fla. 2d DCA 2024) (citation omitted). The statute may also give rise to competing judicial decisions by permitting multiple forums to exercise jurisdiction over the same assets. *See Stansell v. FARC*, No. 19-cv-20896, 2025 WL 1755900, at *3 (S.D. Fla. June 25, 2025) (transferring garnishee's interpleader actions to "minimize the chances" of courts entering conflicting turnover orders). Application would also raise the question of whether the statute violates the Full Faith and Credit Clause of the U.S. Constitution, which requires each state to respect the "public Acts, Records, and judicial Proceedings" of other states. U.S. Const. art. IV, § 1. To the extent the statute's service provisions conflict with federal law or treaty obligations of the United States, such as the FSIA or Hague Service Convention, the statute violates Federal Rule of Civil Procedure 69 and the Supremacy Clause of the U.S. Constitution. U.S. Const. art. VI, cl. 2.

## II.    <u>Plaintiffs Failed to Establish Personal Jurisdiction Over the Garnishee</u>

The writ of garnishment directed at DMBL is also a nullity because the Court lacked personal jurisdiction over DMBL at the time the writ was issued. Personal jurisdiction over a garnishee is a constitutional prerequisite to any binding enforcement order, including a writ. *Stansell*, 149 F. Supp. 3d at 1339 (holding that court in garnishment proceeding must have both personal jurisdiction over garnishee and in rem jurisdiction over property (collecting cases))*; see also Codeventures*, 2021 WL 3742059, at *2 (same).

In seeking their writ, Plaintiffs failed to inform the Court that garnishee DMBL is a U.K. financial institution. *See generally* ECF 355; *see also Power Rental Op Co. v. V.I. Water & Power Auth.*, No. 3:20-cv-1015, 2021 WL 9881137, at *8 (M.D. Fla. July 6, 2021) (holding that party seeking writ of garnishment "has the burden of presenting prima facie evidence demonstrating that the relevant bank accounts are located within the Court's jurisdiction"). Indeed, Plaintiffs did not allege or show that DMBL had any presence in the United States or otherwise establish that DMBL is subject to this Court's personal jurisdiction. *See* ECF 355. The writ is thus void *ab initio*, because the Court never had personal jurisdiction to issue it in the first place, and so the order must be

vacated and the writ dissolved. *See, e.g*., *Linstol USA, LLC v. Midway Advanced Prods., LLC,* No. 2:18-cv-669-FTM-38NPM, 2020 WL 224527, at *1 (M.D. Fla. Jan. 15, 2020) (dissolving writ because court had neither personal jurisdiction over garnishee nor in rem jurisdiction over res); *Packman1, Inc. v. Seasons Best Produce*, *Corp.*, No. 18-cv-816, 2022 WL 738556, at *1 (M.D. Fla. Feb. 16, 2022) (denying writ because plaintiffs failed to demonstrate personal jurisdiction over garnishee bank); *Prepared Food Photos, Inc. v. Agewellsolutions, LLC*, No. 6:23-cv-453, 2025 WL 1906706, at *2–3 (M.D. Fla. July 10, 2025) (denying motion for turnover requested by plaintiff and garnishee bank because court was not satisfied of its jurisdiction over garnishee and was "not persuaded that the [plaintiff and garnishee] can confer jurisdiction by mere agreement").

Finally, Plaintiffs cannot argue that DMBL waived personal jurisdiction. To the contrary, in the purported "Settlement Agreement" between Plaintiffs and DMBL, DMBL specifically does not waive any such defense. *See ECF* 474 at ¶ 1.

### III.     Plaintiffs Failed to Initiate a Separate Action and Establish Jurisdiction

### A.     Plaintiffs Failed to Initiate a New Civil Action

Plaintiffs seek to use TRIA to hold FOGADE, a non-party foreign state entity, liable for Plaintiffs' default ATA judgment against Defendants, but that attempt "is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the [ATA] case." *Peacock v. Thomas*, 516 U.S. 349, 359 (1996); *accord Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013). Plaintiffs were thus required to initiate a new action and establish this Court's subject matter and personal jurisdiction for their claim against FOGADE. *See Peacock*, 516 U.S. at 355 (holding that "subsequent lawsuit" based on existing judgment must have "independent basis for jurisdiction"); *Forster v. Nations Funding Source*, 648 F. App'x 850, 852 (11th Cir. 2016) (applying *Peacock* to proceedings under Florida garnishment statutes).

The Eleventh Circuit recently affirmed that plaintiffs seeking to enforce against entities "who did not already owe" an underlying judgment face dismissal if they fail to independently establish subject-matter jurisdiction, even when only invoking the court's ancillary jurisdiction to enforce the judgment. *Casa Express Corp. v. Bolivarian Republic of Venez.*, 158 F.4th 1176, 1186

(11th Cir. 2025) (affirming dismissal for lack of jurisdiction where judgment-holder went beyond "seeking 'compliance with [an] existing judgment'" to pursue "a person not already liable" (quoting *Peacock*, 516 U.S. at 357–58)). Because Plaintiffs failed to initiate a new action—much less establish jurisdiction over FOGADE—the writs and the Order granting those writs are void and must be vacated, the Motion for Turnover must be denied, and this action must be dismissed. *See Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217–24 (11th Cir. 2009) (holding that failure to vacate void judgment is abuse of discretion and vacating default judgment entered without personal jurisdiction).

**B.      Plaintiffs Failed to Establish Subject-Matter Jurisdiction Under the FSIA**

Plaintiffs were required, but failed, to establish subject-matter jurisdiction over FOGADE under the FSIA, which provides "the sole basis for obtaining jurisdiction" over FOGADE. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see also Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009) (holding that plaintiffs bear the burden of establishing an exception to a foreign state's immunity).

Under the FSIA, a "foreign state" includes "a political subdivision of a foreign state" like FOGADE. *See* 28 U.S.C. § 1603(b)(2). By law, FOGADE is an autonomous institution of public law ascribed to the Ministry of Finance, and enjoys the same "fiscal, tax, and procedural authority, privileges, and exemptions as granted under the Law to the Republic." *See* ECF 486-1, Art. 103. Its purpose is to guarantee funds collected from the public by banking institutions and to act as regulator of banking institutions and their related legal entities, performing an essential function of the Venezuelan state. *Id*. Indeed, Plaintiffs concede that FOGADE is a "part of the government of Venezuela." *See* Mot. for Writs 4; Turnover Mot. 9.

FOGADE also qualifies as a "political subdivision" under the "core functions test," which "asks whether the core functions of the foreign entity are predominantly governmental or commercial." *See Singh v. Caribbean Airlines Ltd.*, 798 F.3d 1355, 1358 (11th Cir. 2015) (adopting core functions test and holding that Ministry of Finance is a political subdivision); *see also, e.g., Garb v. Republic of Poland*, 440 F.3d 579, 596 & n.21 (2d Cir. 2006) (holding that Ministry of Treasury, like "all governmental units beneath the central government," is a "political subdivision"

7

(collecting cases and legislative history)). FOGADE's core functions are predominantly governmental, because its established purpose is to "guarantee the funds accepted from the general public by banking institutions" and to "act as liquidator of banking institutions and their related legal entities." *See* ECF 486-1, Art. 104. These are inherently "governmental functions." *See Singh*, 798 F.3d at 1359. FOGADE is thus, for FSIA purposes, "no different than the Government" of Venezuela. *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 618 n.5 (1983) ("*Bancec*").

To establish jurisdiction over FOGADE, Plaintiffs were thus required to bring an action and show an exception to FOGADE's presumptive immunities under §§ 1605–1607 of the FSIA. *See* 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (reinstating dismissal for lack of subject-matter jurisdiction where plaintiff failed to show that any FSIA exception applied); *see also Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co*., 581 U.S. 170, 180 (2017) (holding that "claiming party [must] as a jurisdictional matter prove" that FSIA exception applies). Plaintiffs cannot do so, because no immunity exception would apply here.

TRIA is not a workaround that confers jurisdiction over suits against foreign states and their subdivisions and instrumentalities. As the U.S. Court of Appeals for the D.C. Circuit—the default venue for FSIA actions—has held, TRIA does not provide an independent grant of subject-matter jurisdiction against foreign states in cases where there is no FSIA exception to jurisdictional immunity. *See Does v. Taliban*, 101 F.4th 1, 8–15 (D.C. Cir. 2024) (holding that TRIA permits execution and attachment proceedings involving a foreign sovereign's assets "only where a valid judgment has been entered against the sovereign" itself) (quotation and citation omitted).[3] "Nothing in the text" of TRIA § 201(a) "mentions, let alone abrogates, foreign sovereign or organizational immunity." *Id*. at 9; *see also id*. at 11 (explaining that the "notwithstanding" clause in § 201(a) is "too indirect of a formulation to provide the needed clarity to abrogate sovereign

---

[3] The question whether TRIA provides an exception to FSIA jurisdictional immunity is split between the Second Circuit in *Havlish v. Taliban*, 152 F.4th 339 (2d Cir. 2025) (holding that TRIA supersedes FSIA jurisdiction and execution immunities) and the D.C. Circuit in *Does 1-7 v. Taliban*, 101 F.4th 1 (D.C. Cir. 2024). However, the D.C. Circuit's analysis of TRIA is superior because it is more faithful to the text, context, and structure of the FSIA's broad statutory scheme.

immunity"). Counsel for Plaintiffs also represent the appellees in *Osio v. PDVSA* before the Eleventh Circuit and have conceded there that "much of the D.C. Circuit's reasoning in *Does* [*v. Taliban*] is inconsistent with the approach advocated" by the *Osio* and *Marron* Plaintiffs. *See* Br. for Appellees at 40, *Osio v. PDVSA*, No. 25-12365 (11th Cir. filed Dec. 8, 2025), BL-25.

The United States, in substantively identical cases, has stated its position that a judgment creditor must establish an exception to FSIA jurisdictional immunity in a TRIA proceeding against a foreign state's assets. *See* Statement of Interest of the United States at 9–24, *Caballero v. FARC*, No. 20-mc-0040 (W.D.N.Y. Sept. 20, 2022), ECF 125 ("U.S. *Caballero* Br."); Statement of Interest of the United States at 14–27, *Havlish v. Bin-Laden, No*. 03-cv-9848 (S.D.N.Y. Feb. 11, 2022), ECF 563 ("U.S. *Havlish* Br."). Should the Court have any doubts about the views of the United States, it should invite the United States to express its views. 28 U.S.C. § 517; *see also Helmerich*, 581 U.S. at 181 (stating that U.S. views are given "special attention" on FSIA issues).

In any event, the issue of whether TRIA provides an independent grant of subject-matter jurisdiction is currently before the Eleventh Circuit in the *Osio* matter. *See* Br. for Appellant 29–39, *Osio*, No. 25-12365. At a minimum, this Court should stay these proceedings pending the Eleventh Circuit's decision.

## C.      Plaintiffs Failed to Establish Personal Jurisdiction Over FOGADE

Plaintiffs have likewise never established this Court's personal jurisdiction over FOGADE through an independent civil action, a necessary prerequisite to attempting to override jurisdictional or attachment immunity. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (holding that plaintiff bears burden to establish personal jurisdiction over non-resident defendants). To establish personal jurisdiction, Plaintiffs must (1) properly serve FOGADE under the FSIA, 28 U.S.C. § 1608(a), and (2) establish an exception to FOGADE's jurisdictional immunity. *See* 28 U.S.C. § 1330. The United States agrees that these requirements must be met in a TRIA turnover proceeding. *See* U.S. *Caballero* Br. 3, 5, 24–29. Because Plaintiffs can make neither of these showings, the Court lacks personal jurisdiction over FOGADE to make the liability determinations that are necessary before any enforcement

9

proceedings could begin. *See Oldfield*, 558 F.3d at 1217–24 (vacating judgment for lack of jurisdiction).

### IV.    Plaintiffs Did Not Satisfy FSIA's Strict Service Requirements

Any service of process implicating FOGADE's rights had to comply with the FSIA's strict, hierarchical requirements governing service of process on foreign states and political subdivisions, 28 U.S.C. § 1608(a). *See Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019) (recognizing that service under FSIA involves "a category of cases with sensitive diplomatic implications" requiring "adherence to strict requirements"). Plaintiffs "never sued, served, or summoned" FOGADE in their ATA action against Defendants, *see Jackson-Platts*, 727 F.3d at 1134, and Plaintiffs' defective purported service of their writs did not comply with § 1608(a).

As there is no "special arrangement for service" between Plaintiffs and FOGADE, 28 U.S.C. § 1608(a)(1), Plaintiffs were required to serve FOGADE via the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), to which Venezuela and the United States are parties. *See id*. § 1608(a)(2); *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." (*quoting Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988))).

Because Venezuela objects to service by mail, to properly serve FOGADE under the Hague Service Convention, a plaintiff must (1) attempt service through Venezuela's central authority, (2) wait a period of at least six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) absent such a certificate, serve the defendant consistent with Venezuelan law. *See Hague Service Convention*, art. 10; Decl. 1 & 3 of Venezuela to Hague Service Convention (objecting to service by mail); *see also Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, 23 F.4th 1036, 1038–43 (D.C. Cir. 2022); *LS Energia Inc. v. Corporacion Electrica Nacional S.A.*, No. 21-cv-21642, 2023 WL 122196, at *1 (S.D. Fla. Jan. 6, 2023). Plaintiffs made no such efforts.

If Plaintiffs could not perfect service under the Hague Service Convention, then they would have been required to serve FOGADE by "any form of mail requiring a signed receipt, to be

dispatched by the clerk of the court to the head of the ministry of foreign affairs" of Venezuela. *See* 28 U.S.C. § 1608(a)(3). If service could not be made within 30 days under § 1608(a)(3), then Plaintiffs would have been required to serve FOGADE by sending the service packet "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia," for transmittal "through diplomatic channels to the foreign state." *Id*. § 1608(a)(4). Plaintiffs took none of these steps.

Plaintiffs' purported "service" was defective under the Hague Service Convention and the FSIA, resulting in FOGADE being deprived of due process at all stages of this enforcement proceeding. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (holding that service of process "is fundamental to any procedural imposition on a named defendant"). Indeed, due process is lacking where Plaintiffs never served FOGADE under the FSIA, never established that FOGADE is liable for their injuries, and never established any relationship between any alleged conduct by FOGADE, Plaintiffs' injuries, and the forum. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that courts assess whether personal jurisdiction comports with due process by analyzing "the relationship among the defendant, the forum, and the litigation" (*quoting Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984))); *Caballero v. FARC*, No. 4:21-cv-00140, 2023 WL 125240, at \*6–7 (S.D. Tex. Jan. 6, 2023); (holding that state court's *ex parte* order that respondent was an "agency or instrumentality" under TRIA violated due process).

Plaintiffs' arguments in their briefings regarding the purported settlement with the Dinosaur Entities are unavailing. The Supreme Court has expressly rejected Plaintiffs' argument (*see* ECF 479 at 6, 9), that "actual notice" can cure a lack of service under § 1608(a). *Harrison*, 587 U.S. at 12, 19 (rejecting argument that "actual notice" can satisfy § 1608(a)'s service requirements, even in "highly publicized litigation of which the [foreign-state defendant] may have been aware"); *see also Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 924 n.14 (11th Cir. 2003) (holding "actual notice alone [i]s not enough").

Plaintiffs are also incorrect in asserting (ECF 479 at 9) that service under Florida state procedures was sufficient to obtain jurisdiction over FOGADE, a foreign state. Plaintiffs ignore Rule 69 of the Federal Rules of Civil Procedure, which states that the procedure on execution

"must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." The FSIA is just such a statute. The United States agrees, explaining, "Because section 1608 sets out the procedures by which 'service in the courts of the United States . . . shall be made,' . . . and because Rule 69 dictates that applicable federal statutes govern with respect to post-judgment execution writs, as is involved here, service under 1608 is required." U.S. *Caballero* Br. 27.

The writs must therefore be dissolved, the Order granting those writs vacated, the Motion for Turnover Judgment denied, and this action dismissed. *See Harrison*, 587 U.S. at 18–19 (holding that even "highly technical" defects in service require vacatur).

## V.   TRIA Does Not Apply to FOGADE

### A.   FOGADE is Not an "Agency or Instrumentality" of Defendants

Although this Court granted Plaintiffs' unserved motion for writs of garnishment, it has never expressly and properly determined that FOGADE is an "agency or instrumentality" of Defendants under TRIA because neither the garnishees nor FOGADE were ever even served with the motion. *See* ECF 374; *cf. Stansell v. FARC*, 771 F.3d 713, 729 (11th Cir. 2014) ("Stansel II") (holding that due process entitled third party property owners to be heard on their challenge to the TRIA agency or instrumentality issue).

Nor have Plaintiffs put forward any admissible evidence that would discharge their burden to prove such a determination. Plaintiffs rely entirely on the unsupported conclusions and speculation of a declaration by Douglas Farah, a consultant. *See* ECF 355 at 5–14 (relying exclusively on Farah Declaration, ECF 355-1 ("Farah Decl.")); *see also* ECF 459 at 3–7 (same). But Plaintiffs' motions, and Farah's Declaration, fail to meet their *prima facie* burden to show that they are entitled to execute their default judgment on FOGADE's alleged assets. Magistrate Judge Torres recently rejected a similarly paltry showing in another TRIA case, concluding that an agency-or-instrumentality determination requires "definitive evidence," and that an expert declaration offering only "conclusory" assertions "devoid of corroborating evidence" will not do. R. & R. 4–5, *Stansell*, No. 19-cv-20896 (S.D. Fla. Nov. 6, 2025), ECF 1049 (*set aside as moot*, ECF 1053); *cf. Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (holding that "vague

12

and conclusory allegations" are insufficient to establish *prima facie* case of personal jurisdiction); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A *prima facie* case requires non-conclusory fact-specific allegations or evidence.")

Farah' declaration, Plaintiffs' sole "support," contains zero non-conclusory allegations, let alone evidence, that FOGADE is an agency or instrumentality of Defendants. For example, Farah asserts (at ECF 355-1, ¶¶ 21, 41) that "FOGADE is an instrumentality of Nicolas Maduro" and a "key piece" of the Maduro Regime, but he identifies no facts to support his conclusions. At most, Farah alleges (*id.* at ¶ 21) that in 2011, then-President Hugo Chávez "announced he was authorizing FOGADE to transfer" tracts of land from failed banks "to the state for use in the 'Great Housing Mission.'" Farah then asserts (*id.* at ¶¶ 21–22) that years after FOGADE supposedly transferred these tracts of land, the illegitimate Maduro regime used that housing program as "conduits for graft." Farah does not allege that FOGADE had any role in this corrupt activity involving assets that had not been in its possession since the previous regime.

Plaintiffs also rely on OFAC's protective blocking of FOGADE's assets. *See* ECF 459 at 5. But the Eleventh Circuit has made clear that the agency-or-instrumentality determination is "not dispositively decided by OFAC designation." *Stansell II*, 771 F.3d at 726. That is because "the agency or instrumentality determination is separate from the determination that an asset is blocked and carries more immediate and substantial consequences than does the [OFAC] designation." *Id.* at 727. Indeed, "designation is a unilateral move that takes place and blocks [an entity's] assets before [it] has an opportunity to challenge the designation." *Id.*; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (eliminating Chevron deference to agency action).

Farah's conclusory allegations that FOGADE executives were Maduro "loyalists" (ECF 355-1 at ¶ 24) fare no better. For instance, Farah contends (*id.* at ¶¶ 27–28) that Laura Carolina Guerra Angulo was appointed—apparently by the Ministry of Economy and Finance— as President of FOGADE in 2023, and is the sister of Maduro's ex-wife. But other than a conclusory assertion that her appointment "highlights her status within Maduro's inner circle," Farah does not allege any facts that FOGADE operated as an agency or instrumentality of Maduro during Guerra's tenure. Similarly, Farah points (*id.* at ¶¶ 29–30) to appointments of Héctor José Silva Hernández

13

and Jimmy Alexander Berrios Ojeda in 2020 and lists prior positions they held. But again, he points to no facts showing that FOGADE acted as an agency or instrumentality of Maduro during this period. *See generally id.* ¶¶ 19-41. Instead, he insists (*id.* at ¶¶ 23–24, 31–33, 41) in conclusory, circular fashion that because they were appointed, they must be loyal to Maduro, and because they must be loyal to Maduro, FOGADE must have been an agency or instrumentality.

None of these allegations, stripped of Plaintiffs' gloss, can support a determination that FOGADE is an "agency or instrumentality" of Defendants, let alone connect FOGADE to Plaintiffs' injuries. Plaintiffs certainly do not allege that FOGADE "consciously and culpably" provided any support to Defendants that caused Plaintiffs' injuries. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 491, 493 (2023) (in ATA case holding that "[c]ulpability of some sort is necessary to justify punishment of a secondary actor, lest mostly passive actors like banks become liable for all of their customers' crimes" (internal quotation marks and citation omitted)).

Moreover, the Farah Declaration—the only purported support offered by Plaintiffs—is inadmissible hearsay and hearsay within hearsay. Fed. R. Evid. 801, 802. The declaration largely provides no sources or facts whatsoever to support Mr. Farah's conclusions and assertions about FOGADE. *See* ECF 355-1 at ¶¶ 19–23, 26–35, 39–41. The few sources Mr. Farah does cite include inadmissible news articles (*see id.* ¶¶ 21, 27–30, 34), and a vague reference to "interviews" with unnamed "sources" (*id.* ¶ 14). None of this inadmissible hearsay can become admissible merely by Farah's incorporation of it into a declaration. *See* Fed. R. Evid. 801–03; *Mamani v. Berzain*, No. 07-cv-22459, 2018 WL 1010582, at *3 n.6 (S.D. Fla. Feb. 22, 2018) ("[A] party cannot call an expert simply as a conduit for introducing hearsay" (*quoting Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013))); *Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304 (M.D. Fla. 2023) (holding that news articles "typically contain 'multiple layers of hearsay,'" and are inadmissible absent a hearsay exception (*quoting Brooks v. Miller*, 158 F.3d 1230, 1242 (11th Cir. 1998))); *Gonzalez v. State of Fla. Dep't of Mgmt. Servs.*, 124 F. Supp. 3d 1317, 1329 (S.D. Fla. 2015), *aff'd sub nom. Gonzalez v. Fla. Dep't of Mgmt. Servs.*, 683 F. App'x 738 (11th Cir. 2017) (striking out-of-court conclusory statements); *Rosen v. Serv. Corp. Int'l*, No. 11-cv-62547, 2012 WL 370298, at

*4 n.5 (S.D. Fla. Feb. 3, 2012) (finding that information from unnamed outside sources was likely inadmissible hearsay). Farah's opinion, absent any admissible facts, cannot meet Plaintiffs' burden.

The Farah Declaration is also inadmissible because Plaintiffs and Farah failed to meet their federal Touhy obligations. Department of Defense and Homeland Security regulations prohibit employees, including current and former contractors, from testifying, including through sworn declaration, about information acquired during the performance of their official duties without prior department approval. 32 C.F.R. §§ 97.7, 97.9 (DoD); 6 C.F.R. § 5.45 (DHS). These Touhy regulations require the party seeking testimony to provide a written statement to the relevant agencies setting forth the nature of the testimony so the agency can determine whether to authorize the testimony. 32 C.F.R. §§ 97.7, 97.9; 6 C.F.R. § 5.45. Compliance with these regulations is mandatory. *United States v. Rider*, No. 20-cr-232, 2023 WL 2072088, at *12 (E.D. Tex. Feb. 17, 2023) (*citing United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994)); *see also McMahon v. Presidential Airways, Inc.*, No. 05-cv-1002, 2009 WL 10705562, at *4 (M.D. Fla. Nov. 5, 2009) (requiring party to comply with DoD Touhy regulations). Yet Plaintiffs have submitted no proof of Farah's authority to opine on matters he learned from his work with DoD and DHS, including testimony based on his work for "the office of the Deputy Assistant Secretary of Defense for Counternarcotics and Global Threats" from 2014 to 2022. *See* Farah Decl. ¶ 4. Because Plaintiffs' counsel obtained this opinion in violation of Touhy regulations, the Court should strike Farah's opinion. *See, e.g., McMahon*, 2009 WL 10705562, at *4 (striking expert report obtained in violation of Touhy regulations and prohibiting testimony); *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, No. 05-cv-80183, 2006 WL 1523234, at *3 (S.D. Fla. Apr. 24, 2006) (same).

Without any allegations or evidence—let alone admissible evidence—that FOGADE is an "agency or instrumentality" of Defendants, the writs must be dissolved and the Turnover Motion denied. At the very least, this Court should require Plaintiffs to discharge their burden to show their entitlement to the writs and to a turnover judgment through an evidentiary hearing where FOGADE may contest Plaintiffs' utter lack of evidence. *See Stansell II*, 771 F.3d at 727 (holding that alleged agency or instrumentality is "entitled to be heard on their challenge to the agency or instrumentality issue"); *see also Stansell v. FARC*, 45 F.4th 1340, 1360 (11th Cir. 2022) ("Stansell

V") (remanding for trial on agency or instrumentality question). Any such hearing could only take place if the Court has first determined that Plaintiffs have established subject-matter and personal jurisdiction over FOGADE under the FSIA, and FOGADE has availed itself of its related appellate rights. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 US 480, 493–94 (1983) (holding that foreign state's immunity, ergo subject-matter jurisdiction, must be decided "[a]t the threshold of every action" in which it is asserted); *Helmerich*, 581 U.S. at 174 (holding that "basic objective" of foreign sovereign immunity is "to free a foreign sovereign from suit," so immunity must be decided at outset).

**B.      Plaintiffs Failed to Show the Blocked Assets Are Assets "Of" Defendants**

Plaintiffs have not proven the assets are "blocked assets of that terrorist party (*including* the blocked assets of any agency or instrumentality of that terrorist party)." TRIA § 201(a) (emphases added). As the United States has explained in similar proceedings, this fact puts TRIA out of reach. *See* U.S. *Caballero* Br. 29–30.

The plain meaning of the emphasized language is that "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party." Statement of Interest of the United States at 30, *In re 650 Fifth Ave.*, No. 17-3258 (2d Cir. Aug. 31, 2018), ECF 140 (citing *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211 (2d Cir. 2014)). Further, the word "including" (instead of "and" or "or") underscores that "the terrorist party" must have at least an ultimate-beneficial ownership interest in "the blocked assets." TRIA § 201(a). But Plaintiffs have never alleged that the assets they seek are property "of" Defendants, or any terrorist party, or that any terrorist party has any ownership interest in the assets, thus putting TRIA out of reach. *Cf. Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019) (holding that broad reading of TRIA "could invite lawsuits against a third-party institution, such as a bank, that had only incidental and perhaps unintentional involvement with a terrorist party").

The United States has recently demonstrated its interest in ensuring that the FSIA and TRIA are not improperly enforced against entities and assets that are not associated with terrorist activities. *See* U.S. *Caballero* Br.; U.S. *Havlish* Br. The Court should thus also invite the views of the United States on this issue under 28 U.S.C. § 517.

16

## CONCLUSION

Plaintiffs' Writs are void for several reasons. The Court lacks *in rem* jurisdiction over Spanish and Italian accounts and personal jurisdiction over the British garnishee. FOGADE is a foreign nation presumptively immune, and Plaintiffs have failed to bring a separate suit and establish jurisdiction under a FSIA exception. Service was improper and failed to afford FOGADE due process. And TRIA does not apply to FOGADE in any event.

WHEREFORE, Non-Party FOGADE respectfully seeks entry of an order to (1) dissolve the Writs; (2) vacate any orders issued on the Writs; and (3) dismiss this action as it relates to alleged property of FOGADE with prejudice.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), FOGADE requests oral argument on this Motion to enable full development of the issues and arguments raised in this case and to facilitate the Court's resolution of the Motion.

## RULE 7.1(A)(2) CERTIFICATION

Undersigned counsel represents that, in a good-faith effort to resolve the issues raised in the Motion, undersigned requested Plaintiffs' counsel's position. In response, Plaintiffs' counsel requested authority supporting undersigned counsel's representation of FOGADE, rather than providing a substantive position on the Motion.

Dated: April 27, 2026                          Respectfully submitted,

                                               **Stephen S. Stallings**
                                               Marcos Daniel Jiménez
                                                 Florida Bar No. 441503
                                               Stephen S. Stallings
                                                 Florida Bar No. 958859
                                               **LEÓN COSGROVE JIMÉNEZ, LLP**
                                               255 Alhambra Circle, 8th Floor
                                               Miami, Florida 33134
                                               Telephone: (305) 740-1975
                                               Email:  mdj@leoncosgrove.com
                                               Email:  sstallings@leoncosgrove.com

                                               *Counsel for BANFANB and FOGADE*

18