UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

### CASE NO. 1:21-cv-23190-MORENO/TORRES

CARLOS EDUARDO MARRÓN; MARIA
MARRÓN; C.R., a minor; and S.A., a minor,

      Plaintiffs / Judgment Creditors,

v.

NICOLAS MADURO MOROS; FUERZAS
ARMADAS REVOLUCIONARIAS DE
COLOMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS
SOLES; VLADIMIR PADRINO LÓPEZ;
MAIKEL JOSE MORENO PEREZ; NESTOR
LUIS REVEROL TORRES; TAREK
WILLIAM SAAB; and TAREK EL AISSAMI,

      Defendants / Judgment Debtors.

_____/

### JUDGMENT CREDITORS' STATEMENT REGARDING OVERLAPPING AND DIFFERING ISSUES IN FOGADE'S MOTION TO DISSOLVE AND DISMISS (ECF No. 532) AND BANFANB'S MOTION TO DISSOLVE AND DISMISS (ECF No. 407), PURSUANT TO THE COURT'S ORDER (ECF No. 567)

Plaintiffs/Judgment Creditors respectfully submit this statement pursuant to the Court's

Order Setting Second Hearing on June 18, 2026 (ECF No. 567), which directed counsel to file "a

brief statement . . . listing the issues that overlap between FOGADE's motion and the Banco de la

Fuerza Armada Nacional's motion and explaining how the motions differ."

The two motions are: (1) the Motion by Banco de la Fuerza Armada Nacional Bolivariana,

Banco Universal, C.A. ("BANFANB") to Dissolve Writs of Garnishment and Dismiss Action with

Prejudice (ECF No. 407), which concerns the writs of garnishment served on PNC Bank, N.A. and

Mastercard International Incorporated (ECF Nos. 314, 315) reaching a blocked Mastercard sub-

escrow account at PNC; and (2) the Motion by Fondo de la Protección Social de los Depósitos

1

Bancarios ("FOGADE") to Dissolve Writs of Garnishment and Dismiss Action with Prejudice (ECF No. 532), which concerns the writs of garnishment issued to Dinosaur Group Holdings, LLC, Dinosaur Merchant Bank Ltd. ("DMBL"), and Dinosaur Financial Group, LLC (ECF Nos. 375–377) reaching blocked assets that belong to FOGADE. Both entities are presently represented by the same counsel (Leon Crosgrove), and were previously represented by the same counsel (White & Case). See ECF No. 532 at 18 (signature block, "Counsel for BANFANB and FOGADE").

Both motions are fully briefed. The Judgment Creditors opposed BANFANB's motion (ECF No. 421), and BANFANB replied (ECF No. 428). The Judgment Creditors opposed FOGADE's motion (ECF No. 553), and FOGADE replied (ECF No. 562). Related turnover motions are also pending as to each set of assets: the Judgment Creditors' Motion for Final Turnover Judgment as to the blocked BANFANB assets (ECF No. 435; opposition at ECF No. 447; reply at ECF No. 454), set for hearing with BANFANB's motion (ECF No. 563), and the Judgment Creditors' Motion for Final Default and TRIA Turnover Judgment as to the blocked assets held by the Dinosaur Entities (ECF No. 459; FOGADE's opposition at ECF No. 486; reply at ECF No. 509).

Section I below lists the overlapping issues and, for each, very briefly summarizes the applicable law under which — as demonstrated in the Judgment Creditors' oppositions — the movants' shared contention fails. Section II explains how the motions differ. The Judgment Creditors' full responses appear in their oppositions (ECF Nos. 421, 553) and turnover briefing (ECF Nos. 435, 454, 459, 509).

## I.   OVERLAPPING ISSUES

The two motions raise the following ten overlapping issues, in materially similar (and often verbatim) terms:

**1.   Whether a new civil action is required.**

Both Agencies/Instrumentalities ("A/I") contend that the Judgment Creditors were required to initiate a new, independent civil action to reach their blocked assets because they are each a non-party, relying on *Peacock v. Thomas*, 516 U.S. 349 (1996), *Jackson-Platts v. General Electric Capital Corp.*, 727 F.3d 1127 (11th Cir. 2013), and *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 158 F.4th 1176 (11th Cir. 2025). *Compare* ECF No. 407 § I.A at 5, *with* ECF No. 532 § III.A at 6–7.

**The applicable law, and why the contention fails:** The A/I's argument is foreclosed by binding Eleventh Circuit precedent that squarely rejects the notion that "a post-judgment action brought pursuant to § 201 of the TRIA is a new and independent civil suit," recognizing instead that "execution and garnishment proceedings are ancillary proceedings," *Stansell v. FARC* ("*Stansell V*"), 45 F.4th 1340, 1349 (11th Cir. 2022), and holding that in such proceedings writs are contested at the dissolution and turnover stages, *Stansell v. FARC* ("*Stansell II*"), 771 F.3d 713, 729 (11th Cir. 2014). *Peacock* itself preserves ancillary enforcement jurisdiction over "attachment, garnishment, and other supplementary proceedings," 516 U.S. at 356, and *Casa Express* proceeded under a common law "constructive-trust theory," akin to "a wholly independent substantive action," 158 F.4th at 1187-88 — not execution expressly authorized by TRIA § 201(a). See ECF No. 421 at 3–5, 10; ECF No. 553 at 8–9.

**2.** **Whether a hearing is required before writs are issued; standard of proof.**

The A/Is argue that they were entitled to a hearing before a writ was issued, and that Plaintiffs must "prove" or provide "definitive evidence" of their agency or instrumentality status at a hearing.  ECF No. 532 at 12–13, 21; ECF No. 407, at 18, 23.

**The applicable law, and why the contention fails:**  To obtain a writ of garnishment, Judgment Creditors need only make a *prima facie* showing that a third party is agency or instrumentality of the Judgment Debtor.  *See Stansell II*, 771 F.3d at 729 (authorizing issuance of writ "after Plaintiffs made factual proffers" supporting A/I status); ECF No. 253 ("the Court entered an order finding that Plaintiffs met their burden of making a prima facie showing on all of the elements necessary to satisfy TRIA."). Further, judgment creditors are not entitled to a hearing unless the provide evidence disputing Plaintiffs agency or instrumentality showing, which they have failed to do. *Stansell V*, 45 F.4th at 1356; ECF No. 553 at 14.

**3.** **Foreign sovereign immunity / subject-matter jurisdiction under the FSIA.**

Both A/Is contend that they enjoy presumptive immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611, that no exception applies, and that Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") is not an independent grant of subject-matter jurisdiction, relying principally on *Does v. Taliban*, 101 F.4th 1 (D.C. Cir. 2024), and Statements of Interest filed by the United States in *Caballero* and *Havlish*. *Compare* ECF No. 407 § I.B at 5–8, *with* ECF No. 532 § III.B at 7–9.

**The applicable law, and why the contention fails:** TRIA § 201(a) applies "[n]otwithstanding any other provision of law" and itself confers subject-matter jurisdiction over post-judgment execution against blocked assets, *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010). The Second Circuit — in the very *Havlish* decision FOGADE acknowledges

4

(ECF No. 532 at 8 n.3) — held that § 201(a) supersedes the FSIA's jurisdictional and execution immunities and creates an independent basis for subject-matter jurisdiction, *Havlish v. Taliban*, 152 F.4th 339 (2d Cir. 2025), and this district rejected the identical argument in *Albán Osio v. Maduro Moros*, 2025 WL 2336072, at 2 (S.D. Fla. Apr. 9, 2025) (explaining that "a multitude of courts—including our district—have held that the TRIA nullifies any immunity that 'terrorist entities might otherwise enjoy under the FSIA.'"), *R&R adopted*, 2025 WL 1891862 (S.D. Fla. July 9, 2025). *See* ECF No. 421 at 4–8; *see also* ECF No. 553 at 8–11 (commercial-activity exception, 28 U.S.C. § 1605(a)(2), satisfied in any event).

4. **Personal jurisdiction over the Terrorist Agency/Instrumentality.**

Both A/Is contend that the Court lacks personal jurisdiction over them absent FSIA-compliant service and an applicable immunity exception. *Compare* ECF No. 407 § I.C at 8–9, *with* ECF No. 532 § III.C at 9–10.

**The applicable law, and why the contention fails:** Garnishment is a *quasi in rem* proceeding requiring personal jurisdiction over the **garnishee** and jurisdiction over the **res** — not in personam jurisdiction over a non-party asset claimant. *U.S. Rubber Co. v. Poage*, 297 F.2d 670 (5th Cir. 1962); ECF No. 421 at 7–9. Neither A/I cites any case holding that personal jurisdiction over a claimant is a prerequisite to a TRIA writ. ECF No. 553 at 11.

5. **Service under FSIA § 1608, the Hague Service Convention, and due process.**

Both movants contend that the writs are void because the movants were not served in accordance with 28 U.S.C. § 1608 and the Hague Service Convention, and that the proceedings therefore deprived them of due process, relying on *Republic of Sudan v. Harrison*, 587 U.S. 1 (2019). *Compare* ECF No. 407 § II at 9–11 (invoking § 1608(b)), *with* ECF No. 532 § IV at 10–12 (invoking § 1608(a)).

**The applicable law, and why the contention fails:** Section 1608 by its terms governs service of a "summons and complaint" commencing an action against a foreign state (and, under § 1608(e), service of default judgments) — not post-judgment writs of garnishment, for which Florida law supplies the notice procedure under Fed. R. Civ. P. 69(a) and Fla. Stat. §§ 77.041, 77.055. ECF No. 553 at 11–12; ECF No. 421 at 8–9. They cite no cases that hold that the FSIA applies in this context. *Id.* In addition, the Eleventh Circuit rejects technical § 1608 objections where the entity had actual notice, *Harris Corp. v. National Iranian Radio & Television*, 691 F.2d 1344 (11th Cir. 1982) — and both movants concededly received actual notice, appeared, and fully briefed their challenges. The A/I's assertion that action notice is required by *Harrison* fails, that case involved a different FSIA provision, § 1608(a)(3), applicable to service on the foreign ***state*** itself. ECF No. 421 at 9; ECF No. 553 at 12-13.

6. <u>**Absence of a prior, express agency-or-instrumentality determination**</u>.

Both movants contend that the writs could not issue absent a prior determination by the Court that the movant is an "agency or instrumentality" of a Defendant under TRIA § 201, relying on *Stansell II*. *Compare* ECF No. 407 § III.A at 11–12, *with* ECF No. 532 § V.A at 12.

**The applicable law, and why the contention fails:** Under *Stansell II*, TRIA writs issue upon a *prima facie* showing, with notice and an opportunity to contest afterward; claimants are not entitled to "pre-deprivation hearings," and "[m]ere attachment is a minimally intrusive" step as to assets already blocked. 771 F.3d at 728–29; ECF No. 421 at 10; ECF No. 553 at 13–14. As to FOGADE, the Court in fact ***entered an order*** granting the writ motion after reviewing the Judgment Creditors' agency-or-instrumentality showing (ECF No. 374), so its motion is an improper request to "retread" an existing decision without new evidence. ECF No. 553 at 6, 13.

As to BANFANB, Plaintiffs made a *prima facie* showing when they moved for their writs in June 2025 (ECF No. 313, and exhibits thereto), and accordingly provided the necessary factual support.

> **7.** <u>**Sufficiency and admissibility of the Judgment Creditors' evidentiary showing**</u>.

Both movants attack the supporting declarations of Douglas Farah as supposedly "conclusory" and purportedly containing inadmissible hearsay, assert non-compliance with federal *Touhy* regulations (32 C.F.R. §§ 97.7, 97.9; 6 C.F.R. § 5.45), and alternatively request an evidentiary hearing. *Compare* ECF No. 407 § III.A at 12–17, *with* ECF No. 532 § V.A at 12–16.

**The applicable law, and why the contention fails:** The declarations supply specific, non-conclusory facts satisfying the prima facie standard — for example, BANFANB's role as a central node of the Judgment Debtors' money-laundering network reporting directly to one of the judgment debtors (ECF No. 421 at12-13), and, as to FOGADE, its role in funneling of "Housing Mission" corruption proceeds to Maduro through Alex Saab, and the fact that the very Dinosaur accounts at issue were controlled, at FOGADE, by OFAC-sanctioned Maduro associate Carlos Dugarte (ECF No. 553 at 14, citing ECF No. 355-1 ¶¶ 21, 35–38). Mr. Farah relies chiefly upon his own fieldwork, and to the extent he considered hearsay, it is of a kind reasonably relied upon in the field, and thus permissible under Fed. R. Evid. 703. ECF No. 421 at 16; ECF No. 553 at 15. The movants lack standing to invoke the Government's *Touhy* regulations, which protect federal agencies — not private litigants — and in any event, Mr. Farah does not utilize any "official information" to which the *Touhy* regulations apply.  ECF No. 421 at 13–14; ECF No. 553 at 15. In *Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1049 (D.C. Cir. 2014), on which the A/Is rely, the court held that comparable expert testimony "doubtlessly admissible" (ECF No. 421 at 11). Because neither movant offers ***any contrary evidence***, summary adjudication — not an evidentiary hearing — is the proper course. *Stansell V*, 45 F.4th at 1356; ECF No. 553 at 14.

8.      **Whether the blocked assets are assets "of" the Defendants.**

Both movants contend that TRIA reaches only the blocked assets "of" a terrorist party, and not the blocked assets of an agency or instrumentality of the terrorist party, relying on the United States' Statement of Interest in *In re 650 Fifth Avenue. Compare* ECF No. 407 § III.B at 17–19, *with* ECF No. 532 § V.B at 16–17.

**The applicable law, and why the contention fails:** The "Eleventh Circuit has made clear that, when seeking to execute or garnish property under the TRIA, 'the owner of the asset' may be an 'agency or instrumentality of the judgment debtor.'" *Alban*, No. 1:21-cv-20706, ECF No. 401 at 18, *adopted in relevant part by* ECF No. 583 (quoting *Stansell II*, 771 F.3d at 726).

9.      ***In rem* jurisdiction over accounts located outside Florida.**

Both A/Is contend that the Court lacks in rem jurisdiction because the targeted accounts are located outside the forum, relying on *Stansell v. FARC*, 149 F. Supp. 3d 1337 (M.D. Fla. 2015). *Compare* ECF No. 407 § IV at 20, *with* ECF No. 532 § I at 3–5.

**The applicable law, and why the contention fails:** Florida law now expressly provides that, in terrorism cases like this one, writs of garnishment "apply to intangible assets wherever located, without territorial limitation," and that the situs of a garnishee's intangible assets "shall be deemed to be in this state," conferring in rem jurisdiction regardless of the assets' physical location. Fla. Stat. § 772.13(6)(a) (eff. July 1, 2025); ECF No. 421 at 18; ECF No. 553 at 4–6. The same out-of-forum argument was rejected last fall in *Stansell*, No. 19-cv-20896, ECF No. 1003 (S.D. Fla. Sept. 30, 2025). ECF No. 421 at 18.

10.     **Request for abeyance pending *Osio v. PDVSA* (11th Cir.).**

Both movants ask the Court to hold its decision in abeyance pending the Eleventh Circuit's decision in *Osio v. Petroleos de Venezuela, S.A.*, No. 25-12365 (11th Cir.). *Compare* ECF No. 407 at 3, *with* ECF No. 532 at 2, 9.

**The applicable law, and why the contention fails:** The district-court decision under review in *Osio* itself *rejected* the movants' position. *Albán Osio*, 2025 WL 2336072, R&R adopted, 2025 WL 1891862, appeal docketed, No. 25-12365 (11th Cir. July 10, 2025); ECF No. 553 at 8, 12. This Court should do the same. The A/Is identify no stay factor, and the mere pendency of another party's appeal does not justify open-ended delay of enforcement of a final judgment held by victims of terrorism. See ECF Nos. 421, 553.

11.     **Request that the Court invite the views of the United States.**

Both A/Is ask the Court to invite a statement of the United States' views under 28 U.S.C. § 517. *Compare* ECF No. 407 at 18–19, *with* ECF No. 532 at 9, 16.

**The applicable law, and why the contention fails:** There is no need to invite the views of the United States on questions "the Eleventh Circuit has already resolved." ECF No. 553 at 16 (quoting *Stansell II*, 771 F.3d at 726). The Statements of Interest the movants invoke were filed in other cases, are already part of the briefing record here, and do not displace binding circuit law; the United States, aware of these proceedings, has filed nothing in this case.

## II.   HOW THE MOTIONS DIFFER

Notwithstanding that overlap, the motions differ in the following principal respects. For each difference, the Judgment Creditors also summarize their position as to why the difference does not change the outcome:

1.     **Arguments Unique to BANFANB**

    a.  **Request to Transfer.**

BANFANB makes an argument in the alternative (which FOGADE does not) that because relevant account is supposedly booked in New York, that the matter be transferred to the Southern District of New York. ECF No. 407 at 3, 20.  **Why the difference does not change the outcome:** Given this Court's familiarity with the issues, and the Plaintiffs' presence in Florida, the similarities with the FOGADE motion that cannot be transferred to New York, and this Court's clear jurisdiction, there is no basis to transfer the matter to New York.

    b.  **TRIA limited to State Sponsors of Terrorism**

BANFANB alone argues that TRIA § 201 reaches only agencies or instrumentalities of designated state sponsors of terrorism (preserved against contrary Eleventh Circuit precedent), ECF No. 407 § III.C at 19.  **Why the difference does not change the outcome:**  This court must follow binding Eleventh Circuit precedent rejecting BANFANB's argument.  ECF No. 421, at 17-18.

    c.  **Temporal limits on TRIA**

BANFANB seems to suggest that its agency or instrumentality should be determined as of the date blocking, ECF No. 407 § III.B at 24 (relying on *Havlish*), or when Plaintiffs' garnishment proceedings were commenced, ECF No. 407 at 19-20 & n.1 (relying on *Dole Foods*).  **Why the difference does not change the outcome:**  The test for an "agency or instrumentality" reaches an entity that "'is or was ever involved' in any aspect" of the TRIA activities. *Stansell V*, 45 F.4th at 1350 (quoting *Stansell II*, 771 F.3d at 724 n.6).

### d.  Political Question

BANFANB argues that attributing the Maduro regime's conduct to BANFANB would violate the political-question doctrine, relying on *PDVSA U.S. Litigation Trust v. Lukoil*, ECF No. 407 at 13–15. **Why the difference does not change the outcome:**  This Court can make a determination that BANFANB is an agency/instrumentality of Judgment Debtors without even implying, let alone making any determination, concerning which government is the rightful government of Venezuela.  ECF No. 421, at 14-16.

### 2.      Arguments Unique to FOGADE

### a.   Claimed status as a "foreign state."

FOGADE—Venezuela's state-run bank-deposit insurance institution—claims to be the "foreign state" itself, i.e., a political subdivision under the "core functions" test. ECF No. 532 at 1–2, 7–8. It therefore asserts that it has a right to service under FSIA § 1608(a).  (By contrast, BANFANB—which is owned by the Venezuelan Ministry of Defense and controlled by Judgment Creditor Vladimir Padrino Lopez—claims to be an "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b), and therefore asserts a right to FSIA service under FSIA 1608(b)). ECF No. 407 at 1, 6–7.  **Why the supposed difference does not change the outcome:** FOGADE is not "the foreign state itself."  As the Eleventh Circuit has explained, FOGADE is "an <u>agency</u> of the Republic of Venezuela" "similar to the Federal Deposit Insurance Corporation." *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1280 (11th Cir. 2001) (emphasis added).  In any event, as discussed above, FOGADE is not entitled to service under the FSIA. ECF No. 553 at 9–11.

### b.   Challenges to Fla. Stat. § 772.13(6)(a).

FOGADE challenges the application of amended Fla. Stat. § 772.13(6)(a) on retroactivity, Full Faith and Credit and Supremacy Clause/Rule 69 grounds—arguments not presented in

11

BANFANB's motion. ECF No. 532 at 3–5.  FOGADE also argues that § 772.13(6)(a) cannot apply until there is a hearing on FOGADE's agency or instrumentality status. **Why the difference does not change the outcome:**  Although FOGADE suggests that applying the Florida statue would create a retroactivity concern, the writs were sought on July 25, 2025, <u>after</u> the statute's effective date.  ECF No. 553 at 6.  Further, nothing about Florida law offends the supremacy clause or Full Faith and Credit. ECF No. 553, at 6-7.  The plain text of Section 772.13(6)(a) does not require a hearing for it to apply, nor is such a hearing required for any jurisdictional statute to apply.  *Id.* at 6.

### c.  Personal jurisdiction over the garnishee.

Only FOGADE contends that the Court lacked personal jurisdiction over a garnishee (DMBL, a U.K. institution). ECF No. 532, at 5–6. BANFANB raises no challenge to the Court's jurisdiction over PNC or Mastercard.  **Why the difference does not change the outcome:** Personal jurisdiction is a waivable, personal defense, which DMBL relinquished it by defaulting and also by consenting to turnover. ECF No. 474 at 2–3.  Nor does FOGADE have standing to assert it for DMBL, and the writs directed to the two U.S. Dinosaur entities stand unchallenged on this ground. ECF No. 553 at 5, 7.

### d.  Waiver of *in rem* jurisdiction

FOGADE alone argues that the Judgment Creditors' settlement with the Dinosaur Entities could not waive *in rem* jurisdiction or DMBL's defenses, ECF No. 532 at 4–6 (citing ECF No. 474 ¶ 1).  **Why the difference does not change the outcome:**  Jurisdiction over DMBL was conferred by consent, and under applicable Florida law (Fla. Sta. § 772.13(a)), this Court already has *in rem* jurisdiction over the assets at issue, meaning that DMBL did not need to "waive" *in rem* jurisdiction.  ECF No. 553, at 5-6.

### e. Cross-referenced arguments

FOGADE's motion purports to "preserve" the arguments made in its opposition to the Judgment Creditors' turnover motion. ECF No. 532 at 9 n.1 (cross-referencing ECF No. 486). Those arguments are redundant of the ones above, except as follows:

***First***, FOGADE says that Judgment Creditors failed to serve the notice required by Fla. Stat. § 77.055.  ECF No. 486, at 19. **Why the difference does not change the outcome:**  Plaintiffs served the § 77.055 notice on FOGADE on April 7, 2026 (ECF No. 508), after which FOGADE timely moved and is being heard.  The notice was compliant with Section 77.055, which requires only that the notice be served "after the time period for garnishee's answer has expired."

***Second***, FOGADE says that the settlement with the Dinosaur Entities is asserted to be prohibited by OFAC regulations, 31 C.F.R. § 591.407, absent a license or a final TRIA determination. *See* ECF No. 486, at 26. **Why the difference does not change the outcome:** This Court has already held that TRIA judgment creditors are exempt from OFAC licensure when executing on blocked assets of a terrorist party's agency or instrumentality (ECF No. 460 at 15), with any turnover here occurring only upon entry of the Court's own TRIA judgment.

### CONCLUSION

In sum, the two motions overlap substantially on the threshold jurisdictional, immunity, service, and TRIA issues—often verbatim—and, for the reasons summarized above and set forth in full in the Judgment Creditors' oppositions, each overlapping contention fails under the applicable law, and none of the differences between the motions changes that result.

Respectfully submitted on June 16, 2026.

/s/ Jaime D. Guttman
Jaime D. Guttman (Fla. Bar No. 44076)
jaime@scale.law

13

Scale Law Partners, LLC
777 Brickell Avenue, Suite 500
Miami, FL 33131
(786) 273-9033 (Main)

/s/ Alex C. Lakatos
Alex C. Lakatos (*pro hac vice*)
alakatos@mayerbrown.com
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000 (Main)

Ryan A. Stanley (*pro hac vice*)
rstanley@mayerbrown.com
Mayer Brown LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT
(801) 907-2700

*Counsel for Plaintiffs / Judgment Creditors*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document on June 16, 2026, through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

/s/ Jaime D. Guttman

14