**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23190-MORENO**

|  |  |
|---|---|
| CARLOS EDUARDO MARRON, MARIA MARRON, C.R., a minor, and S.A., a minor, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NICOLAS MADURO MOROS, FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA ("FARC"), THE CARTEL OF THE SUNS A.K.A. CARTEL DE LOS SOLES, VLADIMIR PADRINO LOPEZ, NESTOR LUIS REVEROL TORRES, TAREK WILLIAM SAAB, and TARECK EL AISSAMI, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

_____)

**<u>SUPPLEMENTAL BRIEF IN SUPPORT OF THE COURT'S RULING</u>**

Respondent D. E. Wilson, Jr. ("Wilson") respectfully submits this supplemental brief in response to the Court's Hearing Notice Order of June 10, 2026 (ECF 566) authorizing briefing on the issue of whether licenses issued by the Office of Foreign Assets Control ("OFAC"), U.S. Treasury Department, pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1601 *et seq.*, preclude licensed assets from execution under the Terrorism Risk Insurance Act ("TRIA"). Specifically, the Hearing Notice authorized supplemental briefing

on whether the license exception created by TRIA applies to licenses issued under IEEPA such as the license OFAC issued to D.E. Wilson, Jr. ECF566:2. The TRIA license exception in TRIA § 201(d)(2)(B), however, is, like the rest of TRIA, applicable only to assets themselves subject to TRIA overall, which is limited to assets "seized or frozen by the United States." 50 U.S.C. 1701, TRIA § 201(d)(2)(A). This plain language interpretation of TRIA has long been followed by courts and by OFAC since *Weinstein v. Islamic Republic of Iran*, 299 F.Supp.2d 63 (E.D.N.Y. 2004). This Court's Dissolution Order's application of this clear precedent to the Wilson OFAC license (ECF 460), in keeping with its earlier application to another license in this case, does not constitute clear error or manifest injustice warranting reconsideration of the Dissolution Order under Fed. R. Civ. P. 59(e).

In this Court's February 19, 2026 Order dissolving the writs of Plaintiffs Marron (ECF 460), this Court held that the OFAC specific license issued to D. E. Wilson, Jr., renders the subject assets of Raul Gorrin and Gustavo Perdomo "unblocked," thereby taking them outside of TRIA's authorization of execution upon "blocked assets" which is limited to assets that have been *"seized or frozen by the United States." Marron v. Maduro Moros*, 2026 WL 469089, at *5-6 (S.D. Fla. Feb. 19, 2026) (emphasis added). "Put another way, the properties are not seized or frozen by virtue of the license." *Marron*, at * 5.

2

Specifically, this Court rejected the Plaintiff Marrons' argument that "TRIA § 201(d)(2)(B) creates an exemption for licenses issued under the International Emergency Economic Powers Act." *Id.* at 6. This Court's holding is demonstrably correct as a matter of precedent, statutory construction, and OFAC policy and practice. Dissolution was also justified on the jurisdictional grounds raised in support of Wilson's motion for dissolution (*i.e.*, subject matter jurisdiction, including sovereign immunity,[1] and lack of personal jurisdiction) upon which this Court reserved ruling. *Id.* at 8.

**Precedent Holds that an OFAC license unblocks subject assets, thereby making TRIA Inapplicable**

In the seminal case of *Weinstein v. Islamic Republic of Iran*, 299 F.Supp.2d 63 (E.D.N.Y. 2004), Judge Wexler confronted the same legal issue of whether the recently enacted TRIA statute authorized execution upon assets which were subject to an OFAC specific license. *Id.* at 71-76. The disputed assets were those of Iranian banks which were subject to specific and general OFAC licenses (*id.* at 71) but which were being sought to satisfy a terrorism judgment against Iran. OFAC submitted a Statement of Interest which set forth OFAC's legal position that assets subject to an OFAC license are not "seized or frozen" so as to fall within TRIA's definition of "blocked assets" as being assets "seized or frozen" by the United States, thereby

---

[1] *Miller v. Cartel*, 2025 WL 2846693, at *7 (C.D. Cal. Sept. 26, 2025) (TRIA does not waive government sovereign immunity).

3

excluding the bank accounts from the reach of TRIA. *Id.* at 74-75.[2]   Judge Wexler endorsed OFAC's position and held that licensed assets do not constitute "blocked assets" under TRIA. *Id*., at 75 ("As noted, the term "blocked" under the TRIA is specifically limited to assets that are "seized or frozen"—a limitation that this Court cannot ignore.").

Here, neither Plaintiffs nor their experts claim or offer proof that the properties under Wilson's OFAC license are either seized or frozen by the United States. The Dissolution Order accurately observed that: "TRIA narrowly defines the 'blocked assets' against which judgment holders can execute as 'any assets seized or frozen by the United States under . . . sections 202 of the International Emergency Economic Powers Act,'" with IEEPA being the Act applicable to the property in dispute. *Marron,* at *5 (quoting TRIA § 201(d)(2)).

The Dissolution Order correctly construed Wilson's OFAC license as conferring upon him authority to "manage the properties and effect disposition of the properties as he deems appropriate," rendering them neither seized nor frozen. *Marron*, at *5. The very purpose of IEEPA's sanctions regime, as implemented through OFAC specific licenses, is to afford OFAC and the President the opportunity

---

[2] The Eleventh Circuit agrees that TRIA's plain language requires subject assets to be "seized or frozen" by the government. *Stansell v. FARC*, 704 F.3d 910, 915 (11th Cir. 2013).

to influence foreign nationals in the resolution of a declared national emergency—here, in Venezuela.  See *Dames & Moore v. Regan*, 453 U.S. 654, 673 (1981) (purpose of IEPPA is to confer Presidential control over assets "for use in negotiating the resolution of a declared national emergency" which is not served by allowing individual claimants to minimize or eliminate this control through garnishment).  By limiting TRIA to assets which the Executive Branch has affirmatively seized or frozen, Congress has conferred upon the Executive Branch the decision to make assets subject to TRIA.  This OFAC role is confirmed by the allegedly "newly discovered evidence" invoked by Plaintiffs, but filed by Respondent (ECF 480:13), in which an OFAC representative confirmed that "OFAC issues specific licenses in a manner consistent with the national security and foreign policy objectives of the United States."    *See* ECF 501:13-24 (Declaration of Sara Thannhauser, Associate Director for Sanctions, Policy, and Implementation, OFAC, U.S. Department of Treasury in *United States v. Maduro* (1:11-cf-00205 AKH), (filed March 13, 2026), at ¶ 19.

The Dissolution Order notes that: "Courts have routinely found that assets blocked pursuant to an Executive Order, but also subject to an OFAC licensing scheme, were not blocked, and therefore not subject to attachment under TRIA." *Marron*, at *6.  This is an accurate characterization of the law since *Weinstein*, and it cannot be characterized as clear error or a manifest injustice justifying

5

reconsideration under Rule 59.  *Heriveaux v. Miami-Dade Cnty*., 2023 WL 3029737, *1 (S.D. Fla. April 6, 2023).

In *Weinstein*, Judge Wexler went on to address, and to reject, the separate contention that IEEPA-licensed property is subject to TRIA because TRIA created an express exemption for assets subject to licenses other than IEEPA-licenses.  299 F.Supp.2d at 73 (citing and quoting § 201(d)(2)(B)(i) excepting property "subject to a license issued by the United States Government . . . in connection with a transaction for which the issuance of such license has been specifically required by statute *other than* the International Emergency Economic Powers Act.")  *Id. (*emphasis added)).  Applying basic plain language statutory construction, Judge Wexler agreed with OFAC's position[3] and concluded that TRIA's definitional statutory restriction of executable "blocked assets" to property "seized or frozen by the United States" applied equally when considering the Act's application to IEEPA-licensed property.  *Id*. at 76 ("There is no indication in the TRIA, as the government argues, that this exception sweeps into the definition of 'blocked assets' all licensed transactions, even as to property that has never been 'seized or frozen.'").

---

[3]  *Weinstein*, 299 F.Supp.2d at 73-74 ("In the government's view, even though Congress excluded certain blocked property that has been licensed for final payment or transfer under statutes other than IEEPA, that does not mean that all types of licensed property under IEEPA are blocked property. Statement of Interest of the United States ("Gov't's Statement"), at 24.").

Thus, the *Weinstein* opinion answers the question posed by this Court in its Hearing Notice by holding, in tandem with OFAC's legal position, that TRIA's exception under § 201(d)(2)(B)(i) for certain non-IEEPA licensed property does not alter the definitional requirement that IEEPA-OFAC-licensed property is outside of TRIA because it is neither seized nor frozen by the United States. Based upon this holding that TRIA had not been triggered by government seizure or freezing, Judge Wexler determined that he did not have to address the separate legal issue under TRIA of whether the Iranian banks were agents or instrumentalities of Iran. *Id.*

The *Weinstein* holding has been followed by later precedent from the Second Circuit, *Bank of New York v. Rubin,* 484 F.3d 149, 150 (2d Cir. 2007), and in this Court, including previously in this very case.[4] *See Marron v. Moros*, 2023 WL 3619308, *4 (S.D. Fla. May 24, 2023) ("TRIA is clear that only blocked assets are subject to execution and assets that are subject to a United States license do not qualify as blocked assets.") (citing *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015)); *Martinez v. Republic of Cuba*, 2011 WL 13115432, at *5 & *7 (S.D. Fla. June 27, 2011) (quoting OFAC Director Szubin and following *Weinstein*), *adopted in relevant part,* 2011 WL 13115471 (S.D. Fla. Aug. 26, 2011)).

---

[4] *Marron*, at *6 (describing ruling as "consistent with the Court's prior ruling" in *Marron v. Moros*, 2023 WL 3619308, (S.D. Fla. May 24, 2023)).

Like Judge Wexler in *Weinstein*, this Court's Dissolution Order similarly expressly rejected the argument that TRIA § 201(d)(2)(B)(i) makes IEPPA-licensed property subject to TRIA execution. *Marron*, at *6 ("Put succinctly, TRIA does not reach funds that a licensee 'has been given authorization to control through another means.'") (quoting *Holy Land*, 722 F.3d at 685).

### OFAC's Legal Position and Policy are the Same as This Court's

For its part, OFAC maintains its position as articulated in *Weinstein* through today. Respondent Wilson submitted in this case the filing by the United States of its Statement of Interest, in *Doe v. Taliban*, No. 20 Misc. 740 (KPF) (S.D.N.Y. 2022), stating that: "when assets are 'regulated' by an OFAC license, they are not 'blocked' for purposes of TRIA and re therefore beyond the coverage of TRIA's attachment provision." ECF No. 348, Ex. B, at 15.

Respondent Wilson has represented to this Court that this remains the current OFAC position. *See* ECF No. 348:29 ¶17 ("OFAC takes the legal position that property subject to an OFAC specific license is not 'blocked' within the meaning of this term in the Terrorism Risk Insurance Act, 28 U.S.C. § 1610 note, and therefore is not subject to execution under that Act."). Respondent Wilson files with OFAC the filings he submits in this case, as is required under 31 C.F.R. § 501.605(a)(2), including those confirming OFAC's legal position.

On July 1, 2026, OFAC issued a "Reminder to File the 2026 Annual Report of Blocked Property," to those holding "blocked property" requiring them to file an annual report of their blocked holdings (an "ARBP"). Exhibit 1. This July notice states: "Please note that the term blocked property only applies to property that is blocked pursuant to OFAC regulations. Property that was unblocked by an OFAC general or specific license, . . . is not considered blocked property, and should not be included in the ARBP." Exhibit 1. Thus, OFAC has defined property under the licenses it issues, for purposes of collecting its own accurate records, as being "not considered blocked property," and therefore not subject to required annual blocked property reporting.[5]

This recently published OFAC Notice of its longstanding position (a position consistent with this Court's ruling) contradicts the unsupported Rule 59 speculation offered by Plaintiffs that "based on newly available evidence there is every indication that OFAC would conclude, contrary to the Court's present Order (*see* ECF No. 460 at 10-11), that the designated properties remain blocked despite

---

[5]    The language in OFAC's "Reminder" is supported and explained in the Thannhauser Decl. at para. 8 and 19 ("OFAC can mitigate the effects of a designation by providing authorization for certain transactions that would otherwise be prohibited by issuing a specific license. . . . OFAC's blocking authority under IEEPA and implementing Executive orders grant the agency [acting for the President] the discretion to issue or withhold specific licenses based on national security and foreign policy considerations. OFAC issues specific licenses in a manner consistent with the national security and foreign policy objectives of the United States.")

Wilson's special license. . . ." ECF 480:5 (Marron Motion for Reconsideration under Rule 59(e)).  Plaintiff's Rule 59 motion offers no meaningful evidence to support its speculation that OFAC "would" change its position on the legal effect of its licenses under TRIA, and its recent public notice offers more evidence to the contrary.

## Conclusion

For the foregoing reasons, this Court's holding in its dissolution Order of February 19, 2026 that the properties subject to the Wilson OFAC license are not "blocked assets" under TRIA is supported by statute, precedent and OFAC policy, and remains sound and is not clearly erroneous or manifestly unjust.  As a result, it is not a proper basis for reconsideration under Fed. R. Civ. P. 59.

Respectfully submitted,

KLUGH WILSON LLC
40 N.W. Third Street, PH 1
Miami, Florida 33128
Tel: (305) 536-1191

s/ Richard C. Klugh
Richard C. Klugh
Fla. Bar No. 305294
Jenny Wilson
Fla. Bar No. 1031758

# EXHIBIT 1

Contents:

OFAC, July 1, 2026, Reminder to File the 2026 Annual Report of Blocked Property (three pages; see page 1-2)

OFAC Guidance on Filing the 2026 Annual Report of Blocked Property (six pages; see page 2)



HOME > RECENT ACTIONS > REMINDER TO FILE THE 2026 ANNUA...

# Reminder to File the 2026 Annual Report of Blocked Property



07/01/2026

## FILTER BY CATEGORY

All Recent Actions

Enforcement Actions

General Licenses

Miscellaneous

Regulations and Guidance

Sanctions List Updates

31 C.F.R. § 501.603 of the Reporting, Procedures and Penalties Regulations (RPPR) requires U.S. persons holding blocked property as of June 30 of the current year to file an Annual Report of Blocked Property (ARBP) with the Office of Foreign Assets Control (OFAC) by September 30. Persons that did not hold blocked property as of June 30 do not need to file an ARBP.

Please note that the term blocked property

Search All Recent Actions (enter keywords)

**Left sidebar navigation:**

Specially Designated Nationals List  SDN List)

Consolidated Sanctions List  Non SDN Lists)

Additional Sanctions Lists

Search OFAC's Sanctions Lists

Sanctions Programs and Country  nformation

Recent Actions

OFAC License Application Page

Additional OFAC Resources

Frequently Asked Questions

Civil Penalties and Enforcement nformation

OFAC Reporting System

Selected General Licenses Issued by OFAC

Contact OFAC

only applies to property that is blocked pursuant to OFAC regulations. Property that was unblocked by an OFAC general or specific license, or that was previously blocked pursuant to a sanctions program that was terminated on or before June 30, 2026, is not considered blocked property, and should not be included in the ARBP.

Similarly, a restricted account of a person ordinarily resident in Iran is not blocked property and should not be reported to OFAC in the ARBP, unless a person whose property and interests in property are blocked pursuant to an applicable sanctions authority has an interest in the account.

Persons filing the 2026 ARBP must use spreadsheet form TD F 90 22.50  and submit the completed form through the OFAC Reporting System (ORS). Failure to file the ARBP by September 30 constitutes a violation of the RPPR.

For additional information, please review OFAC's Guidance on Filing the 2026 Annual Report of Blocked Property 🔊.

Start Date (format: MM/DD/YYYY)

mm/dd/yyyy 📅

End Date (format: MM/DD/YYYY)

mm/dd/yyyy 📅

Search by Year (format: YYYY)

YYYY

**Apply**

**Reset**

SIGN UP FOR OFAC RECENT ACTIONS E MAIL UPDATES



OFFICE OF TERRORISM AND FINANCIAL INTELLIGENCE

**ADDITIONAL RESOURCES**

Privacy Act

Small Business Contacts

Budget and Performance

TreasuryDirect.gov Securities/Bonds

Freedom of Information Act (FOIA)

No FEAR Act Data

Whistleblower Protection

**HELPFUL OFAC LINKS**

Sign Up For OFAC E-mail Alerts

Contact OFAC

Dealing with an "OFAC Alert"

List of Country-related Sanctions

Appeal an OFAC designation or other listing

**OTHER GOVERNMENT SITES**

USA.gov

USAJOBS.gov

OPM.gov

MyMoney.gov

Data.gov

Privacy Policy  •  Google Privacy  •  Site Policies and Notices  •  Accessibility



**DEPARTMENT OF THE TREASURY**

# Guidance on Filing the 2026 Annual Report of Blocked Property

The Office of Foreign Assets Control (OFAC) has compiled this guidance to help filers prepare and submit the 2026 Annual Report of Blocked Property (ARBP), avoid common errors that lead to returned submissions, and complete Parts A and B accurately.  The ARBP is a comprehensive report listing all blocked property held as of June 30, 2026, that must be filed by September 30, 2026.

**How to File the ARBP**
1. Download the current version of [Annual Report of Blocked Property Form (TD-F 90-22.50)](#).
2. Complete all mandatory fields in Part A and Part B of the ARBP spreadsheet form.
3. Log into the [OFAC Reporting System (ORS)](#) to submit your completed ARBP (see image below).

**First-time ORS filers**: Email [OFACReport@treasury.gov](#) to request registration instructions.  Include the name of your organization, and the name and email of the primary individual filing reports.

**Inactive ORS accounts**: Ask your filer administrator to reactivate your account.  If all filer administrators are also inactive, email [OFACReport@treasury.gov](#) for assistance.

## Key Filing Rules
- The reporting period begins July 1 and completed ARBPs must be submitted no later than September 30 pursuant to [31 C.F.R. § 501.603(b)(2)(i)](#) of the Reporting, Procedures and Penalties Regulations (RPPR).  Failure to submit a completed ARBP by September 30 constitutes a violation of C.F.R. § 501.603 of the RPPR.
- The term "blocked property" only applies to property that is blocked pursuant to OFAC authorities.  Refer to [31 C.F.R. 501.603(a)](#) for the definition of "holder" of blocked property.
- Use the current version of the spreadsheet template [Annual Report of Blocked Property Form (TD F 90-22.50)](#) available on the [ORS and OFAC Reporting Forms](#) webpage.  Previous versions are no longer approved by the Office of Management and Budget and will not be accepted.
- List each discrete block in separate rows within Part B of the ARBP form.  [31 C F R § 501 603(d)(1)](#) requires ARBP filers who maintain blocked funds in omnibus accounts to provide a disaggregated list showing each blocked asset record contained within these accounts.
- **Do not** merge cells or manipulate the order of the data fields in Parts A or B (e.g., amending the name the column titles, adding additional tabs).  OFAC will return initial ARBP filings if the content or format does not comply with these standards.
- A report is complete only when all reporting requirements are met.  If OFAC returns an ARBP submission for amendments, follow the instructions in the "Return Reason" section.  Once you are

ready to resubmit your ARBP, upload the new file over the original file, then click "Submit".  To prevent duplicating records, **do not** create a new ARBP when filing an amendment.

- Ensure the file name does not include any special characters (i.e., !,&,#,*,-,$,%,^,.) before uploading the file in ORS.

**Do not** include the following in the ARBP:

- Property that has been unblocked by general or specific license or associated with a delisted SDN before July 1, 2026, is not blocked property and should not be reported to OFAC in the ARBP.
- Property that has been unblocked due to a sanctions program being terminated (e.g., 31 C.F.R. part 541, Zimbabwe) and is not currently blocked under any active sanctions program administered by OFAC.
- Assets immobilized pursuant to Directive 4 of Executive Order 14024 or restricted "Iranian accounts," as defined in OFAC's regulations, unless they are otherwise blocked. [1]

## How to Complete Part A - *U.S. Person Holding Blocked Property*

- Add information in each field that cites <Enter Detail Here>.
- In **Part A, Section (1)**, enter the name and address of the person holding the blocked property. Examples may include the name of a financial institution or a manufacturing company.
- In **Part A, Section (2)**, provide the name and contact information of the individual empowered by the holding institution to file the ARBP.
- In **Part A, Section (3)**, enter the total quantity of blocked assets listed in Part B.  In the example below, Part A, Section (3) lists the total quantity as "4," which means that there should be four rows in Part B, each row representing one blocked asset.
- **Do not** include blocked assets information under the section labeled **"Instructions for the Part B tab."**



---

[1] For additional information regarding Iranian accounts, see 31 C.F.R. §§ 560.320, 560.427(b), 560.517, and Frequently Asked Question #37.

OFAC   Office of Foreign Assets Control                    **DEPARTMENT OF THE TREASURY**

## How to Complete Part B - *Property Reported*

First, review the section titled *Instructions for the Part B tab* in Part A of the form.  The guidance below provides additional directions for selected Part B fields.

- **Date of Blocking** - Enter the date of blocking in the following format: MM/DD/YYYY (e.g., 02/15/2024)

- **Value (USD)** – The actual, or if unknown, the estimated value of the property in U.S. Dollars as of June 30, 2026, pursuant to 31 C.F.R. 501.603(b)(2)(ii)(F).
  - Transactions or property blocked in foreign currencies must be reported in U.S. Dollars with the foreign currency amount and notional exchange rate in the column titled *Additional Description of the Property*.
  - If the blocked property represents an outstanding loan, a credit card receivable, or other property with a negative balance, the amount blocked should be reported as $0.00 (zero) and the estimated valuation or balance owed on the blocked asset as of June 30, 2026, should be noted in the column titled *Additional Description of the Property*.
  - For blocked securities or stocks, calculate the value based on the closing price on June 30, 2026.  Separately, include the quantity of shares in the column titled *Additional Description of the Property*.
  - For other non-financial assets such as real property, list the actual or estimated market value as of June 30, 2026.

- **Legal Authority or Authorities** - Identify the program tag(s) associated with the blocked person.  Refer to OFAC's Program Tag Definitions page for a list of acceptable tags associated with active sanctions programs.  Ensure that you list the sanctions program tags associated with the sanctions target as of June 30, 2026.
  - The term Specially Designated National "SDN" is generic and cannot be used to identify the specific legal authority.
  - For property blocked due to a nexus to a State Sponsor of Terrorism but does not involve an SDN, include the relevant program tag below:
    1. Government of Iran: IRAN
    2. Government of Cuba: CUBA
    3. Government of North Korea: DPRK
  - For assets blocked due to a nexus to an Iranian crypto exchange or financial institution, list "IRAN" as the program tag.
  - For SDNs designated under multiple authorities (e.g., RUSSIA-EO14024,UKRAINE-EO13662) separate each sanctions program tag with a comma (no spaces).

- **Sanctions Target** - Include the associated sanctions target(s) whose property is blocked, such as an SDN or other blocked person.

o The spelling and ordering of a SDN name (last name first, first name last) must mirror the version published on OFAC's Sanctions List Search or the Federal Register

| Correct | Incorrect |
|---------|-----------|
| ADEMI, Xhevat | Xhevat Ademi |

✓ *[Last name, first name]*

o If the sanctions target is not evident, include a narrative description of the interest(s) of the target(s) in the transaction in the column titled *Additional Description of the Property*. If applicable, enter the relevant identification number (i.e., a reference number in an OFAC memo) in any correspondence pursuant to which a blocking action was taken in the *Sanctions Target* field.

o If the property was blocked because of a connection to a blocked government rather than to a specific SDN, enter the name of that government (e.g., *Government of Cuba, Government of Iran, Government of North Korea, Government of Venezuela*).

o For Cuba-related blocks, include one of the following options:
  1. The primary name of the SDN (e.g., RODRIGUEZ LOPEZ-CALLEJA, Luis Alberto)
  2. *Government of Cuba*
  3. *Involves Cuba or a Cuban National* (if the Cuban Government or an SDN is not involved).

o For blocks relating to non-designated Iranian financial institutions, include one of the following options:
  1. *Iranian Financial Institution*
  2. *Iranian Crypto Exchange*

- **Owner of Property** - The person or entity who legally owns the blocked property.

- **Owner Type** - Classify the owner of the blocked property using the following categories: individual; U.S. bank; non-U.S. bank; U.S. non-bank entity; non-U.S. non-bank entity; or other.

- **Asset Type** - Classify the property type that has been blocked. Examples of an asset type include, but are not limited to, wire transfer, bank account, brokerage account, certificate of deposit, check, claim, collateral, credit card, deposits, letter of credit, insurance, prepaid card, real estate, safe deposit, savings, secure debt, secure equity, stocks, dividends, digital assets, cryptocurrency, tangible property, and trade documents.

- **Account Type** - Classify the type of account in which the blocked property is being held. Examples of an account type include but are not limited to checking, demand deposit, certificate of deposit, money market, savings, stocks/dividends, custody, cash, contract, sundry account, and escrow.

- **Account Numbers** - Include the account number associated with the account holding the blocked property. If the account number is not available or relevant, include a narrative description of the current location or status of the blocked property, including internal reference information or tracking number, if applicable, in the column titled *Additional Description of the Property*.

OFAC — Office of Foreign Assets Control                    **DEPARTMENT OF THE TREASURY**

- **Additional Description of the Property (if needed)** - Include any additional information pertaining to the blocked property that falls outside of the listed categories.  This can include a brief overview of the property held, the number of shares held, or a short narrative of why there is no SDN involved.

- **Location** - Include the city and country where the property is being held, in the columns titled *Location: City* and *Location: Country*.  Include the complete name of the city and country.  **<u>Do not</u>** list more than one location or combine the city and country in the same column.

- **New Item** - Indicate "Y" for yes in rows involving new blocked property that was not reported on the previous year's ARBP.  Indicate "N" for no if this property was reported on the prior year's annual report.

- **ORS Report ID** - Enter the **Blocked/Rejected Report ID** associated with the initial report filed for the blocked property, if available.  This is the unique identifier for each blocking report submitted through ORS; it is <u>not</u> the Submission ID.  If the initial blocking report was <u>not</u> submitted through ORS, enter "N/A".

    **How to locate the ORS Blocked/Rejected Report IDs**:
    1. Log into ORS
    2. Go to the *Dashboards* menu in the bottom right corner of the main page
    3. Click on *Blocked/Rejected Reports*

    

    4. In the *Block/Rejected Reports Dashboard* form:
       a. In the *Action Taken* field, select "Blocked"

    

       b. Click "Search"
       c. Once the results populate, click on the Excel icon to download your data

    

       d. Open the Excel file to locate the *Blocked/Rejected Report IDs* listed in **column A**

DEPARTMENT OF THE TREASURY

| | A | B | C | D |
|---|---|---|---|---|
| 1 | Blocked/Rejected Report - OFAC Reporting System - ORS | | | |
| 2 | **Blocked/Rejected Report ID** | **Submission ID** | **Institution** | **Blocked/Rejected Form Type** |
| 3 | ✔ 384776 | ✗ 75169 | ORS Demo Bank | Tangible, Real, Other Non-financial Property |
| 4 | ✔ 384775 | ✗ 75168 | ORS Demo Bank | Tangible, Real, Other Non-financial Property |
| 5 | | | | |

## How to Avoid Returned Submissions

Review the issues below before you submit.  These are among the most common reasons OFAC returns ARBP filings for correction.

- The *ORS Report ID* field includes the ORS Submission ID, ARBP ID, an internal tracking number, or another incorrect identifier instead of the Blocked/Rejected Report ID.
- The *Sanctions Target* field excludes the primary name of the SDN, blocked person, or blocked government whose property or interests in property are blocked.
- The *Additional Description of the Property* field does not explain the sanctions target's interest in the property when that interest is not evident from the other fields.
- Account number, owner, type, asset type, account type, legal authority, program tag, location, New Item, or other required Part B information is missing, incomplete, or inconsistent.
- The completed ARBP Excel file is missing, inaccessible, password protected or uploaded with formatting changes that prevent OFAC from reviewing the submission.

**Questions?**  Email OFACReport@treasury.gov and include your ARBP ID in the subject line, if available.

---

*This document is explanatory only and does not have the force of law.  31 C.F.R. part 501 contains the legally binding provisions governing these reporting requirements.  This document does not supplement or modify the regulations.*