UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-23190-CIV-MORENO**

CARLOS EDUARDO MARRON, MARIA
MARRON, C.R., a minor, and S.A., a minor,

      Plaintiffs/Judgment Creditors,

vs.

NICOLAS MADURO MOROS, FUERZAS
ARMADAS REVOLUCIONARIOS DE
COLOMBIA, CARTEL OF THE SUNS,
VLADIMIR PADRINO LOPEZ, MAIKEL
JOSE MORENO PEREZ, NESTOR LUIS
REVEROL TORRES, TAREK WILLIAM
SAAB, and TARECK EL AISSAMI,

      Defendants/Judgment Debtors.

_____/

### ORDER GRANTING BANCO DE LA FUERZA ARMADA NACIONAL BOLIVARIANA'S MOTION TO DISSOLVE WRITS OF GARNISHMENT AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiffs, who are Judgment Creditors, filed a motion for writs of garnishment on Mastercard International Incorporated and PNC Bank as to the financial assets of Banco de la Fuerza Armada Nacional Bolivariana ("Banco"). Plaintiffs claim Banco is an agent and instrumentality of Defendants, Nicolas Maduro Moros, Vladimir Padrino Lopez, and the Cartel of the Suns, Judgment Debtors in this case. Under the Terrorism Risk Insurance Act (TRIA), Plaintiffs can recover against assets of an agent and instrumentality of a defendant where the assets are blocked by the United States Office of Foreign Asset Control (OFAC). Banco has two OFAC-blocked accounts in the United States held by garnishees PNC Bank and Mastercard. The Clerk of Court issued writs (ECF 314, 315) as to these accounts without this Court first determining whether Plaintiffs established a *prima facie* case under TRIA that Banco is an agent

or instrumentality of Defendants Nicolas Maduro Moros, Vladimir Padrino Lopez, and the Cartel of the Suns. For this reason, the Court dissolves the writs consistent with its past rulings. The Court, however, denies Banco's motion to dismiss for lack of jurisdiction under the Foreign Sovereign Immunities Act and finds that the Court properly exercises ancillary jurisdiction over this TRIA action. The Court also finds that Plaintiffs' proffered evidence is insufficient to establish a *prima facie* case of Banco's status as an agent or instrumentality of Defendants Nicolas Maduro Moros, Vladimir Padrino Lopez, and the Cartel of the Suns.

THIS CAUSE came before the Court upon Banco de la Fuerza Armada Nacional Bolivariana's Motion to Dissolve Writ of Garnishment and Motion to Dismiss (ECF 407) and Plaintiffs' Motion for TRIA Turnover Judgment as to the assets of the Banco de la Fuerza Armada Nacional Bolivariana (ECF 435).

THE COURT has considered the motions, the responses, oral argument, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion to dissolve the writs of garnishment is GRANTED. The writs of garnishment (ECF 314, 315) are DISSOLVED. It is

**ADJUDGED** that the motion to dismiss for lack of jurisdiction is DENIED in part because the Court finds it has subject matter jurisdiction. The motion to dismiss is GRANTED in part because the Court finds the Plaintiffs fail to establish a *prima facie* case of agency and instrumentality as to Banco. It is

**ADJUDGED** that the motion for final TRIA turnover judgment is DENIED as premature.

## I.      Background

Plaintiffs sued the Defendants, including Nicolas Maduro, Vladimir Padrino Lopez, and the Cartel of the Suns, alleging violations of the Federal Anti-Terrorism Act, 18 U.S.C. § 2333;

the Florida Anti-Terrorism Act, Fla. Stat. § 772.13, Federal Civil RICO, 18 U.S.C. § 1964(c),

Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962(d), and several state-law claims

based on the Defendants' orchestrating the kidnapping, torture, and defamation of Plaintiff

Carlos Marron, the extortion of Plaintiff Maria Marron, and the infliction of emotional distress

on all Plaintiffs. On February 14, 2023, this Court awarded Plaintiffs a final judgment of

$153,843,976.

After obtaining the judgment, Plaintiffs commenced collection proceedings under the

Terrorism Risk Insurance Act (TRIA). *See* § 201(a) of the Terrorism Risk Insurance Act of 2002,

Pub. L. No. 107-297, § 201(a), 116 Stat. 2337, 2339.[1] Under TRIA, terrorism victims such as the

Plaintiffs may satisfy their judgment from property blocked by the United States Department of

Treasury Office of Foreign Asset Control (OFAC). TRIA provides a right of action to recover

against blocked property owned by an agent or instrumentality of a terrorist or terrorist

organization.[2]

A. *Banco's ties to Maduro, Padrino Lopez, & the Cartel of the Suns*

Plaintiffs seek to recover against Banco de la Fuerza Armada Nacional Bolivariana,

Banco Universal C.A., which the parties refer to as BANFANB. Banco entered an appearance

under the authority of the Council for the Administration and Protection of the Assets of the

Bolivarian Republic of Venezuela (CAPA), which Banco specifies was distinct from the

illegitimate regime of Nicolas Maduro. The Council, or CAPA as the parties refer to it, was

---

[1] This provision is codified as a note to 28 U.S.C. § 1610 titled "Treatment of Terrorist Assets."
[2] § 201 of TRIA reads as follows:
Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

established to respond to the political crisis that endured during Maduro's regime. The Plaintiffs acknowledge in their motion for writ of garnishment that Banco is owned by the Venezuelan Ministry of Defense (Ministerio del Poder Popular de la Defensa) and falls within the definition of the term "Government of Venezuela." Mot. for Writ of Garnishment at 6, 8 (ECF 313). Plaintiffs rely on their expert Douglas Farah to support their *prima facie* case that Banco is an agent and instrumentality of Defendants Nicolas Maduro Moros, Vladimir Padrino Lopez, and the Cartel of the Suns. Farah Decl. (ECF 313-1).

The facts detailed here derive from Farah's declaration. Banco is one of twenty-two companies owned by the Venezuelan Ministry of Defense, which reports to the Defendant Padrino Lopez, a senior leader of the Cartel of the Suns. Although a military-owned company, it provides banking services to both military and civilian customers. Banco is part of a money laundering apparatus used to finance Maduro's regime plans. Banco's President General Jose Vicente Ramirez Soyano, a close associate of the Cartel of the Suns, reports directly to Defendant Vladimir Padrino Lopez.

Farah relies on the *Osio* court's finding that Petroleos Venezuela (PDVSA) is an agent/ instrumentality of Maduro to support his position that Banco is also an agent/instrumentality. *Alban Osio v. Maduro Moros*, 21-20706-CIV-GAYLES/Torres (S.D. Fla. June 10, 2024) (ECF 110). The *Osio* decision relies heavily on the OFAC specific designation of PDVSA stating "[h]ere, we lean heavily on OFAC's determinations regarding PDVSA; indeed, the 'decision of the OFAC is entitled to great deference[.]" *Id.* at 6.[3] OFAC, however, has not *specifically*

---

[3] Shortly after the Report and Recommendation in *Osio* issued, the Supreme Court overturned *Chevron* deference and held in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) that federal courts "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." The Court, here, does not view an OFAC designation as the equivalent of a statutory interpretation, but rather, an OFAC designation, or lack thereof, is the product of a factual investigation and therefore, it informs the Court's decision.

designated Banco. Farah asserts that Banco and PDVSA are deeply intertwined under Padrino

Lopez and that Banco serves as a significant node in the money laundering network that launders

the Defendants' narcotics proceeds. "By processing large-scale financial transactions involving

military personnel or entities linked to the military through [Banco], Maduro, Padrino Lopez, and

the Cartel of the Suns are able to launder drug trafficking proceeds for their own benefit." Farah

Decl. at 10.

Banco's corporate structure included individuals related to or close friends with Ramirez

Soyano or the Banco's Vice President of Administration and Infrastructure Jose Manuel

Morgado Acevedo. "This provides further evidence that the Bank itself was designed to be,

under the direction of Ramirez Soyano and another retired senior military officer, a central node

in the multiple corrupt and convergent corruption networks operated under the direction of

Padrino Lopez and the Cartel." *Id.* Morgado's nephew, Jorfran Morgado, and a friend Robert

Perez, work in Morgado's bank office to "'coordinate a select group of contractors' who are

overbilled for work, in order to provide payouts to those associated with the bank." *Id.* The group

ran corrupt schemes under Ramirez Soyano, who in turn reported to Defendant Padrino Lopez.

B. *Banco's Blocked Assets*

On September 10, 2019, Mastercard froze $2,068,489.61 in cash collateral tendered by

Banco in accordance with OFAC regulations (i.e., Executive Order 13884 blocking all property

of the Government of Venezuela). Now Banco's assets are held in a blocked account by

garnishees PNC Bank and Mastercard International Incorporated. Plaintiffs filed a motion for

writs of garnishment as to Banco's property in those accounts. The next day, the Clerk of Court

issued the writs without a Court order. (ECF 314, 315). PNC Bank answered the writ and filed an

interpleader action. Based on PNC's Answer, Plaintiffs are seeking assets held in a blocked

"Mastercard Sub-Escrow Account." The blocked account is in New York. The garnishee PNC Bank filed an interpleader action because other claimants in *Stansell v. Revolutionary Armed Forces of Columbia*, No. 19-20896-CIV-Williams (S.D. Fla. Feb. 12, 2019) have judgments against the Fuerzas Armadas Revolucionarios de Colombia (FARC) and the interests of the Stansell plaintiffs may be superior to the Plaintiffs here. The Marron and Stansell plaintiffs are the only judgment creditors to have levied writs of garnishments on the Banco funds on deposit with PNC Bank. The Marron Plaintiffs and PNC Bank asked the Court to stay the interpleader pending resolution of the garnishment of the Banco funds held by PNC in the *Stansell* case. The Marron and Stansell Plaintiffs settled their competing claims of lien priority on the blocked Banco funds on deposit with PNC. (ECF 343).

## II.     Legal Analysis

Banco filed a motion to dissolve the writs of garnishment (ECF 314, 315) and to dismiss the action with prejudice under the Foreign Sovereign Immunities Act. Plaintiffs filed a competing motion for final TRIA turnover of Banco's blocked assets. The first issue is whether the Clerk of Court's issuance of the writs of garnishment before an adjudication on the merits violates Banco's due process rights. Next, Banco argues that Plaintiffs failed to initiate a new civil action and that ancillary jurisdiction is improper. Banco then asserts that Plaintiffs improperly attempt to bypass the subject matter and personal jurisdiction requirements of the Foreign Sovereign Immunities Act. On the merits, Banco asserts that Plaintiffs fail to make the requisite *prima facie* showing under TRIA that it is an agency or instrumentality of the Defendants Padrino Lopez, Maduro, and the Cartel of the Suns. Finally, Banco argues that the Court lacks *in rem* jurisdiction over the PNC and Mastercard assets, which are New York accounts.

A.  *Clerk's Issuance of the Writs before Agency and Instrumentality Determination*

This Court previously held that unlike ordinary garnishment proceedings, a TRIA claim against an agency or instrumentality of a terrorist organization requires "notice and an opportunity to be heard." *Marron v. Maduro Moros*, No. 21-23190-CIV-MORENO (ECF 460). In ordinary garnishment proceedings, the Clerk of Court may automatically issue writs of garnishment without notice to the defendant because the defendant has been served and final judgment has been entered. The validity of the underlying claim is already established in court. *United Presidential Life Ins. Co. v. King*, 361 So. 2d 710, 713 (Fla. 1978). That is not the case here.

Here, Plaintiffs seek to recover against third-party agents and instrumentalities as allowed by TRIA. In *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 726 (11th Cir. 2021) (*Stansell II*), the Eleventh Circuit held that "parties whose assets are under threat of execution pursuant to TRIA § 201 are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." *Stansell II* adds that "due process entitled claimants to actual notice of the postjudgment proceedings against them." *Id.* at 727. It states that "[w]here the owner of the asset being garnished is the judgment debtor, 'notice upon commencement of a suit is adequate to give the judgment debtor advance warning of later proceedings undertaken to satisfy the judgment.' That same type of notice is not sufficient where the claimant is a third party, who cannot be expected to be on notice of the judgment." *Id.* at 726 (quoting *Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1357 (5th Cir. 1976)). The Eleventh Circuit states unequivocally that "[b]efore a writ of garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the property owner is a SDNT [Specially Designated Narcotics Trafficker] . . .and is an agency or instrumentality of

7

the judgment debtor terrorist party." *Id.* at 729.[4]

This Court previously adhered to *Stansell II*'s due process requirement to require notice as to Samark Lopez Bello, Raul Gorrin, and Gustavo Perdomo, and an opportunity to be heard. The same holds true now with Banco. The Court therefore dissolves the writs (ECF 314, 315). The Clerk's issuance of the writs without a prior determination that Plaintiffs met their *prima facie* burden of agency or instrumentality was improper. Although this ruling would dispose of the motion in its entirety, the Court will nevertheless address Banco's other arguments.

B. *Filing of Separate Case*

At issue is whether a new independent civil suit with a separate grant of jurisdiction is required for the Plaintiffs to pursue the assets of purported agents and instrumentalities of the Defendants/Judgment Debtors. The Eleventh Circuit addressed whether "a post-judgment action brought pursuant to § 201 of the TRIA is a new and independent civil suit," and recognized that "execution and garnishment proceedings are ancillary proceedings." *Stansell v. FARC*, (*Stansell V)*, 45 F.4th 1340, 1349 (11th Cir. 2022)(quoting *Stansell II*, 771 F.3d at 733). "Under the doctrine of ancillary jurisdiction, federal courts may exercise jurisdiction 'over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.'" *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 158 F.4th 1176, 1184 (11th Cir. 2025). "Simply put, federal courts have ancillary jurisdiction to (1) dispose of factually dependent claims, and (2) effectuate their decrees or judgments." *Id.*

Despite *Stansell II & V*'s recognition that ancillary jurisdiction is proper in a TRIA proceeding, Banco insists that *Casa Express* requires this Court to find a new and independent suit is required. In *Casa Express*, the Eleventh Circuit held that plaintiffs seeking to enforce

---

[4] Florida garnishment law also provides "certain protections to third parties claiming an interest in property subject to garnishment or execution.  Such law is effective in proceedings in federal court[.]" *Stansell II*, 771 F.3d at 725.

judgments against entities "who did not already owe" an underlying judgment must separately establish subject matter jurisdiction. *Id.* at 1186. Although *Casa Express* is similar to this case in that the plaintiffs seek to recover against third parties, *Casa Express* was not a TRIA action and that changes the equation.

In TRIA, Congress stated that "*in every case* in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . .the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment[.]" *See* § 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat. 2337, 2339 (emphasis added). Congress specifically stated that the TRIA right of recovery would be available in "every case" and gave federal courts ancillary jurisdiction to "effectuate their decrees or judgments" against agents or instrumentalities of terrorists. *Casa Express*, 158 F.4th at 1186 ("[A]ncillary jurisdiction [may be used] in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments.") (quoting *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)). Unlike the Plaintiffs here, Casa Express was not relying on TRIA, or any other federal statute, when it sought to execute a New York judgment against Venezuela under Florida's proceedings supplementary statute § 56.29, Fla. Stat. The Florida proceedings supplementary statute allowed Casa Express a vehicle to impose a judgment on a third party, Raul Gorrin, who Casa Express claimed was in possession of the judgment debtor Venezuela's properties under a constructive trust theory. *Id.* at 1186-87. By contrast, TRIA created a right of recovery in "every case" and the Eleventh Circuit recognized as such in *Stansell II & V.* Consistent with TRIA and *Stansell II & V,* the Court finds a separate suit is unnecessary as this garnishment proceeding is ancillary.

9

C.  *Jurisdiction under the Foreign Sovereign Immunities Act*

Irrespective of the TRIA right of action, Banco argues the Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act due to Banco's "presumptive immunity under §§ 1605-1607 of the [Foreign Sovereign Immunities Act]." In *Alban Osio v. Maduro*, No. 21-20706 (S.D. Fla. April 9, 2025) (ECF 401 at 5; ECF 583 at 3), the district court found contrary to Banco's position and held that TRIA created a basis for subject matter jurisdiction, separate and apart from the Foreign Sovereign Immunities Act. *Osio* is on appeal but other courts have also examined the issue. *See also Havlish v. Taliban*, 152 F.4th 339, 359-60 (2d Cir. 2025) (finding TRIA provided district court with subject matter jurisdiction) (citing *Bank Markazi v. Peterson*, 578 U.S. 212, 217 n. 2 (2016)); *Hausler v. Republic of Cuba*, No. 09-20942-CIV-JORDAN, 2010 WL 11442514, at *5 (S.D. Fla. Oct. 14, 2010) (quoting *Weininger v. Castro, et al.*, 462 F. Supp. 2d 457, 478 (S.D.N.Y. 2006)) ("The purpose of the TRIA is to override any immunity from execution that the 'blocked assets' of terrorist entities might otherwise enjoy under the Foreign Sovereign Immunities Act.").

*Osio*'s reasoning for the independent grant of TRIA jurisdiction stems from the statutory language. It provides that "*[n]otwithstanding any other provision of law*. . .in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . .the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy the judgment." § 201, TRIA (emphasis added). Because of its broad "notwithstanding" language, "TRIA confers courts with subject-matter jurisdiction over enforcement actions . . . that otherwise fall under the parameters of immunity provided by the [Foreign Sovereign Immunities Act]." *Hausler*, 2010 WL 11442514, at *5. And as the Eleventh Circuit put it, "there are no limits to the scope of the 'notwithstanding' clause in the TRIA."

*Stansell V*, 45 F.4th at 1362, n. 11 (quoting *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 620-21(7th Cir. 2015)).

Despite this precedent, Banco argues that TRIA only overrides the Foreign Sovereign Immunities Act and affords jurisdiction over execution actions when plaintiffs *first* obtain a judgment against a sovereign state (and here Banco is an arm of the state). Put simply, Banco's argument is that TRIA does not apply absent a judgment against Venezuela, and Plaintiffs do not have a judgment against Venezuela here. Banco cites to *Does 1-7 v. Taliban*, 101 F.4th 1, 8-15 (D.C. Cir. 2024) for the proposition that assets of a foreign sovereign cannot be attached without a judgment against the sovereign itself. In *Does*, the plaintiffs had a judgment against the Taliban (a non-state actor) and tried to execute against the assets of the central bank of the sovereign state of Afghanistan. Banco is correct that the D.C. Circuit in *Does* states that "Section 201(a) of the TRIA applies to foreign states that qualify as 'terrorist part[ies]' . . . only when those foreign states *already* have lost their jurisdictional immunity either through the [Foreign Sovereign Immunities Act]'s terrorism exception or some other route that allowed the lawful entry of judgment against them." *Id.* at 10. Under this reasoning, Banco asserts that Plaintiffs could not recover against a state-run instrumentality related to the Defendants in any TRIA proceeding absent a prior determination that immunity is stripped under the Foreign Sovereign Immunities Act. This interpretation would render superfluous TRIA's parenthetical language stating that TRIA allows recovery against the "blocked assets of [a] terrorist party (including the blocked assets of *any agency and instrumentality of that terrorist party*)[.]" § 201 TRIA; *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010). In *Weinstein*, the Second Circuit analyzed TRIA's application to Bank Melli, a government-owned commercial bank in Iran, like Banco here. *See Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63, 69 (E.D.N.Y. 2004)

11

(stating the government of Iran owns the stock of Bank Melli). The Second Circuit held that TRIA "clearly differentiates between the party that is the subject of the underlying judgment itself, which can be any terrorist party. . ., and parties whose blocked assets are subject to execution or attachment, which can include not only the terrorist party but also 'any agency or instrumentality of that terrorist party.' If this did not constitute an independent grant of jurisdiction over the agencies and instrumentalities, the parenthetical would be a nullity." *Weinstein*, 609 F.3d at 49. This Court agrees with the Second Circuit. "[T]his is even more clearly true in this case where the operative language begins with the phrase '[n]otwithstanding any other provision of law,' thus making plain that the force of the section extends everywhere." *Id.* Following *Does* here would undermine the purpose of TRIA, which is to allow terrorism victims to enforce judgments against assets in the United States owned by terrorist parties or by related third-parties that enable terror.

In any event, *Does* is also distinguishable from this case because the entities subject to the TRIA action there, the World Bank and the International Monetary Fund, were not even remotely agents or instrumentalities of the Taliban. 101 F.4th at 14. Indeed, the World Bank and the Fund are presidentially designated organizations that are afforded separate immunity from suit under the International Organizations Act. *Id.* at 6. The D.C. Circuit affirmed the district court's finding that the World Bank and the Fund were immune and that there was serious doubt that the Taliban held an ownership claim to the funds held by those institutions. *Id.* at 8. Here, PNC Bank, and Mastercard do not possess immunity akin to the World Bank and the International Monetary Fund and there is no dispute that Banco owns the funds in the accounts blocked by OFAC.

12

In short, the Court finds this action falls under the line of cases finding that TRIA overrides "any immunity from execution that the 'blocked assets' of terrorist entities might otherwise enjoy under the Foreign Sovereign Immunities Act[.]" *Hausler*, 2010 WL 11442514, at \*5; *Stansell v. Revolutionary Armed Forces of Colombia*, No. 19-20896-CIV-WILLIAMS (ECF 959 at 5) (S.D. Fla. Aug. 27, 2025) (collecting cases that hold that TRIA confers subject matter jurisdiction notwithstanding immunity under the Foreign Sovereign Immunities Act). And nothing in TRIA requires a separate judgment against a foreign state before seeking recovery under the Act against an agent and instrumentality of a Defendant terrorist. The underlying judgment need not be against a sovereign; it can be against any terrorist party and TRIA affords independent subject matter jurisdiction as to enforcement actions against the terrorist party's agents or instrumentalities.

D. *Prima Facie Case of Agency or Instrumentality*

On the merits, Plaintiffs claim their proffered evidence establishes a *prima facie* showing that Banco is an agent or instrumentality of Defendants Nicolas Maduro, Vladimir Padrino Lopez, and the Cartel of the Suns. *Stansell II*, 771 F.3d at 729 (authorizing issuance of writ, "after Plaintiffs made factual proffers" supporting agency or instrumentality status).

*Stansell II* establishes an analysis to determine whether someone is an agent or instrumentality of a terrorist. *Stansell II*, 771 F.3d at 724, n.6. *Stansell V* reaffirmed that standard stating that "[a]n agency or instrumentality is 'any [Specially Designated Narcotics Trafficker] . . .that is or was ever involved' in the [Defendant's] narcotics trafficking operations 'or that assisted the [Defendant's] financial or money laundering network' because it was 'was either (1) materially assisting in, or providing financial or technological support for or to' or 'providing goods or services in support of,' the [Defendant]; and/or (3) 'playing a significant role in' the [Defendant's] narcotics trafficking." 45 F.4th at 1357 (quoting *Stansell II*, 771 F.3d at 724, n.6).

13

A third party who provides material support to a terrorist *at any point* in time constitutes an agent or instrumentality, even if the third party purportedly stopped aiding the terrorist. *Stansell V*, 45 F.4th at 1350.

*Stansell V* clarifies that "instrumentality" applies more broadly than "agency" and covers any person who provides means to accomplish an end, even if that person was "unaware of the terrorist party or parties involved." *Id.* at 1354. It stated that even "unwitting cogs in a criminal scheme constitute instrumentalities." *Id.* Therefore, even indirect assistance to a terrorist party can suffice under TRIA. *Id.* at 1351, 1354.

To meet their prima facie burden, Plaintiffs proffer the testimony of Douglas Farah for his expertise on narcoterrorist operations of Judgment Debtors and their agents and instrumentalities. Farah's declaration states that Banco is one of 22 companies that reports to Defendant Vladimir Padrino Lopez and that it has participated in financing programs for the Maduro regime. Through these programs, Plaintiffs assert Banco acted as a critical node in the money laundering apparatus of the Defendants/Judgment Debtors and Venezuelan state oil company PDVSA. Farah adds that by laundering large-scale financial transactions involving military personnel or entities linked to the military through Banco, Maduro, Padrino Lopez, and the Cartel of the Suns were able to launder drug trafficking proceeds for their own benefit, and for the benefit of their associates. Farah, however, does not provide details on how the Banco laundered money.

Farah adds that Banco's President is Jose Vicente Ramirez Soyano and the Vice President of Administration and Infrastructure is Lt. Col. (ret.) Jose Manuel Morgado Acevedo. Farah states that both these men operated under the direction of Padrino Lopez and the Cartel. To this end, Plaintiffs rely on Farah's testimony that Morgado's nephew, Jorfran Morgado, and

14

friend Robert Perez work in Morgado's bank office and work "to coordinate a select group of contractors" who are overbilled for work. Morgado and Perez worked with Banco's Vice President of Internal Audits and head of purchasing to siphon off millions of dollars of transactions. This is the only scheme that is discussed in the Farah declaration. Given the structure of the bank, Farah concludes that this corruption scheme and others were under the direction of Defendant Padrino Lopez, but he neglects to provide details as to Padrino Lopez's involvement, let alone that of the Cartel of the Suns and Maduro.

The Court agrees with Banco that Plaintiffs do not sufficiently tie the Banco's money laundering activities to the Defendants Vladimir Padrino Lopez, Nicolas Maduro, and the Cartel of the Suns. First, it is undisputed that Banco is not a Specially Designated Narcotics Trafficker "'that is or was ever involved' in the [Defendant's] narcotics trafficking operations." *Stansell V*, 45 F.4th at 1357. Here, OFAC has not specifically designated Banco; Banco's assets were frozen under Executive Order 13884 issuing general sanctions against Venezuela and not a specific OFAC designation. Because there is no OFAC specific designation as to Banco, the Farah declaration relies on the *Alban Osio* court's finding that Petroleos Venezuela (PDVSA) is an agent and instrumentality of Maduro, and because Banco and PDVSA are intertwined, Banco is also an agent or instrumentality of Maduro. But in *Alban Osio*, the court heavily relied on OFAC's designation of PDVSA and its relation to Maduro. (ECF 401 at 14) (quoting OFAC webpage stating that "all property of persons meeting the definition of the Government of Venezuela" is blocked, which includes "the Central Bank of Venezuela and Petroleos de Venezuela, S.A. (PdVSA)[.]").[5] Because there is no specific designation as to Banco, Plaintiffs cannot establish that it is a "[Specially Designated Narcotics Trafficker] . . .that is or was ever

---

[5] The Central Bank of Venezuela is a different institution from Banco.

involved in" Maduro, Padrino Lopez, or the Cartel's financial and money laundering network.

Moreover, even if there were a specific designation, Farah's general statements do not establish how the Banco "*materially* assisted" the Defendants or "played a significant role" in Maduro, Padrino Lopez, or the Cartel's international narcotics trafficking. *See Stansell V*, 45 F.4th at 1357. Stansell, 19-20896 (ECF 1049). Without more definitive evidence to show how the Banco was actually connected with, assisted, and/or provided material support to Padrino Lopez, Maduro, and the Cartel of the Suns (even indirectly and without direct knowledge), Plaintiffs have failed to carry their burden. It is not enough to simply say that Banco provided assistance by laundering money and Padrino Lopez oversaw the Banco. Absent these details and/or a specific OFAC designation on which this Court could rely, the Court finds the Plaintiffs fail to carry their burden to establish a *prima facie* case that Banco is an agent and instrumentality of Padrino Lopez, Maduro, and the Cartel of the Suns. *See Stansell*, No. 19-20896-CIV-WILLIAMS (ECF 1049 at 5). The Court is cognizant that at this juncture the case is not at summary judgment, but in looking at this *prima facie* showing, the Court compares it to reading a complaint and assessing whether it states a claim under Rule 8. Here, even if everything in Farah's declaration is true, its contents do not suffice to establish Banco's role as an agent or instrumentality of Maduro, Padrino Lopez, and the Cartel of the Suns.

Banco also raises whether Farah complied with the *Touhy* regulations, which require authorization for his testimony since he worked for the Department of Defense and the Department of Homeland Security. Plaintiffs contend that Farah did not rely on information he gathered in his employment. As the Court finds the Plaintiffs do not make a *prima facie* showing of agency or instrumentality, the Court need not decide whether Farah complied with the *Touhy* regulations.

16

E.  *Personal Jurisdiction & Service of Process*

Banco raises lack of personal jurisdiction and lack of proper service as grounds for dissolution of the writs of garnishment. Federal Rule of Civil Procedure 69(a)(1) states that procedure on execution "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Plaintiffs request the Court apply Florida garnishment law to determine personal jurisdiction and service of process. Here, however, the Foreign Sovereign Immunities Act preempts the application of Florida garnishment law because the Banco is an arm of the Venezuelan government. Although the Court finds that subject matter jurisdiction stems from TRIA (which overrides the Foreign Sovereign Immunities Act), TRIA is silent as to service of process and personal jurisdiction requirements. Therefore, under Rule 69(a)(1), the Court must apply the Foreign Sovereign Immunities Act "to the extent it applies." In this case, it is undisputed that Banco is an arm of the Venezuelan government and is owned by the Venezuelan Ministry of Defense. Therefore, the Foreign Sovereign Immunities Act governs personal jurisdiction and service of process as to Banco. *Alban Osio*, 21-20706-CIV-GAYLES, (ECF 401 at 7) (applying Foreign Sovereign Immunities Act to analyze service of process and personal jurisdiction). In *Osio*, the court found there was a factual issue as to whether PDVSA had actual notice of the suit, such that plaintiffs complied with service of process and personal jurisdiction under the Foreign Sovereign Immunities Act. *Id.* (ECF 583). This Court declines to reach the issue here because like *Osio*, it likely would require a factual determination of notice. Because the writs are being dissolved on alternative grounds, it is unnecessary to engage in that exercise now.

F.  *In Rem Jurisdiction*

Banco also contends the Court lacks *in rem* jurisdiction because the accounts at issue are in New York. In *Stansell v. FARC*, 149 F. Supp. 3d 1337, 1339 (M.D. Fla. 2015), the district

court explained that TRIA garnishment proceedings rest on *quasi in rem* jurisdiction, and therefore, require jurisdiction over the *res* and the garnishee. Here, jurisdiction over the garnishees is not disputed, but *in rem* jurisdiction is disputed based on the situs of the accounts. To establish *in rem* jurisdiction, Plaintiffs rely on Florida Statute § 772.13(6)(a), which permits garnishment of intangible assets, such as accounts, regardless of the situs of those accounts in terrorism-related cases such as this. The amended Florida statute confirms that "[i]n any postjudgment execution proceedings to enforce a judgment entered against a terrorist party . . . including postjudgment execution proceedings against any agency or instrumentality of the terrorist party: . . .Writs of garnishment issued under § 77.01 . . . apply to intangible assets wherever located, without territorial limitation, including bank accounts, . . .financial assets. . . or other intangible property[.]"

Banco contends that because there has not yet been a determination of agency or instrumentality, the statute is inapplicable. Banco also contends the statute raises constitutional issues. Because the Court finds that Plaintiffs fail to meet their burden of establishing a *prima facie* case of agency or instrumentality as to Banco, the Court declines to reach the *in rem* jurisdiction question.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th of August 2026.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

18