UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-23190-CIV-MORENO**

CARLOS EDUARDO MARRON, JANE DOE,
C.R., a minor, and S.A., a minor,

Plaintiffs,

vs.

NICOLAS MADURO MOROS, FUERZAS ARMADAS REVOLUCIONARIOS DE COLOMBIA, CARTEL OF THE SUNS, VLADIMIR PADRINO LOPEZ, MAIKEL JOSE MORENO PEREZ, NESTOR LUIS REVEROL TORRES, TAREK WILLIAM SAAB, and TARECK EL AISSAMI,

Defendants.
_______________________________________/

**ORDER GRANTING IN PART MOTION FOR RECONSIDERATION AND FINDING ASSETS ARE BLOCKED UNDER THE TERRORISM RISK INSURANCE ACT**

Plaintiffs move for reconsideration of the Court's Order Dissolving the Writs of Garnishment dated February 19, 2026. While the Court will not disturb the dissolution of the writs, the Court finds it appropriate to reconsider whether the assets at issue are blocked under the Terrorism Risk Insurance Act (TRIA). On this issue, the Court directed counsel to address whether the fact that the license issued to D.E. Wilson was under the International Emergency Economic Powers Act (IEEPA) is of consequence. The parties submitted supplemental responses and the Court now reconsiders its ruling on the blocked nature of the assets under TRIA. D.E. Wilson, Raul Gorrin Belisario, and Gustavo Perdomo Rosales (the Interested Parties[1]) argue that

[1] The Interested Parties are Raul Gorrin Belisario ("Gorrin"), Gustavo Perdomo de Rosales ("Perdomo"), RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III, Corp., Magus Holding LLC, and Magus Holding II Corp.

because the assets are subject to an OFAC license, they are not "frozen" under TRIA and the statutory exception is inconsequential. The nature of D.E. Wilson's license, in this case, allows him to deal in and manage Gorrin and Perdomo's properties. If he elects to sell a property under the license's terms, he is required to put those funds in a blocked account. The license's constraints and standard principles of statutory construction lead the Court to conclude that Gorrin and Perdomo's assets are blocked under TRIA. Accordingly, the Court reconsiders its prior ruling to prevent an error of law.

THIS CAUSE came before the Court upon Plaintiffs' Motion for Reconsideration **(D.E. 480)**. THE COURT has considered the motion, the response, the supplemental briefs, oral argument, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion for reconsideration is GRANTED in part as set forth in this Order.

## I. Background and Analysis

The Terrorism Risk Insurance Act allows victims of terror to execute only on blocked assets. Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337. The Court's Order dated February 19, 2026, examined whether the assets of Raul Gorrin Belisario and Gustavo Perdomo Rosales are blocked under TRIA. The Court relied on language from cases finding that the existence of an OFAC license renders properties "unblocked" precluding a TRIA recovery. Upon closer examination of the statute and the license at issue, the Court feels compelled to reconsider that ruling.

TRIA § 201(d)(2) defines blocked assets as:

(A) Any asset seized or frozen by the United States under section 5(b) of the Trading with the Enemy Act. . . or under sections 202 and 203 of the International Emergency Economic Powers Act. . . and

(B) *does not include property that –*

(i) *is subject to a license* issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by *statute other than the International Emergency Economic Powers Act* … or the United Nations Participation Act of 1945[.]

Pub. L. No. 107-297, § 201(d)(2), 116 Stat. 2322, 2339-40. It is this section that creates the dispute currently at issue.

TRIA's subsection (d)(2)(A) defines blocked assets as "(A) any asset seized or frozen by the United States under section 5(b) of the Trading with the Enemy Act or under sections 202 and 203 of the International Emergency Economic Powers Act." In subsection (d)(2)(B), TRIA creates a statutory exception from that definition for blocked assets for property that is subject to a license. The exception provides that property subject to a license is not recoverable under TRIA as a blocked asset, but not just any license will trigger the TRIA exception. The license must be one "for final payment, transfer, or disposition" of property and issued under a "statute other than the International Emergency Economic Powers Act . . . or the United Nations Participation Act of 1945."[2] The Interested Parties concede that D.E. Wilson's IEEPA license would not fall into the (d)(2)(B) exception that "unblocks" the assets. Because the license does not satisfy the requirements of subsection (d)(2)(B), the current dispute centers on what constitutes "seized or frozen" under TRIA's subsection (d)(2)(A).[3]

Sections 202 and 203 of the International Emergency Economic Powers Act, 50 U.S.C. § 1701 and 1702, apply to Venezuela. These sections grant to the President the broad authority to regulate foreign assets in certain circumstances. President Trump invoked his authority under the

[2] Neither the Trading with the Enemy Act nor the United Nations Participation Act of 1945 are relevant here. This case focuses on the IEEPA restrictions and the IEEPA license.

[3] The parties agree that the United States did not seize Gorrin and Perdomo's properties. The question is whether the assets are frozen under TRIA.

"International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) to "block[]" "[a]ll property interests" of any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to have engaged in certain activity (e.g. "transactions involving deceptive practices or corruption") with the Government of Venezuela." Executive Order 13850, Blocking Property of Additional Persons Contributing to the Situation in Venezuela (Nov. 1, 2018).[4] And soon after, the United States Department of Treasury designated Raul Gorrin Belisario and Gustavo Perdomo Rosales as Specially Designated Narcotics Traffickers and blocked their assets. 84 Fed. Reg. 2946, 2946 (Feb. 8, 2019) (discussing the January 8, 2019, designation of Gorrin and Perdomo and blocking their property and interests under Executive Order 13850). The U.S. Department of Treasury Order specifically indicates that "[a]ll property and interests in property subject to U.S. jurisdiction of these persons [including Gorrin and Perdomo] are blocked, and U.S. persons *are generally prohibited* from engaging in transactions with them." 84 Fed. Reg. 2946, 2946 (Feb. 8, 2019). Both Gorrin and Perdomo's assets remain OFAC-blocked. *See* Office of Foreign Asset Control, *Sanctions List Search* (showing that Raul Gorrin Belisario and Gustavo Perdomo Rosales are designated as Specially Designated Narcotics Traffickers). The parties dispute whether the Executive Branch's orders suffice to freeze the assets under TRIA in light of the IEEPA license issued to Wilson.

TRIA does not provide an additional definition for "frozen." *Martinez v. Republic of Cuba*, No. 10-22095-CIV, 2011 WL 13115432, at *5 (S.D. Fla. June 27, 2011) *Report & Recommendation adopted in part*, No. 10-22095, 2011 WL 13115471 (S.D. Fla. Aug. 26, 2011). TRIA's legislative history is instructive as to the meaning of "frozen." Senator Tom Harkin, a co-author of TRIA, stated:

[4] https://www.federalregister.gov/documents/2018/11/02/2018-24254/blocking-property-of-additional-persons-contributing-to-the-situation-in-venezuela.

> [T]he term "blocked asset" has been broadly defined to include any asset of a terrorist party that has been seized or frozen by the United States in accordance with law. This definition includes any asset with respect *to which financial transactions are prohibited or regulated by the U.S. Treasury under any blocking order* under the Trading with the Enemy Act, the International Emergency Economic Powers Act, or any proclamation, order, regulation, or license

*Weinstein v. Islamic Rep. of Iran*, 299 F. Supp. 2d 63, 74 (E.D.N.Y. Sept. 26, 2025) (quoting Senate Proceedings and Debates of the 107th Congress, Second Session, 148 Cong. Rec. S11528 (daily ed. Nov. 19, 2002) (statement of Sen. Harkin) (emphasis added)).

The Executive Branch's orders affirm that Gorrin and Perdomo's assets are indeed frozen under IEEPA. To start, the Federal Register states that Gorrin and Perdomo's properties are blocked and "U.S. persons are *generally prohibited* from engaging in transactions with them." Certainly, as TRIA's legislative history emphasizes, the U.S. Department of Treasury "regulates" "financial transactions" as to these properties under the blocking orders. Despite the Executive Branch's actions restricting Gorrin and Perdomo's assets, the Interested Parties argue they are not blocked under TRIA because the license issued to D.E. Wilson unfreezes the assets.

"An asset is frozen if it is difficult to convert into cash." *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 639 (D.C. Cir. 2025). "That suggests an asset is frozen if it is subject to a significant restriction; the restriction need not be fully immobilizing." *Id.* In *Levin*, the D.C. Circuit found that the OFAC license there permitted courts to enter orders forfeiting blocked assets to the government and allowed the banks to relinquish blocked funds if the government managed to obtain a forfeiture order. *Id.* The government in *Levin* had not yet obtained a forfeiture order, so the D.C. Circuit found the funds to be frozen irrespective of the license. *Id.* The D.C. Circuit emphasized that under 31 C.F.R. § 594.502(c), a license removes a prohibition

"only to the extent specifically stated by its terms." "In other words, the license does not unfreeze the Funds." *Id.*

D.E. Wilson's license here reads:

> (b) Should the Licensee not receive payment from the residents of the Properties, or in the ordinary course of business decide to sell the Properties, the Licensee may engage in transactions ordinarily incident and necessary to sell the Properties, and the Licensee is authorized to recover for itself, and/or reimburse third parties, from the proceeds of the sale of any of the Properties, any taxes, costs, or legal, administrative or other fees that are necessary and incident to the sale of any of the Properties, and place the remainder in a blocked account, as consistent with section 591.203 of the Venezuela Sanctions Regulations and reported to OFAC.

The license lays out the circumstances allowing the licensee to sell the blocked properties. It also restricts the use of cash from the sale of any properties to pay costs "necessary and incident to the sale" and "place the remainder in a blocked account." Unlike the *Levin* license, which allowed the forfeited assets to be transferred to the government for its free use, here the licensee must place the proceeds into a blocked account after a sale. This case is therefore even more compelling than *Levin* because the license' terms allow dealings with blocked property but, at no time, does the license allow the free use of the property in commerce.

The Interested Parties rely on *Weinstein*, 299 F. Supp. 2d at 74-75, to support their position that this license unblocks the properties. In *Weinstein*, the Bank of New York, held accounts for three Iranian banks. The *Weinstein* plaintiffs were seeking to recover proceeds in those accounts and the parties there disputed the effect of general and specific licenses issued as to those accounts for purposes of determining whether they were blocked under TRIA. *Weinstein* holds that not every IEEPA restriction freezes an asset, and that is the Interested Parties' position here. *Est. of Levin*, 156 F.4th at 641. In *Weinstein*, the court found the Bank of New York's accounts were not blocked because the accounts were created long after the 1979 blocking order

as to Iran and long after the general license removed the blocking due to the 1981 Algiers Accord with Iran. *Id.* at 74. Following the Algiers Accord, the Code of Federal Regulations § 503.502 stated that a "license authorizing a transaction. . . has the effect of removing a prohibition . . .but only to the extent specifically stated by its terms." 31 C.F.R. § 535.502. Moreover, the Code of Federal Regulations, 31 C.F.R. § 560.517, expressly authorized the banks to close the Iranian accounts at the request of the account holder and allowed those account holders to receive a lump sun transfer of those funds. *Id.* (citing 31 C.F.R. § 560.517). These regulations removing the prohibitions on the assets were at the heart of *Weinstein*'s holding that the assets were not blocked under TRIA.

*Weinstein* does not support the Interested Parties' broad view here that any license unfreezes an asset. The assets here are subject to a general prohibition precluding transactions and the license does not entirely remove the general prohibition. The license to D.E. Wilson only allows him to manage the properties and to sell the properties as needed. If he sells the property, D.E. Wilson is to place the funds into a blocked account following necessary payments to third parties and other expenses incident to the sale. That is different from the Code of Federal Regulations treatment of the Iranian accounts. 31 C.F.R. § 560.517. For these reasons, the Court does not find the interested parties' reliance on *Weinstein* persuasive.

To hold as the Interested Parties argue would also require the Court to render TRIA's subsection (d)(2)(B) superfluous. There would be no need to include the exception if any property subject to any license was unblocked. Congress could have said as much and it did not. Rather, Congress created a carefully crafted exception to unblock properties subject to a license for final sale or disposition and Congress specifically excluded IEEPA licenses from that exception. Congress enacted section 201 to eliminate the President's discretion to prevent

victims of state-sponsored terrorism from attaching blocked assets. *Est. of Levin*, 156 F.4th at 639. If the Interested Parties are correct, then section 201 "would not prevent the very mischief that Congress sought to address" by allowing the Executive to unblock assets subject to TRIA by issuing a license as to them. *Id.* Moreover, Congress "would have had little reason to specify which licenses fall within the exception" if any type of license effectively unblocks property. *Id.* "In that instance, the license exception – with all of its qualifications regarding the covered kinds of licenses and statutory authorities – would be surprisingly reduced to surplusage." *Id.* at 640.

D.E. Wilson submitted an OFAC webpage regarding reporting requirements as evidence that his license renders the assets unblocked. The webpage states: "Please note that the term blocked property only applies to property that is blocked pursuant to OFAC regulations. Property that was unblocked by an OFAC general or specific license . . . is not considered blocked property[.]" Notably, the relevant language does not say "property subject to an OFAC license is unblocked." It adds the caveat that the license must have the effect of *unblocking* the property. A review of Wilson's license again leads the Court to conclude that the terms of this particular license do not entirely undo the prohibitions found in the Executive Branch's Orders. The Court also notes that D.E. Wilson's exhibit is a general webpage and is not directed at D.E. Wilson with information regarding this specific license. The webpage does not persuade the Court of the Interested Parties' position.

Finally, the Interested Parties argue that it is improper for the Court to reconsider its ruling as Plaintiffs have failed to make this statutory argument. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Although Plaintiffs did not

originally make this specific argument in their motion for reconsideration, they argue the Court request OFAC weigh in on the blocked status of the Gorrin and Perdomo assets.[5] Moreover, their original response to the motion to dissolve argued the Court should find the assets blocked. Because whether the assets are blocked is an essential element of TRIA, the Court considers this to be a manifest error of law, and reconsideration is appropriate.

Accordingly, the Court concludes that the restrictive license like the one here does not render TRIA inapplicable. The assets remain "frozen" and thus "blocked." And because the license was not issued under a statute "other than" the IEEPA or the Participation Act, the license exception does not apply.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th of August 2026.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

[5] The Plaintiffs' original response argues the assets are blocked under TRIA and discusses the limited nature of this IEEPA license. (ECF 371 at 8-9).