UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-23190-CIV-MORENO**

CARLOS EDUARDO MARRON, MARIA MARRON, C.R., a minor, and S.A., a minor,

Plaintiffs,

vs.

NICOLAS MADURO MOROS, FUERZAS ARMADAS REVOLUCIONARIOS DE COLOMBIA, CARTEL OF THE SUNS, VLADIMIR PADRINO LOPEZ, MAIKEL JOSE MORENO PEREZ, NESTOR LUIS REVEROL TORRES, TAREK WILLIAM SAAB, and TARECK EL AISSAMI,

Defendants.
_______________________________________/

**ORDER DENYING MOTION TO STRIKE DECLARATION OF AMBASSADOR BILLINGSLEA**

Plaintiffs/Judgment Creditors filed motions for expedited consideration of Raul Gorrin Belisario and Gustavo Perdomo Rosales's status as agents and instrumentalities of the Defendants under the Terrorism Risk Insurance Act. In support of their motions, Plaintiffs proffer the declarations of two experts, Douglas C. Farah and Ambassador Marshall S. Billingslea. Raul Gorrin Belisario, Gustavo Perdomo Rosales, and the licensee, D.E. Wilson (the Interested Parties) move to strike the declaration of Ambassador Marshall S. Billingslea under 18 U.S.C. § 207, which precludes former employees of the United States from testifying under certain circumstances. Because the Court finds the statute does not apply in this context, the Court denies the motion to strike the declaration of Ambassador Billingslea.

THIS CAUSE came before the Court upon the Motion to Strike the Declaration of Ambassador Marshall Billingslea (D.E. 503) and D.E. Wilson's joinder of the Motion to Strike (D.E. 504).

THE COURT has considered the motion, the response, oral argument, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion to strike (D.E. 503, 504) is DENIED.

## I. Background

Plaintiffs/Judgment Creditors filed motions for expedited consideration of Raul Gorrin Belisario and Gustavo Perdomo Rosales's status as agents and instrumentalities of the Defendants under the Terrorism Risk Insurance Act. In support of their motions, Plaintiffs proffer the declarations of two experts, Douglas C. Farah and Ambassador Marshall S. Billingslea. D.E. Wilson joins Raul Gorrin Belisario and Gustavo Perdomo Rosales's motion to strike the expert declaration of Ambassador Marshall S. Billingslea under 18 U.S.C. § 207. The Court must decide this threshold issue.

### *A. Background on Ambassador Marshall S. Billingslea*

Ambassador Marshall S. Billingslea served as an Assistant Secretary for Terrorist Financing and Financial Crimes at the U.S. Department of Treasury, Deputy Undersecretary of the Navy, and President of the Financial Action Task Force. He submitted a declaration in this case, which explains how Raul Gorrin Belisario and Gustavo Adolfo Perdomo Rosales supported the regime of Defendant Nicolas Maduro and how, in his view, they are agents and instrumentalities of the Defendants/Judgment Debtors. Ambassador Billingslea began his career in 1995 serving as the Senior Professional Staff Member for National Security Affairs on the Senate Foreign Relations Committee. That role included work with the State Department's

Counter-Terrorism Coordinator, and the Bureau of Intelligence and Research and Diplomatic Security.

In 2001, Ambassador Billingslea was appointed as the Deputy Assistant Secretary of Defense for Negotiations Policy, acting as the U.S. Secretary of Defense's Chief Negotiator for international agreements. He was the principal Department of Defense representative on numerous U.S. arms control delegations, and the U.S. Head of Delegation for Transparency and Verification negotiations with the Russian Federation. Following that role, Ambassador Billingslea became the Principal Deputy Assistant Secretary of Defense for Special Operations/ Low-Intensity Conflict after the 9/11 attacks. He also served as Co-Chairman of the Board of Directors for U.S. Special Operations Command, where he established the first counter-terrorist finance cell to disrupt terrorist financiers. On his initiative, the Department of Defense and U.S. Southern Command transformed their approach to train vetted Colombian military units to target the leadership of the Fuerzas Armadas Revolucionarias de Colombia (FARC).

From 2003 to 2007, Ambassador Billingslea served at NATO as Assistant Secretary General of Defense Investment where he established the "Defense Against Terrorism Program of Work" of all alliance members to collaborate on new technologies to combat terrorism. He was responsible for the Alliance's armaments, cooperation policies, its military common funding, and the NATO standards-setting for military equipment.

Following his time in NATO, he returned to Washington D.C. to serve in the Navy Department as Deputy Undersecretary of the Navy overseeing clandestine programs and the long-range budget. His career then turned to the private sector where he became a Managing Director at Deloitte running its Federal Business Intelligence Services providing due diligence for clients including U.S. intelligence agencies and the Department of Defense.

In April 2017, Ambassador Billingslea became Assistant Secretary for Terrorist Financing and Financial Crimes at the United States Department of Treasury. That position is the senior official who coordinates the counter-terrorist financing and anti-money laundering efforts of the Department of the Treasury. There, he built international coalitions and led U.S. efforts to counter illicit financial activities worldwide. He reorganized the Office of Terrorist Financing and Financial Crimes to employ cutting edge data analytics against threat networks, which strengthened the U.S.'s anti-money laundering capabilities. He served as the President of the Financial Action Task Force, the global anti-money laundering body. On his initiative, nations adopted the first ever set of anti-money laundering standards for cryptocurrencies and virtual assets. In April 2020, President Trump appointed Mr. Billingslea as the Special Presidential Envoy for Arms Control, where he led talks with the Russian Federation and the People's Republic of China. Now, Ambassador Billingslea works in the private sector providing risk and advisory services.

More specific to this case, Ambassador Billingslea, especially through his roles at the U.S. Department of Treasury from 2017 to 2020, became knowledgeable about Venezuela, the Maduro Regime, and the Cartel of the Suns. He is familiar with how the regime and the cartels commit crimes, including narcotics trafficking, narcoterrorism, money laundering, currency/exchange rate scams, kidnapping of U.S. citizens, and other acts of kleptocracy and corruption. He is also familiar with the activities of Gorrin and Perdomo, which he states include: (1) bribing members of the Maduro regime, (2) laundering money for Maduro and others, (3) running corrupt currency conversion/exchange rate schemes for Maduro and other Defendants, (4) disseminating propaganda supporting the illegitimate Maduro regime, and (5) suppressing media coverage critical of Maduro and the Cartel of the Suns through the use of

illicit funds to acquire Globovision television. Ambassador Billingslea in his role at the Treasury Department set the Department's approach to sanction the Maduro regime and the Cartel of the Suns. He was personally involved with the January 8, 2019 sanctions against Gorrin and Perdomo.

In his declaration, Ambassador Billingslea claims that his opinions are not based on information he obtained during his government work. Rather, he states they are based on his personal knowledge and research. He developed a network of confidential informants, including those who had access to Maduro and other Cartel leadership, who provided him with first-hand information concerning the conduct of Maduro, the Cartel, and the individual Defendants, as well as Gorrin and Perdomo. He states he reached his opinions using the same analytical framework as when he was responsible for assessing whether certain persons provided material support to financing terrorists while serving in the Department of Defense, the Department of the Treasury, and the Senate.

## II. Legal Analysis

At issue is whether to strike the declaration of Ambassador Marshall S. Billingslea under 18 U.S.C. § 207, a federal conflicts-of-interest statute that restricts former Executive Branch officers. The Court must decide this threshold issue before determining whether the Plaintiffs' make their *prima facie* case that Raul Gorrin Belisario and Gustavo Perdomo Rosales are agents and instrumentalities of the Defendants/Judgment Debtors under the Terrorism Risk Insurance Act.[1]

### *A. 18 U.S.C. § 207*

[1] Whether Plaintiffs/Judgment Creditors establish a *prima facie* showing of agency and instrumentality as to Gorrin and Perdomo is not the subject of this Order.

The federal criminal code mandates that former federal employees cannot make "any communication to or appearance before any . . .court . . .on behalf of any other person . . .in connection with a particular matter – (A) in which the United States . . . is a party or has a direct and substantial interest . . .[and] (B) in which the [employee] participated personally and substantially. . .." 18 U.S.C. § 207(a). The statute specifies that a "former officer or employee in the executive branch of the United States . . . who is subject to the restrictions contained in subsection (a)(1) with respect to a particular matter may not, except pursuant to court order, serve as an expert witness for any other person (except the United States) in that matter." 18 U.S.C. § 207(j)(6)(A). This provision is reemphasized in the Code of Federal Regulations, which states that "where the bar of section 207(a)(1) applies, a former [federal] employee may not serve as an expert witness except: (i) If he is called as a witness by the United States; or (ii) By court order." 5 C.F.R. § 2641.301(f)(2).

"Section 207(a) was originally written to reflect the notion that 'a public servant owes undivided loyalty to the government.'" *Goodeagle v. United States*, No. 09-490-D, 2010 WL 3081520, * 2 (W.D. Okla. Aug. 6, 2010) (quoting H.R. Rep. No. 87-748, at 3 (1961)). The statute prevents an employee from "resigning his position and 'switching sides' in a matter which was before him in his official capacity." *Id.* (quoting H.R. Rep. No. 87-748 at 4). *Goodeagle* recognized that § 207's language is broader than the intent of preventing individuals to take what they learn in an official government capacity and use it for personal gain in the private sector. *Id.* It is Gorrin and Perdomo's position that this prohibition applies and requires the Court to strike the declaration. Specifically, they rely on 18 U.S.C. § 207(j)(6), which states: "Nothing in this section shall prevent an individual from giving testimony under oath, or from making statements required to be made under penalty of perjury. Notwithstanding the preceding

sentence— (A) a former officer or employee of the executive branch of the United States . . . *who is subject to the restrictions contained in subsection (a)(1)* with respect to a particular matter may not, except pursuant to court order, serve as an expert witness for any other person (except the United States) in that matter." It is this restriction on expert testimony that forms the basis of their motion to strike.

The Interested Parties also rely on an independent regulation setting forth the "policies and procedures of the Department [of Treasury] regarding the testimony of employees and former employees" to argue the Court should strike the declaration. 31 C.F.R. § 1.11(a)(1). The regulation states that "*Subject to 5 C.F.R. § 2635.805*, an employee or former employee shall not provide, with or without compensation, opinion or expert testimony concerning official information, subjects, or activities, except on behalf of the United States or a party represented by the Department of Justice, without written approval of agency counsel." 31 C.F.R. § 1.11(f)(1) (emphasis added). The referenced regulation 5 C.F.R. § 2635.805 clarifies that "[e]mployees may not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceeding before a court or agency of the United States *in which the United States is a party or has a direct and substantial interest*, unless the employee's participation is authorized by the agency[.]" 5 C.F.R. § 2635.805(a)(emphasis added).

*B. Applicability of 18 U.S.C. § 207 & Standing to Enforce the Statute*

Plaintiffs argue that the Interested Parties lack standing to enforce § 207's prohibition. In their view, the United States Department of Justice has exclusive authority to enforce the criminal and civil provisions of Section 207. 5 C.F.R. § 2641.103 (stating "[c]riminal and civil enforcement of the provisions of 18 U.S.C. § 207 is the responsibility of the Department of Justice."). Despite this regulation, the Interested Parties argue that Plaintiffs conflate § 207(a)

with § 207(j)(6)(A), which they assert is a separate and distinct evidentiary prohibition that renders inadmissible certain expert testimony in any proceedings where it applies. They also argue that despite the broad statement that "[c]riminal and civil enforcement of the provisions of 18 U.S.C. § 207 is the responsibility of the Department of Justice[,]" 5 C.F.R. § 2641.103 only references the criminal penalties of 18 U.S.C. § 216(a), the civil penalties of §216(b), and the injunctive relief of § 216(c). Because the regulation makes no mention of § 207(j)(6)(A), they claim they have standing to challenge Ambassador Billingslea's declaration because any party to a proceeding can invoke an applicable evidentiary rule that Congress enacted.

A review of the entire statute instructs the Court on the resolution of this issue. *See In re: Walter Energy Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) ("But we must be mindful that to ascertain the plain meaning of a statute, '[w]e do not look at one word or term in isolation, but instead we look to the entire statutory context.'") (quoting *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999)).

In examining 18 U.S.C. § 207, the Court first notes that title 18 is the federal criminal code, which is titled "Crimes and Criminal Procedure." The relevant section is found in chapter 11 titled "Bribery, Graft and Conflicts of Interest." Section 207 itself is named "Restrictions on former officers, employees, and elected officials of the executive and legislative branches." Subsection (a) creates criminal liability when a former government employee knowingly makes a communication with an intent to influence any court in cases where the United States is a party or has a substantial interest, in which the person participated personally and substantially as an officer, and which involved specific parties at the time of the participation. Subsection (a)(3) clarifies that "[t]he restrictions contained in paragraphs (1) and (2) shall apply -- . . . "only with respect to a matter in which the United States [or the District of Columbia] is a party or has a

direct and substantial interest." Subsection (b) creates a restriction on aiding on advising by any former officer, and is also punishable criminally as provided in 18 U.S.C. § 216, part of the same title as § 207. Subsections (c) through (g) explain different categories of employees to whom the section applies and certain time restrictions; these sections all reference that violations are criminally punishable as provided in section 216. Then subsection (h) allows the Director of the Office of Government Ethics to designate agencies within the executive branch for distinct functions to clarify § 207(c). Subsection (i) lists definitions pertinent to § 207, such as defining officers and employees. Then, the pertinent section at issue here is subsection (j), which is titled "Exceptions." The first three exceptions clarify that § 207's prohibition does not apply to official government duties in connection with carrying out duties on behalf of the United States, the District of Columbia, state and local governments, or international organizations in which the U.S. participates if the Secretary of State certifies as such. Subsection (j)(4) creates an exception for an individual making an unpaid statement based on "special knowledge" and subsection (j)(5) piggybacks on that to add that the restrictions do not apply "with respect to making communications solely for the purpose of furnishing scientific or technological information[.]"

It is in this exceptions framework that § 207(j)(6) appears. Subsection (j)(6) is the provision that the Interested Parties claim creates a standalone evidentiary rule. First, subsection (j)(6) is titled "exception for testimony." It states that nothing in § 207 "prevents an individual from giving testimony under oath, or from making statements required to be made under penalty of perjury." Then it states that "[n]otwithstanding the preceding sentence—" "a former officer or employee of the executive branch of the United States . . . *who is subject to the restrictions contained in subsection (a)(1)* with respect to a particular matter may not, except pursuant to court order, serve as an expert witness for any other person (except the United States) in that

matter." 18 U.S.C. § 207(j)(6). The Interested Parties request the Court read this subsection (j)(6) as an evidentiary rule, and ignore the framework within which it is found. Notably, and in their favor, subsection (j)(6) does not indicate that a failure to comply results in criminal culpability. Nor does it include an enforcement mechanism as present under subsection (a). But the section is listed as an exception to the general prohibitions to allow testimony under oath and notes the exception does not extend to expert witness testimony.

Principles of statutory construction do not support the Interested Parties' reading and rather require the Court to find that they are without standing to enforce it. To start, the statute is contained in the criminal code. It is a longstanding "principle that criminal statutes can only be enforced by the proper authorities of the United States government and a private party has no right to enforce these sanctions" in civil actions. *Bass Angler Sportsman Soc'y v. U.S. Steel Corp.*, 324 F. Supp. 412, 415 (S.D. Ala. 1971); *Jones v. Clinton*, 206 F.3d 811, 812 (8th Cir. 2000) (finding a private party lacks standing to prosecute a criminal action). And the regulations clarify that the Department of Justice is charged with enforcement. 5 C.F.R. § 2641.103 (stating the "[c]riminal and civil enforcement of the provisions of 18 U.S.C. § 207 is the responsibility of the Department of Justice.").

The Court must also read the statute in a manner that gives all sections its meaning. To do so, the Court must view subsection (j)(6) as an exception to the general prohibition, not as a stand-alone evidentiary rule. This is especially the case because subsection (j)(6) indicates that it applies to former officers or employees who are "subject to the restrictions contained in subsection (a)(1)[.]" Subsection (j)(6) references the general prohibition, and thus the Court will not read it in isolation.

Moreover, § 207(a)(1) clarifies that this statute does not apply in this case. It provides unequivocally that it only applies to matters "in which the United States . . . is a party or has a direct and substantial interest." 18 U.S.C. § 207(a)(1)(A). Subsection (a)(3)(A) further clarifies that the restrictions contained in paragraphs 1 and 2 apply only when the United States is a party or has a direct and substantial interest. The United States is not a party in this case, which distinguishes this case from *Goodeagle* where the United States was a party.

This begs the next question as to whether the United States has a direct and substantial interest in this case. The Interested Parties assert that allowing the garnishment of the Gorrin and Perdomo assets would deplete the assets from the control of the Department of Treasury, which gives it power to negotiate with Gorrin and Perdomo, whom it designated as Specially Designated Narcotics Traffickers. TRIA, however, sets forth the United States' interest in ensuring that terrorism victims can collect blocked assets. In enacting TRIA, Congress allowed terrorism victims to bypass the usual requirement that a litigant first obtain a license from the Office of Foreign Asset Control, U.S. Department of Treasury. TRIA therefore cuts against the Interested Parties' position that the United States has a direct and substantial interest in keeping blocked assets available as a negotiation tool. Likewise, these assets are blocked and are not owned by the United States. So allowing the TRIA Plaintiffs to recover as to these assets does not cause a direct financial loss to the United States, which could, if it were the case, also establish a direct and substantial interest.

The Court, therefore, finds that § 207(j)(6)'s exception does not create a standalone evidentiary rule requiring the Court to strike Ambassador Billingslea's affidavit. 5 C.F.R. § 2641.301(f)(2), which is the regulation relating to 18 U.S.C. § 207, confirms this statutory interpretation. The regulation clearly states that "*where the bar of section 207(a)(1) applies*, a

former employee may not serve as an expert witness" with certain exceptions. 5 C.F.R. § 2641.301(f)(2). The regulation does not support the Interested Parties' reading of subsection (j)(6) as providing a standalone evidentiary rule regarding testimony by former employees of the Executive Branch. Having found § 207 does not apply and that the Interested Parties lack standing to enforce the criminal statute, the Court need not address whether Ambassador Billingslea's affidavit relies on his personal experience while serving the U.S. Department of Treasury.

The Court next examines whether the restrictions relating to the U.S. Department of Treasury found in the Code of Federal Regulations apply to require striking of the declaration. The Interested Parties argue that 31 C.F.R. § 1.11(f)(1) is an independent provision that requires this Court strike the declaration. But that regulation prohibiting expert testimony by former Department of Treasury employees is explicitly subject to another regulation 5 C.F.R. § 2635.805. 5 C.F.R. § 2635.805(a) states that "[e]mployees may not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceeding before a court or agency of the United States *in which the United States is a party or has a direct and substantial interest,* unless the employee's participation is authorized by the agency[.]" (emphasis added). Because the United States is not a party to this case and lacks a direct and substantial interest in this case, the Court finds that 31 C.F.R. § 1.11(f) does not apply here and the Court denies the motion to strike the declaration of Ambassador Marshall Billingslea.

DONE AND ORDERED in Chambers at Miami, Florida, this 14th of September 2026.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record